# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| NORTH CAROLINA STATE CONFERENCE OF THE NAACP, CHAPEL HILL – CARRBORO NAACP, GREENSBORO NAACP, HIGH POINT NAACP, MOORE COUNTY NAACP, STOKES COUNTY BRANCH OF THE NAACP, WINSTON SALEM – FORSYTH COUNTY NAACP, | CASE NO. 1:18-cv-01034-LCB-LPA |

*Plaintiffs,*

    v.

ROY ASBERRY COOPER III, in his official capacity as the Governor of North Carolina; JOSHUA MALCOM, in his official capacity as Chair of the North Carolina State Board of Elections; KEN RAYMOND, in his official capacity as Secretary of the North Carolina State Board of Elections; STELLA ANDERSON, DAMON CIRCOSTA, ROBERT CORDLE, STACY EGGERS IV, JAY HEMPHILL, VALERIE JOHNSON, and JOHN LEWIS, in their official capacities as members of the North Carolina State Board of Elections,

                *Defendants,*

and

PHILIP E. BERGER, in his official capacity as President Pro Tempore of the North Carolina Senate, and TIMOTHY K. MOORE, in his official capacity as Speaker of the North Carolina House of Representatives,

                *Proposed Intervenors.*

**PROPOSED INTERVENORS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO INTERVENE**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................... i

STATEMENT OF THE MATTER BEFORE THE COURT ............................................ 1

QUESTION PRESENTED BY THIS MOTION .............................................................. 2

STATEMENT OF FACTS ................................................................................. 2

ARGUMENT ................................................................................................ 6

    I.      Proposed Intervenors Are Entitled To Intervene as of Right. ...................... 6

          a.      Proposed Intervenors' Motion is Timely. ......................................... 7

          b.      Proposed Intervenors Have a Significantly Protectable Interest in the Subject of this Suit. .................................................................. 7

          c.      The Court's Disposition of this Case Might Impair Proposed Intervenors' Significantly Protectable Interest ................................ 10

          d.      The Existing Defendants Will Not Adequately Protect Proposed Intervenors' Significantly Protectable Interest ................................ 11

    II.     Alternatively, Proposed Intervenors Satisfy the Minimal Requirements for Permissive Intervention. ............................................................................ 16

CONCLUSION ............................................................................................ 18

Case 1:18-cv-01034-LCB-LPA   Document 8   Filed 01/14/19   Page 2 of 25

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page**

*Alt v. U.S. E.P.A.*, 758 F.3d 58 (4th Cir. 2014) ................................................................. 7

*Am. Civil Liberties Union v. Tennyson*,
   No. 13-1030, 815 F.3d 183 (4th Cir. 2016) ................................................................. 9

*Am. Civil Liberties Union v. Tennyson*,
   No. 13-1030, 815 F.3d 183 (4th Cir. 2016), Doc. 43 (granting motion)...................... 9

*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*,
   135 S. Ct. 2652 (2015) ............................................................................................ 7, 10

*Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997) ......................................... 8

*Carcaño v. McCrory*, 315 F.R.D. 176 (M.D.N.C. 2016) ................................................. 16

*Cooper v. Berger*, 809 S.E.2d 98 (N.C. 2018) ............................................................. 9, 15

*Cooper v. Berger*, No. 409PA17, 2018 WL 6721278 (N.C. Dec. 21, 2018) ..................... 9

*Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181 (2008)............................................. 2

*Donaldson v. United States*, 400 U.S. 517 (1971)............................................................. 7

*Edwards v. Bipartisan State Bd. of Elections &*
   *Ethics Enf't*, 818 S.E.2d 279 (N.C. 2018)................................................................... 9

*Feller v. Brock*, 802 F.2d 722 (4th Cir. 1986) ............................................................. 6, 17

*Fisher-Borne v. Smith*, 14 F. Supp. 3d 699 (M.D.N.C. 2014) ........................................ 6, 7

*Flying J, Inc. v. Van Hollen*, 578 F.3d 569 (7th Cir. 2009) ............................................. 10

*Francis v. Chamber of Commerce of U.S.,* 481 F.2d 192 (4th Cir. 1973) ........................ 10

*Hart v. State*, 774 S.E.2d 281 (N.C. 2015)........................................................................ 9

*Holmes v. Moore*, No. 18-cv-15292 (N.C. Super. Ct.)...................................................... 9

*Karcher v. May*, 484 U.S. 72 (1987) ............................................................................. 8, 9

*Lee v. Virginia State Board of Elections*, 843 F.3d 592 (4th Cir. 2016) ............................ 5

*North Carolina State Conference of NAACP v. McCrory*,
   831 F.3d 204 (4th Cir. 2016) ..................................................................................... 3

*North Carolina v. NAACP*, 137 S. Ct. 1399 (2017) ................................................. 3, 11, 14

