# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### CIVIL ACTION NO. 1:18-cv-01034

| | | |
|---|---|---|
| **NORTH CAROLINA STATE CONFERENCE OF THE NAACP, CHAPEL HILL - CARRBORO NAACP, GREENSBORO NAACP, HIGH POINT NAACP, MOORE COUNTY NAACP, STOKES COUNTY BRANCH OF THE NAACP, WINSTON SALEM - FORSYTH COUNTY NAACP,** | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| **ROY ASBERRY COOPER III**, in his official capacity as the Governor of North Carolina; **ROBERT B. CORDLE**, in his official capacity as Chair of the North Carolina State Board of Elections; **STELLA E. ANDERSON**, in her official capacity as Secretary of the North Carolina State Board of Elections; **DAVID C. BLACK, KEN RAYMOND**, and **JEFFERSON CARMON III**, in their official capacities as members of the North Carolina State Board of Elections, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE** |
| Defendants, | ) ) | |
| and | ) ) | |
| **PHILIP E. BERGER**, in his official capacity as President Pro Tempore of the North Carolina Senate, and **TIMOTHY K. MOORE**, in his official capacity as Speaker of the North Carolina House of Representatives, | ) ) ) ) ) ) ) ) | |
| Proposed Intervenors. | ) ) | |
| _____ | ) | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND STATEMENT OF FACTS ........................................................ 1

ARGUMENT ................................................................................................................ 5

I.    The General Assembly's motion fails under Federal Rule of Civil Procedure 24 ... 5

    A.    The General Assembly is not entitled to intervene as of right. ..................... 5

        1.    The Governor and the State Board of Elections are adequate representatives of the General Assembly's interests .......................... 5

        2.    The General Assembly has not articulated a protectable interest. ..... 8

    B.    Permissive intervention should be denied. ................................................. 10

        1.    The General Assembly is not eligible for permissive intervention. . 11

        2.    Allowing permissive intervention would unduly delay and prejudice the adjudication of Plaintiffs' rights ................................................. 13

II.    The General Assembly does not have Article III standing. ................................... 14

    A.    An interest in the enforcement of state law is not a concrete and particularized injury. .................................................................................. 15

    B.    Any burden on legislative authority is not an Article III injury ................. 16

    C.    The General Assembly cannot create Article III standing by pointing to a North Carolina statute. .............................................................................. 17

III.    The Speaker and the President lack the authority to intervene on behalf of the North Carolina General Assembly ....................................................................... 17

    A.    The North Carolina General Assembly has not voted, as required under NC Gen. Stat. 1-72.2, to authorize the Legislators to intervene here. ............... 18

    B.    If NC Gen. Stat. 1-72.2 allows the Legislators to intervene without a vote of the legislature, the statute violates the North Carolina non-delegation doctrine. ..................................................................................................... 20

IV.     Allowing the General Assembly to intervene here—where the Executive Branch
        Defendants are defending the law—would violate North Carolina's separation of
        powers.................................................................................................................21

CONCLUSION ...............................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU v. Tennyson*,
   815 F.3d 183 (4th Cir. 2016) ........................................................................ 10

*Adams v. N.C. Dep't of Nat. & Econ. Res.*,
   249 S.E.2d 402 (N.C. 1978)........................................................................... 20

*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*,
   135 S. Ct. 2652 (2015) .................................................................................. 17

*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*,
   997 F. Supp. 2d 1047 (D. Ariz. 2014) .......................................................... 19

*Arizona Christian Sch. Tuition Org. v. Winn*,
   563 U.S. 125 (2011)......................................................................................... 9

*Arizonans for Official English v. Arizona*,
   520 U.S. 43 (1997) .......................................................................................... 9

*ASARCO Inc. v. Kadish*,
   490 U.S. 605 (1989).................................................................................... 9, 10

*Athens Lumber Co. v. Fed. Election Comm'n*,
   690 F.2d 1364 (11th Cir. 1982) .................................................................... 13

*Buckley v. Valeo*,
   424 U.S. 1 (1976)........................................................................................... 16

*City of Chicago v. FEMA*,
   660 F.3d 980 (7th Cir. 2011) .......................................................................... 8

*Coal. to Defend Affirmative Action v. Granholm*,
   501 F.3d 775 (6th Cir. 2007) ........................................................................ 12

*Coleman v. Miller*,
   307 U.S. 433 (1939)....................................................................................... 17

*Conner v. N.C. Council of State*,
   716 S.E.2d 836 (N.C. 2011).......................................................................... 20

i

*Covington v. North Carolina,*
316 F.R.D. 117 (M.D.N.C. 2016) ........................................................... 3, 18

*Deus v. Allstate Ins. Co.*,
15 F.3d 506 (5th Cir. 1994) ...................................................................... 11

*Fairchild v. Hughes*,
258 U.S. 126 (1922) ................................................................................. 15

*Flying J, Inc. v. Van Hollen*,
578 F.3d 569 (7th Cir. 2009) ................................................................ 8, 14

*Fund For Animals, Inc. v. Norton*,
322 F.3d 728 (D.C. Cir. 2003) ........................................................ 2, 14, 15

*Gen. Synod of the United Church of Christ v. Resinger*,
2014 WL 5094093 (W.D.N.C. Oct. 10, 2014) ....................................... 6, 11

*Hodes & Nauser, MDs, P.A. v. Moser*,
2011 WL 4553061 (D. Kan. Sept. 29, 2011) ............................................ 12

*Hollingsworth v. Perry*,
570 U.S. 693 (2013) .............................................................................. 4, 17

*In re Sierra Club*,
945 F.2d 776 (4th Cir. 1991) ..................................................................... 5

*In re Troutman Enterprises, Inc.*,
286 F.3d 359 (6th Cir. 2002) ..................................................................... 9

