UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 1:18-cv-01034

| | |
|---|---|
| NORTH CAROLINA STATE ) <br> CONFERENCE OF THE NAACP, et al. ) <br> ) <br> Plaintiffs, ) <br> v. ) <br> ) <br> ROY ASBERRY COOPER III, in his official ) <br> capacity as the Governor of North Carolina; ) <br> et al. ) <br> ) <br> Defendants. ) <br> _____ ) | **STATE BOARD DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STAY** |

Defendants, the State Board of Elections Chair Robert B. Cordle, in his official capacity; the State Board of Elections Secretary Stella E. Anderson, in her official capacity; the State Board of Elections member David C. Black, in his official capacity; the State Board of Elections member Ken Raymond, in his official capacity; and, the State Board of Elections member Jefferson Carmon III, in his official capacity, (collectively, the "State Board Defendants"), respectfully submit this memorandum of law in support of their motion to dismiss Plaintiffs' Complaint pursuant to Rules 12(b)(1) & (6) of the Federal Rules of Civil Procedure, or in the alternative, in support of their motion to stay.

## NATURE OF THE CASE

Plaintiffs filed their Complaint on December 20, 2018.[1] With their action, Plaintiffs contend that North Carolina Session Law 2018-144 (the "Act") violates Section 2 of the

---

[1] State Board Defendants of the newly constituted North Carolina State Board of Elections are automatically substituted in their official capacities in this matter pursuant to Fed. R. Civ. P. 25(d).

Voting Rights Act ("VRA"), 42 U.S.C. § 1973,[2] as well as the Fourteenth and Fifteenth Amendments to the United States Constitution.

Plaintiffs request declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-2202 to prevent Defendants from implementing or enforcing the challenged provisions of the Act. Plaintiffs also ask the Court to retain jurisdiction under the VRA, and to require preclearance of all changes to voting procedures statewide.

## STATEMENT OF FACTS

*Facts in the Instant Case*

Plaintiffs are the North Carolina State Conference of the NAACP ("NC NAACP") and several local branches of the NC NAACP. The NC NAACP is a nonpartisan, nonprofit organization composed of over 100 branches and 20,000 individual members throughout the State of North Carolina. (Compl. ¶ 14)

The NC NAACP alleges that its members will be impacted and harmed by the provisions of the Act. (Compl. ¶ 14) Specifically, the NC NAACP alleges that many of its members will be effectively denied the right to vote, will be otherwise deprived of meaningful access to the political process, or will have their voting strength diluted. (Compl. ¶ 15) The NC NAACP further alleges that the Act imposes substantial costs and undue burdens on the right to vote for its members. (Compl. ¶ 15) The NC NAACP also contends that it will have to divert time, money, and resources to assist North Carolina citizens who are burdened by the new law. (Compl. ¶ 17)

---

[2] Section 1973 was editorially reclassified as section 10301 of Title 52, Voting and Elections. 52 U.S.C. § 10301 (2019).

The Act requires voters to present one of several approved forms of photographic identification in order to vote in-person, or to attach a copy of that identification to an absentee ballot application. (Compl. ¶ 80) The Act also expands the number of poll observers permitted on election day, and increases the number of people who could observe voting on the election day and challenge ballots. (Compl. ¶ 80)

Plaintiffs contend that the group of citizens who are eligible to vote but who lack qualifying identification is disproportionately composed of African Americans and Latinos. (Compl. ¶ 83) Plaintiffs allege that there is no evidence that what they describe as the Act's stifling of voting rights is justified by any legitimate or compelling state interest. (Compl. ¶ 84) Plaintiffs allege that the Act is "the latest manifestation of determined efforts by a General Assembly that was born out of racial intent." (Compl. ¶ 87)

Plaintiffs assert three counts: (1) violation of Section 2 of the VRA; (2) violation of the Fourteenth Amendment and 42 U.S.C. § 1983; and, (3) violation of the Fifteenth Amendment and 42 U.S.C. § 1983. Plaintiffs name Governor Roy Cooper, and the the State Board Defendants, as defendants in their official capacities only. (Compl. ¶¶ 20-23) Plaintiffs allege that "there is a special relation between [State Board Defendants] and S.B. 824" because the North Carolina State Board of Elections ("the State Board") is "charged with administering the election laws of the State of North Carolina." (Compl. ¶¶ 21-23)

