# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### CIVIL ACTION NO. 1:18-cv-01034

| | | |
|---|---|---|
| NORTH CAROLINA STATE CONFERENCE OF THE NAACP et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | **GOVERNOR COOPER'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR A STAY** |
| ROY ASBERRY COOPER III, in his official capacity as the Governor of North Carolina et al., | ) ) ) ) | |
| Defendants. | ) ) ) | |
| _____ | ) | |

Defendant Roy Cooper, in his official capacity as Governor of the State of North Carolina ("Governor Cooper"), respectfully submits this memorandum of law in support of his Motion to Dismiss Plaintiffs' Complaint pursuant to Rules 12(b)(1), (2), & (6) of the Federal Rules of Civil Procedure or, in the alternative, for a stay.

## NATURE OF THE CASE

Plaintiffs filed their Complaint on December 20, 2018. Plaintiffs contend that North Carolina Session Law 2018-144 (the "Photo ID Act") violates Section 2 of the Voting Rights Act ("VRA"), 42 U.S.C. § 1973,[1] as well as the Fourteenth and Fifteenth Amendments to the United States Constitution. Plaintiffs request declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-2202 preventing defendants from implementing or enforcing the challenged provisions of the Photo ID Act. Plaintiffs also

---

[1] Section 1973 was editorially reclassified as section 10301 of Title 52, Voting and Elections. 52 U.S.C. § 10301 (2019).

ask the Court to retain jurisdiction under the VRA, and to require preclearance of all changes to voting procedures statewide.

## STATEMENT OF FACTS

Plaintiffs are the North Carolina State Conference of the NAACP ("NC NAACP") and several local branches of the NAACP. The NC NAACP is a nonpartisan, nonprofit organization composed of over 100 branches and 20,000 individual members throughout the State of North Carolina. (Compl. ¶ 14) The mission of the NC NAACP is the advancement and improvement of the political, educational, social, and economic status of minority groups; the elimination of racial prejudice; the publicizing of adverse effects of racial and ethnic discrimination; and the initiation of lawful action to secure the elimination of racial bias. (Compl. ¶ 15)

The NC NAACP alleges that its members will be directly impacted and harmed by the provisions of the Photo ID Act. (Compl. ¶ 14) Specifically, the NC NAACP alleges that many of its members will be effectively denied the right to vote, will be otherwise deprived of meaningful access to the political process, or will have their voting strength diluted. (Compl. ¶ 15) The NC NAACP further alleges that the Photo ID Act imposes substantial costs and undue burdens on the right to vote for its members. (Compl. ¶ 15) The NC NAACP also claims that it has suffered harm from the Photo ID Act because it will have to divert time, money, and resources to assist North Carolina citizens who are burdened by the new law. (Compl. ¶ 17)

The Photo ID Act requires voters to present one of several approved forms of photographic identification in order to vote in-person, or to attach a copy of that

identification to an absentee ballot application.  (Compl. ¶ 80)  The Photo ID Act also expands the number of poll observers permitted on election day and makes more people eligible to challenge ballots.  (Compl. ¶ 80)

Plaintiffs contend that the group of citizens who are eligible to vote but who lack qualifying identification is disproportionately comprised of African Americans and Latino citizens.  (Compl. ¶ 83)  Plaintiffs allege that there is no evidence that the Photo ID Act's burden on the right to vote is justified by any legitimate or compelling state interest.  (Compl. ¶ 84)  Plaintiffs allege that the Photo ID Act is "the latest manifestation of determined efforts by a General Assembly that was born out of racial intent."  (Compl. ¶ 87)

Plaintiffs assert three counts:  (1) a violation of Section 2 of the VRA; (2) violation of the Fourteenth Amendment and 42 U.S.C. § 1983; and (3) violation of the Fifteenth Amendment and 42 U.S.C. § 1983.

