| | |
|---|---|
| NORTH CAROLINA STATE CONFERENCE OF THE NAACP, CHAPEL HILL - CARRBORO NAACP, GREENSBORO NAACP, HIGH POINT NAACP, MOORE COUNTY NAACP, STOKES COUNTY BRANCH OF THE NAACP, WINSTON SALEM - FORSYTH COUNTY NAACP,<br><br>    *Plaintiffs*,<br><br>  v.<br><br>ROY ASBERRY COOPER III, in his official capacity as the Governor of North Carolina; ROBERT B. CORDLE, in his official capacity as Chair of the North Carolina State Board of Elections; STELLA E. ANDERSON, in her official capacity as Secretary of the North Carolina State Board of Elections; DAVID C. BLACK, KEN RAYMOND, and JEFFERSON CARMON III, in their official capacities as members of the North Carolina State Board of Elections,<br><br>    *Defendants*,<br><br>and<br><br>PHILIP E. BERGER, in his official capacity as President Pro Tempore of the North Carolina Senate, and TIMOTHY K. MOORE, in his official capacity as Speaker of the North Carolina House of Representatives,<br><br>    *Proposed Intervenors*. | **PROPOSED INTERVENORS' REPLY TO THE RESPONSES TO THEIR MOTION TO INTERVENE** |

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

I. Proposed Intervenors Have Standing To Intervene. ................................................... 2

II. Proposed Intervenors Are Entitled To Intervene as of Right. .................................... 7

    a. Proposed Intervenors Have a Significantly Protectable Interest in the Subject of this Suit. ................................................................................ 7

    b. The Governor and Board Have Demonstrated that They Will Not Adequately Represent Proposed Intervenors' Interest. ................................ 8

III. Proposed Intervenors Are Also Entitled to Permissive Intervention. ..................... 10

# TABLE OF AUTHORITIES

**Cases**                                                          **Page**

*Adams v. N.C. Dep't of Nat. & Econ. Res.*, 249 S.E.2d 402 (N.C. 1978) .......................... 5

*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 135 S. Ct. 2652 (2015) ...... 8

*Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997) .......................... 2

*Diamond v. Charles*, 476 U.S. 54 (1986) .......................... 11

*Donaldson v. United States*, 400 U.S. 517 (1971) .......................... 7

*Feller v. Brock*, 802 F.2d 722 (4th Cir. 1986) .......................... 11

*Hollingsworth v. Perry*, 570 U.S. 693 (2013) .......................... 2, 5, 7

*I.N.S. v. Chadha*, 462 U.S. 919 (1983) .......................... 6

*In re Aiken Cty.*, 725 F.3d 255 (D.C. Cir. 2013) .......................... 6

*Karcher v. May*, 484 U.S. 72 (1987) .......................... 2, 5, 6

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .......................... 4, 5

*Maine v. Taylor*, 477 U.S. 131 (1986) .......................... 7, 8

*Maryland v. King*, 133 S. Ct. 1 (2012) .......................... 3

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996) .......................... 9

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) .......................... 2, 3

*Stuart v. Huff*, 706 F.3d 345 (4th Cir. 2013) .......................... 10

*Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645 (2017) .......................... 3

*United States v. North Carolina*, No. 13-861,
   2014 WL 494911 (M.D.N.C. Feb. 6, 2014) .......................... 8, 10

*United States v. Windsor*, 570 U.S. 744 (2013) .......................... 4

**Constitutions and Statutes**

N.C. CONST. art. III, § 5(4) .......................... 6

N.C. GEN. STAT.
   § 1-72.2 .......................... 4
   § 1-72.2(a) .......................... 5

**Other**

FED. R. CIV. P. 24(a)(2) .......................... 7

FED. R. CIV. P. 24(b)(1)(B) .......................... 10, 11

Note, *Executive Discretion and the Congressional Defense of Statutes*,
 92 YALE L.J. 970 (1983) .................................................................................................. 6

