# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### CIVIL ACTION NO. 1:18-cv-01034

NORTH CAROLINA STATE
CONFERENCE OF THE NAACP, *et al.*,

        Plaintiffs,

    v.

ROY ASBERRY COOPER III, in his
official capacity as the Governor of North
Carolina, *et al.*,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)

**PLAINTIFFS' OPPOSITION TO
GOVERNOR COOPER'S AND
SBOE'S MOTIONS TO DISMISS
OR, IN THE ALTERNATIVE, FOR
A STAY**

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1

STATEMENT OF FACTS ...................................................................................................... 3

DISMISSAL STANDARDS ................................................................................................... 5

ARGUMENT ........................................................................................................................... 6

I.      Sovereign Immunity Does Not Bar Plaintiffs' Claims Against Governor Cooper ............. 6

        A.      The VRA properly abrogated North Carolina's sovereign immunity. .................. 7

        B.      Governor Cooper is a proper party under the doctrine of *Ex parte Young*. ............ 9

                1.      Plaintiffs seek prospective relief for an ongoing and imminent injury as required by *Ex parte Young*. ..................................................................... 10

                2.      Governor Cooper's appointment and removal powers over the SBOE provide the connection to the enforcement of S.B. 824 that satisfies *Ex parte Young*. ........................................................................................... 11

                3.      Governor Cooper appoints and supervises other officials connected with the enforcement of S.B. 824. ................................................................... 12

                4.      Governors have "some connection" with VRA cases and are routinely named defendants. .................................................................................... 13

                5.      The cases cited by Governor Cooper are inapposite. ................................ 14

II.     This Court Should Not Invoke *Pullman* Abstention Or Stay This Case ........................... 15

        A.      Dismissal is not available when a court invokes *Pullman* abstention. ................. 16

        B.      *Pullman* abstention is a "narrow" and "extraordinary" course of action limited to cases where state statutes are unclear or unsettled. ............................................... 17

        C.      State court construction of S.B. 824 would not obviate the need to resolve this case's federal questions. ......................................................................................... 18

        D.      SBOE's alternative requests for a stay should be denied. ................................... 21

CONCLUSION ...................................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allen v. State Bd. of Elections*,
   393 U.S. 544 (1969) .......................................................................................... 9

*Atascadero State Hosp. v. Scanlon*,
   473 U.S. 234 (1985) .......................................................................................... 8

*Bartlett v. Strickland*,
   556 U.S. 1 (2009) ............................................................................................. 13

*City of Boerne v. Flores*,
   521 U.S. 507 (1997) .......................................................................................... 8

*City of Rome v. United States*,
   446 U.S. 156 (1980) ...................................................................................... 8, 9

*Cohens v. Virginia*,
   19 U.S. (6 Wheat) 264 (1821) ......................................................................... 17

*Colo. River Water Conserv. Dist. v. United States*,
   424 U.S. 800 (1976) ........................................................................................ 17

*Cooper v. Berger*,
   809 S.E.2d 98 (N.C. 2018) .............................................................................. 11

*Cunningham v. Gen. Dynamics Info. Tech., Inc.*,
   888 F.3d 640 (4th Cir. 2018) ............................................................................ 5

*Deakins v. Monaghan*,
   484 U.S. 193 (1988) .................................................................................. 17, 22

*Dekom v. New York*,
   No. 12–CV–1318, 2013 WL 3095010 (E.D.N.Y. Jun. 18, 2013) ................................ 7

*Doe v. Duling*,
   782 F.2d 1202 (4th Cir. 1986) ........................................................................ 10

*Donohoe Constr. Co. Inc. v. Montgomery Cty. Council*,
   567 F.2d 603 (4th Cir. 1977) .......................................................................... 18

*Educ. Servs.*, *Inc. v. Md. State Bd. for Higher Educ.*,
    710 F.2d 170 (4th Cir. 1983) ................................................................. 18

*Evans v. B.F. Perkins Co.*,
    166 F.3d 642 (4th Cir. 1999) ................................................................... 5

*Ex parte Yarbrough*,
    110 U.S. 651 (1884) ................................................................................ 21

*Ex parte Young*,
    209 U.S. 123 (1908) ........................................................................ *passim*

*FDIC v. Am. Bank Trust Shares, Inc. ("ABTS")*,
    558 F.2d 711 (4th Cir. 1977) ................................................................. 20

*Flanders Filters*, *Inc. v. Intel Corp.*,
    93 F. Supp. 2d 669 (E.D.N.C. 2000) ..................................................... 22

*Foster v. Love*,
    522 U.S. 67 (1997) .................................................................................. 21

*French v. Blackburn*,
    428 F. Supp. 1351 (M.D.N.C. 1977) ..................................................... 19

*Growe v. Emison*,
    507 U.S. 25 (1993) .................................................................................. 17

*Hall v. Louisiana*,
    983 F. Supp. 2d 820 (M.D. La. 2013) ..................................................... 7

*Harman v. Forssenius*,
    380 U.S. 528 (1965) ................................................................................ 20

*Harris v. McCrory*,
    159 F. Supp. 3d 600 (M.D.N.C. 2016) ................................................... 13

*Harrison v. NAACP*,
    360 U.S. 167 (1959) ................................................................................ 21

*Hawaii Hous. Auth. v. Midkiff*,
    467 U.S. 229 (1984) ................................................................................ 18

*Hutto v. S.C. Ret. Sys.*,
    773 F.3d 536 (4th Cir. 2014) ................................................................... 5

*Johnson v. De Grandy*,
  512 U.S. 997 (1994) ...................................................................................... 14

*Lake Carriers' Ass'n v. MacMullan*,
  406 U.S. 498 (1972) ...................................................................................... 19

*Martin v. Stewart*,
  499 F.3d 360 (2007) ......................................................................... 17, 18, 22

*Meredith v. Tablot Cty.*,
  828 F.2d 228 (4th Cir. 1987) ....................................................................... 16

