IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

NORTH CAROLINA STATE CONFERENCE )
OF THE NAACP, CHAPEL HILL—CARRBORO )
NAACP, GREENSBORO NAACP, HIGH POINT )
NAACP, MOORE COUNTY NAACP, STOKES )
COUNTY BRANCH OF THE NAACP, )
WINSTON-SALEM—FORSYTH COUNTY NAACP, )
                                       )
             Plaintiffs, )
                                       )
           v. )          1:18CV1034
                                       )
ROY ASBERRY COOPER III, *in his official capacity* )
*as the Governor of North Carolina*; ROBERT CORDLE, )
*in his official capacity as Chair of the North Carolina State* )
*Board of Elections*; STELLA ANDERSON, *in her official* )
*capacity as Secretary of the North Carolina State Board of* )
*Elections*; KENNETH RAYMOND, JEFFERSON )
CARMON III, and DAVID C. BLACK, *in their official* )
*capacities as members of the North Carolina State Board of* )
*Elections*,[1] )
                                       )
          Defendants. )

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

       Plaintiffs initiated this action against the above-named Defendants challenging the

constitutionality of specific provisions of Senate Bill 824 ("S.B. 824"), titled "An Act to

Implement the Constitutional Amendment Requiring Photographic Identification to Vote."

(*See* ECF No. 1; ECF No. 8-2 at 2.)  S.B. 824 was passed by the North Carolina General

---

[1] In addition to Roy Asberry Cooper III (the "Governor"), Plaintiffs' Complaint named nine members of the North Carolina State Board of Elections (the "State Board") as defendants.  (*See* ECF No. 1.)  Subsequent to the filing of Plaintiffs' Complaint, the State Board was reconstituted to consist of five members appointed by the Governor.  (*See* ECF No. 27.)  Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the above-named members of the State Board are hereby substituted as parties to this action.  *See* Fed. R. Civ. P. 25(d).

Assembly ("General Assembly") on December 5, 2018, and enacted into law as Session Law 2018-144 on December 19, 2018. (ECF No. 1 ¶¶ 1, 79.) Before the Court is a Motion to Intervene by Hon. Philip E. Berger ("Senator Berger"), in his official capacity as President Pro Tempore of the North Carolina Senate, and Hon. Timothy K. Moore ("Representative Moore"), in his official capacity as Speaker of the North Carolina House of Representatives (collectively, "Proposed Intervenors"). (ECF No. 7.) For the reasons that follow, the Court denies the Motion to Intervene without prejudice to the motion being renewed if Proposed Intervenors can demonstrate that the Defendants have, in fact, declined to defend the lawsuit and that all requirements for intervention have been satisfied pursuant to Rule 24 of the Federal Rules of Civil Procedure. Further, Proposed Intervenors are granted the right to participate in this action by filing *amicus curiae* briefs.

## I.     BACKGROUND

In November 2018, North Carolina voters approved a ballot measure amending the North Carolina State Constitution to require voters to provide photographic identification before voting in person.[2] (ECF No. 1 ¶¶ 62, 64; ECF No. 8 at 8.) On December 5, 2018, the General Assembly passed S.B. 824, which was thereafter vetoed by Roy Asberry Cooper III, Governor of North Carolina (the "Governor"), on December 14, 2018. (ECF No. 1 ¶¶ 1, 78; ECF No. 8 at 8; ECF No. 8-1 at 2–3; ECF No. 8-2.) The General Assembly nevertheless

---

[2] As amended, the North Carolina State Constitution provides as follows:

> Voters offering to vote in person shall present photographic identification before voting. The General Assembly shall enact general laws governing the requirements of such photographic identification, which may include exceptions.

N.C. Const. art. VI, § 3(2).

codified S.B. 824 into law by an override of the Governor's veto on December 19, 2018. (ECF No. 1 ¶¶ 1, 79; ECF No. 8-2 at 22.)

On December 21, 2018, Plaintiffs filed suit in this Court against the Governor and the members of the North Carolina State Board of Elections. (*See* ECF No. 1.) All Defendants have been sued in their official capacities and all are represented by the North Carolina Attorney General. (*See* ECF Nos. 1, 19, 27, 28.) In the Complaint, Plaintiffs challenge the provisions of S.B. 824 which impose voter photo identification requirements, as well as the provisions "that expand the number of poll observers and the number[ ] of people who can challenge ballots." (ECF No. 1 ¶¶ 106–07.) Plaintiffs allege that "[t]hese provisions, separately and together, will have a disproportionately negative impact on minority voters," (*id.* ¶ 80), ultimately resulting in "the effective denial of the franchise and dilution of [African American and Latino] voting strength," (*id.* ¶ 7). Plaintiffs' Complaint further alleges that the challenged provisions "impose discriminatory and unlawful burdens on the right to vote that are not justified by any legitimate or compelling state interest." (*Id.* ¶ 8.) In addition, Plaintiffs allege that the challenged provisions of S.B. 824 violate Section 2 of the Voting Rights Act of 1965, as well as the Fourteenth and Fifteenth Amendments to the United States Constitution. (*Id.* ¶¶ 105–46.) Plaintiffs seek injunctive and declaratory relief to prevent Defendants "from implementing, enforcing, or giving effect to the [challenged] provisions of S.B. 824." (*Id.* ¶ 147.)

