IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

NORTH CAROLINA STATE CONFERENCE )
OF THE NAACP, CHAPEL HILL—CARRBORO )
NAACP, GREENSBORO NAACP, HIGH POINT )
NAACP, MOORE COUNTY NAACP, STOKES )
COUNTY BRANCH OF THE NAACP, )
WINSTON-SALEM—FORSYTH COUNTY NAACP, )
)
          Plaintiffs, )
)
       v. )    1:18CV1034
)
ROY ASBERRY COOPER III, *in his official capacity* )
*as the Governor of North Carolina*; ROBERT CORDLE, )
*in his official capacity as Chair of the North Carolina State* )
*Board of Elections*; STELLA ANDERSON, *in her official* )
*capacity as Secretary of the North Carolina State Board of* )
*Elections*; KENNETH RAYMOND, JEFFERSON )
CARMON III, and DAVID C. BLACK, *in their official* )
*capacities as members of the North Carolina State Board of* )
*Elections*,[1] )
)
          Defendants. )

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

      Plaintiffs initiated this lawsuit against the above-named Defendants, named only in

their official capacities, challenging the validity of specific provisions of Senate Bill 824, titled

"An Act to Implement the Constitutional Amendment Requiring Photographic Identification

to Vote," ("S.B. 824" or "the Act"). (*See* ECF No. 1.) Plaintiffs seek declaratory and injunctive

---

[1] In addition to Roy Asberry Cooper III (the "Governor"), Plaintiffs' Complaint named nine members of the North Carolina State Board of Elections (the "State Board") as defendants. (*See* ECF No. 1.) Subsequent to the filing of Plaintiffs' Complaint, the State Board was reconstituted to consist of five members appointed by the Governor. (*See* ECF No. 27.) Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the above-named members of the State Board are hereby substituted as parties to this action. *See* Fed. R. Civ. P. 25(d).

relief with respect to the challenged provisions of S.B. 824 which they allege violate Section 2 of the Voting Rights Act (the "VRA"), 52 U.S.C. § 10301,[2] as well as the Fourteenth and Fifteenth Amendments to the United States Constitution.[3] (*Id.* ¶¶ 105–46.) The following motions are before the Court: (i) Motion to Dismiss, or, in the Alternative, Motion to Stay filed by State Board of Elections Chair Robert Cordle, State Board of Elections Secretary Stella Anderson, and State Board of Elections members Ken Raymond, Jefferson Carmon III, and David Black (collectively "State Board Defendants"), (ECF No. 42); (ii) Motion to Dismiss or, in the Alternative, for a Stay filed by Roy Asberry Cooper III (the "Governor" or "Governor Cooper"), (ECF No. 44); and (iii) Plaintiffs' Motion for Scheduling Conference and Order, (ECF No. 54). For the reasons that follow, State Board Defendants' motion is denied, the Governor's motion is granted, and Plaintiffs' motion is denied as moot.

## I.    BACKGROUND

In November 2018, North Carolina voters approved a ballot measure amending the North Carolina State Constitution to require voters to provide photographic identification before voting in person.[4] (ECF No. 1 ¶¶ 62, 64.) The ballot measure was placed on the

---

[2] Section 2 of the VRA was formerly cited as 42 U.S.C. § 1973. *See* 52 U.S.C. § 10301.

[3] Plaintiffs' federal constitutional claims are brought pursuant to 42 U.S.C. § 1983. (ECF No. 1 ¶¶ 125–146.)

[4] As amended, the North Carolina State Constitution provides as follows:

> Voters offering to vote in person shall present photographic identification before voting. The General Assembly shall enact general laws governing the requirements of such photographic identification, which may include exceptions.

N.C. Const. art. VI, § 3(2).

November 2018 ballot following the North Carolina General Assembly's ("General Assembly") passage of Session Law 2018-128. (ECF No. 43-5 ¶¶ 12–13, 22.)

On December 5, 2018, the North Carolina General Assembly ("General Assembly") passed S.B. 824, which was thereafter vetoed by the Governor, on December 14, 2018. (ECF No. 1 ¶¶ 1, 78.) The General Assembly nevertheless codified S.B. 824 into law—Session Law 2018-144—by an override of the Governor's veto on December 19, 2018. (*Id.* ¶¶ 1, 79.)