*Richardson v. State*, 774 S.E.2d 304 (N.C. 2015) ............................................................. 9

*Spring Const. Co. v. Harris, 614 F.2d 374 (4th Cir. 1980)* ............................................. 10

*State v. Berger*, 781 S.E.2d 248 (N.C. 2016) .................................................................... 9

ii

*Stuart v. Huff*, 706 F.3d 345 (4th Cir. 2013) .................................................................. 16

*Students for Fair Admissions Inc. v. Univ. of North Carolina*,
    319 F.R.D. 490 (M.D.N.C. 2017) ........................................................................ 16, 17

*Trbovich v. United Mine Workers of Am.*, 404 U.S. 528 (1972) ...................................... 11

*United Guar. Residential Ins. Co. of Iowa v. Philadelphia Sav. Fund Soc'y*,
    819 F.2d 473 (4th Cir. 1987) ............................................................................. 11, 14

## Legislative Materials

N.C. CONST. art. VI, § 2(4) ................................................................................................ 3

N.C. CONST. art. VI, § 3(2) ................................................................................................ 3

42 U.S.C. § 1973 ............................................................................................................... 5

N.C. Gen. Stat. § 1-72.2(a) ............................................................................................... 8

N.C. Gen. Stat. § 1-72.2(b) ............................................................................................... 8

2013 N.C. Sess. Laws 381 ................................................................................................ 3

2015 N.C. Sess. Laws 103 § 8 .......................................................................................... 3

2017 N.C. House Bill No. 1029 (to be codified at N.C. Gen. Stat. § 163-19(b)) ............ 15

2018 N.C. Sess. Laws 144 ............................................................................................. 3, 4

Senate Bill 824 / SL 2018-144, N.C. Gen. Assembly (2017-2018 Sess.),
    https://bit.ly/2FmisPP ........................................................................................... 5

## Rules

FED. R. CIV. P. 24(a) ......................................................................................................... 6

FED. R. CIV. P. 24(b)(2)(B) ......................................................................................... 16, 17

## Other

7C WRIGHT & MILLER, FED. PRAC. & PROC. CIV. § 1909 (3d ed. Sept. 2018) .......... 11, 14

*Cooper rallies opposition to NC elections bill*, WRAL.COM (Aug. 8, 2013) .................. 12

Governor Roy Cooper Objections and Veto Message (Dec. 14, 2018) ........................ 1, 12

John Hinton, *Democrat Ken Spaulding criticizes Roy Cooper for King Day email about voting rights*, WINSTON-SALEM JOURNAL (Jan. 19, 2016) ......................................... 13

Max Greenwood, *NC Governor Says He Won't Appoint Interim Elections Board*,
THE HILL (Jan. 2, 2019) ............................................................................................ 15

*N.C. Attorney General Roy Cooper won't defend voter ID suit further; Gov. Pat McCrory criticizes him*, THE NEWS & OBSERVER (Aug. 2, 2016) ............................................................................ 13

Order, *Cooper v. Berger*, No. 18-cv-3348 (N.C. Super. Ct. Dec. 27, 2018) .................... 15

Petition for a Writ of Certiorari, *North Carolina v. NAACP*, No. 16-833, 2016 WL 7634839 (U.S. Dec. 27, 2016) ................................................ 13

Press Release, N.C. Att'y Gen., AG Stein Moves To Dismiss Case on Voting Law (Feb 21, 2017) ............................................................................................... 12

Press Release, N.C. Governor, Gov. Cooper Issues Statement on SCOTUS Voter Access Decision (May 15, 2017) ............................................................. 14

Press Release, N.C. Governor, Governor Cooper, AG Stein Take Steps to Withdraw from Voting Restrictions Case (Feb. 21, 2017) ................................... 14

Rachel Lewis Hilburn, *Attorney General fires off letter to McCrory urging veto on voter ID bill*, WHQR (July 26, 2013) ................................................................. 13

Reply of Petitioners to Objection to the Motion to Dismiss at 2, *North Carolina v. NAACP*, 137 S. Ct. 1399 (Mar. 9, 2017) ........................................................... 12

*Roy Cooper on attack in new web ad*, WRAL.COM (Jan. 30, 2014) ................................. 13