*Karcher v. May*,
484 U.S. 72 (1987) ......................................................................... 9, 10, 19

*Karcher, Fisher-Borne v. Smith*,
14 F. Supp. 3d 699 (M.D.N.C. 2014) ....................................................... 10

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ............................................................................ 14, 15

*McCrory v. Berger*,
781 S.E.2d 248 (N.C. 2016) ................................................................ 21, 22

*Menominee Tribe of Wis. v. Thompson*,
164 F.R.D. 672 (W.D. Wis. 1996) ............................................................ 12

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*,
    732 F.2d 452 (5th Cir. 1984) (en banc) ...................................................... 12

*Northland Family Planning Clinic, Inc. v. Cox*,
    487 F.3d 323 (6th Cir. 2007) .................................................................. 14

*Raines v. Byrd*,
    521 U.S. 811 (1997) ............................................................................... 16

*Richmond Cty. Bd. of Educ. v. Cowell*,
    803 S.E.2d 27 (N.C. App. 2017) ............................................................ 21

*Safe Streets All. v. Hickenlooper*,
    859 F.3d 865 (10th Cir. 2017) .............................................................. 14

*Schlesinger v. Reservists Comm. to Stop the War*,
    418 U.S. 208 (1974) ............................................................................... 16

*Solid Waste Agency v. U.S. Army Corps of Eng'rs*,
    101 F.3d 503 (7th Cir. 1996) .................................................................. 14

*South Dakota v. Ubbelohde*,
    330 F.3d 1014 (8th Cir. 2003) .............................................................. 14

*Spokeo v. Robins*,
    136 S. Ct. 1540 (2016) ................................................................ 9, 10, 17

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ......................................................................... 8, 16

*Stuart v. Huff*,
    706 F.3d 345 (4th Cir. 2013) ........................................................ 6, 7, 8

*Teague v. Bakker*,
    931 F.2d 259 (4th Cir. 1991) .................................................................. 5

*Town of Chester v. Laroe Estates*,
    137 S. Ct. 1645 (2017) ........................................................................... 14

*Trbovich v. United Mine Workers Am.*,
    404 U.S. 528 (1972) ................................................................................. 8

*United Guar. Res. Ins. Co. v. Phil. Sav. Fund Soc.*,
    819 F.2d 473 (4th Cir. 1987) .................................................................. 8

*United States v. North Carolina*,
No. 13-861, 2014 WL 494911 (M.D.N.C. Feb. 6, 2014) ................................... 1, 5, 6, 7

*United States v. Richardson*,
418 U.S. 166 (1974) ......................................................................................... 15

*Virginia v. Westinghouse Elec. Corp.*,
542 F.2d 214 (4th Cir. 1976) ............................................................................ 5

*Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*,
529 U.S. 765 (2000) ......................................................................................... 17

## Statutes

25 Fed. Proc. L. Ed. § 59:368 ................................................................................ 10

NC Gen. Stat. 1-72.2 ........................................................................................ *passim*

## Other Authorities

159 Cong. Rec. 27 (Jan. 3, 2013) .......................................................................... 19

Fed. R. Civ. P. 24 ........................................................................................... *passim*

Fed. R. Civ. P. 24(a) ......................................................................................... 5, 8

Fed. R. Civ. P. 24(a)(2) ......................................................................................... 2

Fed. R. Civ. P. 24(b) ........................................................................................... 11

Fed. R. Civ. P. 24(b)(1)(B) ............................................................................... 2, 11

Fed. R. Civ. P. 24(b)(2) ...................................................................................... 11

Fed. R. Civ. P. 24(b)(2)(B) ................................................................................. 11

Fed. R. Civ. P. 24(b)(3) ................................................................................. 11, 13

H. Res. 5, 113th Cong. § 4(a)(1) (2013) ................................................................ 19

H. Res. 49, 97th Cong. (1981) .............................................................................. 19

N.C.R. Civ. P. 19(d) ............................................................................................ 13

N.C. Const. art. I, § 6 .......................................................................................... 21

N.C. Const. art. II, § 1 ........................................................................................ 20

N.C. Const. art. III, § 1 .................................................................................19-20, 21, 22

N.C. Const. art. III, § 5. ...........................................................................4, 19-20, 21, 22

Note, *Executive Discretion and the Congressional Defense of Statutes*,
    92 Yale L.J. 970 (1983) ................................................................................... 22

Restatement (Third) of Agency § 1.01 ............................................................... 19

U.S. Const. art. III, § 2, cl. 1 ............................................................................. 14

## INTRODUCTION AND STATEMENT OF FACTS

This lawsuit seeks to enjoin North Carolina's Governor and its State Board of Elections (together "the Executive Branch Defendants") from enforcing S.B. 824, a new unconstitutional North Carolina Voter ID law. Compl. 36, ECF No. 1. Philip E. Berger, the President Pro Tempore of the North Carolina Senate, and Timothy K. Moore, the Speaker of the North Carolina House of Representatives, purportedly acting on behalf of the General Assembly, now seek to intervene as defendants in this lawsuit under Federal Rule of Civil Procedure 24. To justify their intervention, they speculate that the Executive Branch Defendants will decline to defend S.B. 824. In support of that speculation, they recite the Governor and Attorney General's prior political opposition to S.B. 824, and the political affiliations of the reconstituted State Board of Elections.

But the Executive Branch Defendants have now represented that they intend to defend the law. Gov. Cooper's Resp. Mot. Intervene (Cooper's Resp.) 2, ECF No. 34; State Bd. Resp. Mot. Intervene (Bd. Resp.) 2, ECF No. 36. Indeed, the career attorneys at North Carolina Department of Justice, regardless of any political statements made by Governor Cooper, have an ethical and professional obligation to defend the laws of North Carolina. Moreover, as this Court has noted before, purported political opposition to a law, without more, does not provide proposed intervenors with a cognizable interest. *United States v. North Carolina*, No. 13-861, 2014 WL 494911, at *3 n.1 (M.D.N.C. Feb. 6, 2014). For this reason alone, even if the President and the Speaker are authorized to intervene on behalf of the General Assembly, their intervention motion must be denied.