*State Litigation in* Holmes v. Moore*, 18 CVS 15292 (Wake County)*

On December 19, 2018, shortly before this case was filed, several North Carolina voters filed a lawsuit challenging the constitutionality of the Act in state court. *Holmes, et*

*al. v. Moore, et al.*, 18 CVS 15292 (Wake Cty. Super. Ct.) (the "*Holmes* lawsuit") (**State Def Ex A**)  The *Holmes* lawsuit seeks a declaration that the Act violates the North Carolina Constitution because it is racially discriminatory, burdens the fundamental right to vote, and has a disparate impact on the class of voters without photo IDs.  In addition to seeking declaratory relief, the *Holmes* lawsuit seeks to enjoin enforcement of the photo ID requirement in the Act.  The Defendants in the *Holmes* lawsuit are the State and the State Board (the "State Defendants") and four members of the General Assembly (the "Legislative Defendants"); Governor Cooper is not a defendant in that action.  In *Holmes*, Plaintiffs have requested assignment of a three-judge panel, the State Defendants have filed an answer, and discovery has commenced.  (**State Def Ex A** ¶ 9; **State Def Ex. B**, Answer)

*State Litigation in* NAACP v. Moore, *18 CVS 9806 (Wake County)*

Yet another lawsuit that has a potential to impact this case, is pending before North Carolina's appellate courts.  The Act challenged in the instant federal action implements a constitutional amendment approved by North Carolina voters last November.  The General Assembly passed Session Law 2018-128, which placed a proposed state constitutional amendment about voter ID on the November 2018 ballot.  The voters of North Carolina voted for amending the North Carolina Constitution to require voter photo identification.  (**State Def Ex. C,** Cert of Const. Amend.)  As a result of that ratification, the North Carolina Constitution was amended to provide that voters must present a photo identification in order to vote in-person.  The Act is the General Assembly's legislative attempt to implement the voter ID amendment.

4

On August 6, 2018, NC NAACP filed a state action (amended on September 19, 2018), *NC NAACP, et al. v. Moore, et al.*, 18 CVS 9806 (Wake County). In that action, NC NAACP alleged, *inter alia*, that the North Carolina General Assembly was not lawfully empowered to pass legislation that calls for amendment of the North Carolina Constitution to require a voter photo identification. (**State Def Ex D**, *NAACP* 2nd Amended Complaint) Multiple hearings and interlocutory appellate proceedings were held in state courts on various motions and requests for relief filed by the parties.

On February 22, 2019, a state court entered an order in holding that both Session Law 2018-128 (placing the voter ID constitutional amendment on the November 2018 ballot) and the voter ID constitutional amendment itself are void *ab initio*. (**State Def Ex E**, *NAACP* Judge Collis Order pp 10-13) On February 25, 2019, that order was appealed to the North Carolina Court of Appeals. (**State Def Ex F,** *NAACP* Notice of Appeal) The case is now pending before that Court. Because that case may determine whether a constitutional amendment requiring a photo identification was properly submitted to the people in the first instance, a possible affirmance of the Superior Court decision by North Carolina appellate courts has a potential of implicating the resolution of the instant matter.

## QUESTIONS PRESENTED

I. Whether the Principles of Federalism and *Pullman* Doctrine Warrant the Dismissal of Plaintiffs' Complaint, or a Temporary Abstention of Federal Jurisdiction, Pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.

II. Whether an Alternative Stay of These Proceedings is Appropriate in the Court's Discretion.

# ARGUMENT

## I. DISMISSAL STANDARD.

Pursuant to Rule 12(b)(1), the burden of proving subject matter jurisdiction is on the party asserting jurisdiction. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999); *Mims v. Kemp*, 516 F.2d 21 (4th Cir. 1975). "[T]he court in a 12(b)(1) hearing weighs the evidence to determine its jurisdiction." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). "[T]he district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans*, 166 F.3d at 647 (citations omitted).