The Defendants in the case are Governor Cooper and the members of the State Board of Elections ("SBOE").  (Compl. ¶¶ 20-23)[2]

Plaintiffs sue Governor Cooper in his official capacity as Governor of the State. (Compl. ¶ 20)  Plaintiffs allege that Governor Cooper "is responsible for faithfully executing and enforcing the laws of North Carolina, including [the Photo ID Act]." (Compl. ¶ 20)  Plaintiffs also allege that Governor Cooper is responsible for appointing

---

[2] Members of the former State Board of Elections and Ethics Enforcement were sued prior to that Board's dissolution.  Five new members were named to the State Board of Elections effective January 31, 2019, and those members have appeared in this case.

the members of the SBOE and, in certain circumstances, has power to remove certain members of that Board. (Compl. ¶ 20) Plaintiffs further contend that Cooper "receives recommendations from SBOE relative to the conduct and administration of the primaries and elections in North Carolina." (Compl. ¶ 20) Based on these factual allegations, Plaintiffs claim that there is a "special relation" between Governor Cooper and the Photo ID Act. (Compl. ¶ 20)

Plaintiffs allege that the SBOE is charged with administering the election laws of the State of North Carolina and that the members of SBOE have a "special relation" with the Photo ID Act. (Compl. ¶¶ 21-23)

On December 19, 2018, shortly before this case was filed, North Carolina voters filed a lawsuit challenging the constitutionality of the Photo ID Act in state court. *Holmes, et al. v. Moore, et al.*, 18 CVS 15292 (Wake Cty. Super. Ct.) (the "*Holmes* lawsuit") (Ex. 1, Complaint) The *Holmes* lawsuit seeks a declaration that the Act violates the North Carolina Constitution on the grounds that it is racially discriminatory, burdens the fundamental right to vote, and has a disparate impact on the class of voters without photo IDs. In addition to seeking declaratory relief, the *Holmes* lawsuit seeks to enjoin enforcement of the photo ID requirement in the Photo ID Act. Defendants in the *Holmes* lawsuit are the State and the State Board of Elections (the "State Defendants") and four members of the General Assembly (the "Legislative Defendants"); Governor Cooper is not a defendant. In *Holmes*, plaintiffs have requested assignment of a three-judge panel, the State Defendants have filed an answer, and discovery has commenced. (Ex. 1 ¶ 9; Ex. 2, Answer; Ex. 3, Notice of Deposition) The case is scheduled to be heard on the

4

propriety of the immediate transfer to a three-judge panel, and on the Legislative Defendants' motion to dismiss, on Monday, March 4, 2019.

## QUESTIONS PRESENTED

I.      Whether the Eleventh Amendment bars Plaintiffs' claims against Governor Cooper.

II.     Whether Governor Cooper is an improper party for Plaintiffs' claims.

III.    In the alternative, whether the Court should stay the case on abstention grounds.

## DISMISSAL STANDARDS

When the defendant challenges a federal court's subject-matter jurisdiction, the plaintiff bears the burden of proof to establish that federal jurisdiction exists. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999); *Bennett v. Office of Personnel Mgmt.*, No. 1:14CV137, 2014 U.S. Dist. LEXIS 150060, at *5 (M.D.N.C.), *adopted by*, *Bennett v. OPM*, No. 1:14CV137, 2014 U.S. Dist. LEXIS 172848 (M.D.N.C. Dec. 15, 2014).  "When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  *Evans*, 166 F.3d at 647 (citations omitted).

Similarly, in response to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the burden is on the plaintiff to demonstrate that jurisdiction is proper. *Mylan Labs, Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993); *Simmons v. Corizon Health, Inc.*, 122 F. Supp. 3d 255, 269 (M.D.N.C. 2015).  Although a plaintiff who

opposes a motion to dismiss for lack of personal jurisdiction is entitled to have all reasonable inferences drawn in his favor, the court is not required to look solely to plaintiff's proof in drawing those inferences. *Mylan Labs*, 2 F.3d at 60; *IHFC Props. LLC v. APA Mktg.*, 850 F. Supp. 2d 604, 616 (M.D.N.C. 2012).