RESTATEMENT (THIRD) OF AGENCY § 1.01 cmt. f(1) ...................................................... 4, 5

7C WRIGHT & MILLER, FED. PRAC. & PROC. CIV. § 1908 (3d ed., Nov. 2018 update) ...... 3

Notably absent from the filings of the named Defendants is any statement defending the constitutionality of North Carolina's voter ID law, S.B. 824. Although both Governor Cooper and the State Board Defendants have filed motions to dismiss, neither has argued that Plaintiffs' claims lack merit. Rather, Governor Cooper primarily argues that he should not be required to defend the law in the first place. *See* Gov. Cooper's Mem. in Supp. of Mot. to Dismiss or, in the Alternative, for a Stay at 6-17 (Feb. 28, 2019), Doc. 45 ("Gov's. MTD Br."). And the Board argues that this Court should defer to the ongoing litigation in state court over the validity of S.B. 824 under the North Carolina Constitution. *See* State Bd. Defs.' Mem. in Supp. of Their Mot. to Dismiss or, in the Alternative, Mot. to Stay at 6-13 (Feb. 28, 2019), Doc. 43 ("Bd's. MTD Br."). Neither so much as hints that they believe S.B. 824 is constitutional. Governor Cooper for his part never repudiates his veto statement that S.B. 824 was "designed to suppress the rights of minority, poor and elderly voters," Proposed Intervenors' Mem. in Supp. of Their Mot. to Intervene (Jan. 14, 2019), Doc. 8, Ex. A ("Proposed Intervenors' Mem."), a statement that is tantamount to an admission of unconstitutionality. And the Board Defendants—who owe their positions to Governor Cooper and can be dismissed at his pleasure—can bring themselves only to say that S.B. 824 "*purports* to implement" the North Carolina Constitution's command that the General Assembly enact a voter ID law. Bd's. MTD Br. at 8 (emphasis added).

The named Defendants are thus either outright hostile towards or, at a minimum, unwilling to defend the General Assembly's validly enacted law. Proposed Intervenors

1

must be permitted to intervene to provide S.B. 824 a full and fair defense. While Plaintiffs labor to resist this conclusion, all their arguments lack merit.

I. **Proposed Intervenors Have Standing To Intervene.**

Supreme Court precedent clearly establishes that state legislators have standing to defend state laws when a state statute authorizes them to do so, as N.C. Gen. Stat. § 1-72.2 authorizes Proposed Intervenors to do here. *See Karcher v. May*, 484 U.S. 72, 81-82 (1987); *Hollingsworth v. Perry*, 570 U.S. 693, 710 (2013); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 65 (1997).

Plaintiffs' attempts to distinguish these cases all fail. Plaintiffs argue that *Karcher* was not about standing. Yet the Supreme Court has expressly confirmed that it was, explaining that the state legislators who intervened in *Karcher* "lost **standing**" once they lost their leadership positions. *Hollingsworth*, 570 U.S. at 710 (emphasis added). Despite what Plaintiffs say, *Arizonans for Official English* also establishes that legislators have standing to defend when authorized to do so: Petitioners there were not "Article-III-qualified defenders" of state law under *Karcher* specifically because they were not "elected representatives" authorized to litigate "as agents of the people of Arizona." 520 U.S. at 65. And though Plaintiffs twice characterize *Spokeo, Inc. v. Robins* as holding that "a statute cannot confer Article III standing simply by granting a party the right to sue," Pls.' Opp'n to Mot. to Intervene at 9, 10 (Feb. 19, 2019), Doc. 38 ("Pls.' Opp'n"), *Spokeo* concerned whether a statute can create an injury where one does not exist in the real world—not whether an individual or entity has standing to defend against a real-world injury that

2

undoubtedly is threatened to occur. *See* 136 S. Ct. 1540, 1549 (2016). And invalidating a state law clearly would cause a real injury. Indeed, "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of *irreparable* injury." *Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers) (emphasis added) (brackets omitted).