*Mixon v. Ohio*,
  193 F.3d 389 (6th Cir. 1999) ...................................................................... 7, 8

*Morse v. Republican Party of Va.*,
  517 U.S. 186 (1996) ........................................................................................ 8

*N.C. State Conf. of the NAACP v. McCrory*,
  No. 1:13–CV–658, 2014 WL 12526713 (M.D.N.C. Mar. 27, 2014) ......................... 14

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*,
  491 U.S. 350 (1989) ................................................................................. 17, 18

*Nivens v. Gilchrist*,
  444 F.3d 237 (4th Cir. 2006) .................................................................... 6, 16

*Nken v. Holder*,
  556 U.S. 418 (2009) ........................................................................................ 6

*Perez v. Perry*,
  565 U.S. 388 (2012) ...................................................................................... 14

*Peter B. v. Sanford*,
  No. 6:10–767, 2010 WL 5684397 (D.S.C. Dec. 6, 2010) .................................... 14, 15

*Quackenbush v. Allstate Ins. Co.*,
  517 U.S. 706 (1996) ...................................................................................... 18

*Quern v. Jordan*,
  440 U.S. 332 (1979) ...................................................................................... 10

*Railroad Comm'n of Tex. v. Pullman Co.*,
  312 U.S. 496 (1941) ................................................................................*passim*

*Reaves v. U.S. Dep't of Justice*,
  355 F. Supp. 2d 510 (D.D.C. 2005) ............................................................... 7

*Shaw v. Reno*,
  509 U.S. 630 (1993) ...................................................................................... 13

*Shelby County v. Holder*,
  570 U.S. 529 (2013) ........................................................................................ 4

*Smiley v. Holm*,
  285 U.S. 355 (1932) ...................................................................................... 21

*South Carolina v. Katzenbach*,
  383 U.S. 301 (1966) ........................................................................................ 9

*Terrebonne Par. NAACP v. Jindal*,
  154 F. Supp. 3d 354 (M.D. La. 2015) ............................................................ 7

*United States v. Marengo Cty. Comm'n*,
  731 F.2d 1546 (11th Cir.) ............................................................................... 8

*Va. Hosp. Ass'n v. Baliles*,
  868 F.2d 653 (4th Cir. 1989) ........................................................................ 18

*Veasey v. Perry*,
  29 F. Supp. 3d 896 (S.D. Tex. 2014) ...................................................... 12, 13

*Verity v. Scott*,
  No. 2:12–CV–609–FTM–38, 2014 WL 3053171 (M.D. Fla. July 7,
  2014) .............................................................................................................. 7

*Waste Mgmt. Holdings*, *Inc. v. Gilmore*,
  252 F.3d 316 (4th Cir. 2001) ........................................................... 10, 14, 15

*White v. Alabama*,
  867 F. Supp. 1519 (M.D. Ala. 1994) ............................................................. 7

*Zwickler v. Koota*,
  389 U.S. 241 (1967) ................................................................................. 16, 18

## <u>Statutes</u>

42 U.S.C. § 1983 .................................................................................... 6, 7, 10

N.C. Gen. Stat. § 20–2(a) ............................................................................. 13

N.C. Gen. Stat. § 20–7(a) ............................................................................................ 13

N.C. Gen. Stat. § 20–37.7 ........................................................................................... 13

N.C. Gen. Stat. § 163–19 ............................................................................................ 12

N.C. Gen. Stat. § 163–28 ............................................................................................ 12

N.C. Gen. Stat. § 163A–1145 ..................................................................................... 13

N.C. Gen. Stat. § 163A–1147 ..................................................................................... 13

N.C. Gen. Stat. § 163A–2(a) ....................................................................................... 12

N.C. Gen. Stat. § 163A–741(a) ................................................................................... 12

N.C. Gen. Stat. § 163A–741(c) .............................................................................. 12, 13

N.C. Gen. Stat. § 163A–742 ........................................................................................ 12

N.C. Gen. Stat. § 163A–775(a) ................................................................................... 13

N.C. Gen. Stat. § 163A–775(b) ................................................................................... 13

N.C. Gen. Stat. § 163A–869.1 ..................................................................................... 13

Voting Rights Act, Section 2,

    54 U.S.C § 10301 .................................................................................................*passim*

Voting Rights Act, Section 3,

    52 U.S.C. § 10302(a) ........................................................................................... 8, 9

Voting Rights Act, Section 3,

    52 U.S.C. § 10302(c) ........................................................................................... 8, 9

**Other Authorities**

U.S. Const. amend. XI ...............................................................................................*passim*

U.S. Const. amend. XIV ....................................................................................... 1, 8, 22

U.S.Const. amend XV ..................................................................................... 1, 8, 9, 22

Fed. R. Civ. P. 12(b)(1) ................................................................................................ 5

Fed. R. Civ. P. 12(b)(2) ......................................................................................... 5

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 5

S. Rep. No. 94-295 (1975)..................................................................................... 10

Case 1:18-cv-01034-LCB-LPA   Document 50   Filed 03/21/19   Page 8 of 33

# INTRODUCTION

This case is  a challenge to North Carolina's most recent photo voter ID law ("S.B. 824") under Section 2 of the Voting Rights Act, 54 U.S.C § 10301, and the Fourteenth and Fifteenth Amendments.  Plaintiffs (the North Carolina State Conference of the NAACP and several local NAACP branches) have sued Defendants Governor Roy Cooper and the members of North Carolina's State Board of Elections, all in their official capacities (collectively "Defendants"), and asked this Court to declare S.B. 824 invalid and to enjoin Defendants from enforcing the new law because doing so would disproportionately deny Black and Latino voters in North Carolina their fundamental right to vote.

Governor Cooper has moved to dismiss the claims against him on the grounds that they are barred by sovereign immunity and that this Court should abstain from hearing this case under the *Pullman* doctrine because S.B. 824 is simultaneously being challenged in state court litigation that does not involve the Plaintiffs here.  None of these arguments have merit.  Any suggestion that sovereign immunity shields the Governor from claims under the Voting Rights Act—and it is not clear whether he makes this argument—is a non-starter because the Voting Rights Act abrogates state sovereign immunity.  Even as to claims for which the State's sovereign immunity remains intact, the Governor's relation to the implementation and enforcement of S.B. 824 is sufficient to render him a proper party under the doctrine of *Ex parte Young*.