On January 14, 2019, less than one month after Plaintiff filed suit, Senator Berger and Representative Moore, acting in their official capacities, filed the instant Motion to Intervene on behalf of the General Assembly seeking intervention as of right pursuant to Rule 24(a) or,

alternatively, permissive intervention pursuant to Rule 24(b).[3]  (ECF Nos. 7, 8.)  In response, the Governor states that he "does not take a position on the [M]otion to [I]ntervene."  (ECF No. 34 at 1.)  Likewise, Defendants Robert Cordle, in his official capacity as Chair of the North Carolina State Board of Elections, Stella Anderson, in her official capacity as Secretary of the North Carolina State Board of Elections, and Kenneth Raymond, Jefferson Carmon III, and David C. Black, in their official capacities as members of the North Carolina State Board of Elections (collectively, the "BOE Defendants") state in their response to the instant motion that they "neither consent nor object to the pending [M]otion to [I]ntervene."  (ECF No. 36 at 1.)  Plaintiffs, however, oppose Proposed Intervenors' request to intervene as of right or permissively.  (ECF No. 38.)

## II.   DISCUSSION

### A.   <u>Standing</u>

As an initial matter, the Court notes that in their response to the Motion to Intervene, Plaintiffs raise the issue of Article III standing which "is a threshold jurisdictional question," *Pye v. United States*, 269 F.3d 459, 466 (4th Cir. 2001).  (*See* ECF No. 38 at 10–11, 22–25.) Specifically, Plaintiffs argue that Proposed Intervenors "may not intervene because [they] lack[ ] Article III standing, which is a requirement for intervention as a defendant in a federal court."  (*Id.* at 10–11, 22–23.)  In support of this argument, Plaintiffs cite a number of cases from other circuits stating that an intervenor-defendant must establish Article III standing. (*See id.* at 10, 22 (citing cases from the D.C. Circuit, as well as the Seventh, Eighth, and Tenth

---

[3] In compliance with Rule 24 of the Federal Rules of Civil Procedure, Proposed Intervenors attached a proposed Answer to the Motion to Intervene.  *See* Fed. R. Civ. P. 24(c) ("The motion [to intervene] must . . . be accompanied by a pleading that sets out the claim or defense for which intervention is sought.").

Circuit Courts of Appeals).) However, as noted by Proposed Intervenors, Plaintiffs fail to cite any Fourth Circuit case requiring that, in addition to satisfying the Rule 24 requirements, an intervenor-defendant must also establish Article III standing. (ECF No. 48 at 7.) Nor could this Court find a Fourth Circuit case setting forth such a requirement. Rather, it appears, that "[c]ourts remain divided . . . on the question of whether an intervenor must establish Article III standing." 13A Charles A. Wright et al., *Federal Practice & Procedure*, § 3531, at 51 (3d ed. 2008). *Compare City of Herriman v. Bell*, 590 F.3d 1176, 1183–84 (10th Cir. 2010) (stating that would-be intervenors need not establish constitutional standing to intervene), *and Perry v. Schwarzenegger,* 630 F.3d 898, 906 (9th Cir. 2011) (same), *with United States v. Metro. St. Louis Sewer Dist.,* 569 F.3d 829, 833 (8th Cir. 2009) (stating that "a party seeking to intervene must establish Article III standing in addition to the requirements of Rule 24"), *and United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1145 (D.C. Cir. 2009) (same). Thus, given the silence on the issue by the Fourth Circuit, this Court declines to impose such a requirement on the Proposed Intervenor-Defendants in this action.

**B.    Intervention as of Right**

Proposed Intervenors first seek intervention as of right pursuant to Rule 24(a) of the Federal Rules of Civil Procedure. (ECF No. 8 at 11–21.) The Fourth Circuit has "note[d] that liberal intervention is desirable to dispose of as much of a controversy 'involving as many apparently concerned persons as is compatible with efficiency and due process.'" *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)). "Liberality does not, however, entail resolving every possible doubt in favor of intervention, and [Rule 24] sets standards for intervention that must be observed and applied

thoughtfully by courts." *Ohio Valley Envtl. Coal., Inc. v. McCarthy*, 313 F.R.D. 10, 16 (S.D.W. Va. 2015). Rule 24(a) provides as follows:

> On timely motion, the court must permit anyone to intervene who:
>
> . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). The Fourth Circuit has interpreted Rule 24(a)(2) to entitle intervention as of right if, in addition to timeliness,[4] the movant demonstrates: "(1) an interest in the subject matter of the action; (2) that the protection of this interest would be impaired because of the action; and (3) that the applicant's interest is not adequately represented by existing parties to the litigation." *Teague v. Bakker*, 931 F.2d 259, 260–61 (4th Cir. 1991). "[A] would-be intervenor bears the burden of demonstrating to the court a right to intervene." *Arista Records, LLC v. Doe No. 1*, 254 F.R.D. 480, 481 (E.D.N.C. 2008) (alteration in original) (quoting *In re Richman*, 104 F.3d 654, 658 (4th Cir. 1997)). "If the movant fails to satisfy any one of the requirements, then intervention as of right is defeated." *Students for Fair Admissions Inc. v. Univ. of N.C.*, 319 F.R.D. 490, 494 (M.D.N.C. 2017) (citing *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999)). *See United Guar. Residential Ins. Co. of Iowa v. Phila. Sav. Fund Soc'y*, 819