The instant lawsuit was filed in this Court on December 20, 2018 against the Governor and members of the North Carolina State Board of Elections in their official capacities. (*See id.* at 1.) In the Complaint, Plaintiffs challenge the provisions of S.B. 824 which impose voter photo identification requirements, as well as the provisions "that expand the number of poll observers and the number[ ] of people who can challenge ballots." (*Id.* ¶¶ 106–07.) Plaintiffs allege that "[t]hese provisions, separately and together, will have a disproportionately negative impact on minority voters," (*id.* ¶ 80), ultimately resulting in "the effective denial of the franchise and dilution of [African American and Latino] voting strength," (*id.* ¶ 7). Plaintiffs' Complaint further alleges that the challenged provisions "impose discriminatory and unlawful burdens on the right to vote that are not justified by any legitimate or compelling state interest." (*Id.* ¶ 8.) Plaintiffs seek injunctive and declaratory relief to prevent Defendants "from implementing, enforcing, or giving effect to the [challenged] provisions of S.B. 824." (*Id.* ¶ 147.) All Defendants move to dismiss Plaintiffs' Complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[5] (ECF Nos. 42, 44.) In the alternative,

---

[5] Although the Governor's motion and supporting memorandum states that he also seeks dismissal under Rule 12(b)(2) of the Federal Rules of Civil Procedure, (ECF No. 44 at 1; ECF No. 45 at 1), the Court is unclear as

Defendants seek a stay of this action pending resolution of two state court proceedings—namely, *Holmes, et al. v. Moore, et al.*, Case No. 18 CVS 15292 ("*Holmes*"),[6] currently pending in Wake County Superior Court, and *North Carolina State Conference of the National Association for the Advancement of Colored People, et al. v. Tim Moore, et al.*, Case No. 18 CVS 9806 ("*NAACP*"),[7] currently pending before the North Carolina Court of Appeals.

## II.   LEGAL STANDARDS

### A.  Rule 12(b)(1)

Under Rule 12(b)(1), a party may seek dismissal based on the court's "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Subject-matter jurisdiction is a threshold issue that relates to the court's power to hear a case and must be decided before a determination on the merits of the case. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 479–80 (4th Cir. 2005). A motion under Rule 12(b)(1) raises the question "whether [the plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of [the] claim." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). The burden of proving subject matter jurisdiction rests with the plaintiff. *McNutt v.*

---

to the Governor's basis for dismissal under this rule. Nonetheless, the Court's Memorandum Opinion and Order addresses the substance of the Governor's arguments for dismissal.

[6] In *Holmes*, North Carolina registered voters filed suit against the State of North Carolina, the State Board of Elections, and four members of the General Assembly, alleging that S.B. 824 "violates the North Carolina Constitution—both as applied to Plaintiffs and similarly situated voters, and on its face." (ECF No. 43-1 ¶ 6.) The plaintiffs in that action seek declaratory and injunctive relief. (*Id.* at 53–54.)

[7] The plaintiffs in *NAACP* challenge, among other things, the validity of Session Law 2018-128, which placed the voter identification constitutional amendment on the November 2018 ballot. (*See* ECF No. 43-4 at 3, 5, 28–30; ECF No. 43-5 at 6.) In that case, the state court entered an Order on February 22, 2019 holding that the General Assembly was "not empowered to pass legislation that would amend the state's constitution," and that N.C. Session Law 2018-128 and the ensuing constitutional amendment requiring voter identification were "void *ab initio*." (ECF No. 43-5 at 13.) The state court's Order has been appealed and remains pending before the North Carolina Court of Appeals. (*See* ECF No. 43-6.)

*Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). When evaluating a Rule 12(b)(1) motion to dismiss, a court should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

### B. **Rule 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "challenges the legal sufficiency of a complaint," including whether it meets the pleading standard of Rule 8(a)(2). *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), thereby "giv[ing] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

"A district court should dismiss a complaint pursuant to Rule 12(b)(6) if, accepting all well-pleaded allegations in the complaint as true and drawing all reasonable factual inferences in the plaintiff's favor, the complaint does not allege 'enough facts to state a claim to relief that is plausible on its face.'" *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 539 (4th Cir. 2013) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible when the complaint alleges facts that suffice to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 709 (4th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A complaint may fail to state a claim upon which relief can be granted in two ways: first, by failing to state a valid legal cause of action,

*i.e.*, a cognizable claim, *see Holloway*, 669 F.3d at 452; or second, by failing to allege sufficient facts to support a legal cause of action, *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

While a court's evaluation of a Rule 12(b)(6) motion to dismiss is "generally limited to a review of the allegations of the complaint itself," a court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). Here, no party has challenged the authenticity or relevance of the documents attached to Defendants' motions to dismiss. Therefore, in addition to considering the Complaint, the Court will also consider the exhibits attached to the instant motions to dismiss. *See id.*

## III. DISCUSSION

### A. State Board Defendants' Motion to Dismiss

State Board Defendants first argue that "[t]he ongoing [state court] proceedings in [the] *NAACP* and *Holmes* litigation suggest that this Court should, at this point, decline to or at least temporarily abstain from the exercise of federal jurisdiction based upon federalism concerns." (ECF No. 43 at 9.) They contend that the two state court proceedings "currently underway . . . may resolve the outstanding issues related to the Act and thereby obviate the need for the Court's adjudication of the Act's validity." (*Id.*) Thus, according to State Board Defendants, "[t]he facts of this case are appropriate for application of the *Pullman* abstention doctrine." (*Id.*) Plaintiffs argue, in response, that "abstention would be inappropriate here" because Defendants have failed to "identif[y] a single provision in S.B. 824 that could be

construed in a way to obviate the need to address Plaintiffs' federal law challenges to S.B. 824." (ECF No. 50 at 24.)