Wendy Underhill, *Voter Identification Requirements*, NAT'L CONFERENCE OF STATE LEGISLATURES (Oct. 31, 2018), https://bit.ly/18Szn2n ................................................ 2

iv

## STATEMENT OF THE MATTER BEFORE THE COURT

At stake in this lawsuit is the validity of North Carolina Senate Bill ("S.B.") 824, a recent enactment implementing the constitutional directive of the people of North Carolina that citizens be required to present photo identification when voting. As matters currently stand, however, there is no party before the Court that can be counted on to adequately defend S.B. 824. Governor Roy Cooper is an implacable opponent of the law. It was enacted over his veto, which was accompanied by a statement describing the law as having "sinister and cynical origins" in a purported "design[] to suppress the rights of minority, poor and elderly voters." Governor Roy Cooper Objections and Veto Message (Dec. 14, 2018), Ex. A. While the remaining defendants are sued in their capacity as members of the North Carolina State Board of Elections, that Board no longer exists—it was dissolved following a decision of the North Carolina Supreme Court finding that its structure violated the State Constitution because it was too insulated from the Governor's control. A law creating a new Board will go into effect January 31, but its members will be appointed by Governor Cooper and he may select a majority from his own political party. And all of the named defendants presumably will be represented by North Carolina Attorney General Josh Stein, who began his tenure as Attorney General by successfully seeking to have the Supreme Court *decline* to review the Fourth Circuit's decision striking down North Carolina's prior voter ID law. With defendants like these, this case hardly needs plaintiffs.

Fortunately, North Carolina has not left the defense of its statutes to potentially hostile executive branch officials. In accordance with United States Supreme Court

1

precedent, state law expressly establishes that the President Pro Tempore of the Senate and the Speaker of the House of Representatives have standing, as agents of the State, to intervene in litigation on behalf of the General Assembly in defense of North Carolina statutes. President Pro Tempore Berger and Speaker Moore accordingly move to intervene to defend S.B. 824, and this Court should grant the motion to ensure that the law—and the people of North Carolina on whose behalf it was enacted—gets the defense it deserves.

## QUESTION PRESENTED BY THIS MOTION

Whether Proposed Intervenors should be granted leave to intervene in this case either as of right under Federal Rule of Civil Procedure 24(a) or permissively under Rule 24(b).

## STATEMENT OF FACTS

A majority of states have voter ID laws. *See* Wendy Underhill, *Voter Identification Requirements*, NAT'L CONFERENCE OF STATE LEGISLATURES (Oct. 31, 2018), https://bit.ly/18Szn2n. These laws serve states' legitimate interests in preventing voter fraud and in ensuring "public confidence in the integrity of the electoral process." *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 196–97 (2008) (plurality); *see also id.* at 209 (Scalia, Thomas, and Alito, JJ., concurring in the judgment).

In 2013, the North Carolina General Assembly (the state's legislature) passed a law that required voters to present an approved form of photo ID and that made several other changes to the state's voting system (e.g., reducing the early voting period and eliminating out-of-precinct voting, same-day registration and voting, and pre-registration by 16-year-

2

olds). *See* 2013 N.C. Sess. Laws 381. In 2015, the legislature amended the law to permit voters to vote without an ID if they could show a reasonable impediment to obtaining one. *See* 2015 N.C. Sess. Laws 103 § 8. But a divided panel of the Fourth Circuit struck the law down, *see North Carolina State Conference of NAACP v. McCrory*, 831 F.3d 204 (4th Cir. 2016), and North Carolina's current Governor and Attorney General abandoned the State's appeal of that decision, *see North Carolina v. NAACP*, 137 S. Ct. 1399, 1399 (2017) (Roberts, C.J., statement respecting the denial of certiorari).

In November 2018, the people of North Carolina amended the State's constitution to require photo ID to vote. As amended, the constitution provides that "[v]oters offering to vote in person shall present photographic identification before voting. The General Assembly shall enact general laws governing the requirements of such photographic identification, which may include exceptions." N.C. CONST. art. VI, § 2(4); *see also* N.C. CONST. art. VI, § 3(2).

Pursuant to that mandate, the General Assembly passed S.B. 824. *See* 2018 N.C. Sess. Laws 144, Ex. B. Unlike North Carolina's 2013 voting law, S.B. 824 concerns only voter ID. And it permits voters to use a wide range of IDs, including a North Carolina driver's license, a driver's license from any state or U.S. territory in certain circumstances, a passport, a tribal enrollment card, a qualifying student ID, a qualifying state or local government employee ID, a military ID, or a veteran ID. *See* Ex. B at 2. Voters may present any approved ID even if it has expired within the past year, military and veteran IDs may be used regardless of expiration, and seniors may use IDs that expired after their 65th

3

birthdays. *See id.* S.B. 824 also gives voters a right to obtain a voter ID card, which remains valid for 10 years, free of charge. *See id.* at 1.

Voters who arrive to the polls without IDs can vote as well. If a voter has simply forgotten ID or is unaware of the requirement, the voter can cast a provisional ballot and then return with an ID anytime within nine days (i.e., until the end of the day before the Board canvasses the votes pursuant to N.C. Gen. Stat. § 163A-1172(b)). The law requires the Board to give the voter an information sheet with this deadline and the types of acceptable IDs. *See* Ex. B at 3. And if a voter does not have an ID at all, the voter can fill out an affidavit at the voting place indicating the "reasonable impediment" that prevented the voter from obtaining one—including a lack of transportation, illness, work schedule, lack of necessary documents, family responsibilities, loss of ID, or any other unique reasonable impediment. *See id.* at 3–4. The voter is entitled to complete a provisional ballot upon the completion of the reasonable impediment affidavit, and the ballot will be treated as valid unless "the county board [of elections] has grounds to believe the affidavit is false." *Id.* at 4.