1

Indeed, intervenors do not cite a single case in which a court has permitted a legislative body to intervene to defend issues that the Executive Branch is already defending in the same lawsuit.

The plain language of Rule 24 confirms that conclusion. The General Assembly does not qualify for "Intervention of Right" pursuant to Rule 24(a)(2) because its asserted interests are being adequately represented by the Executive Branch Defendants and because it has no "interest" in the subject matter of this action that justifies intervention. Its interests are no different than any other citizen of North Carolina in assuring that state law is enforced within constitutional constraints. The General Assembly also does not qualify for "Permissive Intervention" pursuant to Rule 24(b)(1)(B) both because the General Assembly has no unique claims or defenses to assert and because its participation in this lawsuit would unduly delay and prejudice the adjudication of the original parties' rights. This result does not mean that the General Assembly's views cannot be heard: Failure to satisfy Rule 24's intervention standard does not preclude the General Assembly from seeking to be heard as *amicus*.

More fundamentally, the General Assembly also may not intervene because it lacks Article III standing, which is a requirement for intervention as a defendant in a federal court. *See Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 731-32 (D.C. Cir. 2003). Unlike the Executive Branch, which always has Article III standing to defend statutes because of its "take care" duties, the General Assembly only has Article III standing when its unique legislative interests are at stake or, possibly (though the Supreme Court has never so held), when the Executive Branch declines to defend a

statute. Neither situation arises here. The General Assembly's two stated injuries from this lawsuit—(1) a possible injunction against the enforcement of a North Carolina law; and (2) a burden on the General Assembly's "continuing authority to enact voting laws"—do not satisfy Article III. As to the first purported injury, an injunction against enforcement of S.B. 824 would not give rise to a cognizable Article III injury *to the General Assembly*, where, as here, North Carolina's Governor and State Board of Elections are defending the State's law. As to the second, nothing about this lawsuit would affect the General Assembly's ongoing power to enact voting laws: this lawsuit seeks to enjoin enforcement of an unconstitutional law that also violates the federal Voting Rights Act. The General Assembly's power to enact constitutional legislation will be unaffected by this lawsuit.

Regardless, the Speaker and the President Pro Tempore are not authorized to speak for the General Assembly in this lawsuit. The Speaker and President Pro Tempore argue they are authorized under state law to intervene in this case based on a broad reading of a statute that was part of a partisan power grab passed over the Democratic Governor's veto by a supermajority Republican legislature, which this Court has held was an unconstitutional racial gerrymander. *See Covington v. North Carolina*, 316 F.R.D. 117, 176 (M.D.N.C. 2016). The first election with new maps in 2018 resulted in Republicans losing their supermajorities in both chambers. But before those maps went into effect, the legislature amended N.C. Gen. Stat. 1-72.2 to its current form. In its current form, according to the Speaker and President Pro Tempore, it allows them to intervene as they see fit in any case attacking the constitutionality of a North Carolina

statute.

But this statute—N.C. Gen. Stat. 1-72.2—requires a legislatively-enacted resolution directing or authorizing the General Assembly's intervention in any particular lawsuit. Any other reading would grant the Speaker and the President Pro Tempore free rein to intervene on the General Assembly's behalf in any lawsuit they wished. Such a delegation of authority would violate the North Carolina Constitution's non-delegation doctrine. Because the General Assembly has not passed a resolution directing the Speaker and President Pro Tempore to act on its behalf, they have no authority to do so or to seek to intervene in this lawsuit.

Finally, the North Carolina Constitution bars the General Assembly from intervening in this lawsuit. The General Assembly's participation in this lawsuit would interfere with the Executive Branch Defendants' defense of the law, and thus the Executive Branch's core power to "take care" that the laws of North Carolina are faithfully executed. N.C. Const. art. III, § 5. There cannot be two States of North Carolina in this lawsuit. Only the Executive Branch speaks for North Carolina. This is because the General Assembly cannot represent North Carolina in federal court unless it is legally authorized to "speak for the State." *Hollingsworth v. Perry*, 570 U.S. 693, 704-10 (2013). Because the North Carolina constitution bars the General Assembly from speaking for North Carolina in this lawsuit, the General Assembly cannot lawfully intervene.

For these reasons, the motion to intervene should be denied.

**I.     The General Assembly's motion fails under Federal Rule of Civil Procedure 24.**

**A.     The General Assembly is not entitled to intervene as of right.**

"[N]ot all parties with strong feelings about or an interest in a case are entitled, as a matter of law, to intervene." *North Carolina*, 2014 WL 494911, at \*4.  The General Assembly's "strong feelings" about S.B. 824 do not entitle it to intervene here.  Under Rule 24(a), intervention will be granted to those who submit a timely motion showing that (1) an existing party will inadequately protect an interest that (2) the intervenor has a cognizable interest in protecting.  *See In re Sierra Club*, 945 F.2d 776, 779 (4th Cir. 1991).  The General Assembly bears the burden of demonstrating all of Rule 24's requirements.  *See Teague v. Bakker*, 931 F.2d 259, 260-61 (4th Cir. 1991).