A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain facts sufficient "to raise a right to relief above the speculative level" and to satisfy the court that the claim is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

## II. THE COURT SHOULD REFRAIN FROM EXERCISING ITS SUBJECT MATTER JURISDICTION OVER THIS CASE, OR TEMPORARILY ABSTAIN, ON FEDERALISM AND *PULLMAN* GROUNDS.

### A. Principles of Federalism Guard against the Assumption of Jurisdiction over a State Election Law Case that is Actively Being Litigated in State Courts.

Article I, Section 4, Clause 1, of the Constitution provides that:

6

> the times, places, and manner of holding elections for Senators and Representatives, shall be prescribed in each state by the legislature thereof; but the Congress may at any time by law make or alter such regulations, except as to the places of choosing Senators.

This Clause grants the power to make the decisions regarding regulation of elections to the states in the first instance. States have a clear and legitimate "interest in protecting the integrity and reliability of the electoral process." *Crawford v. Marion County Election Bd.*, 553 U.S. 181, 191 (2008); *see also Dixon v. Maryland State Administrative Bd. of Election Laws*, 878 F.2d 776, 779 (4th Cir. 1989) (states have legitimate interest "in keeping elections fair, honest, and orderly").

Since this Clause expressly grants power to regulate elections to the states, a jurisdictional concern over striking an appropriate balance between federal and state relations is present in lawsuits challenging state electoral processes. That is so because "[t]he allocation of powers in our federal system preserves the integrity, dignity, and residual sovereignty of the States. The federal balance is, in part, an end in itself, to ensure that States function as political entities in their own right." *Bond v. United States*, 564 U.S. 211, 221 (2011). That federalism concern is juxtaposed with the fact that the United States Supreme Court has affirmed, on multiple occasions, various state restrictions and burdens on the conduct of elections, including, in relevant part, state imposition of a voter photo identification requirement. *See, e.g.*, *Crawford v. Marion County Election Bd.*, *supra*.

That federalism concern is stronger when state litigation over the challenged provisions is under way. "In most cases, comity and respect for federalism compel us to defer to the decisions of state courts on issues of state law. That practice reflects our

7

understanding that the decisions of state courts are definitive pronouncements of the will of the States as sovereigns." *Bush v. Gore*, 531 U.S. 98, 112, (2000). Based on the facts relevant to this case and as explained *infra*, the federalism-grounded concerns weigh in favor of refraining from an exercise of subject matter jurisdiction over this election case, or at least, in favor of abstention.

During November 2018, North Carolina citizens passed a constitutional amendment requiring photographic identification in order to vote in-person. Constitutional amendments are unique and important vehicles for expressing state interests in the federal system. *See*, e.*g.*, John Dinan, "State Constitutional Amendment Processes and the Safeguards of American Federalism," *Penn State Law Review*, Vol. 115:4 (2011) (discussing the crucial role of the state constitutional amendment processes for advancing state interests).

Subsequently, in December 2018, the North Carolina General Assembly enacted this Act, titled "An act to implement the constitutional amendment requiring photographic identification to vote[,]" which purports to implement the new constitutional amendment. Both the constitutional amendment itself, and the statute implementing that amendment, are actively litigated in North Carolina's General Courts of Justice. These courts should be permitted to rule, in the first instance, on the will of North Carolinians expressed through a constitutional amendment, and the manner chosen by the State legislature to implement this mandate. Federal courts should allow this important state process to develop and conclude before assuming jurisdiction over the case on federal law grounds.

8

In fact, not one but two state proceedings are currently underway that may resolve the outstanding issues related to the Act and thereby obviate the need for the Court's adjudication of the Act's validity. While the *Holmes* litigation directly grapples with the validity of the Act under various state constitutional principles, the parallel *NAACP* state litigation implicates a different facet of the related constitutional concern. Specifically, that case questions whether the November 2018 state constitutional amendment requiring a photographic identification to vote (which SB 824, in its turn, purportedly implements) is itself valid.

The ongoing state proceedings in *NAACP* and *Holmes* litigation suggest that this Court should, at this point, decline to or at least temporarily abstain from the exercise of federal jurisdiction based upon federalism concerns.