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain facts sufficient "to raise a right to relief above the speculative level" and to satisfy the court that the claim is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim is plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"—a standard that requires more than facts "that are 'merely consistent with' a defendant's liability." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## ARGUMENT

### I. THE ELEVENTH AMENDMENT BARS PLAINTIFFS' SECTION 1983 CLAIMS AGAINST DEFENDANT COOPER.

Plaintiffs' Complaint should be dismissed because the Eleventh Amendment bars all of the claims brought against Governor Cooper. As a result, this Court lacks jurisdiction over Defendant Cooper and the claims against him in this case. Governor Cooper seeks dismissal of the claims against him on Eleventh Amendment grounds and pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6).

6

Here, although Plaintiffs invoke 28 U.S.C. § 2201 and 42 U.S.C. § 1983 in an attempt to establish the Court's jurisdiction over their claims against Defendant Cooper, they have failed to allege facts necessary to show a sufficient connection between the Governor and the enforcement of the challenged provision. Because Plaintiffs have made no allegations that Governor Cooper has enforced, will enforce, or may enforce the challenged statute, their claims should be dismissed.

Generally, The Eleventh Amendment bars suits by private individuals against states brought in federal court.[3] *Bd. of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001); *see also Alden v. Maine*, 527 U.S. 706, 727-28 (1999); *Waste Mgmt. Holdings, Inc v. Gilmore*, 252 F.3d 316, 329 (4th Cir. 2001). Additionally, "Eleventh Amendment immunity also extends to state officials when they are merely the nominal defendants and the state is the real, substantial party in interest." *Booth v. Maryland*, 112 F.3d 139, 142 (4th Cir. 1997) (internal quotation marks and citations omitted).

*Ex parte Young* provides an exception for lawsuits seeking prospective equitable relief from state officials acting in violation of federal law. 209 U.S. 123, 159-60 (1908);

---

[3] The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed
> to extend to any suit in law or equity, commenced or
> prosecuted against one of the United States by Citizens of
> another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. Although the amendment refers to suits by citizens of "another State," the Supreme Court has interpreted the amendment to include lawsuits against a state by its own citizens as well. *Hans v. Louisiana*, 134 U.S. 1, 10 (1890); *see also Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996).

*see also Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (recognizing an exception to Eleventh Amendment immunity in "suits for prospective injunctive relief against state officials acting in violation of federal law"); *Waste Mgmt.*, 252 F.3d at 329-30 (noting that "a suit in federal court to enjoin a state officer from enforcing an unconstitutional statute is not a suit against the state for purposes of the Eleventh Amendment"). *Ex parte Young* provides a mechanism by which federal courts have allowed suits against state actors or officials so as to enjoin unconstitutional state action without violating the Eleventh Amendment. 209 U.S. at 159-60; *Waste Mgmt.*, 252 F.3d at 329-30 ("The theory of *Ex parte Young* is that because an unconstitutional statute is void, it cannot cloak an official in the state's sovereign immunity.").

However, any such state official must have some connection to the enforcement of the challenged act to be enjoined:

> In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party.

*Ex parte Young*, 209 U.S. at 157. Ultimately, the state official must have the duty to enforce the statute; whether the statute at issue specifically imposes a duty of enforcement on the state official or the duty of enforcement rises from general law is unimportant. *Id.*

Indeed, "*Ex parte Young* requires a 'special relation' between the state officer sued and the challenged statute to avoid the Eleventh Amendment's bar." *Waste Mgmt.*, 252

F.3d at 331. The special relationship requirement serves to ensure that the proper party is before the court. *Ex parte Young*, 209 U.S. at 158-59. Thus, Plaintiffs must show that the lawsuit is directed at "officers of the State [who] are clothed with some duty in regard to the enforcement of the laws of the State." *Id.* at 155-56. In other words, Plaintiffs must show that Governor Cooper has "*proximity to* and *responsibility for* the challenged state action." *S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 333 (4th Cir. 2008). Without the requisite connection between a state official and the statute's enforcement, a plaintiff is merely suing the state officer "as a representative of the State" in an impermissible attempt to make the State a party. *Ex parte Young*, 209 U.S. at 157.