Plaintiffs cite out-of-circuit cases applying the *Lujan* standing factors to intervenors. Pls.' Opp'n at 14. But none deals with legislative intervenors authorized to defend state law, and thus none is relevant. Nor is Plaintiffs' discussion of the *Lujan* factors. *See id.* at 15-17. The Court need not apply those factors to begin with, since Proposed Intervenors seek only to *prevent* the relief sought here. *Cf. Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017) ("[A]n intervenor of right must have Article III standing in order to *pursue relief* that is *different* from that which is sought by a party with standing." (emphasis added)); *accord* 7C WRIGHT & MILLER, FED. PRAC. & PROC. CIV. § 1908 (3d ed., Nov. 2018 update). Plaintiffs cite no Fourth Circuit case requiring that all intervenor defendants—let alone legislative intervenor defendants—establish Article III standing, and Proposed Intervenors have not found one either. Moreover, this case will remain justiciable even if the Court allows Proposed Intervenors to participate without determining whether they meet the *Lujan* factors, given that the Board has promulgated proposed temporary rules and therefore appears poised to enforce S.B. 824. *See* Proposed Temporary Rule, 08 NCAC 17 .0107 Voter Identification Card (Feb. 8, 2019) ("Exhibit A"). In this context, the Supreme Court has permitted a legislative intervenor to participate without determining

3

whether the intervenor independently has standing. *See United States v. Windsor*, 570 U.S. 744, 761-62 (2013). Proposed Intervenors' intervention would only ensure that this case maintains "that concrete adverseness which sharpens the presentation of issues." *Id*. at 760 (quotation marks omitted).

But if the Court applies the *Lujan* factors, *Karcher*, *Arizonans*, and *Hollingsworth* confirm that Proposed Intervenors meet them: the State—which State law authorizes Proposed Intervenors to represent—faces an imminent injury, namely the threat that its law will not be enforced; Plaintiffs have caused that injury by creating that threat; and the Court would redress that injury by dismissing this suit. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Cases like this one illustrate why the State "must be able to designate agents to represent it in federal court," *Hollingsworth*, 570 U.S. at 709-10, just as Section 1-72.2 designates Proposed Intervenors.

Plaintiffs argue that Section 1-72.2 does not authorize Proposed Intervenors to intervene because "the General Assembly must first enact a resolution authorizing or directing the Speaker and the President [Pro Tempore] to intervene in a lawsuit before they may do so." Pls.' Opp'n at 18. That requirement simply does not exist in Section 1-72.2, which designates Proposed Intervenors as agents of the State whenever a state law is challenged. *See* N.C. GEN. STAT. § 1-72.2.

Plaintiffs nevertheless argue that Section 1-72.2 is "best read" not to mean what it says, Pls.' Opp'n at 19, for four reasons. First, they argue that it should require a resolution because "[a]n essential element of agency is the principal's right to control the agent's

4

actions." RESTATEMENT (THIRD) OF AGENCY § 1.01 cmt. f(1). But the General Assembly retains the authority to control Proposed Intervenors. If the Senate or House were dissatisfied with Proposed Intervenors' conduct in this litigation, it could relieve them of their leadership roles and hence of their representative capacities. *Cf. Karcher*, 484 U.S. at 81.

Second, Plaintiffs point out that other legislatures have passed resolutions designating member representatives for specific cases. Section 1-72.2 simply saves the General Assembly the trouble, establishing essentially a continuing resolution that Proposed Intervenors have authority to defend state statutes for the General Assembly, authority the Assembly conferred on Proposed Intervenors by giving them their leadership roles. That other states might structure things differently is of no moment.

Third, Plaintiffs argue that to apply Section 1-72.2 as written would cause an unconstitutional delegation of legislative power. *See* Pls.' Opp'n at 20. But the legislature has delegated power only to itself: Section 1-72.2 provides that "the General Assembly . . . constitutes the legislative branch" in federal suits about the validity of state laws and asks courts to allow "the legislative branch" to participate in such suits. N.C. GEN. STAT. § 1-72.2(a). Even Plaintiffs refer to Proposed Intervenors as "the General Assembly." *See, e.g.*, Pls.' Opp'n at 5. True, Proposed Intervenors are the Assembly's representatives in court. Yet they remain members of the legislature, so delegation concerns simply do not arise. *See Adams v. N.C. Dep't of Nat. & Econ. Res.*, 249 S.E.2d 402, 410 (N.C. 1978).