Governor Cooper's abstention argument, joined by the SBOE, fares no better. Defendants argue that all of Plaintiffs' claims must be dismissed because this Court

should abstain from hearing this case under the *Pullman* abstention doctrine and defer to the pending state court challenge to S.B. 824.  The motion to dismiss on this ground must fail because dismissal is not the appropriate result of a federal court's invocation of *Pullman* abstention.  At most, the Court would stay litigation and retain jurisdiction pending the outcome of the state court case.

No stay is warranted in this case because *Pullman* abstention is appropriate only where a challenged state law is ambiguous and could be clarified in pending state court litigation in a way that would eliminate the need for any adjudication of federal law.  But S.B. 824 is *unambiguous* and will not be clarified in the state court litigation, let alone in a manner that eliminates Plaintiffs' facial challenge to the law under the Voting Rights Act and the Constitution.  *Pullman* abstention is invoked only when the same plaintiff has brought state and federal claims simultaneously, not where, as here, the state litigation is brought by a non-party to this federal lawsuit.

Finally, the SBOE seeks to dismiss or stay this litigation on vaguely pled federalism grounds.  This "separate" argument is really a standardless repetition of their defective *Pullman* abstention argument.  Abstention is appropriate only in narrow and extraoridinary circumstances and this case fits none of them.  This Court should reject the SBOE's invitation to engage in freehand revision of its jurisdiction, which is established by Congress.  Granting a stay of this litigation for any reason would cause unreasonable delay, threatening irreparable harm to Plaintiffs' exercise of their constitutional and statutory rights to vote.

## STATEMENT OF FACTS

Last November, the North Carolina legislature called a lame duck special session in order to adopt a new state voter ID law, S.B. 824. The legislature that enacted S.B. 824 was one that this Court found had been unconstitutionally gerrymandered with racially discriminatory intent, in order to preserve a Republican "supermajority." S.B. 824 is a discriminatory photo voter ID law that was passed by a legislature that is the product of an intentional, unconstitutional racial gerrymander. The extremist Republican supermajority that came to power through these racially discriminatory maps passed S.B. 24 during a lame duck special session this past November, knowing that they would soon lose their supermajority stronghold when a newly-elected legislature, elected under court-ordered remedial maps, would be soon be seated and that such a lame duck special session would be its last chance to use its ill-gotten supermajority to override the Governor's veto and put a discriminatory photo voter ID law on the books.

S.B. 824 requires voters to show one of a limited number of forms of photo identification in order to vote in North Carolina. (Compl. ¶ 5). It also expands the number of poll observers, and expands the grounds on which any voter may challenge a ballot cast. (Compl. ¶¶ 5, 80). Plaintiffs allege that the voter identification requirements will impose a substantial burden on voters with literally no justification, and will disproportionately injure Black and Latino voters, who are less likely than other members of the electorate to possess the required forms of identification and who also face disproportionate burdens in obtaining such identification. (Compl. ¶¶ 5, 83). Plaintiffs also challenge the increases in numbers of poll observers and grounds for challenging a

3

voter's ballot. (Compl. ¶ 86).

S.B. 824 is the latest example in a long history of discriminatory and restrictive voting rights practices in North Carolina. (Compl. ¶ 6). Prior to the Supreme Court's holding in *Shelby County v. Holder*, 570 U.S. 529 (2013), forty-one North Carolina counties were covered jurisdictions under the Voting Rights Act of 1965 ("VRA") and were thus subject to federal preclearance requirements. (Compl. ¶¶ 6, 24). Over the past thirty years, the U.S. Department of Justice has objected more than sixty times to changes in North Carolina voting laws. (Compl. ¶¶ 6, 29). North Carolina's previous attempt to legislate a photo voter ID requirement, which was enacted in 2013, was struck down in 2017 by the U.S. Court of Appeals for the Fourth Circuit, which held that it had been passed with racially discriminatory intent (Compl. ¶ 56) and, of course, the legislature that adopted both the 2013 voter ID law and the one being challenged here was the fruit of an unconstitutional racial gerrymander. (Compl. ¶ 31). Plaintiffs allege that there is no rational relationship between the in-person voter identification requirements of S.B. 824 and preventing actual voter fraud in North Carolina. (Compl. ¶¶ 84–85). Moreover, S.B. 824 imposes significant burdens on minority voting rights. (Compl. ¶¶ 80–83, 86).

Defendants are North Carolina Governor Roy Cooper ("Governor Cooper") and the members of the North Carolina State Board of Elections ("SBOE"). (Compl. ¶¶ 20–23). They are all sued in their official capacities. (Compl. ¶¶ 20–23). The Governor is responsible for appointing the members of the SBOE, and can remove them. (Compl. ¶ 20). He also receives recommendations from SBOE "relative to the conduct and administration of the primaries and elections in North Carolina." (Compl. ¶ 20). The

SBOE is responsible for administering the election laws of the State of North Carolina. (Compl. ¶¶ 21–23).

Plaintiffs ask the Court to enjoin enforcement of S.B. 824 and to retain jurisdiction and require preclearance of future changes to voting procedures in the state.

## DISMISSAL STANDARDS

Governor Cooper seeks dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, 12(b)(2) for lack of personal jurisdiction, and 12(b)(6) for failure to state a claim upon which relief can be granted. *See* Cooper Mem. at 5–6. The SBOE seeks to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

In the Fourth Circuit, challenges to a complaint on the basis of sovereign immunity are treated as a challenge to subject matter jurisdiction. *See Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018). In a challenge to subject matter jurisdiction pursuant to Rule 12(b)(1), the district court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). "The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (citation and internal quotation marks omitted).