---

[4] Here, there is no dispute that the instant motion is timely. Proposed Intervenors filed their motion on January 14, 2019, less than one month after Plaintiffs filed suit, and before the named Defendants made any filings in the case. *See, e.g., Students for Fair Admissions Inc. v. Univ. of N.C.*, 319 F.R.D. 490, 494 (M.D.N.C. 2017) (finding motion to intervene timely where "the case had not progressed beyond its early stages when [p]roposed [i]ntervenors sought to intervene"); *United States v. Virginia*, 282 F.R.D. 403, 405 (E.D. Va. 2012) (finding proposed intervenors' motion timely where the case had not progressed beyond the pleadings stage).

F.2d 473, 474 (4th Cir. 1987) ("In order to successfully intervene, . . . [movant] must meet all three requirements [of Rule 24(a)].").

### 1. Interest in the Subject Matter

"While Rule 24(a) does not specify the nature of the interest required for a party to intervene as a matter of right, the Supreme Court has recognized that '[w]hat is obviously meant . . . is a significantly protectable interest." *Teague*, 931 F.2d at 261 (alterations in original) (internal quotation marks omitted). Proposed Intervenors argue that they "have a significantly protectable interest in the validity of S.B. 824, which the North Carolina General Assembly enacted over the Governor's veto." (ECF No. 8 at 12.) Plaintiffs argue in opposition that "[t]he General Assembly's interest in protecting S.B. 824 from invalidation amounts to nothing but a generalized interest, shared by all North Carolinians, in having laws enforced." (ECF No. 38 at 16.)

"Courts have recognized that legislators have an interest in defending the constitutionality of legislation passed by the legislature *when the executive declines to do so*." *Fisher-Borne v. Smith*, 14 F. Supp. 3d 699, 703, 707, 710 (M.D.N.C. 2014) (emphasis added) (granting motion to intervene "but only for the purpose of lodging an objection and preserving that objection" for appeal where it appeared to the court that the Attorney General did not intend to appeal on behalf of the State). *See Revelis v. Napolitano*, 844 F. Supp. 2d 915, 924–25 (N.D. Ill. 2012) (finding that intervention of right was appropriate where "[t]he House [of Representatives] has an interest in defending the constitutionality of legislation which it passed when the executive branch declines to do so"); *see also I.N.S. v. Chadha*, 462 U.S. 919, 928, 939 (1983) (explaining that "Congress is . . . a proper party to defend the constitutionality of [a

federal law]" where an agency of the government agreed with, and joined in, the plaintiff's challenge to the constitutionality of an immigration statute).

Plaintiffs initiated this official-capacity suit against the Governor and the BOE Defendants (collectively, "State Defendants"), neither of whom have declined to defend the lawsuit. Nor have State Defendants expressed an intention to so decline. The Governor and the BOE Defendants are represented by the Attorney General, (*see* ECF Nos. 19, 27, 28), and although they take no position on the instant Motion to Intervene, they "dispute[ ] the contention raised by the [P]roposed [I]ntervenors that the Governor and/or the State Board members represented by the Attorney General's Office are not capable of defending this lawsuit." (ECF No. 34 at 2 (footnote omitted); *see* ECF No. 36 at 2 ("For the reasons discussed by Governor Cooper in his response, the State Board Defendants [likewise] disagree with the Proposed Intervenors' contention . . . that the State Board Defendants represented by the [Attorney General] are not capable of defending this lawsuit." (citation omitted).) The Governor further contends that the named defendants "and the Attorney General's Office are fully capable of performing their duties on behalf of the people of North Carolina." (ECF No. 34 at 2.) The Governor and the BOE Defendants have each separately moved to dismiss Plaintiffs' Complaint, (*see* ECF Nos. 42, 44), as more fully discussed below.

Proposed Intervenors argue that Supreme Court precedent "establishes that state legislative officials have the authority to defend state enactments in federal court when State law 'authorize[s]' them 'to represent the [State] Legislature in litigation.'" (ECF No. 8 at 12–

13 (alterations in original) (quoting *Karcher v. May*, 484 U.S. 72, 81 (1987)).) As Proponent

Intervenors correctly state:

> Section 1-72.2 of the North Carolina General Statutes provides that "[i]t is the public policy of the State of North Carolina that in any action in any federal court in which the validity or constitutionality of an act of the General Assembly . . . is challenged, the General Assembly, jointly through the Speaker of the House of Representatives and the President Pro Tempore of the Senate, constitutes the legislative branch. N.C. Gen. Stat. § 1-72.2(a). That section . . . additionally provides that, "[t]he Speaker of the House of Representatives and the President Pro Tempore of the Senate, as agents of the State, by and through counsel of their choice, including private counsel, shall jointly have standing to intervene on behalf of the General Assembly as a party in any judicial proceeding challenging a North Carolina statute." *Id.* § 1.72-2(b).