The Supreme Court has "often acknowledged that federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) (citing cases). *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (explaining that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them"). However, "a federal district court is vested with discretion" to abstain from exercising its jurisdiction "in deference to state court resolution of underlying issues of state law." *Harman v. Forssenius*, 380 U.S. 528, 534 (1965). "Abstention doctrines constitute 'extraordinary and narrow exception[s]' to a federal court's duty to exercise the jurisdiction conferred on it." *Martin v. Stewart*, 499 F.3d 360, 363 (4th Cir. 2007) (alteration in original) (quoting *Quackenbush*, 517 U.S. at 716, 728). It is therefore well-settled that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River*, 424 U.S. at 813; *Gannett Co. v. Clark Constr. Grp., Inc.*, 286 F.3d 737, 741 (4th Cir. 2002). Accordingly, the Supreme Court has "carefully defined" the circumstances under which abstention is permissible. *Martin*, 499 F.3d at 363 (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 359 (1989)). One such circumstance, known as the *Pullman* abstention doctrine,[8] exists where: (1) there is "an unclear issue of state law presented for decision"; and (2) the resolution of that unclear issue of state law "may moot or present in a different posture the federal constitutional issue such that the state law issue is potentially dispositive." *Educ. Servs., Inc. v. Md. State Bd. for Higher Educ.*, 710 F.2d 170, 174 (4th Cir. 1983)

---

[8] *See R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 499–501 (1941).

(internal quotation marks omitted). *See Nivens v. Gilchrist*, 444 F.3d 237, 245 (4th Cir. 2006) ("*Pullman* abstention requires federal courts to abstain from deciding an unclear area of state law that raises constitutional issues because state court clarification might serve to avoid a federal constitutional ruling."). As explained by the Supreme Court, "[b]y abstaining in such cases, federal courts will avoid both unnecessary adjudication of federal questions and 'needless friction with state policies.'" *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984) (quoting *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941)).

In arguing that "both criteria announced in *Pullman* are present here," State Board Defendants contend that "the Act presents unclear issues of state law," and "resolution of the *Holmes* lawsuit may moot or otherwise alter the posture of the federal constitutional issues implicated in this lawsuit." (ECF No. 43 at 10, 11.) Indeed, "*Pullman* abstention is appropriate when a plaintiff brings a federal case that requires the federal court to interpret an unclear state law." *Nivens*, 444 F.3d at 246 (citing *Pullman*, 312 U.S. at 498–99). Here, however, Plaintiffs' Complaint does not raise issues requiring an interpretation or clarification of an unclear state law. Plaintiffs do not contend, nor does the Court find, that the challenged provisions of the statute at issue—S.B. 824—are unclear or ambiguous. The clear language set forth in the challenged provisions of S.B. 824 unambiguously requires registered voters to produce photographic identification to vote, increases the number of poll observers who may attend any voting place, and expands the grounds upon which any voter may challenge a person casting a vote. (*See* 2018 N.C. Sess. Laws 144 §§ 1.2(a), 3.1(c), 3.3.) "There [are] no other provision[s] of the Act . . . which would suggest that [S.B. 824] does not mean exactly what it says." *Midkiff*, 467 U.S. at 236. "Thus, abstention is not indicated if the state law is clear on its

face." 17A Charles Alan Wright, et al., *Federal Practice and Procedure* § 4242, at 331–32 (3d ed. 2007). *See Zwickler v. Koota*, 389 U.S. 241, 251 n.14 (1967) ("We have frequently emphasized that abstention is not to be ordered unless the statute is of an uncertain nature, and is obviously susceptible of a limiting construction."). As explained by the Supreme Court, "[w]here there is no ambiguity in the state statute, the federal court should not abstain but should proceed to decide the federal constitutional claim." *Wisconsin v. Constantineau*, 400 U.S. 433, 439 (1971). *See Int'l Coll. of Surgeons v. City of Chicago*, 153 F.3d 356, 365 (7th Cir. 1998) (holding that *Pullman* abstention was inappropriate where, among other things, the state statutory scheme was "not uncertain"); *but see AFA Distrib. Co. v. Pearl Brewing Co.*, 470 F.2d 1210, 1212 (4th Cir. 1973) (concluding that "the district court should have applied the [*Pullman*] abstention doctrine" "[b]ecause of the ambiguity in the statute and because of an inchoate constitutional question").