The legislature also addressed the problem of absentee voter fraud by requiring that requests for absentee ballots be accompanied by forms of ID similar to those required for in-person voting. *See id.* at 7. But voters who lack a method to attach an electronic or physical copy of their ID with their request—or who face any other reasonable impediment as defined above—may say so and still obtain an absentee ballot. *See id.* at 7–8.

4

The North Carolina legislature has gone to great lengths to ensure that the people's constitutional directive to require voter ID is implemented in a manner that does not unduly burden the right of any person to vote. Indeed, North Carolina's law compares favorably with Virginia's voter ID law, which was upheld by the Fourth Circuit and which is similar to North Carolina's law in many respects but does not contain a reasonable impediment exception. *See Lee v. Virginia State Bd. of Elections*, 843 F.3d 592, 594–95 (4th Cir. 2016). In North Carolina, as in Virginia, "every registered voter who shows up to his or her local polling place on the day of the election has the ability to cast a ballot and to have the vote counted, even if the voter has no identification." *Id*. at 600.

The General Assembly presented S.B. 824 to Governor Roy Cooper on December 6, 2018. *See* Senate Bill 824 / SL 2018-144, N.C. Gen. Assembly (2017–2018 Sess.), https://bit.ly/2FmisPP. Governor Cooper, a longtime opponent of voter ID rules, vetoed the bill on December 14. *See id*. The North Carolina Senate thereafter overrode the veto by a vote of 33-12, and the North Carolina House of Representatives did so by a vote of 72-40. *See id*. Soon after, Plaintiffs filed this suit against the Governor and members of the North Carolina State Board of Elections ("Defendants"), alleging that S.B. 824 will disproportionately impact African-American and Latino voters in violation of Section 2 of the Voting Rights Act, 42 U.S.C. § 1973; intentionally discriminates against African-American and Latino voters, in violation of the Fourteenth and Fifteenth Amendments of the United States Constitution; and will unduly burden the right to vote, in violation of the Fourteenth Amendment. *See* Compl. ¶¶ 105–46, Doc. 1.

5

Proposed Intervenors have a well-founded belief that Defendants will not adequately represent the State's and the General Assembly's interests in defending S.B. 824, which Proposed Intervenors and their fellow legislators passed at the mandate of the people of North Carolina, from these baseless challenges.

## ARGUMENT

### I.  Proposed Intervenors Are Entitled To Intervene as of Right.

Under Federal Rule of Civil Procedure 24(a), a court "must permit anyone to intervene who" (1) makes a timely motion to intervene, (2) has "an interest in the subject of the action," (3) is "so situated that the disposition of the action may impair or impede [his] ability to protect that interest," and (4) shows "that he is not adequately represented by existing parties." FED. R. CIV. P. 24(a); *Fisher-Borne v. Smith*, 14 F. Supp. 3d 699, 702 (M.D.N.C. 2014).

As the Fourth Circuit has noted regarding intervention as of right, "liberal intervention is desirable to dispose of as much of a controversy 'involving as many apparently concerned persons as is compatible with efficiency and due process.' " *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)). Proposed Intervenors are deeply concerned with defending on behalf of the State and the General Assembly a law that the General Assembly passed pursuant to constitutional command and that serves the State's vital interest in protecting the integrity of its electoral process. They satisfy all four requirements for intervention as of right.

6

### a. **Proposed Intervenors' Motion is Timely**.

Three criteria determine whether a motion to intervene is timely: (1) "how far the underlying suit has progressed," (2) the "prejudice" that granting the motion would cause to the other parties; and (3) the reason for the delay—if any—in filing the motion. *Alt v. U.S. E.P.A.*, 758 F.3d 588, 591 (4th Cir. 2014). This suit did not progress at all before Proposed Intervenors filed their motion: they filed the motion just weeks after the suit commenced, before any existing party had filed anything other than the complaint. Proposed Intervenors did not delay in filing this motion. And granting the motion would not delay the proceedings or prejudice the other parties in any way. *Cf. id.* (affirming denial of a motion to intervene where "the proceedings below had already reached a relatively advanced stage"). Thus, the motion is timely.

### b. **Proposed Intervenors Have a Significantly Protectable Interest in the Subject of this Suit**.

To satisfy Rule 24(a), Proposed Intervenors' interest in the subject of this suit must be "significantly protectable." *Donaldson v. United States*, 400 U.S. 517, 531 (1971). In other words, Proposed Intervenors must have a stake in the suit, rather than a "general concern with the subject matter." *Fisher-Borne*, 14 F. Supp. 3d at 703.