**1.     The Governor and the State Board of Elections are adequate representatives of the General Assembly's interests.**

To the extent that the General Assembly has a protectable interest—which, as discussed in the next section, it does not—it has not shown that Executive Branch Defendants will inadequately protect its interests.  The General Assembly claims that its interest is in protecting S.B. 824 from invalidation.  The Executive Branch Defendants have the same interest.  In fact, it is a constitutionally mandated duty that the Executive Branch Defendants protect a legally enacted state statute from invalidation.  "When the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the [applicant] must demonstrate adversity of interest, collusion, or nonfeasance." *Virginia*

*v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976) (citations omitted). That presumption is strongest where the Executive Branch represents the interests of the putative intervenors. In that situation, an "exacting showing of inadequacy" is required. *Stuart v. Huff*, 706 F.3d 345, 351 (4th Cir. 2013); *see also North Carolina*, 2014 WL 494911, at *3 (same). In defining what constitutes a strong showing of inadequacy, this Court has emphasized that mere disagreement over litigation strategy—including the choice of legal arguments and how much "to emphasize certain legal arguments at the expense of others"—is not sufficient. *North Carolina*, 2014 WL 494911, at *3.

The Executive Branch Defendants adequately represent the interest of every North Carolinian—including the General Assembly—in the faithful execution of state law. The Executive Branch Defendants individually and collectively have a duty to defend S.B. 824 against constitutional attacks, *see Gen. Synod of the United Church of Christ v. Resinger*, 2014 WL 5094093, at *3 (W.D.N.C. Oct. 10, 2014) (noting that N.C. Supreme Court has held that the N.C. Attorney General has a duty "prescribed by statutory and common law" "to defend the State . . . in all actions in which the State may be a party), and have refuted the General Assembly's claims that they will not uphold those duties here, *see* Cooper's Resp. 2; Bd. Resp. 2.[1] The General Assembly has therefore failed to make the "very strong showing of inadequacy" necessary to justify intervention. *Stuart*, 706 F.3d at 351-52.

---

[1] Governor Cooper also states that he may ask to be dismissed on the basis that the State Board of Elections is the proper defendant. But the Governor maintains that regardless of whether he remains in the suit, the State Board is an adequate defendant. Cooper's Resp. 2 n.3.

6

The General Assembly's motion all but concedes that its only concern is over litigation strategy and thus provides no proof of inadequate representation. The General Assembly claims that the Executive Branch Defendants "cannot be trusted to defend S.B. 824 in the same, rigorous manner" as the General Assembly will, Proposed Intervenors' Mem. Supp. Mot. Intervene (Intervenors' Mem.) 11, ECF No. 8, complaining that Governor Cooper and the State Board of Elections "will certainly not take the same approach to the conduct of the litigation," *id.* 14 (internal quotations omitted). But as this Court and the Fourth Circuit have held, this argument is a non-starter. *See North Carolina*, 2014 WL 494911, at *3; *Stuart*, 706 F.3d at 353.

The General Assembly also fails to establish that the Executive Branch Defendants do not share their purpose. The General Assembly merely speculates that the State Board of Elections will fail to adequately defend the law and relies almost entirely on statements made previously by the Governor and Attorney General regarding the enactment of voter ID laws. But these statements do not demonstrate that the Governor and Attorney General will fail to *defend* this law in court. *See, e.g.*, Intervenors' Mem. 11, 12. This Court has recognized that statements about a bill are irrelevant as to whether a government agency will defend the bill after it becomes law. *See North Carolina*, 2014 WL 494911, at *3 n.1. Indeed, the Executive Branch Defendants are actively defending this case. *See* Cooper's Resp. 2; Bd. Resp. 2.

The General Assembly suggests a less stringent legal standard, one that the Fourth Circuit has addressed and rejected. In their view, an applicant must be permitted to intervene upon a showing that the named defendant will "not take 'the same approach to

7

the conduct of the litigation'" as the applicant.  *See* Intervenors' Mem. 11, 14 (citing

*United Guar. Res. Ins. Co. v. Phil. Sav. Fund Soc.*, 819 F.2d 473, 476 (4th Cir. 1987) and

*Trbovich v. United Mine Workers Am.*, 404 U.S. 528, 538 n.10 (1972)).  But the Fourth

Circuit has rejected this reading of *United Guaranty* and *Trbovich*, explaining that such a

low standard would apply only when the proposed intervenor and named party have

"divergent objectives."  *Stuart*, 706 F.3d at 352.  Here, there is no sign that the Executive

Branch Defendants seek any objective other than that of the General Assembly:

defending S.B. 824.  Thus, *United Guaranty* and *Trbovich* are inapplicable.  *Id.*

> **2.  The General Assembly has not articulated a protectable interest.**

The General Assembly's "interests" do not rise to the level of Article III injuries

and therefore do not qualify as protectable interests under Rule 24, which requires "more

than the minimum Article III interest."  *Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 571

(7th Cir. 2009); *see also City of Chicago v. FEMA*, 660 F.3d 980, 984 (7th Cir. 2011)

("Article III standing . . . does not suffice to establish the required Rule 24(a)

'interest.'"); *see infra*, Section II (standing).  The General Assembly's interest in

protecting S.B. 824 from invalidation amounts to nothing but a generalized interest,

shared by all North Carolinians, in having laws enforced.  It is a foundational principle

that a mere interest in the "vindication of the rule of law" is not a legally cognizable

interest.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 106 (1998).  And any

interest claimed by the General Assembly in protecting its future ability to pass laws is

illusory.  Nothing about this case will affect the General Assembly's power to pass future

laws.  *See infra*, Section II.B.

Moreover, North Carolina law does not vest the General Assembly with a protectable interest. State law cannot confer an interest where none otherwise exists. *Cf. Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (holding that a statute cannot confer Article III standing simply by granting a party the right to sue). The General Assembly suggests that *Karcher v. May*, 484 U.S. 72 (1987) holds otherwise, arguing that *Karcher* "establishes that state legislative officials have the authority to defend state enactments in federal court when State law 'authorize[s]'" it. Intervenors' Mem. 7-8. But this is a misstatement of the holding in *Karcher*, which did not address the merits of the New Jersey legislature's standing or right to intervene. Rather, the *Karcher* court discussed only the question of whether state law authorized the Speaker of the General Assembly and President of the Senate to represent the legislature in litigation. *See Karcher*, 484 U.S. at 81-82. "When a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed." *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 144 (2011). Further, parties can waive the right to object to intervention and often do so. *See In re Troutman Enterprises, Inc.*, 286 F.3d 359, 363 (6th Cir. 2002). Put simply, under *Karcher*, statutory authorization was necessary to pursue litigation, but it was not sufficient. *Karcher* thus does not alter Rule 24's requirements regarding the issues at hand.