### B. *Pullman* Abstention is Also Appropriate.

Alternatively, abstention is appropriate here because the constitutionality of the Act has already been challenged in North Carolina state court, and a decision in that action may eliminate the need for this Court to decide the constitutional issues presented in this lawsuit. This is especially true as unique facts of this matter interweave, with the matters of state constitutional concerns and an interpretation of a new state Session Law. These unique circumstances weigh in favor of abstention.

The facts of this case are appropriate for application of the *Pullman* abstention doctrine. *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941). *Pullman* abstention "recognizes the importance of state sovereignty by limiting federal judicial intervention in state affairs to cases where intervention is necessary." *Va. Office for Prot.*

9

*& Advocacy v. Stewart*, 563 U.S. 247, 264 (2011) (Kennedy, J., concurring). *Pullman* holds that "federal courts should abstain from decisions when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided. By abstaining in such cases, federal courts . . . avoid both unnecessary adjudication of federal questions and 'needless friction with state policies . . . .'" *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984) (citation omitted).

For the *Pullman* abstention doctrine to apply, there must be "(1) an unclear issue of state law presented for decision," and "(2) the resolution of [the issue] may moot or present in a different posture the federal constitutional issue." *Educ. Servs. v. Md. State Bd. for Higher Educ.*, 710 F.2d 170, 174 (4th Cir. 1983); *accord Meredith v. Talbot Cty.*, 828 F.2d 228, 231 (4th Cir. 1987).

Under those parameters, *Pullman* abstention has been ordered where "the uncertain status of local law stems from the unsettled relationship between the state constitution and a statute," *Harris County Commrs., Court v. Moore*, 420 U.S. 77, 84 (1975), where "the nub of the whole controversy may be the state constitution" and "the first judicial application" about about validity of statutes related to that constitutional provision are best left to the state courts, *Reetz v. Bozanich*, 397 U.S. 82, 87 (1970), and where "the state court's interpretation of the statute or evaluation of its validity under the state constitution may obviate any need to consider its validity under the Federal Constitution." *City of Meridian v. Southern Bell Tel. & Tel. Co.*, 358 U.S. 639, 641 (1959). The above line of cases stems from state law considerations similar to the ones featured in the instant case; and, moreover, both criteria announced in *Pullman* are present here.

10

First, the Act presents unclear issues of state law. The Act became law on December 19, 2019 when the General Assembly voted to override the Governor's veto. That same day, several individual voters filed *Holmes* lawsite challenging the constitutionality of the Act under the North Carolina Constitution. (**State Def Ex A** [the *Holmes* lawsuit]). The *Holmes* lawsuit seeks a declaration that the Act violates the North Carolina Constitution on the grounds that it is racially discriminatory, burdens the fundamental right to vote, and has a disparate impact on the class of voters without photo IDs. Plaintiffs there seek declaratory relief regarding the Act's alleged invalidity, and a statewide injunction of the Act's photo ID requirements. Additionally, Plaintiffs in *NAACP* state litigation asserted, in state courts, that the constitutional amendment, from which the Act springs, is unconstitutional in the first instance. The state law on these issues is far from settled.

Second, resolution of the *Holmes* lawsuit may moot or otherwise alter the posture of the federal constitutional issues implicated in this lawsuit. The *Holmes* lawsuit is based on alleged violations of the North Carolina Constitution. The lawsuit in this federal case is based on violations of the VRA and the Constitution. Nevertheless, there is significant overlap between the challenges to the Act in the *Holmes* lawsuit and the instant action. Both challenge the Act as racially discriminatory. Moreover, both lawsuits seek to enjoin enforcement of the central component of the Act: the requirement to present a photo ID for in-person voting. Defendants in the *Holmes* case have already answered the complaint and discovery has commenced.

If the Plaintiffs in the *Holmes* lawsuit are a successful in their challenge to the Act, that outcome will render moot central issues in this lawsuit. Specifically, if the plaintiffs

11

in the *Holmes* lawsuit obtain an order declaring that the Act violates the North Carolina Constitution, it will be unnecessary for this Court to reach a conclusion about the constitutionality of the Act under the United States Constitution. Moreover, if the Plaintiffs in the *Holmes* lawsuit obtain an order enjoining enforcement of the photo ID requirement of the Act, this Court will not need to consider whether to order the same injunctive relief. Likewise, if the current state court decision in *NAACP* matter is affirmed on appeal, the argument in this case is likely to be impacted by the invalidation of the constitutional amendment that requires photo identification.