In this case, Plaintiffs have failed to allege any facts sufficient to plausibly allege a "special relation" between Governor Cooper and the challenged statute. In fact, Plaintiffs have not established (nor can they) the necessary relationship between Governor Cooper and the Photo ID Act. There is nothing in the statute that provides the Governor with the authority or the means to enforce its provisions. The Photo ID Act assigns responsibilities to the State Board and the county boards of election. *See* N.C. Gen. Stat. § 163A‑869.1(a) (county boards shall issue voter photo identification cards); (b) (State Board shall make equipment available, and counties shall operate and maintain it); (c) (county boards shall keep database); (d) (State Board shall adopt rules); and (e) (county boards shall notify registered voters prior to identification expiration). By contrast, the Photo ID Act vests no enforcement authority in the Governor. It assigns the Governor no responsibilities concerning the Act.

9

Moreover, as Plaintiffs specifically allege, the SBOE is charged with administering the elections laws of North Carolina—not Governor Cooper. (Compl. ¶¶ 21-23) Plaintiffs have sued the members of the SBOE and claim that they have a "special relation" to the Photo ID Act.

Plaintiffs claim that Governor Cooper has a "special relation" to the Photo ID Act for three reasons. First, Plaintiffs claim that Governor Cooper has general responsibility to execute and enforce the laws of North Carolina. (Compl. ¶ 20) Second, Plaintiffs allege that Governor Cooper is responsible for appointment and (in some cases) removal of members of the SBOE. (Compl. ¶ 20) Third, Plaintiffs contend that Cooper "receives recommendations from SBOE relative to the conduct and administration of the primaries and elections in North Carolina." (Compl. ¶ 20) None of these alleged facts creates a "special relation" between Cooper and the Photo ID Act.

First, as the Fourth Circuit and other federal courts have clearly stated, "[g]eneral authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." *Waste Mgmt.*, 252 F.3d at 331 (quotation omitted); *see also Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 550 (4th Cir. 2014) (concluding that a state treasury official possessed only "general administration and responsibility for the proper operation" of the Retirement System, and therefore did not possess enforcement authority over the challenged state law); *McBurney v. Cuccinelli*, 616 F.3d 393, 400-01 (4th Cir. 2010) (holding that the Eleventh Amendment barred suit against the Attorney General under the state's FOIA because he had no more than general authority to enforce the law); *1st Westco Corp. v. Sch. Dist. of Philadelphia*, 6 F.3d 108,

10

115 (3d Cir. 1993) (concluding that certain state officials' "general duty to uphold the laws of Pennsylvania, standing alone, will not suffice to render them proper defendants in this lawsuit"). "[T]he mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute." *Waste Mgmt.*, 252 F.3d at 331 (citation and quotation omitted).

*Waste Management* is directly on point and binding precedent in this case. In *Waste Management*, Virginia's General Assembly enacted statutory provisions that capped the number of solid waste landfills that Virginia could accept and restricted the transportation of solid waste within Virginia. *Id.* at 323. Several landfill operators and solid waste transporters brought suit under 42 U.S.C. § 1983 against the Virginia Governor and other state officials in their official capacities for declaratory and injunctive relief. *Id.* at 324. The Virginia Governor moved to dismiss the claims against him on Eleventh Amendment grounds because he did not have "direct enforcement responsibility with respect to the statutory provisions at issue." *Id.* at 330. The district court ruled that the Virginia Governor was a proper defendant. *Id.*

The Fourth Circuit vacated the judgment against the Virginia Governor and remanded with instructions that the district court dismiss the Virginia Governor from the case. *Id.* at 331. The Court held that "although Governor Gilmore is under a general duty to enforce the laws of Virginia by virtue of his position as the top official of the state's executive branch, he *lacks a specific duty to enforce the challenged statutes.*" *Id.* (emphasis added). The Court explained that "[t]he purpose of allowing suit against state officials to enjoin their enforcement of an unconstitutional statute is not aided by

11

enjoining the actions of a state official not directly involved in enforcing the subject statute." *Id.* Similarly, in this case, Plaintiffs have failed to demonstrate that Governor Cooper is responsible for enforcing the challenged provisions of the statute.