5

Finally, Plaintiffs argue that Section 1-72.2 violates the separation of powers because, by defending S.B. 824, Proposed Intervenors would interfere with the Governor's duty to "take care that the laws be faithfully executed." N.C. CONST. art. III, § 5(4). Plaintiffs imply that Section 1-72.2 creates this problem only "[i]f applied as the General Assembly claims." Pls.' Opp'n at 21. But if, as Plaintiffs say, deciding "how to defend the constitutionality of legislation[] is a uniquely executive function," then legislators violate the separation of powers whenever they defend a law, resolution or no resolution. Pls.' Opp'n at 22. That would mean that *Karcher* and its progeny condone constitutional violations, and that every example Plaintiffs cite to support their supposed resolution requirement was a constitutional violation as well. *See* Pls.' Opp'n at 19.

None of that is true, however, because defending a law is not the same as executing it. To execute a law means to put it into effect—to "abide by statutory mandates." *In re Aiken Cty.*, 725 F.3d 255, 259 (D.C. Cir. 2013). The Governor retains full authority to put S.B. 824 into effect by following its mandates; Proposed Intervenors seek only to defend it in court. And Plaintiffs' lone source for the proposition that defending laws is the sole province of the executive is a student note that in fact says the opposite. *See* Note, *Executive Discretion and the Congressional Defense of Statutes*, 92 YALE L.J. 970, 971 (1983) ("[T]his Note addresses the threshold jurisdictional issues raised by the congressional defense of federal statutes and concludes that no barrier exists to such congressional representation."); *accord I.N.S. v. Chadha*, 462 U.S. 919, 939 (1983) ("Congress is . . . a proper party to defend the constitutionality of [a federal law.]"). Besides, the Governor is

6

trying to leave this suit. So Proposed Intervenors could not interfere with his duty to defend S.B. 824 because he is not fulfilling it.

## II. Proposed Intervenors Are Entitled To Intervene as of Right.

Plaintiffs do not dispute that Proposed Intervenors have made a "timely motion" and that an injunction against S.B. 824 would "impair or impede" Proposed Intervenors' interest in seeing that law enforced. FED. R. CIV. P. 24(a)(2). They also do not dispute—or mention—this Circuit's view that "liberal intervention is desirable to dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency and due process." *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (quotation marks omitted). And all the arguments they do make lack merit.

### a. Proposed Intervenors Have a Significantly Protectable Interest in the Subject of this Suit.

Proposed Intervenors have a "significantly protectable" interest in the enforcement of a constitutionally valid law that the General Assembly enacted at the people of North Carolina's express command. *Donaldson v. United States*, 400 U.S. 517, 531 (1971). Plaintiffs say this interest amounts only to "strong feelings" about S.B. 824. Pls.' Opp'n at 5 (quoting *United States v. North Carolina*, No. 13-861, 2014 WL 494911, at *4 (M.D.N.C. Feb. 6, 2014)). But the Supreme Court has not been so dismissive: "No one doubts that a State has a cognizable interest in the continued enforceability of its laws that is harmed by a judicial decision declaring a state law unconstitutional." *Hollingsworth*, 570 U.S. at 709-10 (quotation marks and citation omitted); *see also Maine v. Taylor*, 477 U.S. 131, 137 (1986) ("[A] State clearly has a legitimate interest in the continued enforceability of its

7

own statutes"); *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2665 (2015) (holding that the Arizona legislature had an interest in preventing its laws from being "nullified"). Nor have this Court or the Fourth Circuit, which have both permitted Proposed Intervenors to defend North Carolina's interests pursuant to Section 1-72.2. *See* Proposed Intervenors' Mem. at 9-10. Indeed, the Court has already recognized Proposed Intervenors' interest in this case as "legitimate." Text Order (Feb. 4, 2019).