Where a state governmental actor asserts Eleventh Amendment immunity, the moving party bears the burden to demonstrate that it is entitled to sovereign immunity. *See Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 542–43 (4th Cir. 2014) (Fourth Circuit joins "every other court of appeals that has addressed this issue" in supporting this

proposition).

Where a party moves for abstention, the appropriate remedy is a stay, not dismissal. *Nivens v. Gilchrist*, 444 F.3d 237, 245–46 (4th Cir. 2006). If this Court is inclined to invoke abstention, the Court should retain jurisdiction and stay these proceedings. "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009) (citations omitted).

## ARGUMENT

### I. Sovereign Immunity Does Not Bar Plaintiffs' Claims Against Governor Cooper

Governor Cooper appears to assert an Eleventh Amendment sovereign immunity defense only as to Plaintiffs' claims under 42 U.S.C. § 1983 (Counts II and III) and *not* with respect to the Voting Rights Act claim (Count I). *See* Cooper Mem. at Sections I and II. The Governor's sole argument for dismissal of the Voting Rights Act claim appears to be abstention.[1]

Any argument that Governor Cooper could make that sovereign immunity bars Plaintiffs' Voting Rights Act claim against him would fail because Congress abrogated

---

[1] The first heading in the "Argument" section of Governor Cooper's memorandum states: "The Eleventh Amendment Bars Plaintiffs' *Section 1983* Claims Against Defendant Cooper." Cooper Mem. at 6 (emphasis added). Plaintiffs' VRA claim is not brought under § 1983 and therefore is not a §1983 claim. However, in the first sentence under that heading, Governor Cooper's memorandum states: "Plaintiffs' Complaint should be dismissed because the Eleventh Amendment bars *all* of the claims brought against Governor Cooper." *Id.* (emphasis added). Because of this ambiguity, Plaintiffs address the applicability of the Eleventh Amendment to the VRA claim on the merits.

Eleventh Amendment immunity in Sections 2 and 3 of the statute. The Governor therefore has no immunity to assert against the Voting Rights Act claim. The Eleventh Amendment argument also fails with respect to Plaintiffs' § 1983 claims because the Governor has a sufficient nexus to the enforcement and implementation of S.B. 824 to make him a proper defendant to claims for prospective injunctive relief, placing him squarely within the bounds of the *Ex parte Young* doctrine.

### A.      The VRA properly abrogated North Carolina's sovereign immunity.

Twenty years ago, after thorough analysis, the Sixth Circuit held that Section 2 of the Voting Rights Act, which forms the basis for Plaintiff's claims here, abrogates Eleventh Amendment immunity. *See Mixon v. Ohio*, 193 F.3d 389, 399 (6th Cir. 1999). Since that time, the overwhelming majority of courts to address this issue have reached this same conclusion. *See, e.g.*, *Terrebonne Par. NAACP v. Jindal*, 154 F. Supp. 3d 354, 359 (M.D. La. 2015); *Verity v. Scott*, No. 2:12-CV-609-FTM-38, 2014 WL 3053171, at *6 (M.D. Fla. July 7, 2014); *Hall v. Louisiana*, 983 F. Supp. 2d 820, 830 (M.D. La. 2013); *Dekom v. New York*, No. 12-CV-1318, 2013 WL 3095010, at *10 (E.D.N.Y. Jun. 18, 2013), *aff'd* 583 F. App'x 15 (2d Cir. 2014); *Reaves v. U.S. Dep't of Justice*, 355 F. Supp. 2d 510, 515 (D.D.C. 2005); *White v. Alabama*, 867 F. Supp. 1519, 1540 (M.D. Ala. 1994), *vacated on other grounds by* 74 F. 3d 1058 (11th Cir. 1996); *see also United States v. Marengo Cty. Comm'n*, 731 F.2d 1546, 1560–61 (11th Cir.), *cert. denied*, 469 U.S. 976 (1984).    And with good reason.

Congress may abrogate states' Eleventh Amendment sovereign immunity by "making its intention [to abrogate] unmistakably clear in the language in the statute" and

acting pursuant either to a valid exercise of its power under Section 5 of the Fourteenth Amendment or to a valid exercise of congressional authority pursuant to the Fifteenth Amendment. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242 (1985); *see City of Rome v. United States*, 446 U.S. 156, 179 (1980) (concluding that Congress abrogated states sovereign immunity in enacting the VRA as an exercise of congressional authority to "enforce the Civil War Amendments by appropriate legislation") (citations and internal quotation marks omitted). The VRA meets both of these conditions.

The Supreme Court and other federal courts have concluded that the Voting Rights Act constitutes a valid exercise of congressional authority under the enforcement provisions of the Fifteenth Amendment. *See City of Boerne v. Flores*, 521 U.S. 507, 518 (1997); *accord City of Rome*, 446 U.S. at 179–80; *Mixon*, 193 F.3d at 399. The statute also contains an explicit abrogation of state sovereign immunity. Section 2 of the VRA "specifically prohibits 'any State or political subdivision' from discriminating against voters on the basis of race." *Mixon*, 193 F.3d at 398 (quoting Section 2 of the VRA). This clear language constitutes an "affirmative response" to the question of "whether Congress intended to abrogate the States' sovereign immunity under the Voting Rights Act." *Id.* Section 3 of the Voting Rights Act further provides that any "aggrieved person" may "institute[] a proceeding" under the Act, 52 U.S.C. §§ 10302(a)–(c), thereby authorizing suits by private parties against "any State or political subdivision" for violations of Section 2. *See Morse v. Republican Party of Va.*, 517 U.S. 186, 133 (1996) (Stevens, J.); *id.* at 240 (Breyer, J. concurring); *id.* at 289 (Thomas, J., dissenting).