(ECF No. 8 at 13 (first, second, and fourth alterations in original).) Therefore, according to

Proposed Intervenors, "[t]he North Carolina law establishing [their] interest easily qualifies

them to defend S.B. 824 under *Karcher*." (ECF No. 8 at 13.) In response, Plaintiffs contend

that "North Carolina law does not vest the General Assembly with a protectable interest[;]

[for] State law cannot confer an interest where none otherwise exists." (ECF No. 38 at 17.)

The Court finds Proposed Intervenors' reliance on *Karcher* misplaced. In *Karcher*, the

issue before the Supreme Court was a different issue entirely: "whether public officials who

have participated [as intervenor defendants] in a lawsuit [challenging the constitutionality of a

statute] solely in their official capacities may appeal an adverse judgment after they have left

office." *Karcher*, 484 U.S. at 74. The Court held that those public officials may not so appeal.

*Id.* The Court also declined to vacate the lower court's judgments for lack of jurisdiction, in

part, because while the state legislators were in office, their intervention as of right was

allowable. *Id.* at 81–82. There, the state legislators were allowed to intervene on behalf of the

State in proceedings before the district court and appellate court "[w]hen it became apparent that neither the Attorney General nor the named defendants would defend the statute." *Karcher*, 484 U.S. at 75. In contrast, here, as previously stated, State Defendants are represented by the Attorney General and are presently defending against Plaintiffs' challenge to the constitutionality of S.B. 824. Nor can *Karcher* be read to suggest that a state statute can supplant a federal court's obligation to determine whether the requirements for intervention as of right by a non-party have been satisfied under federal law. *See Virginia v. Westinghouse Elec. Co.*, 542 F.2d 214, 216 (4th Cir. 1976) ("The district court is entitled to the full range of reasonable discretion in determining whether the[ ] requirements [of Rule 24(a)(2)] have been met." (second alteration in original)); *see also* Fed. R. Civ. P. 24(a)(2). Further, the state statute cited by Proposed Intervenors specifically provides that, in actions where the State of North Carolina is a named party, "a federal court . . . is *requested* to allow both the legislative branch and executive branch" of the State to participate. N.C. Gen. Stat. § 1-72.2(a) (emphasis added). Thus, in considering any such request to participate through intervention as of right, the Court must ensure that the requirements of Rule 24(a)(2) are satisfied. *Virginia*, 542 F.2d at 216; Fed. R. Civ. P. 24(a)(2).

Proposed Intervenors also argue "that they are often *named defendants* in state court litigation challenging state laws, including litigation challenging S.B. 824." (ECF No. 8 at 14.) This argument is likewise unpersuasive. As Plaintiffs point out, (*see* ECF No. 38 at 20–21), in North Carolina state courts, pursuant to Rule 19(d) of the North Carolina Rules of Civil Procedure, "[t]he Speaker of the House of Representatives and the President Pro Tempore of the Senate, as agents of the State through the General Assembly, *must* be joined as defendants

in any civil action challenging the validity of a North Carolina statute or provision of the North Carolina Constitution under State or federal law." N.C.R. Civ. P. 19(d) (emphasis added). By contrast, in federal court, while a party challenging the constitutionality of a law may elect to name the state legislature as a defendant, legislators are not automatically entitled to intervene as of right in such a suit, particularly where the State is defending the challenged law. As explained by another district court,

> If a legislator's . . . support for a piece of challenged legislation gave rise to an interest sufficient to support intervention as a matter of right, then legislators would have the right to participate in every case involving a constitutional challenge to a state statute. But Rule 24 is not designed to turn the courtroom into a forum for political actors who claim ownership of the laws that they pass. The legislators' interest in defending laws that they supported does not entitle them to intervene as of right.

*One Wis. Inst., Inc. v. Nichol*, 310 F.R.D. 394, 397 (W.D. Wis. 2015).

The Court finds that, because State Defendants in this action are presently defending the challenged legislation and have expressed no intention to do otherwise, Proposed Intervenors have failed to demonstrate that they have a significantly protectable interest in likewise defending the constitutionality of S.B. 824 sufficient to warrant a right to intervene under Rule 24(a)(2). *See Fisher-Borne*, 14 F. Supp. 3d at 703. *See also Wayne Land & Mineral Grp., LLC v. Del. River Basin Comm'n*, No. 3:16-CV-00897, 2017 WL 63918, at *4 (M.D. Pa. Jan. 5, 2017) ("Once legislation is enacted, legislators… do not have a significantly protectable interest in its implementation to entitle them to intervene as of right."); *Am. Ass'n of People with Disabilities v. Herrera*, 257 F.R.D. 236, 251–52 (D.N.M. 2008) (concluding that a state senator's "interest as a legislator who voted for the [challenged] statute does not give him a protectable interest under [R]ule 24(a)); *Roe v. Casey*, 464 F. Supp. 483, 486 (E.D. Pa. 1978) (finding that a

legislator could not intervene because his interest as a member of the General Assembly and co-sponsor of the challenged legislation was insufficient as the court was not addressing whether the legislation was "duly and lawfully enacted," but rather, whether it was constitutional).