Where, as here, Plaintiffs mount a facial challenge to the constitutionality and lawfulness of a statute, "the pivotal question in determining whether abstention is appropriate is whether the statute is 'fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question.'" *City of Houston v. Hill*, 482 U.S. 451, 468 (1987) (quoting *Harman*, 380 U.S. at 534–35). State Board Defendants argue that "abstention is appropriate here because the constitutionality of the Act has already been challenged in North Carolina state court [in *Holmes*], and a decision in that action may eliminate the need for this Court to decide the constitutional issues presented in this lawsuit." (ECF No. 43 at 9.) However, "[a]bstention is not in order simply because a pending state-court proceeding involves the same subject matter." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). As instructed by the Supreme Court, "[w]here a federal court's jurisdiction is properly

9

invoked, and the relevant state constitutional and statutory provisions are plain and unambiguous, there is no necessity for the federal court to abstain pending determination of the state law questions in a state court." *Davis v. Mann*, 377 U.S. 678, 690 (1964); *see Hill*, 482 U.S. at 469 ("[W]hen a statute is not ambiguous, there is no need to abstain even if state courts have never interpreted the statute."). In essence, "[s]ince 'the naked question [before this Court], uncomplicated by [ambiguous language], is whether the Act on its face is unconstitutional,' abstention from federal jurisdiction is not required." *Midkiff*, 467 U.S. at 237 (third alteration in original) (quoting *Constantineau*, 400 U.S. at 439). *See Mt. Airy Bus. Ctr., Inc. v. City of Kannapolis, N.C.*, No. 1:10CV307, 2014 WL 229564, at *4 (M.D.N.C. Jan. 21, 2014) (concluding that "*Pullman* abstention is not appropriate" where the plaintiff is "not asking this court to interpret the City's regulatory scheme; [rather, the plaintiff] contends that the ordinances deprive [it] of rights protected by the federal constitution"), *adopted by* 2014 WL 975516 (M.D.N.C. Mar. 12, 2014).

Moreover, beyond conclusory assertions, State Board Defendants fail to explain how a ruling in the state court actions as to the lawfulness of S.B. 824, or the session law that placed the voter identification constitutional amendment on the November 2018 ballot, would eliminate or substantially modify the *federal* constitutional issues raised in Plaintiffs' Complaint. *See Hendon v. N.C. State Bd. of Elections*, 633 F. Supp. 454, 465 (W.D.N.C. 1986) ("It would defeat the purpose of the Civil Rights Acts and the Voting Rights Acts if the 'assertion of a federal claim in federal court must await an attempt to vindicate the same claim in state court.'" (quoting *McNeese v. Bd. of Educ.*, 373 U.S. 668, 673 (1963)).

The Court further notes that, particularly with respect to Plaintiffs' constitutional claims brought pursuant to Section 1983, "Congress has deliberately afforded the [S]ection 1983 plaintiff an alternative federal forum." *Pittman v. Cole*, 267 F.3d 1269, 1286 (11th Cir. 2001) (quoting *Duke v. James*, 713 F.2d 1506, 1510 (11th Cir. 1983)). To that end,

> [i]t is not for the courts to withdraw that jurisdiction which Congress has expressly granted under [S]ection 1983 where such a withdrawal is contrary to the purpose of Congress in extending that alternative forum. In this regard, the *Pullman* doctrine is narrow and is tightly circumscribed. A federal court must grapple with difficult constitutional questions that confront it squarely. The abstention doctrine is an exception to this rule, to be exercised only in *special* or *"exceptional"* circumstances.

*Id.* (quoting *Duke*, 713 F.2d at 1510).

In light of the above, the Court concludes that this case does not present the exceptional circumstances necessary to warrant *Pullman* abstention. This action does not involve an unclear or ambiguous issue of state law, and the resolution of the state law issues pending in state court is not potentially dispositive of Plaintiffs' federal constitutional claims. Accordingly, State Board Defendants' motion requesting that this Court either decline, or at least temporarily abstain from, the exercise of federal jurisdiction based on *Pullman* abstention is hereby denied.[9]

## B. State Board Defendants' Motion to Stay

State Board Defendants alternatively argue that, "[f]or the same reasons discussed [with respect to *Pullman* abstention] and in the interests of judicial efficiency, . . . the Court [should]

---

[9] In cases where *Pullman* abstention is applicable, "the common practice has been for the district court to retain jurisdiction but to stay proceedings while awaiting a decision in the state courts." *United States v. Mich. Nat'l Corp.*, 419 U.S. 1, 4 (1974). *See Meredith v. Talbot Cty., Md.*, 828 F.2d 228, 232 (4th Cir. 1987) ("The usual rule is to retain jurisdiction in *Pullman* situations."); *Woodward & Lothrop, Inc. v. Neall*, 813 F. Supp. 1158, 1163 (D. Md. 1993) ("[I]n *Pullman*-type cases, a stay of proceedings is ordered pending resolution of parallel state litigation.").

stay this case while the referenced parallel State proceedings are ongoing on other appropriate grounds." (ECF No. 43 at 13.) In response, Plaintiffs argue that granting a stay "would cause unreasonable delay and irreparable prejudice to Plaintiffs' enforcement of their federal constitutional and statutory rights to vote free from racial discrimination." (ECF No. 50 at 30.) The Court will next consider whether a discretionary stay is warranted in this action.