Proposed Intervenors have a significantly protectable interest in the validity of S.B. 824, which the North Carolina General Assembly enacted over the Governor's veto. Because state legislatures have an institutional interest in seeing that their enactments are not "nullified," *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2665 (2015), long-standing Supreme Court authority establishes that state legislative

officials have the authority to defend state enactments in federal court when State law "authorize[s]" them "to represent the [State] Legislature in litigation." *Karcher v. May*, 484 U.S. 72, 81 (1987); *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 65 (1997) ("[S]tate legislators have standing to contest a decision holding a state statute unconstitutional if state law authorizes legislators to represent the State's interests."). Here, State law does that expressly. Section 1-72.2 of the North Carolina General Statutes provides that "[i]t is the public policy of the State of North Carolina that in any action in any federal court in which the validity or constitutionality of an act of the General Assembly . . . is challenged, the General Assembly, jointly through the Speaker of the House of Representatives and the President Pro Tempore of the Senate, constitutes the legislative branch." N.C. Gen. Stat. § 1-72.2(a). That section establishes a similar policy for actions in State court, *id.*, and it additionally provides that, "[t]he Speaker of the House of Representatives and the President Pro Tempore of the Senate, as agents of the State, by and through counsel of their choice, including private counsel, shall jointly have standing to intervene on behalf of the General Assembly as a party in any judicial proceeding challenging a North Carolina statute." *Id.* § 1-72.2(b). And it implores federal courts to allow the legislature to intervene in cases in which the State is a party and a State law is attacked. *Id.* § 1-72.2(a).

The North Carolina law establishing Proposed Intervenors' interest easily qualifies them to defend S.B. 824 under *Karcher*. There, the Supreme Court, citing a single case, reasoned that New Jersey legislative officials had standing to defend New Jersey law

because "[t]he New Jersey Supreme Court has granted applications of the Speaker of the General Assembly and the President of the Senate to intervene as parties-respondent on behalf of the legislature in defense of a legislative enactment." 484 U.S. at 82. Here, unlike in *Karcher*, the Court is not required to infer an interest from a thinly-reasoned state court decision but rather can rely upon the express provisions of State statutory law. Indeed, the authority of the President Pro Tempore and Speaker to represent the interests of the General Assembly in defense of state law is so ingrained in North Carolina law that they are often *named defendants* in state court litigation challenging state laws, including litigation challenging S.B. 824. *See Holmes v. Moore*, No. 18-cv-15292 (N.C. Super. Ct.); *see also, e.g.*, *Cooper v. Berger*, No. 409PA17, 2018 WL 6721278 (N.C. Dec. 21, 2018); *Cooper v. Berger*, 809 S.E.2d 98 (N.C. 2018); *State v. Berger*, 781 S.E.2d 248 (N.C. 2016). And in other cases they have intervened when not named as defendants. *See, e.g.*, *Edwards v. Bipartisan State Bd. of Elections & Ethics Enf't*, 818 S.E.2d 279 (N.C. 2018); *Hart v. State*, 774 S.E.2d 281 (N.C. 2015); *Richardson v. State*, 774 S.E.2d 304 (N.C. 2015).

In accordance with the North Carolina authorities discussed above, the President Pro Tempore and Speaker's interest in defending state legislation has been recognized by the Fourth Circuit and this Court. *See, e.g.*, *Am. Civil Liberties Union v. Tennyson*, No. 13-1030, 815 F.3d 183 (4th Cir. 2016), Doc. 40 (motion to intervene by Speaker and President Pro Tempore pursuant to Section 1-72.2), Ex. C; *id.*, Doc. 43 (granting motion), Ex. D; *Fisher-Borne*, 14 F. Supp. 3d at 703–04 ("[A]s authorized representatives of the legislature, [the Speaker and President Pro Tempore]'s desire to defend the constitutionality of

legislation passed by the legislature is a protectable interest in the subject matter of this litigation."). This Court should do the same with respect to S.B. 824.