The dictum the General Assembly relies on from *Arizonans for Official English v. Arizona*, 520 U.S. 43, 65 (1997), citing *Karcher*, is inapposite. In addition to being dictum, the Court in *Arizonans* was describing *ASARCO* standing, which dictates when a party has standing to appeal—a different inquiry than standing in a district court. *See*

*ASARCO Inc. v. Kadish*, 490 U.S. 605, 623-24 (1989). Further, Justice Ginsburg's statement about *Karcher* was simply the recognition that the Court has recognized legislatures sometimes have standing when authorized to represent the statute, but by no means stands for the proposition that legislatures always have standing when authorized under state law. *Cf. Spokeo*, 136 S. Ct. at 1549 (holding that a statute cannot confer Article III standing simply by granting a party the right to sue)

The cases the General Assembly relies on, *Karcher*, *Fisher-Borne v. Smith*, 14 F. Supp. 3d 699 (M.D.N.C. 2014), are also different from this case because in each the Executive Branch declined to defend or further defend a law, *see Fisher-Borne*, 14 F. Supp. 3d at 703-04 (allowing intervenors into case "but only for the purposes of lodging an objection and preserving that objection," which the Executive Branch would not pursue on appeal) ). And in *ACLU v. Tennyson*, the issue of Rule 24 was for all intents and purposes waived, except for timeliness. *See* Pls.' Opp'n Intervenors' Mot. Intervene, ECF. No. 42, *ACLU*, 815 F.3d 183 (4th Cir. 2016) (No. 13-1030) (objecting on timeliness grounds but not on any other Rule 24 requirement). Intervenors cite no decision in which a legislature has been permitted to intervene in the defense of an issue in district court litigation, when the Executive Branch was defending the same issue in the lawsuit.

### B. Permissive intervention should be denied.

The General Assembly also cannot meet the standard for permissive intervention. Permissive intervention "is a device for achieving judicial economy by saving court time." 25 Fed. Proc. L. Ed. § 59:368. An applicant for permissive intervention must submit a timely motion showing that he meets one of the four eligibility criteria set forth

10

in Rule 24(b). Rule 24(b)(1)(B), the only criterion that the General Assembly claims it satisfies, contemplates intervention by an applicant whose concrete legal interests are at stake—typically in a separate proceeding—but might be prejudiced by the result in the "main action." *See, e.g.*, *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 525 (5th Cir. 1994); *see also* Fed. R. Civ. P. 24(b). Even upon a showing of eligibility, however, a request for permissive intervention shall be denied if the Court finds that "intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

### 1. The General Assembly is not eligible for permissive intervention.

The General Assembly argues that it is eligible for permissive intervention under both Rule 24 (b)(1)(B) and (b)(2)(B). The General Assembly cites Fed. R. Civ. P. 24(b)(2)(B). But the General Assembly fails to explain how that section of the Rule provides a basis for permissive intervention, nor does the General Assembly satisfy its requirements. *See United Church of Christ*, 2014 WL 5094093, at *3 (holding that "a legislative body promulgates, debates, and passes laws; however, it is not even arguable that the legislature administers or enforces those laws" under Rule 24(b)(2)).

The General Assembly also argues it satisfies 24(b)(1)(B) because it has at least one "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The General Assembly offers a factual defense, Intervenors' Mem. 17, as well as four affirmative defenses, Answer Proposed Intervenors 31-32, ECF No. 7-1. These proffered defenses are inadequate to support permissive intervention.

The General Assembly does not actually have a "claim or defense." Each of the General Assembly's purported claims is nothing more than a claim that the current law must continue to be enforced. But a "general ideological interest in seeing that [a State] enforces [its laws]" is not a "claim or defense." *Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 782 (6th Cir. 2007); *see also* 25 Fed. Proc. L. Ed. § 59:376; *see also Allen Calculators*, 322 U.S. at 141-42 (noting that permitting a "multitude" of interventions in a case "of large public interest" "may result in accumulating proofs and arguments without assisting the court").

Moreover, the General Assembly's proffered defenses are indistinguishable from those that the Executive Branch Defendants are capable of raising. Courts routinely recognize that "defenses [that] are not unique" to the proposed intervenor "can be adequately represented by defendants" and do not justify permissive intervention; otherwise, "numerous third-parties [could] seek intervention on the same bases." *Hodes & Nauser, MDs, P.A. v. Moser*, 2011 WL 4553061, at *4 (D. Kan. Sept. 29, 2011); *see also New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 472 (5th Cir. 1984) (en banc) (similar); *Menominee Tribe of Wis. v. Thompson*, 164 F.R.D. 672, 678 (W.D. Wis. 1996) (similar). The General Assembly has failed to rebut the presumption that the Executive Branch Defendants adequately represent the State's interests. *See supra* Section I.A.1. Thus, permissive intervention should be denied.

The General Assembly characterizes its interest as being "so ingrained in North Carolina law that" the General Assembly and its Speaker and President are "often named defendants in state court litigation challenging state laws[.]" Intervenors' Mem. 9

(emphasis omitted).[2]  But in state court, the leaders of the state House and Senate "must be joined as defendants" in any suit "challenging the validity of a North Carolina statute . . . under State or federal law."  N.C.R. Civ. P. 19(d).  There is no equivalent rule in federal civil procedure.  Thus, whether the General Assembly is a proper party under *state* civil procedure rules is irrelevant to whether the General Assembly has an interest that warrants intervention under *federal* civil procedure rules.