In addition to meeting the formal requirements for the application of *Pullman* abstention, the Act presents additional unique issues of state law and procedure that make abstention especially appropriate. For example, the Plaintiffs in *Holmes* have alleged and argued that their case is, in most part, a facial challenge to the constitutionality of the Act. (**State Def Ex. A** ¶¶ 6, 8, 9, **State Def Ex G**, Pl Br. re: Facial Challenge in *Holmes*) Under North Carolina law, there is a special procedure for hearing facial challenges to laws passed by the North Carolina General Assembly. N.C. Gen. Stat. § 1-267-1. This procedure includes appointments made by the Chief Justice of North Carolina of a three-judge panel to hear the facial constitutional challenge. N.C. Gen. Stat. § 1-267(b2). The case is scheduled to be heard on the propriety of the immediate transfer to a three-judge panel, and on the Legislative Defendants' motion to dismiss, on Monday, March 4, 2019. The possibility that the constitutional claims in the *Holmes* lawsuit will be heard through this special procedure for adjudicating facial challenges to state laws further elevates the

12

significance of the state court's role in deciding this issue of first impression and suggests that federal abstention is appropriate.

## II. THE COURT SHOULD STAY THE CASE WHILE THE STATE PROCEEDINGS ARE PENDING ON THE ALTERNATIVE GROUNDS.

For the same reasons discussed above and in the interests of judicial efficiency, the State Board Defendants respectfully request, in the alternative, that the Court stay this case while the referenced parallel State proceedings are ongoing on other appropriate grounds. Even when they deny dismissal on abstention or other grounds, federal courts nevertheless have a power to grant a stay of proceedings "to avoid unnecessary duplicative litigation and conserve judicial resources," when another related proceeding is pending. *Flanders Filters, Inc. v. Intel Corp.*, 93 F. Supp. 2d 669, 673–74 (E.D.N.C. 2000) (denying a motion to dismiss on *Colorado River* abstention grounds, but granting a stay pending resolution of a pending action in a different State). To the extent that the state court proceedings do not resolve Plaintiffs' concerns about the Act's validity, this Court will then have the ability to lift the requested stay and weigh in on the remaining matters.

## CONCLUSION

For the foregoing reasons, the State Board Defendants respectfully request that the Court dismisses Plaintiffs' Complaint or exercises its discretion to abstain federal jurisdiction over Plaintiffs' claims. In the alternative, the State Board Defendants respectfully request that the Court stay this case while the parallel state proceedings continue.

13

Respectfully submitted, this 28th day of February, 2019.

JOSHUA H. STEIN
Attorney General

/s/ Amar Majmundar
Amar Majmundar
Senior Deputy Attorney General
N.C. State Bar No. 24668
amajmundar@ncdoj.gov

*/s/* Olga E. Vysotskaya de Brito
Olga E. Vysotskaya de Brito
Special Deputy Attorney General
N.C. State Bar No. 31846
ovysotskaya@ncdoj.gov

N.C. Dept. of Justice
Post Office Box 629
Raleigh, NC 27602
Telephone: (919) 716-6900
Facsimile: (919) 716-6920

Counsel for the State Board
Defendants

# CERTIFICATE OF COMPLIANCE

Counsel for State Board Defendants certify that pursuant to LR 7.3(d) of the Local Civil Rules, the foregoing Memorandum is fewer than 6,250 words (including footnotes, but excluding caption, signature blocks, certificate of service, this certificate of compliance, and exhibits) as reported by the word-processing software.

/s/ Olga E. Vysotskaya de Brito
Olga E. Vysotskaya de Brito
Special Deputy Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing **STATE BOARD DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STAY** with the clerk of Court using the CM/ECF system which will send notification of such to all counsel of record in this matter.

This 28th day of February, 2019.

/s/ Olga E. Vysotskaya de Brito
Olga E. Vysotskaya de Brito
Special Deputy Attorney General