Governor Cooper has statutory appointment and removal powers over state boards and commissions. However, those powers do not create a "special relationship" between Governor Cooper and the Photo ID Act. *See, e.g.*, *Waste Mgmt.*, 252 F.3d at 331; *Peter B. v. Sanford*, No. 6:10-767-RBH-BHH, 2010 U.S. Dist. LEXIS 140892, at *11-12 (D.S.C. Dec. 6, 2010) (holding that governor's appointment powers over a board, even when "coupled with general enforcement duties and veto/approval powers" are insufficient to constitute a "special relation" and citing several cases from other jurisdictions supporting this holding), *adopted by*, No. 6:10-cv-00767-JMC, 2011 U.S. Dist. LEXIS 9991 (D.S.C. Feb. 1, 2011).

The Court in *Ex parte Young* made clear that the special relations test was to prevent state officials such as Governor Cooper from being named in every suit challenging a statute as unconstitutional. Quoting its prior decision in *Fitts v. McGhee,* 172 U.S. 516 (1899), the Supreme Court stated:

> In the present case, as we have said, neither of the state officers named held any special relation to the particular statute alleged to be unconstitutional. They were not expressly directed to see to its enforcement. If, because they were law officers of the state, a case could be made for the purpose of testing the constitutionality of the statute, by an injunction suit brought against them, then the constitutionality of every act passed by the legislature could be tested by a suit against the governor and the attorney general, based upon the theory that the former, as the executive of the state, was, in a general sense, charged with the execution of all its laws, and

12

> the latter, as attorney general, might represent the state in
> litigation involving the enforcement of its statutes.

*Ex parte Young*, 209 U.S. at 157 (quoting *Fitts*, 172 U.S. at 530). To extend the "special

relation" principle to any challenge to a law in which the Governor either appoints board

members that administer the law or receives general recommendations related to the law

would eviscerate the "special relation" doctrine.

For all of these reasons, the *Ex parte Young* exception to the Eleventh Amendment

does not apply, and Governor Cooper must be dismissed as a defendant.

## II.    GOVERNOR COOPER IS AN IMPROPER PARTY UNDER 42 U.S.C. § 1983.

Even if the Eleventh Amendment did not apply, Governor Cooper would still be

an improper party in this case. Plaintiffs assert claims against Governor Cooper pursuant

to 42 U.S.C. § 1983 for alleged violations of the United States Constitution and federal

law. Congress has expressly limited liability under 42 U.S.C. § 1983 to persons acting

under color of state law:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State . . . subjects, or
> causes to be subjected, any citizen . . . to the deprivation of
> any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an
> action at law . . .

42 U.S.C. § 1983 (2019).[4] To establish a claim under Section 1983, plaintiffs must

establish that a person acted under color of state law to deprive them of a right secured by

---

[4]   The Eleventh Amendment shields States from such lawsuits because the States are not
"a person" within the meaning of Section 1983. *See Penhurst State Sch. & Hosp. v.
Halderman*, 465 U.S. 89, 101 (1984) (stating that the Eleventh Amendment bars suits

the Constitution and laws of the United States. *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)).

While state officials are generally immune from suits brought under Section 1983, as discussed above, the doctrine of *Ex parte Young* permits a court to issue prospective and injunctive relief against a state official to prevent ongoing violations of federal law, even when the Court would not otherwise have jurisdiction over the official or the Section 1983 claims because of the Eleventh Amendment. *Frew*, 540 U.S. at 437 (citing *Ex parte Young*, 209 U.S. at 157 ); *see also Republic of Paraguay v. Allen*, 134 F.3d 622, 627 (4th Cir. 1998). However, in order to bring such a claim against a state official, a plaintiff must show that the official has engaged in an ongoing violation of the Constitution or federal law. *Allen*, 134 F.3d at 627 (stating that plaintiff must show "(1) the violation for which relief is sought is an ongoing one, and (2) the relief sought is only prospective").