Proposed Intervenors' status as legislators and duty to defend S.B. 824 distinguish this case from those Plaintiffs cite—particularly the unpublished decision of this Court they cite most. *See North Carolina*, 2014 WL 494911, at *4 (denying a private group and individual's motion to intervene because the existing state defendants would "litigate vigorously"). Proposed Intervenors have not simply a general interest in vindicating the rule of law, but a specific interest in vindicating the law that Plaintiffs have challenged. And despite what Plaintiffs say, this case could affect the General Assembly's future ability to pass voter ID laws. For if this carefully crafted and voter-protective law is enjoined, the people of North Carolina have scant hope of seeing their voter ID amendment enforced. At a minimum an adverse outcome would constrain the General Assembly's options moving forward.

### b. The Governor and Board Have Demonstrated that They Will Not Adequately Represent Proposed Intervenors' Interest.

The Governor and Board have already shown that they will not mount the defense necessary to ensure S.B. 824's continued enforceability. In their Responses to the Motion to Intervene, neither argued that S.B. 824 is constitutional. They took no position on that

question at all, revealing that their defenses of S.B. 824 would "materially differ[]" from Proposed Intervenors', *see* Text Order (Feb. 4, 2019), and might be nonexistent.

Their Motions to Dismiss have confirmed that their positions significantly differ from Proposed Intervenors'. Neither contains so much as a passing assertion that S.B. 824 is constitutional. Instead, the Governor seeks primarily to excuse himself from this suit, happy to leave S.B. 824's defense in other hands. *See* Gov's. MTD Br. at 6-17. Yet the Board does not defend S.B. 824 either: it merely asks the Court to "refrain" from deciding this case, or to abstain from doing so until the concurrent state litigation over S.B. 824 is resolved. *See* Bd's. MTD Br. at 6, 13; *accord* Gov's. MTD Br. at 17-21 (also arguing for abstention). The strength of these arguments is questionable. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) ("Federal courts have a virtually unflagging obligation to exercise the jurisdiction given them." (cleaned up)). But whatever their strength they evince no intention to defend S.B. 824. Indeed, the Board's and Governor's abstention requests themselves evince doubt about S.B. 824's validity, for those requests reveal that they think S.B. 824's validity under the North Carolina Constitution is, in the Board's words, "far from settled." Bd's. MTD Br. at 11; *accord* Gov's. MTD Br. at 17–21.[1]

---

[1] Although the Board has baldly asserted in its state court briefing that S.B. 824 does not violate the North Carolina Constitution, its defense of S.B. 824's constitutionality has so far been a tepid one devoid of any substantive legal argument. *See* State Defs.' Br. at 6, *Holmes v. Moore*, No. 18 CVS 15292 (Wake Cty. Sup. Ct. Feb. 27, 2019). In contrast, Proposed Intervenors—who are named defendants in that case—have vigorously defended S.B. 824's constitutionality with over 70 pages of briefing. *See* Legislative Defs.' Br. in Supp. of the Mot. to Dismiss the Compl., *Holmes v. Moore*, No. 18 CVS 15292 (Wake Cty. Sup. Ct. Feb. 27, 2019); Legislative Defs.' Reply Br. in Supp. of the Mot. to Dismiss the Compl., *Holmes v. Moore*, No. 18 CVS 15292 (Wake Cty. Sup. Ct. Mar. 4, 2019).

Far from "refut[ing] the General Assembly's claims that they will not uphold th[eir] duties" to defend S.B. 824, then, the Governor's and Board's conduct proves those claims to be true. Pls.' Opp'n at 6. Our disagreement with the Governor and Board is not over whether "to emphasize certain legal arguments at the expense of others." *North Carolina*, 2014 WL 494911, at *3. We disagree over whether to defend S.B. 824 at all. It is therefore irrelevant that courts might not permit legislators to intervene "when the Executive Branch [i]s defending the same issue in the lawsuit." Pls.' Opp'n at 10. The Governor and Board's objective thus far is for the Court to avoid the issue of S.B. 824's constitutionality altogether. That objective "diverge[s]" starkly with Proposed Intervenors', and only increases the risk that this suit presents to their interest in the enforceability of S.B. 824. *Stuart v. Huff*, 706 F.3d 345, 352 (4th Cir. 2013). Proposed Intervenors therefore easily carry the "minimal" burden that, as even Plaintiffs admit, Rule 24(a) imposes in these circumstances. *Id*. at 351 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)).