Historically, the Voting Rights Act was enacted to address the "insidious and

pervasive evil" of racial discrimination in voting perpetrated by states, *South Carolina v. Katzenbach*, 383 U.S. 301, 309 (1966), and was "specifically designed as an expansion of federal power and an intrusion on state sovereignty." *City of Rome*, 446 U.S. at 179. Its abrogation of state sovereign immunity is therefore both consistent with, and necessary to, the statute's pruposes. *See Allen v. State Bd. of Elections*, 393 U.S. 544, 557 (1969) (recognizing a private right of enforcement in the VRA and asserting that absent such a right the guarantees of the VRA "might well prove an empty promise").[2] Governor Cooper therefore cannot assert a sovereign immunity defense to Plaintiffs' Voting Right Act claim because the statute abrogates sovereign immunity.

## B. Governor Cooper is a proper party under the doctrine of *Ex parte Young*.

Governor Cooper's Eleventh Amendment sovereign immunity defense to Plaintiffs' claims under § 1983 also fails because Governor Cooper is a proper defendant for the separate and independent reason that he falls within the exception to sovereign immunity under *Ex parte Young*.[3]

The *Ex parte Young* doctrine is an exception to Eleventh Amendment immunity

---

[2] In describing the purpose of the 1975 amendments to the VRA, the Senate Judiciary Committee explained that they were "to afford to private parties the same remedies which Section 3 now affords only to the Attorney General." S. Rep. No. 94-295 at 39–40 (1975).

[3] Even if the Voting Rights Act did not abrogate Governor Cooper's Eleventh Amendment sovereign immunity, the Governor would still be a proper defendant for Plaintiffs' Voting Rights Act claims under *Ex parte Young*.

.

that allows Plaintiffs to seek prospective equitable relief from federal courts against state officials who violate federal law. *See* 209 U.S. 123, 159–60 (1908); *Waste Mgmt. Holdings*, *Inc. v. Gilmore*, 252 F.3d 316, 329 (4th Cir. 2001). A state official may be sued under this exception where the officer "has some connection with the enforcement of the act." *Ex parte Young*, 209 U.S. at 157. Here, Plaintiffs seek prospective relief to enjoin defendants from enforcing S.B. 824. Governor Cooper is connected to the enforcement of S.B. 824 due to his appointment and removal powers over all members of the SBOE, his appointment and removal powers over key officials responsible for issuing the most prevalent forms of identification under S.B. 824, and the historically close ties between state governors and the Voting Rights Act.

### 1. Plaintiffs seek prospective relief for an ongoing and imminent injury as required by *Ex parte Young*.

"[A] federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law." *Quern v. Jordan*, 440 U.S. 332, 337 (1979) (citations omitted); *see Ex parte Young*, 209 U.S. at 155–56.[4] Because Plaintiffs seek an order to enjoin state officials to conform their future conduct to the requirements of the Voting Rights Act and the Constitution, the relief sought is prospective and *Ex parte Young* applies.

---

[4] Defendants suggest that under *Doe v. Duling*, 782 F.2d 1202 (4th Cir. 1986), Plaintiffs must show ongoing and imminent injury under *Ex parte Young*. However, *Duling* does not address the *Ex parte Young* exceptionion; it concerns the special requirements that litigants must meet to challenge the validity of a *criminal* statute. *Id.* at 1205–06. This case has no application here.

2. **Governor Cooper's appointment and removal powers over the SBOE provide the connection to the enforcement of S.B. 824 that satisfies *Ex parte Young*.**

Under *Ex parte Young*, "[t]he fact that the state officer, by virtue of his office, has some connection with the enforcement of [a challenged] act" is sufficient to permit a plaintiff to bring suit in federal court against that officer, in his official capacity, for prospective injunctive relief, if the "act" violates federal law. *Ex parte Young*, 209 U.S. at 157. A state official does not need to have a special duty under the challenged law itself to satisfy this requirement, because an "equally efficacious" duty "might exist by reason of the general duties of the officer to enforce it as a law of the state." *Id.*

Governor Cooper has the power to appoint all five members of the SBOE, N.C. Sess. Law 2018-146, Sec. 3.2(a) (to be codified at N.C. Gen. Stat. § 163-19), and to remove and replace any member of the SBOE at his discretion. *See* N.C. Sess. Law 2018-146, Sec. 3.2(f) (to be codified at N.C. Gen. Stat. § 163–28) (removing language from § 163-28 that the SBOE "shall be and remain an independent regulatory and quasi-judicial agency"); *see also Cooper v. Berger*, 809 S.E.2d 98, 118 (N.C. 2018) (striking down as unconstitutional N.C. Gen. Stat. § 163A-2(a), which previously governed the structure of the SBOE, in part because that law circumscribed the Governor's authority to remove SBOE members). If the photo voter ID law is held unconstitutional or invalid, the SBOE "shall have authority to make reasonable interim rules and regulations with respect to the pending primary or election." *See id.* § 163A-742.

The SBOE, which is appointed and influenced by the Governor, supervises primary and general elections throughout North Carolina. *Id.* § 163A-741(a). It appoints

all members of the county boards of elections, and advises them "as to the proper methods of conducting primaries and elections." *Id.* § 163A-741(c). The SBOE also has the "power to remove from office any member of a county board of elections for incompetency, neglect, or failure to perform duties, fraud, or for any other satisfactory cause," *id.* § 163A-741(c), and to terminate the employment of a county board's director of elections. *Id.* § 163A-775(a)-(b). These local election officials would have direct responsibility for implementing S.B. 824, based on rules created by the SBOE and in connection with the county boards of elections. *See id.* §§ 163A-1145-1147.

In *Veasey v. Perry*, 29 F. Supp. 3d 896 (S.D. Tex. 2014), the court held that the Texas governor's power to appoint officials who serve at his pleasure with broad authority over all aspects of elections and implementation of the challenged law, was a sufficient connection to make him a proper defendant under *Ex parte Young*. *See Veasey*, 29 F. Supp. 3d at 923. Here, Governor Cooper's power to appoint and remove members of the SBOE, who have broad authority over elections, county boards of elections, local election officials, and the implementation of S.B. 824, likewise provides the conection to the challenged law as required by *Ex parte Young*, 209 U.S. at 157.