## 2. Risk of Impairment of Interest Absent Intervention

Proposed Intervenors next contend that disposition of this case could impair their interests in ensuring that S.B. 824 "actually takes effect," and could burden the General Assembly's "continuing authority to enact voting laws." (ECF No. 8 at 15.) However, because, as stated above, the Court finds that Proposed Intervenors have failed to demonstrate that they have a significantly protectable interest sufficient to warrant intervention as of right, it necessarily follows that Proposed Intervenors "cannot show that this case threatens to impair any such interests." *One Wisconsin Inst.*, 310 F.R.D. at 397.[5] "Where no protectable interest is present, there can be no impairment of the ability to protect it." *Herrera*, 257 F.R.D. at 252. Although the Court's findings with respect to the first and second prongs of Rule 24(a)(2) are dispositive,[6] even assuming otherwise, the Court finds that Proposed Intervenors have likewise failed to demonstrate that any interests they may have are not adequately represented by State Defendants.

---

[5] To the extent, however, that Proposed Intervenors' absence from this action would impose any conceivable practical disadvantage on their ability to protect the purported interests of the General Assembly, this impairment can be significantly alleviated by Proposed Intervenors' participation in this action as *amicus curiae*. *See Ohio Valley Envtl. Coal.*, 313 F.R.D. at 26 ("[T]he impairment prong is not met if the would-be intervenor could adequately protect its interests in the action by participating as amicus curiae." (citing *McHenry v. Comm'r*, 677 F.3d 214, 227 (4th Cir. 2012)).

[6] *See United Guar. Residential Ins. Co.*, 819 F.2d at 474 ("[I]n order to successfully intervene, . . . [movant] must meet all three requirements [of Rule 24(a)].").

### 3. *Adequacy of Representation by Existing Parties*

A movant seeking intervention typically bears a "minimal" burden of showing inadequacy of representation by an existing party. *United Guar. Residential Ins. Co.*, 819 F.2d at 475 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). However, "[w]hen the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the [movant] must demonstrate adversity of interest, collusion, or nonfeasance." *Virginia*, 542 F.2d 214 at 216. The Fourth Circuit has clarified that where defendants are represented by a government agency, "the putative intervenor must mount a strong showing of inadequacy." *Stuart v. Huff*, 706 F.3d 345, 352 (4th Cir. 2013). As explained by the Fourth Circuit, "when a statute comes under attack, it is difficult to conceive of an entity better situated to defend it than the government." *Id.* at 351. Therefore, "[t]o rebut the presumption of adequacy, Proposed Intervenors must show either collusion between the existing parties, adversity of interests between themselves and the State Defendants, or nonfeasance on the part of the State Defendants." *United States v. North Carolina*, No. 1:13CV861, 2014 WL 494911, at *3 (M.D.N.C. Feb. 6, 2014) (citing *Stuart*, 706 F.3d at 350, 352–55). *See also Boothe v. Northstar Realty Fin. Corp.*, Civil No. JKB-16-3742, 2019 WL 587419, at *5 (D. Md. Feb. 13, 2019) ("Where the presumption of adequate representation applies, intervenors have the 'onerous' burden of making a compelling showing of the circumstances in the underlying suit that render the representation inadequate." (quoting *In re Richman*, 104 F.3d at 660)).

Here, where the State, represented by the Attorney General, is defending this lawsuit, Proposed Intervenors must "mount a strong showing of inadequacy" to overcome the

presumption of adequate representation. *See Stuart*, 706 F.3d at 352. Proposed Intervenors, however, present no evidence showing collusion between State Defendants and Plaintiffs. Nor does the record before the Court reflect nonfeasance on the part of State Defendants who, in defense of the lawsuit, have filed separate motions to dismiss or stay the case. (*See* ECF Nos. 42, 44.) Thus, it appears that the gravamen of Proposed Intervenors' argument is that there is adversity of interests between State Defendants and Proposed Intervenors. According to Proposed Intervenors, "Defendants have made quite clear that they cannot be trusted to defend S.B. 824 in the same, rigorous manner as Proposed Intervenors—and very well might not defend the law at all." (ECF No. 8 at 16.) Specifically, Proposed Intervenors contend that: (1) the Governor and Attorney General's public statements and litigation strategy with respect to prior litigation regarding the constitutionality of a previous voter identification law shows that they "should not be entrusted with defense of [S.B. 824]"; (2) the Governor's veto of S.B. 824 as well as the accompanying veto message prove the Governor's animus towards S.B. 824; (3) State Defendants will not employ the same litigation strategy as would Proposed Intervenors; and (4) because the BOE Defendants were appointed by the Governor, their interests are automatically adverse to the interests of Proposed Intervenors. (*Id.* at 16–20.)