This Court "has the inherent power to stay proceedings to achieve equity and to ensure the efficient management of its docket." *John & Jane Doe 2 v. Ortho-Clinical Diagnostics, Inc.*, 335 F. Supp. 2d 614, 633 (M.D.N.C. 2004) (citing *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983)); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the [cases] on its docket with economy of time and effort for itself, for counsel, and for litigants."). This power, however, is not unbounded. *Williford*, 715 F.2d at 127. Proper use of this authority requires the court to exercise its judgment "to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket." *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 375 (4th Cir. 2013) (quoting *United States v. Ga. Pac. Corp.*, 562 F.2d 294, 296 (4th Cir. 1977)); *see also Landis*, 299 U.S. at 254–55. Courts have identified these various factors as: (1) "the interests of judicial economy"; (2) the "hardship and equity to the moving party" in the absence of a stay; and (3) the "potential prejudice to the non-moving party" in the event of a stay. *White v. Ally Fin. Inc.*, 969 F. Supp. 2d 451, 462 (S.D.W. Va. 2013). *See, e.g., Landress v. Tier One Solar LLC*, 243 F. Supp. 3d 633, 646 (M.D.N.C. 2017); *Fisher v. United States*, Civ. A. No. 3:13-MC-08, 2013 WL 6074076, at *4 (E.D. Va. Nov. 18, 2013). The burden rests on the party seeking the stay to

"justify it by clear and convincing circumstances outweighing potential harm" to the opposing party. *Williford*, 715 F.2d at 127; *see Landis,* 299 U.S. at 255, (explaining that "if there is even a fair possibility that the stay . . . will work damage to someone else," the party seeking the stay "must make out a clear case of hardship or inequity in being required to go forward").

Upon careful consideration, the Court finds that the above factors weigh heavily against staying these proceedings. In considering whether to stay this action, the Court is acutely aware of the "nature of the constitutional deprivations alleged and the probable consequences" of staying this case. *Harman*, 380 U.S. at 537. As previously stated, this action involves, among other things, constitutional challenges to a statute which allegedly imposes discriminatory and unlawful burdens on individuals' right to vote based on race in violation of Section 2 of the Voting Rights Act as well as the Fourteenth and Fifteenth Amendments. (*See* ECF No. 1 ¶¶ 105–46.) As the Supreme Court "has stressed on numerous occasions, the right to vote freely for the candidate of one's choice is [ ] the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." *Harman*, 380 U.S. at 537 (internal quotation marks omitted). A stay of this action pending the resolution of the state court proceedings in *Holmes* and *NAACP*, will likely cause delay that may significantly prejudice Plaintiffs' attempt to resolve their federal constitutional and statutory claims in advance of the upcoming election. In the face of this potential harm and prejudice to Plaintiffs, State Board Defendants' briefing is silent on the issue of the hardship or inequity it would suffer if required to move forward with litigation before this Court. Rather, State Board Defendants argue that "the interests of judicial efficiency" counsel in favor of a stay. (ECF No. 43 at 13.) The Court disagrees with State Board Defendants and finds that under the

circumstances present here, the interests of judicial economy weigh against a stay given that, as previously discussed, the resolution of the state law issues pending before the state courts are unlikely to resolve or even narrow the federal constitutional issues present in this action. Moreover, "[w]hile judicial economy is one of the factors the Court must consider in granting a stay, when balanced against the potential harm to [Plaintiffs], considerations of judicial economy must give way." *Yadkin Riverkeeper, Inc. v. Duke Energy Carolinas, LLC*, 141 F. Supp. 3d 428, 454 (M.D.N.C. 2015).

Balancing the requisite factors in light of "the importance and immediacy" of the issues presented in this action, *Harman*, 380 U.S. at 537, the Court concludes that State Board Defendants have failed to "make out a clear case of hardship or inequity" in being required to proceed in this action, *Landis*, 229 U.S. at 255. The Court further concludes that, in the event of a stay, the potential harm to Plaintiffs' attempt to vindicate their voting rights prior to the impending election vastly outweighs any countervailing interests of judicial economy and hardship to State Board Defendants. Accordingly, the Court will, in its discretion, deny State Board Defendants' motion to stay.