### c. The Court's Disposition of this Case Might Impair Proposed Intervenors' Significantly Protectable Interest.

Intervention is required under Rule 24(a) where "the disposition of a case would, as a practical matter, impair the applicant's ability to protect his interest." *Spring Const. Co. v. Harris*, 614 F.2d 374, 377 (4th Cir. 1980). The disposition of the present case could, as an absolute matter, impair Proposed Intervenors' interest in ensuring that the law they passed at the command of the people of North Carolina—in order to protect the integrity of and public confidence in elections—actually takes effect. Plaintiffs ask this Court to declare several provisions of S.B. 824 unconstitutional under the Fourteenth and Fifteenth Amendments and invalid under Section 2 of the Voting Rights Act; to enjoin North Carolina officials from implementing those provisions; and to retain jurisdiction over North Carolina for an indefinite time, pursuant to Section 3(c) of the Voting Rights Act, to scrutinize every change that the State might make to its voting procedures. *See* Compl. ¶ 147, Doc. 1. If the Court grants this relief, the General Assembly's efforts to pass S.B. 824 will have been "completely nullified." *Ariz. State Legislature*, 135 S. Ct. at 2665. Furthermore, its continuing authority to enact voting laws will be burdened. The Court's disposition of this case could thus impair Proposed Intervenors' significantly protectable interest. *See, e.g.*, *Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 573 (7th Cir. 2009) (finding an "inconvenience" sufficient to constitute an impediment for purposes of Rule 24(a)); *Francis v. Chamber of Commerce of U.S.*, 481 F.2d 192, 195 n.8 (4th Cir. 1973) (noting

10

that stare decisis, which would attach to an adverse appellate ruling in the case, "by itself may furnish the practical disadvantage required under [Rule] 24(a)").

### d. The Existing Defendants Will Not Adequately Protect Proposed Intervenors' Significantly Protectable Interest.

"The requirement of [inadequate representation] is satisfied if the applicant shows that representation of his interest *may be* inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (emphasis added); *accord United Guar. Residential Ins. Co. of Iowa v. Philadelphia Sav. Fund Soc'y*, 819 F.2d 473, 476 (4th Cir. 1987). "[A]nd the burden of making that showing should be treated as minimal." *Trbovich*, 404 U.S. at 538 n.10; *see also* 7C WRIGHT & MILLER, FED. PRAC. & PROC. CIV. § 1909 (3d ed. Sept. 2018) (hereinafter "WRIGHT & MILLER") ("[T]here is good reason in most cases to suppose that the applicant is the best judge of the representation of the applicant's own interests and to be liberal in finding that one who is willing to bear the cost of separate representation may not be adequately represented by the existing parties.").

Here, Defendants have made quite clear that they cannot be trusted to defend S.B. 824 in the same, rigorous manner as Proposed Intervenors—and very well might not defend the law at all. Presumably, North Carolina Attorney General Josh Stein will represent the state officials sued here. Soon after taking office, Attorney General Stein moved to dismiss North Carolina's petition for certiorari from the Fourth Circuit's ruling striking down the State's previous voter ID law, and Chief Justice Roberts cited that motion in a statement respecting the denial of certiorari. *See NAACP*, 137 S. Ct. at 1399 (statement of Roberts, C.J.). The same day he filed the motion, Attorney General Stein issued a press release

suggesting that the law unduly burdened the right to vote: "I support efforts to guarantee fair and honest elections, but those efforts should not be used as an excuse to make it harder for people to vote." *See* Press Release, N.C. Att'y Gen., AG Stein Moves To Dismiss Case on Voting Law (Feb 21, 2017), Ex. E. His representations to the Supreme Court were similarly derogatory toward his own State's laws. *See* Reply of Petitioners to Objection to the Motion to Dismiss at 2, *North Carolina v. NAACP*, 137 S. Ct. 1399 (Mar. 9, 2017), Ex. F (characterizing the State's prior voter ID requirement as "curtail[ing] North Carolinians' ability to exercise their right to vote"). Having prejudiced the State's defense of its prior voter ID requirement, Attorney General Stein should not be entrusted with defense of the new law.

Governor Cooper himself is just as opposed to voter ID rules, if not more. The most obvious proof is, of course, his veto of S.B. 824. In his veto message, he made known his thoughts on the law at the heart of this suit. He called the law "sinister," "cynical," and "designed to suppress the rights of minority, poor and elderly voters"; said that "[r]equiring photo IDs for in-person voting is a solution in search of a problem"; and blamed that requirement with "put[ting] up barriers to voting that will trap honest voters in confusion." Veto Message, Ex. A. Even before that, as Attorney General, Cooper actively undermined the State's efforts to enact its previous voter ID law, posting a petition online for those opposed to the bill to lobby then-Governor Pat McCrory to veto it. *See* Matthew Burns, *Cooper rallies opposition to NC elections bill*, WRAL.COM (Aug. 8, 2013), Ex. G. Cooper himself sent a letter to Governor McCrory urging him to veto the bill. *See* Rachel Lewis

12

Hilburn, *Attorney General fires off letter to McCrory urging veto on voter ID bill*, WHQR (July 26, 2013), Ex. H. In that letter, he called the law "regressive," "unnecessary, expensive and burdensome." *Id.*