### 2. Allowing permissive intervention would unduly delay and prejudice the adjudication of Plaintiffs' rights.

Even if the Court finds that the General Assembly qualifies for permissive intervention, Plaintiffs respectfully request that the Court exercise its discretion to deny intervention.  "In exercising its discretion," Rule 24 advises, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).

Barring an injunction from this Court, S.B. 824 will harm voters starting with this year's primary election season, beginning in August.  Even a slight delay could prejudice Plaintiffs' rights.  *See Athens Lumber Co. v. Fed. Election Comm'n*, 690 F.2d 1364, 1367 (11th Cir. 1982) (affirming denial of permissive intervention in light of the need for expeditious resolution of constitutional challenges to election laws and because "the introduction of additional parties inevitably delays proceedings").

There is reason to believe that the General Assembly's participation in this case

---

[2] The General Assembly argues that the legislature as a litigating party  is "ingrained in North Carolina law" and yet fails to cite a case prior to 2015. Intervenors' Mot. 9.

will result in delay and prejudice.  The General Assembly recently asked this court for an indefinite stay of all motions—even motions for emergency relief.  Opp'n Mot. Ext'n Time Respond Mot. Intervene 3, ECF No. 25.  That request shows that participation by the General Assembly will, at minimum, delay the resolution of this case, risking prejudice to the plaintiffs.  *See Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 346 (6th Cir. 2007).

## II.     The General Assembly does not have Article III standing.

The General Assembly's request to intervene is also improper because it lacks Article III standing.  Article III limits the exercise of the judicial power to "Cases" and "Controversies."  U.S. Const. art. III, § 2, cl. 1.  "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."  *Town of Chester v. Laroe Estates*, 137 S. Ct. 1645, 1650 (2017) (citation omitted).  To intervene as a defendant-intervenor in a federal lawsuit, a party must have Article III standing.  *See Fund For Animals, Inc.*, 322 F.3d at 731-32; *see also Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 912 (10th Cir. 2017); *Flying J, Inc.*, 578 F.3d at 571; *South Dakota v. Ubbelohde*, 330 F.3d 1014, 1023 (8th Cir. 2003); *Solid Waste Agency v. U.S. Army Corps of Eng'rs*, 101 F.3d 503, 507 (7th Cir. 1996).

An essential requirement to establish Article III standing is "injury in fact."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  A litigant, including intervenor-defendants, must show that he has suffered or will suffer an injury that is "concrete and particularized," and "actual or imminent, not conjectural or hypothetical."  *Id.*  (internal quotations and citations omitted); *accord Fund For Animals, Inc.*, 322 F.3d at 733

14

(requiring intervenor-defendant to satisfy Article III standing).  The General Assembly has no Article III injury.  The General Assembly identifies two injuries that allegedly support their intervention:  (1) the non-enforcement of a North Carolina law; and (2) a burden on the General Assembly's "continuing authority to enact voting laws." Intervenors' Mem. 10.  The first of these alleged injuries is neither concrete nor particularized, but rather shared by every North Carolinian.  The second injury simply will not result from this lawsuit.  No relief arising from this lawsuit would pose additional limits on the General Assembly's legislative powers or functions that do not already exist under the state and federal constitutions.  Finally, the General Assembly's suggestion that a North Carolina law can grant it Article III standing contravenes decades of Supreme Court precedent saying otherwise.

### A.  An interest in the enforcement of state law is not a concrete and particularized injury.

The General Assembly's generalized interest in having the laws enforced does not give rise to an Article III injury.  For nearly a century, the Supreme Court has held that citizens who bring lawsuits alleging that the government violated "a right to have the Government act in accordance with law" do not have Article III standing.  *Lujan*, 504 U.S. at 575; *see Fairchild v. Hughes*, 258 U.S. 126, 129 (1922) (similar).  This type of injury results in an "impact on [the party] . . .  plainly undifferentiated and common to all members of the public."  *United States v. Richardson*, 418 U.S. 166, 176-77 (1974) (internal quotations and citations omitted).

The General Assembly also suggests that this lawsuit injures its interest in

"protect[ing] the integrity of and public confidence in elections."  Intervenors' Mem. 10.  But everyone in North Carolina has an interest in the integrity of North Carolina elections.  Injuries that apply to everyone in a state are "necessarily abstract" in nature, not concrete and particularized as Article III requires.  *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 220 (1974).  When it comes to these types of abstract injuries, the Supreme Court has been clear:  a mere interest in the "vindication of the rule of law" is not a legally cognizable interest that can support Article III standing.  *Steel Co.*, 523 U.S. at 106.  Here, North Carolinians' interests are represented by the Executive Branch Defendants.  There cannot be two North Carolinas in one case.  *Cf. Buckley v. Valeo*, 424 U.S. 1, 139-40 (1976) (holding that civil litigation involving public rights must be carried out by the Executive Branch).

### B.     Any burden on legislative authority is not an Article III injury.

The General Assembly claims that its legislative powers will be "burdened" by S.B. 824's invalidation.  Even if that were so, such a "burden" would not be an Article III injury.  *See Raines v. Byrd*, 521 U.S. 811, 828-29 (1997).  The Supreme Court has never held that legislatures have standing in a suit simply because a law is being attacked as unconstitutional.  And the General Assembly cites no case that says otherwise.

Plaintiffs do not request any relief that could be construed as "burden[ing]" the General Assembly's "continuing authority to enact voting laws."  Intervenors' Mem. 10.  Plaintiffs ask this Court to enjoin the *Executive Branch* in its enforcement of S.B. 824 and to retain jurisdiction so as to enjoin the *Executive Branch* from enforcing other new voting laws that have not been cleared as constitutional by this Court.