"The requirement that the violation of federal law be ongoing is satisfied when a state officer's enforcement of an allegedly unconstitutional state law is threatened, even if the threat is not yet imminent." *Waste Mgmt.*, 252 F.3d at 330; *see also McBurney*, 616 F.3d at 401 (dismissing claim against Attorney General on sovereign immunity grounds because he had not acted or threatened to act). "A litigant must show more than the fact

---

brought against state officials if the "state is the real, substantial party in interest"); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989) (holding that the State is not a person within the meaning of Section 1983 and therefore is not a proper party under Section 1983).

that state officials stand ready to perform their general duty to enforce laws." *Doe v. Duling*, 782 F.2d 1202, 1206 (4th Cir. 1986).

For example, in *McBurney*, the Fourth Circuit determined that the Virginia Attorney General was not a proper party under *Ex parte Young* in a suit challenging a provision in Virginia's Freedom of Information Act ("VFOIA"). 616 F.3d at 401-02. The court first noted that the Attorney General did not have a special relation with the challenged law because he did not have any specific statutory duty to enforce the act. *Id.* at 401. The Court concluded that "[b]ecause the Attorney General has not enforced, threatened to enforce, or advised other agencies to enforce the VFOIA against the Appellants, the *Ex parte Young* fiction cannot apply." *Id.* (citing *Ex parte Young,* 209 U.S. at 155–56).

In this case, Plaintiffs' claims likewise must be dismissed, because Plaintiffs failed to allege that Governor Cooper has any specific authority to enforce or implement the Photo ID Act—much less that he has taken or threatened to take any action under color of state law that deprived Plaintiffs of any rights secured by the Constitution or federal law.

Moreover, Plaintiffs failed to allege that Governor Cooper has engaged in an ongoing violation of the Constitution or the VRA. Indeed, Plaintiffs have failed to allege facts demonstrating that Governor Cooper has taken *any* action against them related to the Photo ID Act. Simply alleging that Governor Cooper has a general duty to execute and enforce the laws of the State, as well as the power to appoint and remove members of the SBOE and receive recommendations from SBOE, does not equate to alleging facts connecting Governor Cooper to ongoing or imminent constitutional violations.

15

Plaintiffs have made no factual allegations that Governor Cooper has taken, has threatened to take, or has the authority to take any action to enforce the Photo ID Act. The Complaint does not contain allegations connecting Governor Cooper to the Photo ID Act's requirements.

Because Plaintiffs fail to allege ongoing conduct by the Governor in violation of federal law, he is not a proper party to this lawsuit. Furthermore, assuming the veracity of Plaintiffs' allegations for purposes of this motion, Plaintiffs have failed to provide "enough facts to state a claim to relief that is plausible" against Governor Cooper. *Twombly*, 550 U.S. at 570. Simply, Plaintiffs have failed to allege that Governor Cooper is responsible for committing any constitutional or statutory violations.

The Governor should be dismissed from this lawsuit for an independent reason: an order enjoining the Governor from enforcing the photo ID statute would be a meaningless gesture. The Governor has no role in enforcing the challenged provisions of the statute. *See supra* pp. 9-10. Rather, the enforcement of those challenged provisions are the obligation of the State Board and the county boards of elections. *See supra* pp. 9-10. Accordingly, the "absence of a nexus between" the Governor's enforcement powers and the challenged statute "renders ineffectual plaintiffs' requested prospective relief." *Bronson v. Swensen*, 500 F.3d 1099, 1112 (10th Cir. 2007). Enjoining the Governor from enforcing the challenged provisions of the photo ID statute would not protect the plaintiffs from the harms they allege. *Okpalobi v. Foster*, 244 F.3d 405, 427-28 (5th Cir. 2001) (state official "cannot be enjoined to act in any way beyond his

16

authority to act in the first place" and is therefore not a proper defendant). As a result, the Governor should be dismissed.

For all of these reasons, Plaintiffs' claims should be dismissed pursuant to Rules 12(b)(1), (2) and (6) of the Federal Rules of Civil Procedure.

### III. IN THE ALTERNATIVE, THE COURT SHOULD STAY THE CASE ON ABSTENTION GROUNDS DUE TO PENDING STATE COURT CHALLENGES TO THE PHOTO ID ACT AND TO THE VOTER ID CONSTITUTIONAL AMENDMENT ON WHICH THE ACT IS BASED.