### III.     Proposed Intervenors Are Also Entitled to Permissive Intervention.

Proposed Intervenors are entitled to intervene not only as of right but also pursuant to Rule 24(b)(1)(B), under which "the court may permit anyone to intervene who has a claim or defense that shares with the main action a common question of law or fact."[2] Plaintiffs' contention that Proposed Intervenors are not "eligible" to intervene under that

---

[2] Contrary to Plaintiffs' characterization, Proposed Intervenors do not seek intervention under Rule 24(b)(2)(B). Although the Motion cites that Rule, the language that the Motion actually quotes and relies upon comes from Rule 24(b)(1)(B).

10

Rule disregards that the Court has allowed Proposed Intervenors to do just that in other litigation. *See* Proposed Intervenors' Mem. at 16. It is also based on two false premises: first, that the Governor and Board will raise the same defenses as Proposed Intervenors, which the Governor and Board have disproven; and second, that Proposed Intervenors' legal defense of S.B. 824 would not constitute a "defense" under Rule 24(b)(1)(B), which of course it would. *See, e.g.*, *Diamond v. Charles*, 476 U.S. 54, 76 (1986) (O'Connor, J., concurring in part and in the judgment) ("The words 'claim or defense' manifestly refer to the kinds of claims or defenses that can be raised in courts of law as part of an actual or impending law suit[.]").

Finally, Plaintiffs' speculation that Proposed Intervenors would delay this suit by participating in it is unfounded. Plaintiffs overtly mischaracterize our opposition to their own effort to delay resolution of the instant Motion as requesting "an indefinite stay of all motions." Pls. Opp. at 14. In fact, we asked that the Court *deny* their requested extension. *See* Opp'n to Mot. for Extension of Time to Respond to Mot. to Intervene (Jan. 31, 2019), Doc. 25.

Proposed Intervenors will continue to adhere to whatever deadlines the Court sets. It is no doubt in Plaintiffs' interest that the Court not hear any arguments on S.B. 824's behalf. But it is in the Court's interest—and the people of North Carolina's—that it does. *See Feller*, 802 F.2d at 729.

11

Dated: March 5, 2019

/s/ Nicole J. Moss
COOPER & KIRK, PLLC
Michael W. Kirk
David H. Thompson
Peter A. Patterson
Nicole J. Moss (State Bar No. 31958)
Haley N. Proctor
Nicole Frazer Reaves
Joseph O. Masterman
1523 New Hampshire Avenue N.W.,
Washington, D.C. 20036
Telephone: (202) 220-9600
Fax: (202) 220-9601
nmoss@cooperkirk.com
*Counsel for Proposed Intervenors*

Respectfully submitted,

/s/ Nathan A. Huff
PHELPS DUNBAR LLP
4140 ParkLake Avenue, Suite 100
Raleigh, North Carolina 27612
Telephone: (919) 789-5300
Fax: (919) 789-5301
nathan.huff@phelps.com
State Bar No. 40626
*Local Civil Rule 83.1 Counsel for Proposed Intervenors*

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.3(d)(1), the undersigned counsel hereby certifies that the foregoing Reply contains 3,125 words (including headings and footnotes) as measured by Microsoft Word.

/s/ Nicole J. Moss
Nicole J. Moss

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that, on March 5, 2019, I electronically filed the foregoing Reply and accompanying exhibit with the Clerk of the Court using the CM/ECF system, which will send notification of such to all counsel of record in this matter.

/s/ Nicole J. Moss
Nicole J. Moss