### 3. Governor Cooper appoints and supervises other officials connected with the enforcement of S.B. 824.

Governor Cooper is also connected to the enforcement of S.B. 824 through his appointment (directly and indirectly) of the officials who issue the most prevalent forms of qualifying identification, including the Secretary of Transportation and the Commissioner of Motor Vehicles (driver's licenses and special identification cards), and

county board of elections (voter photo identification cards).

The Governor appoints and supervises the Secretary of Transportation, who in turn appoints and supervises the Commissioner of Motor Vehicles. *See* N.C. Gen. Stat. § 20-2(a). The DMV, through the Commissioner of Motor Vehicles, issues all driver's licenses and special identification cards in North Carolina. N.C. Gen. Stat. §§ 20-7(a), 20-37.7. Moreover, the Governor, through the SBOE, also indirectly appoints the county boards of elections, who issue voter photo identification cards under S.B. 824. N.C. Gen. Stat. § 163A-869.1.

In *Veasey*, the court found that another aspect of the Texas Governor's connection to the challenged law was his power to appoint officials who in turn select a director to oversee the issuance of driver's licenses and other photographic identification. *See Veasey*, 29 F. Supp. 3d at 923–24. Similarly here, Governor Cooper appoints the Secretary of Transportation, who in turn selects the Commissioner of Motor Vehicles, who oversees the issuance of driver's licenses and special identification cards. Governor Cooper also appoints the members of the SBOE, who in turn select the county board of elections, who oversee the issuance of voter photo identification cards.

### 4. Governors have "some connection" with VRA cases and are routinely named defendants.

Governors are routinely named defendants in VRA cases, including in North Carolina. *See*, *e.g.*, *Bartlett v. Strickland*, 556 U.S. 1, 8 (2009) (VRA action against the Governor of North Carolina); *Shaw v. Reno*, 509 U.S. 630, 637 (1993) (same); *Harris v. McCrory*, 159 F. Supp. 3d 600 (M.D.N.C. 2016), *aff'd sub nom. Cooper v. Harris*, 137 S.

Ct. 1455 (2017) (same); *N.C. State Conf. of the NAACP v. McCrory*, No. 1:13-CV-658, 2014 WL 12526713, at *1 (M.D.N.C. Mar. 27, 2014) (same); *see also, e.g.*, *Johnson v. De Grandy*, 512 U.S. 997, 1000 (1994) (VRA action against the Governor of Florida); *Perez v. Perry*, 565 U.S. 388 (2012) (VRA action against the Governor of Texas). Courts have found that this connection between governors and VRA cases provides a sufficient connection to a challenged election law under *Ex parte Young*. *See*, *e.g.*, *Veasey*, F. Supp. 3d at 924 ("Plaintiffs also point out that a state governor is a proper defendant, as shown by other election law cases."). Governor Cooper is a proper party because he can be ordered to direct the state not to enforce S.B. 824 if it violates Section 2 of the VRA, and he can be ordered to refrain from implementing future changes in voting procedures until they have been submitted and precleared by the court. Further, as discussed above, the Court could order the Governor to direct SBOE members to comply with the VRA, and if they do not, remove them and reappoint SBOE members who will comply with the VRA.

### 5. The cases cited by Governor Cooper are inapposite.

In arguing that he does not fall within the bounds of *Ex parte Young*, Governor Cooper relies on *Waste Management Holdings*, *Inc. v. Gilmore*, 252 F.3d 316 (4th Circ. 2001), and *Peter B. v. Sanford*, No. 6:10-767, 2010 WL 5684397 (D.S.C. Dec. 6, 2010), but both are distinguishable. In *Waste Management*, the court concluded that the governor's general enforcement powers did not establish a sufficient connection to the challenged state landfill laws under *Ex parte Young*, despite his active public defense of the law. *See Waste Mgmt.*, 252 F.3d at 330–31. By contrast, Governor Cooper's

14

connection to S.B. 824 is much stronger: he has a special connection to S.B. 824 under the VRA, and he appointed, and has the power to remove, all of the officials in charge of elections and issuing the most prevalent forms of identification required by S.B. 824. These connections are much clearer than general enforcement power and public statements in support of, or against, the challenged legislation.

Likewise, in *Peter B.*, "nearly all" of the Governor's connections to the reduction in services provided by the state to individuals with disabilities were in the nature of the general enforcement responsibilities of a governor, and failures to appoint members of an advisory board. 2010 WL 5684397, at *3. Here, Governor Cooper is connected to S.B. 824 not only through his general enforcement powers, but also due to specific statutory responsibilities related to S.B. 824 including his powers to appoint and remove SBOE members, appointment of the key officials who issue required identification, and the nature of this matter as a VRA action. Further, *Peter B.* does not state the law of the Fourth Circuit when it says that appointment and removal powers are insufficient under *Ex parte Young*. *Waste Management* made no such statement.

The Governor here not only has general obligations to enforce the law, but also has a specific connection to the implementation of S.B. 824 due to his appointment and removal power over all of the arms of state government that will put S.B. 824 into effect. He necessarily influences the implementation voting laws by state and county election boards.

## II.    This Court Should Not Invoke *Pullman* Abstention Or Stay This Case

Defendants argue in the alternative that this Court should invoke abstention under

*Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941); abstention would be inappropriate here. *Pullman* abstention is a limited course of action that allows a federal court to stay proceedings temporarily, while the parties litigate an issue of state law in state court. This type of abstention is applicable only when a statute is susceptible to a limiting construction, which would obviate the need to resolve the federal question. *See Zwickler v. Koota*, 389 U.S. 241, 251 & n.14 (1967). This limited concept is inapplicable to S.B. 824. Neither the SBOE nor Cooper has identified a single provision in S.B. 824 that could be construed in a way to obviate the need to address Plaintiffs' federal law challenges to S.B. 824. Defendants' assertion that the mere presence of state litigation—with which Plaintiffs have no involvement—is sufficient for a federal court to abstain from exercising otherwise proper jurisdiction would stretch abstention doctrine far beyond the narrow limits imposed by the Supreme Court and the Fourth Circuit.