None of these contentions, however, is supported by sufficient evidence in the record to carry Proposed Intervenors' "onerous burden" of rebutting the presumption that State Defendants will adequately represent Proposed Intervenors' interests. *See Boothe*, 2019 WL 587419, at *5; *North Carolina*, 2014 WL 494911, at *3. First, Proposed Intervenors' reliance on the actions of, and statements by, the Governor and the Attorney General regarding House

Bill 589—a *previous* voter identification bill which was ultimately found unconstitutional by the Fourth Circuit[7]—is neither helpful nor relevant to the Court's determination whether there is adversity of interests in the *present* challenge to the constitutionality of S.B. 824.  A review of the record reflects that, in this matter, State Defendants are represented by the Attorney General who, under North Carolina law, is charged with the duty to represent the State in defense of its existing laws, including S.B. 824.  *See* N.C. Gen. Stat. § 114-2(1) ("[I]t shall be the duty of the Attorney General . . . to appear for the State in any . . . court or tribunal in any cause or matter, civil or criminal, in which the State may be a party or interested."); *Gen. Synod of the United Church of Christ v. Resinger*, No. 3:14-cv-00213-MOC-DLH, 2014 WL 5094093, at *3 (W.D.N.C. Oct. 10, 2014) ("North Carolina law makes it clear that it is the Attorney General who is charged with 'shoulder[ing] the responsibility of defending the fruits of the democratic process.'" (alteration in original) (quoting *Stuart*, 706 F.3d at 351)); *Martin v. Thornburg*, 359 S.E.2d 472, 479 (N.C. 1987) (concluding that "the duties of the Attorney General in North Carolina as prescribed by statutory and common law include the duty to appear for and to defend the State or its agencies in all actions in which the State may be a party or interested").  There is nothing in the record to suggest that, as to S.B. 824, the Governor or the Attorney General have abdicated their responsibility to defend the instant lawsuit.  *See North Carolina*, 2014 WL 494911, at *3 n.1 (explaining that despite the Attorney General's public statements which "openly opposed and criticized" a law prior to being signed by the Governor, "the [p]roposed [i]ntervenors have not demonstrated that the Attorney General will not fulfill his obligation to aggressively defend laws duly enacted by the General Assembly").  Rather, State

---

[7] *See N.C. State Conference of the NAACP v. McCrory*, 831 F.3d 204 (4th Cir. 2016).

Defendants dispute Proposed Intervenors' contention that neither they nor their counsel—the Attorney General—are capable of defending this suit, and they argue that they are "fully capable of performing their duties on behalf of the people of North Carolina." (ECF No. 34 at 2; ECF No. 36 at 2.) State Defendants have also filed separate motions to dismiss Plaintiffs' Complaint on several grounds.

Second, although Proposed Intervenors point to the Governor's written veto message accompanying his veto of S.B. 824, there is no evidence before the Court that, since the inception of the instant action, the Governor has declined to defend the existing law, nor has the Governor indicated an intention to do so. As highlighted above, in addition to asserting that he is capable of defending this lawsuit and performing his duties on behalf of the State, the Governor has moved for dismissal of Plaintiffs' Complaint or, in the alternative, a stay of the action.

Third, the Court is unpersuaded by Proposed Intervenors' contention that there is adversity of interests because State Defendants will not employ the same approach to the litigation as would the General Assembly. It is clear that Proposed Intervenors' ultimate objective is upholding the constitutionality of S.B. 824, (*see generally* ECF Nos. 8, 48), and, as previously stated, the Attorney General is obligated, under state law, to defend the constitutionality of the State's laws. Therefore, despite their arguments to the contrary, Proposed Intervenors share the same objective as State Defendants, namely, defending the constitutionality of the existing law—S.B. 824. In such cases where, as here, the ultimate objective is the same, "disagreement over how to approach the conduct of the litigation is not enough to rebut the presumption of adequacy." *Stuart*, 706 F.3d at 353 (citing *Perry v.*

*Proposition 8 Official Proponents*, 587 F.3d 947, 954 (9th Cir. 2009) ("Mere differences in litigation strategy are not enough to justify intervention as a matter of right.")); *Boothe*, 2019 WL 587419, at *5 ("The fact that [i]ntervenors may disagree with the existing party's litigation strategy does not rebut the presumption of the existing party's adequate representation."); *see also* 7C Charles A. Wright et al., *Federal Practice & Procedure,* § 1909, at 431–35 (3d ed. 2007) ("A mere difference of opinion concerning the tactics with which the litigation should be handled does not make inadequate the representation of those whose interests are identical with that of an existing party.").