## C. **The Governor's Motion to Dismiss**

The Governor moves for dismissal of all claims against him based on Eleventh Amendment immunity. (ECF No. 45 at 6; ECF No. 53 at 2–11.) In response, Plaintiffs argue that, as to their claim under Section 2 of the VRA, Eleventh Amendment immunity is inapplicable because the VRA properly abrogated the state's sovereign immunity. (ECF No. 50 at 15–17.) Plaintiffs further argue that, as to their two remaining Section 1983 claims for

constitutional violations, the Governor "falls within the exception to sovereign immunity under *Ex parte Young*."[10]  (ECF No. 50 at 15, 17.)

> 1. *Whether the VRA abrogates North Carolina's Eleventh Amendment immunity*

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  "[T]he doctrine of sovereign immunity under the Eleventh Amendment extends beyond the literal text of the Eleventh Amendment to prevent a state from being sued by one of its own citizens without its consent." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 329 (4th Cir. 2001).  "The ultimate guarantee of the Eleventh Amendment is that non-consenting States may not be sued by private individuals in federal court." *Bd. of Trs. of Univ. of Ala. v. Garrett,* 531 U.S. 356, 363 (2001).  Official-capacity suits against state officers are likewise barred because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Congress may, however, abrogate a state's Eleventh Amendment immunity in federal court only "if it makes its intention to abrogate unmistakably clear in the language of the statute and acts pursuant to a valid exercise of [constitutional authority]." *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 726 (2003); *Constantine*, 411 F.3d at 484.  Because the "abrogation of sovereign immunity upsets the fundamental constitutional balance between the Federal Government and the States," *Dellmuth v. Muth,* 491 U.S. 223, 227 (1989) (internal quotation

---

[10] *Ex parte Young*, 209 U.S. 123 (1908).

marks omitted), "courts must exercise great care before finding abrogation," *Brown v. N.C. Div. of Motor Vehicles*, 166 F.3d 698, 704 (4th Cir. 1999). The Supreme Court has stated that its "reluctance to infer that a State's immunity from suit in the federal courts has been negated stems from recognition of the vital role of the doctrine of sovereign immunity in our federal system." *Id.* (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). For this reason, the Supreme Court has consistently erected hurdles to finding that Congress has abrogated Eleventh Amendment immunity as to a particular claim. *See, e.g., Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (requiring express language or overwhelming implication before finding waiver); *Green v. Mansour,* 474 U.S. 64, 68 (1985) ("States may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity"); *Blatchford v. Native Vill. of Noatak*, 501 U.S. 775, 785 (1991) (requiring "Congress' exercise of the power to abrogate state sovereign immunity, where it exists, to be exercised with unmistakable clarity").

In support of their argument that the VRA abrogates North Carolina's sovereign immunity, Plaintiffs primarily rely on a Sixth Circuit opinion, *Mixon v. State of Ohio*, 193 F.3d 389, 398–99 (6th Cir. 1999), in which that court determined that the State of Ohio's Eleventh Amendment immunity was abrogated by the VRA. (*See* ECF No. 50 at 15–17.) Plaintiffs also cite cases from other circuits that have likewise concluded that the VRA abrogates a state's Eleventh Amendment immunity from suit. (*See id.* at 15 (citing cases from the Second, Fifth, Eleventh and D.C. Circuits).) However, as noted by the Governor, Plaintiffs fail to cite any Fourth Circuit case recognizing such abrogation of North Carolina's Eleventh Amendment immunity under the VRA. (ECF No. 53 at 2–3.) Nor could this Court find a Fourth Circuit

or Supreme Court case holding that this State's Eleventh Amendment immunity has been abrogated by the VRA such that the state is subject to suit under the VRA by a private actor.

Citing *Mixon*, Plaintiffs contend that the "clear language" of the VRA "constitutes an 'affirmative response' to the question of 'whether Congress intended to abrogate [Eleventh Amendment] sovereign immunity under the Voting Rights Act." (ECF No. 50 at 16 (quoting *Mixon*, 193 F.3d at 398).) Despite this contention however, given that neither the Fourth Circuit nor the Supreme Court has likewise made such a finding on this issue, and given that courts are cautioned to "exercise great care before finding abrogation," *Brown*, 166 F.3d at 704, this Court is "reluctan[t] to infer that [this] State's immunity from suit in the federal courts has been negated," *Pennhurst*, 465 U.S. at 99. Thus, in the absence of a determination by the Fourth Circuit or the Supreme Court that the VRA abrogates North Carolina's Eleventh Amendment immunity, this Court declines to so hold. *See Krieger v. Loudon Cty.*, Civ. A. No. 5:13cv073, 2014 WL 4923904, at *3 (W.D. Va. Sept. 30, 2014), (concluding that "neither the Food Stamp Reauthorization Act, *the Voting Rights Act*, the Voting Accessibility for the Elderly and Handicapped Act, nor the National Voter Registration Act contain the requisite language abrogating the state's [Eleventh] Amendment sovereign immunity"), *aff'd sub nom. Krieger v. Virginia*, 599 F. App'x 112 (4th Cir. 2015) (emphasis added). The Court therefore concludes that, barring an exception, Eleventh Amendment immunity is applicable to the Plaintiffs' VRA claim against the Governor.