The State was later forced to defend its previous voter ID law without the help of then-Attorney General Cooper, who declined to participate in the petition for certiorari seeking review of the Fourth Circuit's ruling striking down that law. *See* Petition for a Writ of Certiorari, *North Carolina v. NAACP*, No. 16-833, 2016 WL 7634839 (U.S. Dec. 27, 2016); *N.C Attorney General Roy Cooper won't defend voter ID suit further; Gov. Pat McCrory criticizes him*, THE NEWS & OBSERVER (Aug. 2, 2016), Ex. I. Governor McCrory lamented that "again [General Cooper] is not willing to do his job." *Id.* In response, Cooper made clear his view on voter ID laws: "When are they [i.e., the Governor and General Assembly] going to learn that you just can't run roughshod over the Constitution?" *Id.*

Indeed, when campaigning for Governor, Cooper's antipathy to the previous voter ID law was central to his platform. *See Roy Cooper on attack in new web ad*, WRAL.COM (Jan. 30, 2014), Ex. J (quoting campaign ad in which Cooper charged "Gov. McCrory and the tea party Republicans" with, among other things, "ma[king] it harder to register and vote"). This tactical choice was apparently a response to criticism from Democratic opponents over his initial defense of the law. *See* John Hinton, *Democrat Ken Spaulding criticizes Roy Cooper for King Day email about voting rights*, WINSTON-SALEM JOURNAL (Jan. 19, 2016), Ex. K. And as described above, shortly after Governor Cooper took office Attorney General Stein moved to dismiss the petition for certiorari seeking review of the

13

Fourth Circuit's ruling striking down the prior law, presumably at Governor Cooper's instruction. *See NAACP*, 137 S. Ct. at 1399 (statement of Roberts, C.J.); *see also* Press Release, N.C. Governor, Governor Cooper, AG Stein Take Steps to Withdraw from Voting Restrictions Case (Feb. 21, 2017), Ex. L. And he celebrated when the Supreme Court ultimately denied the State's petition for certiorari, calling the decision "good news for North Carolina voters." *See* Press Release, N.C. Governor, Gov. Cooper Issues Statement on SCOTUS Voter Access Decision (May 15, 2017), Ex. M.

An "absentee cannot be required to look for adequate representation to an opponent." WRIGHT & MILLER § 1909. Governor Cooper and Attorney General Stein have openly opposed voter ID rules in the past, actively undermining the legislature in the process. From their public statements, it is no stretch to say that they would prefer to see this case resolved the same way the Plaintiffs would. Thus, if they defend S.B. 824—and it is by no means clear that they will—they will certainly not take "the same approach to the conduct of the litigation" as the General Assembly that enacted the law over the Governor's veto and that will defend it vigorously. *United Guar.*, 819 F.2d at 476. Proposed Intervenors must therefore be permitted to intervene to protect the State's and General Assembly's interest in the law and to give this Court the benefit of a fully adversarial process.

The remaining Defendants, members of the North Carolina State Board of Elections, cannot be counted upon to defend S.B. 824 either. For one thing, there currently is no State Board of Elections. The North Carolina Supreme Court deemed the Board as previously

14

structured to be unconstitutional because it was insufficiently controlled by the Governor, *see Cooper*, 809 S.E.2d 98, and a three-judge panel later entered an order requiring the Board to dissolve, *see* Order, *Cooper v. Berger*, No. 18-cv-3348 (N.C. Super. Ct. Dec. 27, 2018), Ex. N (detailing recent procedural history). The panel stayed that order four times to allow the Board to certify the November 2018 election results. *See id.* at 1-2. When the Board failed to hold a meeting about those results on the day on which its Chairman had represented to the panel that it would do so, the panel declined to stay the order any longer. *See id.* at 2-3. The order went into effect, and the Board was thereby dissolved, on December 28. No interim Board has since been created, and the law creating a new five-member Board will not go into effect until January 31. *See* Max Greenwood, *NC Governor Says He Won't Appoint Interim Elections Board*, THE HILL (Jan. 2, 2019), Ex. O.

When it does, Governor Cooper will appoint all members of the new Board—and will be allowed to appoint a majority of its members from his own party. *See* 2017 N.C. House Bill No. 1029 at 1–2 (to be codified at N.C. Gen. Stat. § 163-19(b)), Ex. P. And he will apparently have unfettered authority to remove those members. *See id.* at 3 (striking the language from N.C. Gen. Stat. § 163-28 to the effect that the Board "shall be and remain an independent regulatory and quasi-judicial agency"); *see also Cooper*, 809 S.E.2d at 113 (finding the previous Board unconstitutional in part because the Governor's removal authority over its members was too constrained). There is little reason to believe, therefore, that the Board will take a position in this case different from the Governor's—let alone a position that comes close to aligning with Proposed Intervenors' interests.

In sum, the named Defendants have neither the same level of interest in this case nor the same ability and incentive to litigate it that Proposed Intervenors do. The Governor opposed and vetoed S.B. 824; the Elections Board is in flux, and ultimately will likely take the Governor's side. The General Assembly, through Proposed Intervenors, is thus the only part of the government that can be counted upon to defend the law implementing the will of the people as expressed in the North Carolina Constitution. That makes it "the most natural party to shoulder the responsibility of defending the fruits of the democratic process." *Stuart v. Huff*, 706 F.3d 345, 351 (4th Cir. 2013). And that gives Proposed Intervenors a right to intervene under Rule 24(a).