16

Further, only lawsuits where legislators lose uniquely legislative powers give rise to Article III injuries. *See Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 135 S. Ct. 2652 (2015) (recognizing state legislature's standing for losing power to enact redistricting maps); *Coleman v. Miller*, 307 U.S. 433, 436 (1939) (recognizing state senators' standing for losing ability to ratify or deny constitutional amendments). But this case does not affect the General Assembly's legislative powers at all. Even if Plaintiffs obtain all of their requested relief, the General Assembly will remain free to pass any laws it sees fit.

### C. The General Assembly cannot create Article III standing by pointing to a North Carolina statute.

A state statute cannot confer Article III standing on a state legislature. A state legislature can represent a State's interests in federal court, but only where the legislature otherwise has an Article III injury. *See Hollingsworth*, 570 U.S. at 712 . It is firmly established that a statute cannot create standing by simply declaring that a party has standing. *See Spokeo*, 136 S. Ct. at, 1549 ("Article III standing requires a concrete injury even in the context of a statutory violation."); *see also, e.g.*, *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 773 (2000).

### III. The Speaker and the President lack the authority to intervene on behalf of the North Carolina General Assembly

One may "speak for the State" in federal court only if the State has authorized one to do so. *See Hollingsworth*, 570 U.S. at 710. But the statute that the Speaker and the President argue authorizes them to intervene on behalf of the General Assembly, NC Gen. Stat. 1-72.2, requires the General Assembly to authorize intervention in this suit,

which it has not done. Any other reading of NC Gen. Stat. 1-72.2 violates North Carolina's non-delegation doctrine. Constitutional avoidance thus counsels interpreting NC Gen. Stat. 1-72.2 to require a vote of the legislature before intervention may be attempted. No such vote occurred in this case, and the Speaker and President are unauthorized to seek intervention in the present case.

> **A.** **The North Carolina General Assembly has not voted, as required under NC Gen. Stat. 1-72.2, to authorize the Legislators to intervene here.**

Originally, NC Gen. Stat. 1-72.2 was a limited grant of authority to the General Assembly to intervene in lawsuits. *See* H.B. No. 1133, S.L. 2014-115, § 3 (2014) (enacted). Faced with a Democratic Governor and Attorney General, the Republican supermajority, which this Court had held was a racial gerrymander, *see Covington*, 316 F.R.D. at 176, enacted a significant expansion of NC Gen. Stat. 1-72.2 over the Governor's veto. *See* S.B. 257, S.L. 2017-57, §6.7.(i) (2017) (enacted). In its current form, NC Gen. Stat. 1-72.2 provides that the Speaker of the House of Representatives and the President Pro Tempore of the Senate may intervene in suits only when they show that they are "interven[ing] on behalf of the General Assembly" as "agents of the State." Those provisions mean that the General Assembly must first enact a resolution authorizing or directing the Speaker and the President to intervene in a lawsuit before they may do so. Basic principles of agency law require this reading.

Absent a resolution authorizing or directing their intervention in a lawsuit, the Speaker and the President do not satisfy the most basic features of an agency law. Agency requires more than mere authorization to assert a particular interest. "An

Case 1:18-cv-01034-LCB-LPA   Document 38   Filed 02/19/19   Page 26 of 33

essential element of agency is the principal's right to control the agent's actions." 1 Restatement (Third) of Agency § 1.01, Comment f (2006). And, for "the relationship between two persons [to be] one of agency" an "agent" must "owe[] a fiduciary obligation to the principal." *Id.* § 1.01, Comment e.

NC Gen. Stat. 1-72.2 is thus best read to incorporate the traditional requirement that a legislative agent must be authorized or directed to enter a *particular* lawsuit by a resolution of the legislative body that the agent purports to represent. That is how the U.S. Congress has traditionally authorized federal court intervention. *See* H. Res. 5, 113th Cong. § 4(a)(1) (2013) (enacted) (authorizing Bipartisan Legal Advisory Group to represent the House in *United States v. Windsor*); *see* 159 Cong. Rec. 27 (Jan. 3, 2013); H. Res. 49, 97th Cong. (1981) (enacted) (authorizing Speaker of the House "to protect the interests of the House before the court in the case of *Chadha v. Immigration and Naturalization Service*"). That is also how State legislative intervenors have joined lawsuits. *See Karcher*, 484 U.S. at 75 (describing how "Speaker of the New Jersey General Assembly and President of the New Jersey Senate, respectively, sought and obtained permission to intervene as defendants on behalf of the legislature"); First Am. Compl. Ex. A 3, 11, *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 997 F. Supp. 2d 1047 (D. Ariz. 2014) (No. 12-cv-01211) (noting legislature voted to authorize the lawsuit against redistricting commission).

Unlike North Carolina's executive officials, the Speaker and the President have no duty to take care that the laws of North Carolina are "faithfully executed." N.C. Const. art. III, §§ 1, 5(4). Yet, as the Speaker and the President interpret NC Gen. Stat. 1-72.2,

they are free to pursue a purely ideological commitment to any law's constitutionality without the need to take cognizance of resource constraints, changes in public opinion, potential ramifications for other state priorities—or to seek the advice and consent of the legislative body at all. That could not possibly have been the intent of the General Assembly when it enacted NC Gen. Stat. 1-72.2. Because they have not obtained authorization to intervene on behalf of the General Assembly, the Speaker and the President may not intervene here.