If the Governor is not dismissed from the case as a Defendant, the Court should stay the litigation on abstention grounds. Abstention is appropriate because the constitutionality of the Photo ID Act has already been challenged in North Carolina state court, and a decision in state court may obviate the need for this Court to decide the constitutional issues presented in this lawsuit. In addition, the Photo ID Act presents unique issues of state law that weigh in favor of abstention.

Abstention would be appropriate in this case under the abstention doctrine articulated in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941). *Pullman* Abstention "recognizes the importance of state sovereignty by limiting federal judicial intervention in state affairs to cases where intervention is necessary." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 264 (2011) (Kennedy, J., concurring). Under the *Pullman* Abstention doctrine, federal courts abstain when they have jurisdiction but there is an open issue of state law that may resolve the dispute. *Id.*; *see also City Of Meridian v. S. Bell Tel. & Tel. Co.*, 358 U.S. 639, 641 (1959) (*Pullman* Abstention applies when a "state court's interpretation of the statute or evaluation of its

17

validity under the state constitution may obviate any need to consider its validity under the Federal Constitution"). As articulated by the Fourth Circuit, for *Pullman* Abstention to apply, there must be "(1) an unclear issue of state law presented for decision," and "(2) the resolution of [the] issue] may moot or present in a different posture the federal constitutional issue." *Educ. Servs. v. Md. State Bd. for Higher Educ.*, 710 F.2d 170, 174 (4th Cir. 1983); *accord Meredith v. Talbot Cty.*, 828 F.2d 228, 231 (4th Cir. 1987). Here, both of the requirements for the application of *Pullman* Abstention are present.

First, the Photo ID Act presents unclear issues of state law. The Act became law on December 19, 2019 when the General Assembly voted to override the Governor's veto of the law. That same day, several individual voters filed a civil complaint in Wake County Superior Court challenging the constitutionality of the Act under the North Carolina Constitution. (*See* Ex. 1 [the *Holmes* lawsuit]). The *Holmes* lawsuit seeks a declaration that the Act violates the North Carolina Constitution on the grounds that it is racially discriminatory, burdens the fundamental right to vote, and has a disparate impact on the class of voters without photo IDs. In addition to seeking declaratory relief, the *Holmes* lawsuit seeks to enjoin enforcement of the photo ID requirement in the Photo ID Act.

Second, the resolution of the *Holmes* lawsuit may moot or present in a different posture the federal constitutional issues in this lawsuit. The *Holmes* lawsuit is based on alleged violations of the North Carolina Constitution. The lawsuit in this federal case is based on violations of the federal Voting Rights Act and the United States Constitution. Nevertheless, there is significant overlap between the challenge to the Photo ID Act in

the *Holmes* lawsuit and in this lawsuit. Both lawsuits challenge the Photo ID Act as racially discriminatory. Moreover, both lawsuits seek to enjoin enforcement of the central component of the Photo ID Act: the requirement to present a photo ID for in-person voting. Defendants in the *Holmes* case have already answered the complaint and discovery has commenced.

If the plaintiffs in the *Holmes* lawsuit are successful in their challenge to the Photo ID Act, that outcome will render moot central issues in this lawsuit. Specifically, if the plaintiffs in the *Holmes* lawsuit obtain an order declaring that the Photo ID Act is unconstitutional under state law, it will be unnecessary for this Court to reach a conclusion about the constitutionality of the Act under the United States Constitution. Moreover, if the plaintiffs in the *Holmes* lawsuit obtain an order enjoining enforcement of the photo ID requirement of the Photo ID Act, it will be unnecessary for this Court to consider whether to order the same injunctive relief.