### A. Dismissal is not available when a court invokes *Pullman* abstention.

The Fourth Circuit has consistently held that when federal courts invoke *Pullman* abstention, the court should retain jurisdiction over the lawsuit and stay the proceedings pending resolution of state court litigation. Dismissal is not an option. *See*, *e.g.*, *Nivens*, 444 F.3d at 245–46 (the proper procedure is to "retain jurisdiction over the case, but stay the proceedings so that state courts can rule on the state law question"); *Meredith v. Tablot Cty.*, 828 F.2d 228, 232 (4th Cir. 1987) (noting that "[t]he usual rule is to retain jurisdiction in *Pullman* situations").

**B.** *Pullman* **abstention is a "narrow" and "extraordinary" course of action limited to cases where state statutes are unclear or unsettled.**

For nearly two centuries, the Supreme Court has recognized that when a case falls within a federal court's limited jurisdiction, the court has a "virtually unflagging obligation" to hear the case. *Deakins v. Monaghan*, 484 U.S. 193, 203 (1988) (quoting *Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817 (1976)); *see Cohens v. Virginia*, 19 U.S. (6 Wheat) 264, 404 (1821) (the Supreme Court has "no . . . right to decline the exercise of jurisdiction which is given"); *accord Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) ( "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress"). A federal court ignoring a case within its jurisdiction would upset the separation of powers, which allows "Congress, and not the Judiciary, [to] defin[e] the scope of federal jurisdiction." *New Orleans Pub. Serv.*, *Inc. v. Council of City of New Orleans* ("*NOPSI*"), 491 U.S. 350, 358–59 (1989).

Because the obligation to exercise jurisdiction is unflagging and finds its roots in the basic structure of our government, the Supreme Court has recognized only "extraordinary and narrow exception[s]" to the federal courts' duty to hear cases within their jurisdiction. *Martin v. Stewart*, 499 F.3d 360, 363 (4th Cir. 2007) (quoting *Quackenbush*, 517 U.S. at 716). Under these exceptions, courts may abstain from deciding a constitutional question of law solely when "principles of federalism and comity" outweigh the federal interest in deciding a case. *Quackenbush*, 517 U.S. at 728 (quoting *Growe v. Emison*, 507 U.S. 25, 32 (1993)). "This balance only rarely favors abstention." *Id.*

17

To ensure that abstention is rarely invoked and "remains the exception, not the rule," *Martin*, 499 F.3d at 363, the Supreme Court has "carefully defined . . . the areas in which such abstention is permissible." *NOPSI*, 491 U.S. at 359 (internal quotation marks omitted) (quoting *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984)). One such exception is *Pullman* abstention, which courts have limited to cases (1) that present "an unclear issue of state law[,]" *Educ. Servs.*, *Inc. v. Md. State Bd. for Higher Educ.*, 710 F.2d 170, 174 (4th Cir. 1983); and (2) that if decided a certain way, "may moot or present in a different posture the federal constitutional issue such that the state law issue is potentially dispositive," *id.* (internal quotation marks omitted) (quoting *Donohoe Constr. Co. Inc. v. Montgomery Cty. Council*, 567 F.2d 603, 607 (4th Cir. 1977)).

The absence of an "unclear issue of state law" is "[f]atal" to any argument to invoke *Pullman* abstention: "It is obvious that, where no issue of state law exists, the federal constitutional issue cannot be avoided by a definitive ruling on the state issue." *Donohoe*, 567 F.2d at 607 (internal quotation marks omitted) (quoting *Pullman*); *see Va. Hosp. Ass'n v. Baliles*, 868 F.2d 653, 664 (4th Cir. 1989) (declining to invoke *Pullman* abstention because the case did not present any issues of "unsettled" state law).

### C. State court construction of S.B. 824 would not obviate the need to resolve this case's federal questions.

Defendants have not established that the state court's construction of S.B. 824 would obviate this Court's duty to resolve this case's federal questions. The Supreme Court has "frequently emphasized that abstention is not to be ordered unless the statute is of an uncertain nature, and is obviously susceptible of a limiting construction." *Zwickler*,

18

389 U.S. at 251 n.14; *see Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 510 (1972) ("The paradigm case for abstention arises when the challenged state statute is susceptible of 'a construction by the state courts that would avoid or modify the (federal) constitutional question.") "Where the statute which is attacked is clear and unambiguous on its face and is attacked as unconstitutional on its face, abstention is improper." *French v. Blackburn*, 428 F. Supp. 1351, 1354 n.5 (M.D.N.C. 1977). It may well be that there are state law grounds to strike down S.B. 824, but that is irrelevant under *Pullman* if the statute itself is clear on its face.

Neither the Governor nor the SBOE has identified any provision of S.B. 824 that is subject to a limiting construction that would obviate the need for federal litigation. This failure is unsurprising: Plaintiffs bring a facial challenge to S.B. 824, and no reading of the law would moot the federal questions in this case or make it unnecessary for this Court to adjudicate them.

Rather than point to some lack of clarity or ambiguity in S.B. 824, Defendants appear to claim that a law is unsettled or unclear any time there is litigation in a state court that could strike down the state law—even if plaintiffs in the federal lawsuit are uninvolved in the state court lawsuit. Cooper Mem. at 18; SBOE Mem. at 11. *Pullman* abstention does not extend nearly that far and neither this Court nor the Supreme Court has held that a federal court should invoke *Pullman* abstention simply because there is

litigation in state court over the same statute brought by an entirely different party.[5]

If the statutory language is clear, it does not matter whether a state court has had a prior opportunity to rule on its meaning. As the Fourth Circuit has explained, when "the statutes themselves are relatively clear, and the case does not appear to be of the type where a vaguely worded state statute may be authoritatively construed by a state court so as to obviate federal constitutional questions," *Pullman* abstention is inappropriate even when "there is little or no state authority bearing upon the . . . statutes in question." *FDIC v. Am. Bank Trust Shares, Inc. ("ABTS")*, 558 F.2d 711, 715 n.11 (4th Cir. 1977); *accord Harman v. Forssenius*, 380 U.S. 528, 534–35 (1965) ("If the state statute in question, although never interpreted by a state tribunal, is not fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question, it is the duty of the federal court to exercise its properly invoked jurisdiction.").