The Court is further unpersuaded by Proposed Intervenors' conclusory speculation that State Defendants "have neither the same level of interest in this case nor the same ability and incentive to litigate it that Proposed Intervenors do," (ECF No. 8 at 21). In fact, the Court notes that two of the four affirmative defenses[8] set forth in Proposed Intervenors' proposed Answer, (ECF No. 7-1 at 32–33), are invoked by State Defendants as the grounds upon which they are seeking dismissal or stay of the action, (ECF Nos. 42, 44.) Specifically, among the affirmative defenses set forth in their proposed Answer, Proposed Intervenors assert that: (1) "Plaintiffs' complaint, in whole or in part, fails to state a claim upon which relief can be granted and should be dismissed"; and (2) "[t]he Court should abstain from considering Plaintiffs' claims regarding voter identification pending resolution of state-court litigation." (ECF No. 7-1 at 32–33.) Similarly, the BOE Defendants are seeking dismissal of Plaintiffs' Complaint, in part, pursuant to Rule 12(b)(6) for failure to state a claim, and they are also

---

[8] Proposed Intervenors' affirmative defenses also include the following: (1) "Plaintiffs lack standing to assert the claims in their Complaint"; and (2) "Plaintiffs' claims are not ripe." (ECF No. 7-1 at 32–33.)

requesting that the Court "exercise[ ] its discretion to abstain [from exercising] federal jurisdiction over Plaintiffs' claims. In the alternative, the [BOE] Defendants . . . request that the Court stay this case while the parallel state [court] proceedings continue." (ECF No. 43 at 13.) The Governor likewise moves for dismissal of Plaintiffs' Complaint, in part, pursuant to Rule 12(b)(6) for failure to state a claim and, in the alternative, he requests that the Court stay this case based on abstention grounds pending resolution of state-court litigation. (ECF No. 45 at 1, 6–21.) Such similarity in the defenses of Proposed Intervenors and State Defendants further undermines Proposed Intervenors' attempt to rebut the presumption of adequate representation by showing adverse interests. *See Virginia*, 542 F.2d at 216 (explaining that where the pleadings filed by the proposed intervenor-plaintiff "have been nearly identical" to those submitted by the named plaintiff, "[i]t is difficult in light of this fact, to consider the representation of [the proposed intervenor-plaintiff's] interests by [the named plaintiffs] inadequate"). Thus, without more, Proposed Intervenors' subjective belief in their "ability and incentive to litigate" this action, is insufficient to satisfy their burden.

Finally, Proposed Intervenors' assertion that, solely because the BOE Defendants were appointed by the Governor, they are unable to defend this action lacks support in the record. Nowhere in the record have BOE Defendants indicated an intention not to defend this action. Rather, they dispute Proposed Intervenors' contention that they are incapable of defending the lawsuit, (ECF No. 36 at 2), and, as stated above, the BOE Defendants have moved for dismissal, or in the alternative, a stay of the instant action pending completion of parallel state court litigation, (ECF No. 42). Proposed Intervenors have therefore failed to show adversity of interests between State Defendants and Proposed Intervenors.

For these reasons, the Court finds that, in addition to their failure to show collusion between the existing parties and nonfeasance by State Defendants, Proposed Intervenors have also failed to show adversity of interests between themselves and State Defendants. Accordingly, Proposed Intervenors have failed to sustain their burden of demonstrating the requisite "strong showing of inadequacy" to overcome the presumption of adequate representation by State Defendants and their counsel, the Attorney General. *Stuart*, 706 F.3d at 352. *See Virginia*, 542 F.2d at 216 (affirming district court's denial of motion to intervene where movant failed to "show[ ] adversity of interest and ha[d] not even attempted to show collusion between [the parties to the suit;] [n]or [was] there any indication of nonfeasance").

The Court recognizes that, having passed S.B. 824, Proposed Intervenors harbor strong feelings regarding its constitutionality. However, "not all parties with strong feelings about or an interest in a case are entitled, as a matter of law, to intervene." *North Carolina*, 2014 WL 494911, at *4. As explained by the Fourth Circuit,

> stronger, more specific interests do not adverse interests make—
> and they surely cannot be enough to establish inadequacy of
> representation since would-be intervenors will nearly always have
> intense desires that are more particular than the state's (or else
> why seek party status at all). Allowing such interests to rebut the
> presumption of adequacy would simply open the door to a
> complicating host of intervening parties with hardly a
> corresponding benefit.

*Stuart*, 706 F.3d at 353.

In sum, the Court concludes that Proposed Intervenors have failed to satisfy their burden of demonstrating a right to intervene pursuant to Rule 24(a)(2). As a result, the motion to intervene as of right will be denied.

### C.    Permissive Intervention

Alternatively, Proposed Intervenors seek permissive intervention under Rule 24(b). The decision to grant or deny permissive intervention "lies within the sound discretion of the trial court." *Smith v. Pennington*, 352 F.3d 884, 892 (4th Cir. 2003) (quoting *Hill v. W. Elec. Co.*, 672 F.2d 381, 386 (4th Cir. 1982)).  The Fourth Circuit has recognized that trial courts are "in the best position to evaluate" the effect of intervention on the management of a case.  *Stuart*, 706 F.3d at 349–50.  Accordingly, the Fourth Circuit has instructed that its "review of any court's order denying permissive intervention under . . . Rule 24(b) is particularly deferential, and a challenge to the court's discretionary decision to deny leave to intervene must demonstrate *clear* abuse of discretion in denying the motion." *McHenry v. Comm'r*, 677 F.3d 214, 219 (4th Cir. 2012) (internal quotations and citations omitted).  Rule 24(b) provides that permissive intervention may be allowed upon timely motion by anyone who "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  Rule 24(b) notes that "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).