   *2. Whether the Ex parte Young exception to Eleventh Amendment immunity applies*

In addition to arguing that Eleventh Amendment immunity bars this suit against him, the Governor further argues that he does not have a sufficient connection to the enforcement

of S.B. 824 to subject him to suit under the *Ex parte Young* exception to Eleventh Amendment immunity.  (ECF No. 53 at 11; *see also* ECF No. 45 at 13, 15–16.)  Plaintiffs argue, in response, that the Governor "falls within the exception to sovereign immunity under *Ex parte Young*," and as such, he is a proper defendant in this lawsuit.  (ECF No. 50 at 17, 18.)

Under the *Ex parte Young* exception to Eleventh Amendment immunity, a federal court may "issue prospective, injunctive relief against a state officer to prevent ongoing violations of federal law, on the rationale that such a suit is not a suit against the state for purposes of the Eleventh Amendment."  *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010).  The Fourth Circuit has explained that the "*Ex parte Young* exception is directed at 'officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings . . . to enforce against parties affected [by] an unconstitutional act.'"  *Id.* (alterations in original) (quoting *Ex parte Young*, 209 U.S. at 155–56).  In order for the *Ex parte Young* exception to apply, a "special relation" must exist "between the state officer sued and the challenged statute to avoid the Eleventh Amendment's bar."  *Waste Mgmt.*, 252 F.3d at 331 (quoting *Ex parte Young*, 209 U.S. at 157).  This "special relation" "requires *proximity to* and *responsibility for* the challenged state action."  *Wright v. North Carolina*, 787 F.3d 256, 261–62 (4th Cir. 2015) (quoting *S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 333 (4th Cir. 2008)).  However, "[g]eneral authority to enforce the laws of the state is *not* sufficient to make government officials the proper parties to litigation challenging the law."  *Waste Mgmt.*, 252 F.3d at 331 (emphasis added) (citation omitted).  *See Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 550 (4th Cir. 2014) ("[W]e have held that a governor cannot be enjoined by virtue of his general duty to enforce the laws." (citing *Waste Mgmt.*, 252

F.3d at 331)). "Thus, [t]he mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute." *Waste Mgmt.*, 252 F.3d at 331 (alteration in original) (internal quotation marks omitted).

As explained by the Supreme Court in *Ex parte Young*, if the "constitutionality of every act passed by the legislature could be tested by a suit against the governor . . . based upon the theory that the [governor], as the executive of the state, was, in a general sense, charged with the execution of all its laws," it would eviscerate "the fundamental principle that [States] cannot, without their assent, be brought into any court at the suit of private persons." 209 U.S. at 157 (quoting *Fitts v. McGhee*, 172 U.S. 516, 530 (1899)). *See Los Angeles Cty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) ("[A] generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit."). The "'special relation' requirement [therefore] ensures that the appropriate party is before the federal court, so as not to interfere with the lawful discretion of state officials." *Limehouse*, 549 F.3d at 332–33 . While a general duty to enforce the law is not enough to satisfy the *Ex parte Young* exception, *Waste Mgmt.*, 252 F.3d at 331, the Supreme Court has held that "[t]he fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact" to be considered, *Ex parte Young*, 209 U.S. at 157.

Here, to show that the Governor bears a "special relation" to S.B. 824, Plaintiffs make the following allegations in the Complaint:

(i)     the Governor "is responsible for faithfully executing and enforcing the laws of North Carolina, including S.B. 824";

(ii)     the Governor "is responsible for appointing members of [the State Board] and, in certain circumstances, has the power to remove certain members of [the State Board]"; and

(iii)    the Governor "receives recommendations from [the State Board] relative to the conduct and administration of the primaries and election in North Carolina."