## II.     Alternatively, Proposed Intervenors Satisfy the Minimal Requirements for Permissive Intervention.

This Court has previously permitted Proposed Intervenors to intervene under Rule 24(b) to defend North Carolina law. *See, e.g.*, *Carcaño v. McCrory*, 315 F.R.D. 176, 177 (M.D.N.C. 2016). Under Rule 24(b), the Court "may permit anyone to intervene who" files a timely motion and who "has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(2)(B). Intervention must also not deprive the Court of subject-matter jurisdiction. *See Carcaño*, 315 F.R.D. at 178 n.2.

Timeliness is measured by the same three criteria used for intervention as of right: "how far the suit has progressed," "the prejudice that delay might cause other parties," and the reason for the delay (if any) in the motion. *Students for Fair Admissions Inc. v. Univ. of North Carolina*, 319 F.R.D. 490, 494 (M.D.N.C. 2017). The purpose of this requirement is merely "to prevent a tardy intervenor from derailing a lawsuit within sight of the

16

terminal." *Id.* (quoting *Scardelleti v. Debarr*, 265 F.3d 195, 202 (4th Cir. 2001)). As explained above, Proposed Intervenors filed their intervention motion before anything else of substance had happened in this case. Thus, intervention will cause no undue delay or prejudice to any existing parties.

Moreover, as shown in the Proposed Answer, Proposed Intervenors' defenses share with the "main action" questions of both law and fact. FED. R. CIV. P. 24(b)(2)(B). Plaintiffs claim that S.B. 824 displays a discriminatory intent, will unduly burden the right to vote, will have a disparate impact on minority voters, and thus violates the Fourteenth and Fifteenth Amendments and the Voting Rights Act. *See* Compl. ¶¶ 105–46, Doc. 1. Proposed Intervenors contend that S.B. 824 displays no such intent and will have no such effect, and thus fully complies with the Constitution and the Act. These arguments present completely overlapping questions of fact and law. And since the legal questions are of federal law, permitting intervention will not deprive the Court of subject-matter jurisdiction over this case.

Proposed Intervenors therefore satisfy all requirements for permissive intervention, and the Court should grant their request to intervene. *See Feller*, 802 F.2d at 729 ("[L]iberal intervention is desirable to dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency and due process." (internal quotation marks omitted)).

17

## CONCLUSION

Proposed Intervenors have a significantly protectable interest in S.B. 824. Defendants will not adequately represent that interest because they oppose the policies embodied in S.B. 824 and cannot be counted on to vigorously or adequately defend them. This Court should allow Proposed Intervenors to intervene under either Rule 24(a) or 24(b).


Dated: January 14, 2019

/s/ Nicole J. Moss
COOPER & KIRK, PLLC
Michael W. Kirk*
David H. Thompson*
Peter A. Patterson*
Nicole J. Moss (State Bar No. 31958)
Haley N. Proctor*
Nicole Frazer Reaves*
Joseph O. Masterman*
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 220-9600
Fax: (202) 220-9601
nmoss@cooperkirk.com
*Counsel for Proposed Intervenors*

*\*Notice of Appearance Forthcoming*

Respectfully submitted,

/s/ Nathan A. Huff
PHELPS DUNBAR LLP
4140 ParkLake Avenue, Suite 100
Raleigh, North Carolina 27612
Telephone: (919) 789-5300
Fax: (919) 789-5301
nathan.huff@phelps.com
State Bar No. 40626
*Local Civil Rule 83.1 Counsel for
Proposed Intervenors*

18

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.3(d)(1), the undersigned counsel hereby certifies that the foregoing Memorandum, including body, headings, and footnotes, contains 4,904 words as measured by Microsoft Word.

<div style="margin-left: 50%;">

/s/ Nicole J. Moss
Nicole J. Moss

</div>

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that, on January 14, 2019, I electronically filed the foregoing Memorandum, the accompanying exhibits, and the accompanying declaration with the Clerk of the Court using the CM/ECF system. I further certify that, on January 14, 2019, copies of the Memorandum, exhibits, and declaration were mailed via regular and electronic mail by counsel for Proposed Intervenors to Alec Peters of the North Carolina Department of Justice.[1]

/s/ Nicole J. Moss
Nicole J. Moss

---

[1] As noted in Proposed Intervenors' Motion to Intervene, Mr. Peters has communicated the position that there are currently no members appointed to the State Board of Elections. Proposed Intervenors have served him with their motion and accompanying papers on the assumption that his office will represent both the Governor and the Board, once it is constituted.