**B.**     **If NC Gen. Stat. 1-72.2 allows the Legislators to intervene without a vote of the legislature, the statute violates the North Carolina non-delegation doctrine.**

Under the North Carolina non-delegation doctrine, embodied in Article I, Section 6 and Article II, Section 1 of the North Carolina Constitution, the legislature can delegate only a "limited portion of its legislative powers," and it can do so only if the delegation is "accompanied by adequate guiding standards." *Adams v. N.C. Dep't of Nat. & Econ. Res.*, 249 S.E.2d 402, 410 (N.C. 1978); *see also Conner v. N.C. Council of State*, 716 S.E.2d 836, 842 (N.C. 2011). While the text of NC Gen. Stat. 1-72.2 itself provides *no* guiding standards that dictate when, how, or why the General Assembly will intervene in any particular lawsuit, the state constitutional principles that govern the legislature's authority make it clear that specific legislative authorization to intervene is required—any other interpretation of N.C. Gen. Stat. 1-72.2 would violate North Carolina's non-delegation doctrine.

**IV. Allowing the General Assembly to intervene here—where the Executive Branch Defendants are defending the law—would violate North Carolina's separation of powers.**

North Carolina law bars the General Assembly from intervening in this suit. Under the North Carolina Constitution, defending the constitutionality of laws is a core Executive Branch function. N.C. Const. art. III, §§ 1, 5(4). Because this case involves an exercise of the Executive Branch's core "take care" responsibility, and because the General Assembly's intervention would, *at minimum*, interfere with the Executive Branch Defendants' exercise of that responsibility in this case, the North Carolina Constitution bars legislative intervention in this lawsuit.

The North Carolina Constitution's separation of powers is far stricter than the U.S. Constitution's separation of powers. Article I, section 6 of the North Carolina Constitution provides: "The legislative, executive, and supreme judicial powers of the State government shall be forever separate and distinct from each other." Separation of powers is "[a]mong the most important rights guaranteed in the North Carolina Constitution" because it is "essential to preserve liberty and prevent tyranny." *Richmond Cty. Bd. of Educ. v. Cowell*, 803 S.E.2d 27, 30 (N.C. App. 2017), *review denied*, 809 S.E.2d 872 (N.C. 2018).

North Carolina's Separation of Powers Clause is violated "when one branch exercises power that the constitution vests exclusively in another branch" or "when the actions of one branch prevent another branch from performing its constitutional duties." *McCrory v. Berger*, 781 S.E.2d 248, 256 (N.C. 2016). If applied as the General Assembly claims, NC Gen. Stat. 1-72.2 violates the separation of powers in both ways: it

21

allows the Legislative Branch to exercise a power—defense of legislation on behalf of the State—that the Constitution vests exclusively in the Executive Branch, and it interferes with the Executive Branch Defendants' performance of that core executive power.

The responsibility to "take care" that the laws are faithfully executed, including the decision of how to defend the constitutionality of legislation, is a uniquely executive function. The North Carolina Constitution commands that the Governor "shall take care that the laws be faithfully executed." N.C. Const. art. III, §§ 1, 5(4). And the North Carolina Supreme Court has held that the power "to take care that the laws are faithfully executed" is a core power of the executive. *McCrory*, 781 S.E.2d at 258.

Defending the constitutionality of legislation in this Court is part of the Executive Branch's "take care" duty. The Framers of the identically-worded federal Take Care Clause intended to ensure that Executive officers be duty-bound to defend the law. Todd Garvey, Cong. Research Serv., R43708, *The Take Care Clause and Executive Discretion in the Enforcement of Law* 5 (2014). Faithful execution requires not only enforcement but also defense when those laws are challenged in court. *See* Note, *Executive Discretion and the Congressional Defense of Statutes*, 92 Yale L.J. 970 (1983). When the legislature assumes the power to defend the constitutionality of laws in a manner that *differs* from the method chosen by the Executive Branch Defendants, the legislature necessarily usurps and interferes with the executive's core "take care" power. *See Wallace*, 286 S.E.2d at 88.

By intervening in this lawsuit, the General Assembly seeks to take an active role in supervising and overseeing how North Carolina's legislation will be defended in the courts from constitutional attack. That oversight violates the separation of powers.

## CONCLUSION

Accordingly, Plaintiffs respectfully request that the Court deny the Motion to Intervene.

Respectfully submitted, this 19th day of February, 2019.

By: */s/ Irving Joyner*

Irving Joyner
NC State Bar No. 7830
P.O. Box 374
Cary, NC 27512
Telephone: +1 919.319.8353
Email: ijoyner@nccu.edu

By: */s/ James W. Cooper*

James W. Cooper
DC. Bar No. 421169
John C. Ulin*
Andrew Tutt*
Owen Dunn*
ARNOLD & PORTER KAYE
SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Telephone: +1 202.942.6603
Email:
James.W.Cooper@arnoldporter.com

*Notice of Appearance forthcoming

By: */s/ Penda D. Hair*

Penda D. Hair
DC Bar No. 335133
FORWARD JUSTICE
P.O. Box 42521
Washington D.C. 20015
Telephone: +1 202.256.1976
Email: phair@forwardjustice.org

Daryl V. Atkinson
NC Bar No. 39030
Caitlin A. Swain
VA Bar No. 84515
Leah J. Kang
NC Bar No. 51735
FORWARD JUSTICE
400 W Main Street, Suite 203
Durham, NC 27701
Telephone: +1 919.323.3889
Email: daryl@forwardjustice.org
        cswain@forwardjustice.org
        lkang@forwardjustice.org

*Counsel for Plaintiffs*

23

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.3(d)(1), the undersigned counsel hereby certifies that the foregoing Memorandum, including body, headings, and footnotes, contains 6,208 words as measured by Microsoft Word.

/s/ James W. Cooper
James W. Cooper
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing PLAINTIFFS'
OPPOSITION TO THE MOTION TO INTERVENE with the clerk of Court using the
CM/ECF system which will send notification of such to all counsel of record in this
matter.

This 19th  day of February, 2019.

/s/ James W. Cooper
James W. Cooper
Attorney for Plaintiffs