In addition to meeting the formal requirements for application of *Pullman* abstention, the Photo ID Act presents unique issues of state law and procedure that make abstention especially appropriate in this case. For example, the plaintiffs in the *Holmes* lawsuit have alleged that their case includes a facial challenge to the constitutionality of the Photo ID Act. (Ex. 1 ¶¶ 6, 8) Under North Carolina law, there is a special procedure for hearing facial challenges to laws passed by the North Carolina General Assembly. N.C. Gen. Stat. § 1-267-1 (2019). This procedure includes the appointment by the Chief Justice of the North Carolina Supreme Court of a three-judge panel to hear the facial challenge. N.C. Gen. Stat. § 1-267(b2) (2019). The plaintiffs in the *Holmes* lawsuit have

19

alleged that a three-judge panel must be appointed to hear their facial constitutional challenge to the Photo ID Act. (Ex. 1 ¶ 9)  The possibility that the constitutional claims in the *Holmes* lawsuit will be heard through this special, elevated procedure for adjudicating facial challenges to state laws weighs in favor of abstention by this Court to allow these issues to be resolved, in the first instance, by the North Carolina courts through a process specifically designed to address these types of issues.

Furthermore, the interplay between the Photo ID Act and the voter ID constitutional amendment that was on the November 2018 ballot presents unique issues of state law that are likely to affect the federal constitutional claims in this case.  Prior to enactment of the Photo ID Act, the General Assembly passed Session Law 2018-128, which placed a proposed constitutional amendment about voter ID on the November 2018 ballot.  The voter ID amendment, which was approved by voters in the November 2018 election, amended the North Carolina Constitution to provide that voters must present a photo ID to vote in person.  The amendment also authorized the General Assembly to enact general laws regarding photo ID requirements.  The Photo ID Act, which is officially titled "An Act to Implement the Constitutional Amendment Requiring Photograph Identification to Vote," is the General Assembly's legislative attempt to implement the voter ID amendment.

On February 22, 2019, a state court entered an order in a case involving the plaintiffs in this action, *NC NAACP, et al. v. Moore, et al.*, 18 CVS 9806 (Wake Cty. Super. Ct.).  The court held that both Session Law 2018-128 (placing the voter ID constitutional amendment on the November 2018 ballot) and the voter ID constitutional

amendment itself are void.  (Ex. 4, Order, pp 10-13)  This holding was based on the trial court's conclusion that the General Assembly that passed Session Law 2018-128 was an unconstitutionally racially-gerrymandered General Assembly.  (Ex. 4 pp 10-13)  That order has been appealed to the North Carolina Court of Appeals.  (Ex. 5)  The effect of the court's holding on the Photo ID Act that implements the constitutional amendment presents an unsettled and significant question of state law.  This unsettled question of state law weighs in favor of abstention by this Court because resolution of the unsettled state-law question may moot or present in a different posture the federal constitutional issues in this lawsuit.

## CONCLUSION

For the foregoing reasons, the Governor respectfully requests that he be dismissed from this case.  In the alternative, the Governor respectfully requests that the Court stay this case on abstention grounds.

Respectfully submitted, this 28th day of February, 2019.

JOSHUA H. STEIN
Attorney General

/s/ Stephanie A. Brennan
Stephanie A. Brennan
N.C. State Bar No. 35955
Special Deputy Attorney General
N.C. Department of Justice
P.O. Box 629
Raleigh, NC 27602-0629
Telephone: (919) 716-6900
Fax: (919) 716-6763
Email: sbrennan@ncdoj.gov

/s/ Brian D. Rabinovitz
Brian D. Rabinovitz
N.C. State Bar No. 41538
Special Deputy Attorney General
N.C. Department of Justice
P.O. Box 629
Raleigh, NC 27602-0629
Telephone: (919) 716-6863
Fax: (919) 716-6759
E-mail: brabinovitz@ncdoj.gov

## CERTIFICATE OF COMPLIANCE

Counsel for Defendant Cooper certifies that pursuant to LR 7.3(d) of the Local Civil Rules, the foregoing Memorandum is fewer than 6,250 words (including footnotes, but excluding caption, signature blocks, certificate of service, this certificate of compliance, and exhibits) as reported by the word-processing software.


/s/ Stephanie A. Brennan
Stephanie A. Brennan
Special Deputy Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing GOVERNOR COOPER'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS with the clerk of Court using the CM/ECF system which will send notification of such to all counsel of record in this matter.

This 28th day of February, 2019.

/s/ Stephanie A. Brennan
Stephanie A. Brennan
Special Deputy Attorney General