The Defendants bear the burden of establishing that the statute is unclear, and Defendants have failed to do so. *See Harman*, 380 U.S. at 535–36. The Supreme Court has declined to invoke *Pullman* abstention when a party fails to point to a single issue on which the statute can be interpreted in a way that would avoid the federal question. *See*

---

[5] Defendants argue that state litigation brought by the NC NAACP in Wake County Superior Court where the court ruled the constitutional amendment invalid warrants *Pullman* abstention. (N.C. State Conference of NAACP Ex. A 12–13). The validity of S.B. 824, the legislation implementing the constitutional amendment, however, was not the subject of that ruling, and it therefore does not moot the federal questions in this case or relieve the Court of the responsibility to adjudicate them.

*id.* (refusing to invoke *Pullman* abstention because "the State does not point to any provision in the legislation which leaves 'reasonable room for a construction by the Virginia courts which might avoid in whole or in part the necessity for federal constitutional adjudication, or at least materially change the nature of the problem.'") (quoting *Harrison v. NAACP*, 360 U.S. 167, 177 (1959)). SBOE's request for stay should therefore be denied.

### D. SBOE's alternative requests for a stay should be denied.

The SBOE argues two additional rationales for this Court to grant a stay. Neither has merit. First, the SBOE argues that this Court should stay this case because the Constitution's Elections Clause "grants power to regulate elections to the states." SBOE Mem. at 7. That may be true, but the Constitution also grants Congress the power to enforce the rights to equal protection of the laws and to vote through the Fourteenth and Fifteenth Amendments. Also, the SBOE's argument seems to ignore that the Elections Clause itself reserves the right of Congress to enact "a complete code for congressional elections, not only as to times and places, but in relation to notices, registration, supervision of voting, [and] protection of voters, . . . ." *Smiley v. Holm*, 285 U.S. 355, 366 (1932); *see Foster v. Love*, 522 U.S. 67, 69 (1997) (recognizing that the Elections Clause allows federal laws that preempt state primary rules); *Ex parte Yarbrough*, 110 U.S. 651, 664–65 (1884) (recognizing that the Elections Clause allows federal laws prohibiting voter intimidation). Also, the SBOE's argument seems to preclude federal courts from ever hearing election law cases when state courts are also hearing litigation.

Second, the SBOE argues that the Court should grant a stay "to avoid unnecessary

duplicative litigation and conserve judicial resources." SBOE Mem. at 13 (quoting *Flanders Filters*, *Inc. v. Intel Corp.*, 93 F. Supp. 2d 669, 673–74 (E.D.N.C. 2000)). The SBOE's invocation of federalism and the Elections Clause do not fit within any established doctrine of abstention, and thus cannot obviate a federal court's "virtually unflagging obligation," *Deakins*, 484 U.S. at 203, to hear a case—like this one—that is within its jurisdiction. *See Martin*, 499 F.3d at 364 ("[T]he Supreme Court has *never* allowed abstention to be a license for free-form *ad hoc* judicial balancing of the totality of state and federal interests in a case. The Court has instead defined specific doctrines that apply in particular classes of cases.").

Additionally, granting a stay under either of SBOE's alternative theories would cause unreasonable delay and irreparable prejudice to Plaintiffs' enforcement of their federal constitutional and statutory rights to vote free from racial discrimination. Plaintiffs seek to strike down an unconstitutional law, passed by a racially-gerrymandered legislature that has previously attempted to suppress minority voting, that would suppress the vote of racial minorities. Granting a stay would cause grave harm, and the SBOE's request should therefore be denied.

## CONCLUSION

For the foregoing reasons, the motions to dismiss filed by Governor Cooper and the SBOE must be denied, and their request to stay this case on abstention grounds should be denied.

Respectfully submitted, this 21st day of March, 2019.

By: /s/ Irving Joyner
Irving Joyner
NC State Bar No. 7830
P.O. Box 374
Cary, NC 27512
Telephone: +1 919.319.8353
Email: ijoyner@nccu.edu


By: /s/ James W. Cooper
James W. Cooper
DC. Bar No. 421169
John C. Ulin
Jeremy Karpatin*
Cassandra Havens*
ARNOLD & PORTER KAYE
SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Telephone: +1 202.942.6603
Email: James.W.Cooper@arnoldporter.com

*Notice of Appearance forthcoming

By: /s/ Penda D. Hair
Penda D. Hair
DC Bar No. 335133
FORWARD JUSTICE
P.O. Box 42521
Washington D.C. 20015
Telephone: +1 202.256.1976
Email: phair@forwardjustice.org


Daryl V. Atkinson
NC Bar No. 39030
Caitlin A. Swain
VA Bar No. 84515
Leah J. Kang
NC Bar No. 51735
FORWARD JUSTICE
400 W Main Street, Suite 203
Durham, NC 27701
Telephone: +1 919.323.3889
Email: daryl@forwardjustice.org
         cswain@forwardjustice.org
         lkang@forwardjustice.org

*Counsel for Plaintiffs*

23

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.3(d)(1), the undersigned counsel hereby certifies that the foregoing Memorandum, including body, headings, and footnotes, contains 6,247 words as measured by Microsoft Word.

/s/ James W. Cooper
James W. Cooper
Attorney for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date I electronically filed the foregoing PLAINTIFFS' OPPOSITION TO GOVERNOR COOPER'S and SBOE's MOTIONS TO DISMISS OR, IN THE ALTERNATIVE, FOR A STAY with the clerk of Court using the CM/ECF system which will send notification of such to all counsel of record in this matter.

This 21st day of March, 2019.

/s/ James W. Cooper
James W. Cooper
Attorney for Plaintiffs