Here, the Court has determined that Proposed Intervenors' motion is timely and the Court agrees that their Proposed Answer reflects defenses which present common issues of fact and law.  While the satisfaction of these threshold requirements is necessary to grant permissive intervention, it does not compel such an outcome.  *See* Fed. R. Civ. P. 24(b)(3); *Carcano v. McCrory*, 315 F.R.D. 176, 178 (M.D.N.C. 2016) (explaining that a movant seeking permissive intervention "must satisfy three requirements: (1) the motion is timely; (2) the

defenses or counterclaims have a question of law or fact in common with the main action; *and* (3) intervention will not result in undue delay or prejudice to the existing parties" (emphasis added)); *Diagnostic Devices, Inc. v. Taidoc Tech. Corp.*, 257 F.R.D. 96, 100 (W.D.N.C. 2009) ("In exercising its discretion regarding permissive intervention, the court must consider any delay and prejudice to the original parties.").

As stated above, Plaintiffs in this action challenge the constitutionality of North Carolina's voter identification requirements which could have direct impact on the upcoming election cycle, beginning with primary elections scheduled in early 2020. The nature of the claims at issue and the imminence of the election require a swift resolution on the merits to bring certainty and confidence to the voting process. The Court concludes that the addition of Proposed Intervenors as a party in this action "will hinder, rather than enhance, judicial economy," and will "unnecessarily complicate and delay" the various stages of this case, to include discovery, dispositive motions, and trial. *One Wis. Inst.*, 310 F.R.D. at 399, 400. Such delays could therefore jeopardize the Court's ability to reach final judgment in advance of the impending election cycle.

In addition, the Court has significant concern that the inclusion of Proposed Intervenors would likely detract from, rather than enhance, the timely resolution, clarity, and focus on, solely the weighty and substantive issues to be addressed in this case. Proposed Intervenors state as their primary reasons for intervention their belief that: (1) State Defendants "cannot be trusted to defend [the constitutionality of] S.B. 824 in the same, rigorous manner as Proposed Intervenors"; and (2) State Defendants represented by the Attorney General "have neither the same level of interest in this case nor the same ability and

incentive to litigate it that Proposed Intervenors do." (*See* ECF No. 8 at 16, 21.) As earlier found by this Court, neither contention is supported by evidence in the record. Thus, the Court concludes that allowing this requested intervention could place additional burden on the Court in expending unnecessary judicial resources on such contentions. Further, Plaintiffs will likely suffer prejudice in having to address dueling defendants, purporting to all represent the interest of the State, along with their multiple litigation strategies. To the extent that Proposed Intervenors have special expertise they believe that they bring to the defense of S.B. 824, such expertise can be provided through the submission of *amicus* briefs.

Given these circumstances and the fact that, at this stage, the Court has no reason to believe that State Defendants will refrain from its defense of this lawsuit, "[t]he Court sees no benefit [in] allowing additional government actors represented by outside counsel to intervene in the case [to] defend the constitutionality of [S.B. 824]." *Ansley v. Warren*, No. 1:16cv54, 2016 WL 3647979, at *3 (W.D.N.C. July 7, 2016). Accordingly, the Court will, in its discretion, deny Proposed Intervenors' motion for permissive intervention under Rule 24(b).

## III.    CONCLUSION

Although, for the reasons discussed above, the Court will deny Proposed Intervenors' Motion to Intervene, "[i]n the event [Proposed Intervenors] conclude that they have a unique contention to make, or that the State Defendants have not raised an appropriate argument," they may participate by filing an *amicus curiae* brief. *North Carolina*, 2014 WL 494911, at *5; *see also Alexander v. Hall*, 64 F.R.D. 152, 155 (D.S.C. 1974) ("[I]t is solely within the discretion of the court to determine the fact, extent, and manner of participation by the *amicus*." (citing *N. Sec. Co. v. United States*, 191 U.S. 555 (1903))). "While a would-be intervenor may prefer party

status to that of friend-of-court, the fact remains that amici often make useful contributions to litigation." *Stuart*, 706 F.3d at 355. In addition, should it become apparent during the litigation that State Defendants no longer intend to defend this lawsuit, the Court will entertain a renewed Motion to Intervene by Proposed Intervenors.

For the reasons outlined herein, the Court enters the following:

## ORDER

IT IS THEREFORE ORDERED that the Motion to Intervene by Hon. Philip E. Berger, in his official capacity as President Pro Tempore of the North Carolina Senate, and Hon. Timothy K. Moore, in his official capacity as Speaker of the North Carolina House of Representatives, (ECF No. 7), is DENIED without prejudice to the motion being renewed if it can be demonstrated that State Defendants have in fact declined to defend the instant lawsuit, and that all requirements for intervention have been satisfied pursuant to Rule 24 of the Federal Rules of Civil Procedure.

IT IS FURTHER ORDERED that Proposed Intervenors are permitted to participate in this action by filing *amicus curiae* briefs.

This, the 3rd day of June, 2019.


/s/ Loretta C. Biggs
United States District Judge