(ECF No. 1 ¶ 20.)  Plaintiffs argue that the Governor's appointment and removal powers over the State Board and other officials connected with the enforcement of S.B. 824 satisfies the "special relation" requirement under *Ex Parte Young*.  (ECF No. 50 at 19–21.)  Specifically, Plaintiffs contend that "[t]he Governor appoints and supervises the Secretary of Transportation, who in turn[,] appoints and supervises the Commissioner of Motor Vehicles" who oversees the "issuance of driver's licenses and special identification cards" in North Carolina.  (*Id.* at 21.)  Plaintiffs further argue that the Governor "appoints the members of the [State Board], who in turn select the county board of elections, who oversee the issuance of voter photo identification cards."  (*Id.*)  Taking Plaintiffs' allegations as true and making all reasonable inferences in their favor, the Court finds that Plaintiffs have failed to sufficiently allege that the Governor is under "a specific duty to enforce the challenged statute[ ]," *Waste Mgmt.*, 252 F.3d at 331.  Plaintiffs have failed to allege any facts showing the Governor's "proximity to and responsibility for" the actual enforcement or implementation of S.B. 824. *Limehouse*, 549 F.3d at 333.  *See H.B. Rowe Co. v. Tippett*, No. 5:03-CV-278-BO, 2007 WL 7766702, at *7 (E.D.N.C. Mar. 30, 2007) (dismissing the Governor as a party to the action where "Plaintiff's Complaint and briefs contain no allegations concerning [the Governor's] involvement in administration of [the challenged statutory program]").  Further, nothing in the text of S.B. 824 expressly confers an enforcement or implementation responsibility on the

Governor. Rather, the text of S.B. 824 explicitly grants the State Board with the power to enact procedures, as well as implement and otherwise oversee the requirements of the Act. *See* 2018 N.C. Sess. Laws 144.

Although, as Plaintiffs allege, the Governor has the power to appoint members of the State Board and bears general responsibility for executing and enforcing the laws of North Carolina, (ECF No. 1 ¶ 20), neither appointment power nor general supervisory power over persons responsible for enforcing a challenged provision will subject an official to suit. *See Virginia Uranium, Inc. v. McAuliffe*, 147 F. Supp. 3d 462, 467–68 (W.D. Va. 2015) (concluding that where the governor and two cabinet secretaries "generally supervise or set policy for departments involved" in the implementation of the challenged statute, such "general roles . . . do not strip these officials of their Eleventh Amendment immunity"), *aff'd sub nom. Virginia Uranium, Inc. v. Warren*, 848 F.3d 590 (4th Cir. 2017), *aff'd*, 139 S. Ct. 1894 (2019); *see also Church v. Missouri*, 913 F.3d 736, 753 (8th Cir. 2019) (concluding that the governor is protected by sovereign immunity because his general enforcement authority and appointment authority "do not satisfy *Ex parte Young*"). Further, were the Governor to remain a party and Plaintiffs prevail in this action, enjoining the enforcement of an unconstitutional statute "is not aided by enjoining the actions of a state official *not* directly involved in enforcing the subject statute." *Waste Mgmt.*, 252 F.3d at 331 (emphasis added). In addition, removing the Governor as a party will not terminate Plaintiffs' lawsuit, as the action shall continue against State Board Defendants who, as the text of S.B. 824 explicitly indicates, are statutorily charged with implementing, overseeing, and enforcing the Act. *See generally* 2018 N.C. Sess. Laws 144.

In sum, the court concludes that neither the Governor's general responsibility for enforcing the laws of this State, nor his responsibility for appointing and removing State Board members and other officials constitute a "special relation" to the challenged statute. The Governor therefore has insufficient proximity to and responsibility for S.B. 824, and Plaintiffs have failed to show any involvement by the Governor in the enforcement of this law.

Based on the above, the Court finds that the *Ex parte Young* exception is inapplicable to the Governor, and that he is an improper party to this suit. The Court will therefore grant the Governor's motion to dismiss Plaintiffs' claims against him based on Eleventh Amendment immunity.[11]   *See Hutto*, 773 F.3d at 551 ("Because the state officials named as defendants have no connection with the enforcement of the [challenged] Act . . . we hold that the *Ex parte Young* exception does not apply and that the state officials are thus entitled to Eleventh Amendment immunity on the claims seeking prospective injunctive relief.").

**[ORDER FOLLOWS ON NEXT PAGE]**

---

[11] In his motion and supporting memorandum, the Governor seeks a stay, as an alternative to dismissal. (ECF No. 44 at 1; ECF No. 45 at 17–21; ECF No. 53 at 12.) However, because the Court will dismiss the Governor as a party to this action, the Court will not separately address the Governor's arguments seeking a stay.

For the reasons outlined herein, the Court enters the following:

## ORDER

IT IS THEREFORE ORDERED that State Board Defendants' Motion to Dismiss, or, in the Alternative, Motion to Stay, (ECF No. 42), is DENIED.

IT IS FURTHER ORDERED that Governor Cooper's Motion to Dismiss or, in the Alternative, for a Stay, (ECF No. 44), is GRANTED and the Governor is hereby DIMISSED as a party to this action.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Scheduling Conference and Order, (ECF No. 54), is DENIED as moot.

This, the 2nd day of July, 2019.

/s/ Loretta C. Biggs
United States District Judge