**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

| | |
|---|---|
| In re PHILIP E. BERGER, in his official capacity as President Pro Tempore of the North Carolina Senate, and TIMOTHY K. MOORE, in his official capacity as Speaker of the North Carolina House of Representatives, | No. 2019-_____<br>[No. 1:18-cv-01034-LCB-LPA] |

# PETITION FOR A WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF NORTH CAROLINA AND MOTION FOR STAY OF DISTRICT COURT PROCEEDINGS PENDING MANDAMUS


Michael W. Kirk
David H. Thompson
Peter A. Patterson
Nicole J. Moss
Haley N. Proctor
Nicole Frazer Reaves
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
(202) 220-9600 / (202) 220-9601
dthompson@cooperkirk.com

Nathan A. Huff
PHELPS DUNBAR LLP
4140 ParkLake Avenue, Suite 100
Raleigh, NC 27612
(919) 789-5300 / (919) 789-5301
nathan.huff@phelps.com

*Attorneys for Petitioners*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

STATEMENT OF FACTS ........ 2

I. The Governor and Attorney General Fail To Defend North Carolina's Voter ID Law. ........ 2

II. Pursuant to a Constitutional Mandate, the North Carolina General Assembly Passes One of the Most Lenient Voter ID Laws in the Nation ........ 4

III. Plaintiffs File the Instant Suit, and the District Court Denies Without Prejudice Proposed Intervenors' Motion To Intervene on the Basis of the Facts as They Existed in January 2019 ........ 6

IV. Named Defendants Fail To Fully Defend S.B. 824 ........ 7

A. Defendants' Actions in This Case Indicate That They Are Not Mounting a Full Defense of S.B. 824 ........ 7

B. Defendants' Actions in *Holmes v. Moore* Indicate That They Are Not Mounting a Full Defense of S.B. 824 ........ 8

V. Because Defendants Have Failed To Adequately Defend S.B. 824, Proposed Intervenors File a Renewed Motion to Intervene ........ 12

ARGUMENT ........ 14

I. Proposed Intervenors Have a Clear and Indisputable Right To Intervene ........ 15

A. Proposed Intervenors Are Entitled To Intervene as of Right ........ 16

i. Proposed Intervenors Timely Filed Their Motion To Intervene ........ 16

ii. Proposed Intervenors Have a Significantly Protectable Interest in the Subject of This Suit ........ 17

iii. The Disposition of This Case Will Impair Proposed Intervenors' Significantly Protectable Interest ........ 20

iv. The Existing Defendants Will Not Adequately Protect Proposed Intervenors' Significantly Protectable Interest ........ 21

B. Alternatively, Proposed Intervenors Satisfy the Minimal Requirements for Permissive Intervention ....................25

II. Proposed Intervenors Have No Other Adequate Means To Attain This Relief....................27

III. Mandamus Is Appropriate Under the Circumstances of This Case ..............30

IV. The Court Should Stay the District Court Proceedings Pending Its Decision on This Petition....................31

CONCLUSION....................32

## TABLE OF AUTHORITIES

**Cases** **Page**


*Alt v. U.S. E.P.A.*, 758 F.3d 588 (4th Cir. 2014)....................................................16

*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*,
135 S. Ct. 2652 (2015)....................................................................19, 20, 21

*Bridges v. Dep't of Maryland State Police*, 441 F.3d 197
(4th Cir. 2006)...........................................................................................27

*Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367 (2004)....................14, 15, 27, 30

*Cooper v. Berger*, 809 S.E.2d 98 (N.C. 2018).......................................................24

*Donaldson v. United States*, 400 U.S. 517 (1971)..................................................17

*Greendige v. Allstate Ins. Co.*, No. 02 CIV.9796, 2003 WL 22871905
(S.D.N.Y. Dec. 3, 2003) ..............................................................................31

*Hoptowit v. Ray*, 682 F.2d 1237 (9th Cir. 1982) ....................................................32

*In re Lockheed Martin Corp.*, 503 F.3d 351 (4th Cir. 2007)..................................27

*In re Mills*, 287 F. App'x 273 (4th Cir. 2008) .....................................................31

*In re Special Grand Jury No. 81-1*, 676 F.2d 1005 (4th Cir. 1982)..................29, 30

*In re Trump*, 928 F.3d 360 (4th Cir. 2019)......................................................15, 31

*Feller v. Brock*, 802 F.2d 722 (4th Cir. 1986) .......................................................16

*Francis v. Chamber of Commerce of U.S.*, 481 F.2d 192 (4th Cir. 1973) .............21

*Karcher v. May*, 484 U.S. 72 (1987) ......................................................................18

*Lee v. Virginia State Bd. of Elections*, 843 F.3d 592 (4th Cir. 2016)........................5

*Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296 (1989) ...................15

*Maryland v. King*, 567 U.S. 1301 (2012) .................................................................29

*McHenry v. Commissioner of Internal Revenue*,
677 F.3d 214 (4th Cir. 2012) ..........................................................................26

*Nken v. Holder*, 556 U.S. 418 (2009) ......................................................................31

*North Carolina State Conference of NAACP v. McCrory*,
831 F.3d 204 (4th Cir. 2016) ......................................................................2, 23

*North Carolina v. North Carolina State Conference of NAACP*,
137 S. Ct. 1399 (2017)...........................................................................3, 21, 30

*North Carolina State Conference of NAACP v. McCrory*,
997 F. Supp. 2d 322 (M.D.N.C. 2014) ....................3

*Nuesse v. Camp*, 385 F.2d 694 (D.C. Cir. 1967) ....................26

*Roche v. Evaporated Milk Ass'n*, 319 U.S. 21 (1943) ....................15, 29

*Russell v. Bd. of Plumbing Examiners of Cty. of Westchester*,
74 F.Supp.2d 349 (S.D.N.Y. 1999) ....................32

*Scott v. Bond*, 734 F. App'x 188 (4th Cir. 2018) ....................27

*Spring Const. Co. v. Harris*, 614 F.2d 374 (4th Cir. 1980) ....................20

*Students for Fair Admissions Inc. v. Univ. of North Carolina*,
319 F.R.D. 490 (M.D.N.C. 2017) ....................25

*Trbovich v. United Mine Workers of Am.*, 404 U.S. 528 (1972) ....................21, 22, 25

*United Guaranty Residential Ins. Co. of Iowa v. Philadelphia Sav. Fund Soc'y*,
819 F.2d 473 (4th Cir. 1987) ....................22

*Virginia House of Delegates v. Bethune-Hill*,
139 S. Ct. 1945 (2019) ....................17, 18, 19, 20

*Will v. Calvert Fire Ins. Co.*, 437 U.S. 655 (1978) ....................27

**Statutes**

FED. R. APP. P. 21 ....................15

FED. R. CIV. P. 24 ....................16, 25

N.C. CONST. art. VI ....................4

N.C. GEN. STAT.
§ 1-72.2 ....................18
§ 120-32.6 ....................18, 19

28 U.S.C. § 1651 ....................15

42 U.S.C. § 1973 ....................6

2018 N.C. Sess. Laws 144 ....................4

2019 N.C. Sess. Laws 4 ....................5

2019 N.C. Sess. Laws 22 ....................6

## Other Authorities

AJ FLETCHER FOUNDATION: CURRENT PARTNERS, https://ajf.org/current-partners/ (accessed Sept. 25, 2019) ....................24

Petition for a Writ of Certiorari, *North Carolina v. NAACP*, No. 16-833, 2016 WL 7634839 (U.S. Dec. 27, 2016)....................3

Senate Bill 824 / SL 2018-144, N.C. GEN. ASSEMBLY (2017–2018 Sess.), https://bit.ly/2FmisPP ....................5

Wendy Underhill, *Voter Identification Requirements*, NAT'L CONFERENCE OF STATE LEGISLATURES (Oct. 31, 2018), https://bit.ly/18Szn2n ....................5

## INTRODUCTION

Plaintiffs in this litigation have challenged the validity of North Carolina Senate Bill 824 ("S.B. 824"), legislation that implemented the state constitutional requirement that citizens of North Carolina be required to show photo identification when voting in person. In the nine months that have elapsed since the filing of this case and a parallel case in state court, the State Board of Elections ("State Board") members—the sole remaining named defendants in this case—have not substantively defended S.B. 824 against the central charge in both of these cases: that it was designed to discriminate against racial minorities. Indeed, in the state case, the State Board failed to submit any expert evidence or dispute the merits of that claim in response to the plaintiffs' motion for a preliminary injunction. The State Board's failure to defend S.B. 824 against the charge of racial discrimination should come as no surprise, as the Board is controlled by Governor Cooper, who has expressed the belief that the law "was designed to suppress the rights of minority . . . voters." Add. 043.

Seeking to defend S.B. 824 as agents of the State under North Carolina law, petitioners Philip E. Berger, President Pro Tempore of the North Carolina Senate, and Timothy K. Moore, Speaker of the North Carolina House of Representatives ("Proposed Intervenors"), moved to intervene in this case. But the district court has delayed deciding that motion—even after Proposed Intervenors respectfully

requested a timely ruling on it. Meanwhile, the case is progressing rapidly; Plaintiffs have filed a motion for a preliminary injunction supported by numerous expert reports and all named parties have agreed to a briefing schedule on that motion that will conclude before the end of October of this year. Proposed Intervenors must immediately be permitted to intervene to ensure an adversarial testing of Plaintiffs' attempt to bring implementation of S.B. 824 to a halt before the March 2020 primaries and to ensure this Court's appellate jurisdiction in the event an injunction is entered.

Proposed Intervenors therefore respectfully request this Court to issue a writ of mandamus directing the district court to permit them to intervene in this case. Proposed Intervenors also ask the Court to stay the district court proceedings pending its decision on this petition or, alternatively, to order the district court to allow Proposed Intervenors to participate as parties pending a decision on this petition.

## STATEMENT OF FACTS

### I. <u>The Governor and Attorney General Fail To Defend North Carolina's Former Voter ID Law.</u>

In 2016, a divided panel of this Court struck down North Carolina's former voter ID law (a law that included numerous provisions absent from S.B. 824). *See North Carolina State Conference of NAACP v. McCrory*, 831 F.3d 204 (4th Cir. 2016). During the *McCrory* litigation, the State was forced to defend its previous

voter ID law without the help of then-Attorney General Cooper, who declined to participate in the petition for certiorari seeking review of the Fourth Circuit's decision in *McCrory*, *see* Petition for a Writ of Certiorari, *North Carolina v. NAACP*, No. 16-833, 2016 WL 7634839 (U.S. Dec. 27, 2016); *see also* Add. 081. When campaigning for Governor, Cooper's antipathy to the previous voter ID law was central to his platform. *See* Add. 086. And after he took office as Governor, he abandoned the State's appeal of the *McCrory* decision. *See North Carolina v. NAACP*, 137 S. Ct. 1399, 1399 (2017) (Roberts, C.J., statement respecting the denial of certiorari). Cooper went so far as to issue a press release celebrating the denial of the State's petition for a writ of certiorari in the *McCrory* case. Add. 089.

Attorney General Stein likewise has a demonstrated history of failing to defend North Carolina's voter ID laws. When the former voter ID law was enacted, Stein was a state senator; he both opposed the passage of the law in the General Assembly and, after it was passed, supported the *McCrory* plaintiffs' challenge to that law with a declaration. *See North Carolina State Conference of NAACP v. McCrory*, 997 F. Supp. 2d 322, 337–38, 357–58 (M.D.N.C. 2014). Shortly after taking office, in coordination with Governor Cooper he moved to dismiss North Carolina's petition for certiorari in *McCrory*. The same day he filed the motion, Attorney General Stein issued a press release suggesting that the law unduly burdened the right to vote. *See* Add. 056. He has also characterized the State's prior

voter ID requirement as "curtail[ing] North Carolinians' ability to exercise their right to vote." *See* Add. 064.

## II. Pursuant to a Constitutional Mandate, the North Carolina General Assembly Passes One of the Most Lenient Voter ID Laws in the Nation.

In November 2018, the people of North Carolina amended the State's constitution to require that "[v]oters offering to vote in person *shall present photographic identification before voting*. The General Assembly shall enact general laws governing the requirements of such photographic identification, which may include exceptions." N.C. CONST. art. VI, § 2(4) (emphasis added); *see also* N.C. CONST. art. VI, § 3(2).

Pursuant to that mandate, the General Assembly passed S.B. 824. *See* 2018 N.C. Sess. Laws 144. S.B. 824 permits voters to use a wide range of IDs, including a North Carolina driver's license, a driver's license from any state or U.S. territory in certain circumstances, a passport, a tribal enrollment card, a qualifying student ID, a qualifying state or local government employee ID, a military ID, or a veteran ID. S.B. 824 also provides two avenues to free voter ID: voters can obtain a non-drivers ID from the Division of Motor Vehicles, or they can obtain a voter ID card from their county board of elections.

If a voter lacks compliant ID come election day, the voter can fill out an affidavit at the voting place indicating the "reasonable impediment" that prevented the voter from obtaining one—including a lack of transportation, illness, work

schedule, lack of necessary documents, family responsibilities, loss of ID, or any other unique reasonable impediment. Such a ballot must be counted unless the county board has grounds to believe the affidavit is false.

S.B. 824 is one of the most lenient voter ID laws in the nation. *See* Wendy Underhill, *Voter Identification Requirements*, NAT'L CONFERENCE OF STATE LEGISLATURES (Oct. 31, 2018), https://bit.ly/18Szn2n. Indeed, North Carolina's law compares favorably with the Virginia voter ID law this Court upheld and which is similar to North Carolina's law in many respects—but does not contain a reasonable impediment exception. *See Lee v. Virginia State Bd. of Elections*, 843 F.3d 592, 594–95 (4th Cir. 2016).

The General Assembly presented S.B. 824 to Governor Roy Cooper on December 6, 2018. *See* Senate Bill 824 / SL 2018-144, N.C. GEN. ASSEMBLY (2017–2018 Sess.), https://bit.ly/2FmisPP. Governor Cooper vetoed the bill on December 14, and the General Assembly quickly overrode the veto. *See id*.

The General Assembly has twice since amended S.B. 824. On March 14, the implementation of S.B. 824 was postponed until the March 2020 primaries although "all implementation and educational efforts . . . shall continue." 2019 N.C. Sess. Laws 4. On June 3, House Bill 646 was enacted, increasing the time during which educational institutions and government employers can have their IDs approved to

qualify as voter ID and relaxing certain approval requirements. *See* 2019 N.C. Sess. Laws 22.

### III. <u>Plaintiffs File the Instant Suit, and the District Court Denies Without Prejudice Proposed Intervenors' Motion To Intervene on the Basis of the Facts as They Existed in January 2019.</u>

On December 20, 2018—the day after S.B. 824 became law—Plaintiffs filed this suit in the district court against the Governor and the members of the North Carolina State Board of Elections. Plaintiffs' suit alleges that S.B. 824 disproportionately impacts African-American and Latino voters in violation of Section 2 of the Voting Rights Act, 42 U.S.C. § 1973; intentionally discriminates against African-American and Latino voters, in violation of Section 2 and the Fourteenth and Fifteenth Amendments of the United States Constitution; and unduly burdens the right to vote, in violation of the Fourteenth Amendment. *See* Add. 029–36.

On January 14, 2019, Proposed Intervenors filed their first motion to intervene in this case. Add. 038. When Proposed Intervenors filed that motion, the Governor was a Defendant in this case and both this suit and related state court litigation in *Holmes v. Moore*, No 18-cv-15292 (N.C. Super. Ct.), were in their infancy.

On June 3, the district court denied Proposed Intervenors' motion to intervene. Add. 215. But the district court held that "should it become apparent during the

litigation that State Defendants no longer intend to defend this lawsuit, the Court will entertain a renewed Motion to Intervene by Proposed Intervenors." Add. 237.

## IV. <u>Named Defendants Fail To Fully Defend S.B. 824.</u>

Defendants' behaviors in both this case and the *Holmes* case since January 2019 have confirmed that Defendants are not mounting a meaningful defense to all the claims that the plaintiffs in the two cases raise.

### A. <u>Defendants' Actions in This Case Indicate That They Are Not Mounting a Full Defense of S.B. 824.</u>

While the Governor and the State Board both filed motions to dismiss in this case, neither motion defended the constitutionality of S.B. 824. The State Board's motion simply argued that the district court should defer to the state court in the ongoing *Holmes* litigation. *See* Add. 096–103. Indeed, in their reply brief the State Board clarified their preference that the district court "retain jurisdiction over the lawsuit and stay the proceedings pending resolution of the state court litigation" rather than order outright "dismissal." Add. 194 (quotation marks omitted).

Similarly, although the Governor moved to dismiss himself from the lawsuit, he did not move to have the case dismissed. Add. 112–23. The Governor explained that he "s[ought] dismissal of all claims *against him* on immunity grounds as well as on the separate grounds that he is not a proper party." Add. 201 (emphasis added). Indeed, the Governor's briefing made it clear that he was not seeking dismissal of

the challenge to S.B. 824 altogether: he believes the State Board members "are the proper parties" to the lawsuit. Add. 208.

The district court denied the State Board's motion to stay and granted the Governor's motion, dismissing the Governor from the case. Add. 260. In this case, then, the sole remaining named Defendants are the five members of the State Board, who are represented by North Carolina Attorney General Stein.

B. Defendants' Actions in *Holmes v. Moore* Indicate That They Are Not Mounting a Full Defense of S.B. 824.

The State Board of Elections is a defendant in the *Holmes* litigation and, along with the State of North Carolina, it is being represented by the same litigation team from the Attorney General's office as are the State Board members in this case. Proposed Intervenors in this case also are named defendants in the *Holmes* case. The *Holmes* plaintiffs—six individual North Carolina voters—filed their complaint and an accompanying motion for a preliminary injunction on December 19, 2018, alleging that S.B. 824 violates North Carolina's Constitution in six ways. Add. 134. Most notably, that complaint's first claim alleges that S.B. 824 is racially discriminatory and thus violates the North Carolina Constitution's guarantee of equal protection. Add. 175–76.

Following briefing and a decision on a state-law jurisdictional issue, the case was transferred to a three-judge panel. The parties then briefed a motion to dismiss, engaged in extensive discovery, briefed the plaintiffs' motion for a preliminary

injunction, and argued the motion to dismiss and motion for a preliminary injunction before the three-judge panel. On July 19, the state court dismissed all claims other than the racial discrimination claim. Add. 446–47. And the court refused to preliminarily enjoin S.B. 824 based *exclusively* on the *Holmes* plaintiffs' failure to demonstrate a likelihood of success on the merits of their intentional discrimination claim. Add. 446.

The State Board's litigation choices in *Holmes* demonstrate its unwillingness to fully defend S.B. 824. *First*, in *Holmes* the State Board did not move to dismiss the state constitutional racial discrimination claim—the claim that is analogous to Count II in the instant case. Add. 292. The plaintiffs in the *Holmes* litigation highlighted this failure on the very first page of their brief in opposition to Proposed Intervenors' motion to dismiss, arguing that "State Defendants, for their part, do not dispute that Plaintiffs' Complaint states a claim for intentional discrimination, *effectively conceding* that Count I sufficiently alleges that the General Assembly enacted in SB 824 a law intended to target voters of color." Add. 324 (emphasis added). The State Board in reply denied making any concession, but still declined to assert that the racial discrimination claim lacks merit. *See* Add. 315. The point is not simply that the State Board failed to file a motion to dismiss, but rather that it failed even to contest the merits of the racial discrimination claim—a failure that has since become a pattern.

*Second*, the State Board's actions in response to the *Holmes* plaintiffs' preliminary injunction motion make clear that the State Board does not intend to vigorously defend S.B. 824 on the merits. The *Holmes* plaintiffs supported their preliminary injunction motion with nineteen affidavits, including affidavits from the plaintiffs themselves, other North Carolina voters, North Carolina legislators, county board of elections members, and expert witnesses. Add. 329. While Proposed Intervenors fought for the right to depose these affiants to subject their assertions to cross examination, the State Board declined to support Proposed Intervenors in this fight and instead would have been content to allow the affidavits to go untested. *See* Add. 332. After Proposed Intervenors earned the right to depose the plaintiffs' witnesses, *see* Add. 336–37, the State Board did not notice or subpoena a single deponent—while Proposed Intervenors did so and took eighteen depositions, Add. 329. Similarly, while the plaintiffs and Proposed Intervenors engaged in multiple rounds of written discovery requests, the State Board has made no written discovery requests. *Id*.

*Third*, the State Board's briefing on the preliminary injunction motion indicated why the Board was indifferent to deposing the plaintiffs' witnesses, as the State Board's response brief did not contest the plaintiffs' likelihood of succeeding on the merits on the intentional discrimination claim. Rather than vigorously defending S.B. 824, the State Board indicated that it had "a primary objective . . . to

expediently obtain clear guidance on what law, if any, will need to be enforced." Add. 352. "With that in mind," the State Board explained, "if the Court is inclined to issue an injunction at this stage, the State Board requests that it be granted some flexibility in making technical preparations that will allow it to implement the law in the event the injunction were later vacated." *Id*. The State Board's response and subsequent supplemental brief therefore were focused not on the merits but rather on advising the three-judge panel on how it could craft injunctive relief in a manner that would permit the State Board "some flexibility to account for the possibility of enforcing the law in the future." *Id*.; *see also* Add. 355. In support of this response, the State Board offered a sole affiant: Karen Brinson Bell, the newly appointed executive director of the State Board of Elections, who spoke only as to implementation of S.B. 824 that had begun and potential issues going forward. *See* Add. 360; *see also* Add. 329. The State Board did not offer any affiants defending S.B. 824's constitutionality, but Proposed Intervenors offered seven—three experts; former Senator Joel Ford, an African American Democrat who was a primary sponsor of S.B. 824; and three county board of elections officials. Add. 329.

The *Holmes* plaintiffs seized upon the State Board's refusal to defend S.B. 824 on the merits: a leading argument in their reply brief was that the "State Defendants do not dispute that Plaintiffs are likely to succeed on the merits of their claims." Add. 371. And while at argument the Board once again insisted that it was

not conceding the validity of any claims, it also did not argue that the intentional discrimination claim lacked merit, and it focused its argument on the preliminary injunction motion on the implementation issues discussed in its brief. Add. 479–82.

Thus, when the state court declined to enjoin S.B. 824 because plaintiffs are unlikely to succeed on the merits, that decision was based solely on Proposed Intervenors' defense; the State Board did not address this key issue *at all*. This demonstrates that Proposed Intervenors' participation was critical to the successful defense of S.B. 824.

*Fourth*, the State Board's actions in the *Holmes* appeal demonstrate their failure to adequately defend S.B. 824. The plaintiffs appealed the denial of their preliminary injunction motion and petitioned the North Carolina Supreme Court to take up the appeal without waiting for the Court of Appeals to rule. *See* Add. 494. The State Board offered no opposition to taking this case off the normal procedural track, but Proposed Intervenors did, *see* Add. 495, which proved successful: the North Carolina Supreme Court denied the petition on September 25, *see* Docket Sheet in the Supreme Court of North Carolina for *Holmes v. Moore*, No. 342P19-1 https://bit.ly/2nuGC3w (accessed Sept. 26, 2019).

## V. **Because Defendants Have Failed To Adequately Defend S.B. 824, Proposed Intervenors File a Renewed Motion To Intervene.**

Based on these developments, Proposed Intervenors moved quickly and filed a Renewed Motion To Intervene on July 19. Add. 261. In their brief in support of

that motion, Proposed Intervenors laid out the new factual developments discussed above and emphasized the fact that they risked "imminent impairment" of both the State's interests and their interests absent intervention. Add. 286. Plaintiffs and Defendants responded to that motion on August 9. *See* Add. 404, 416. Proposed Intervenors filed their reply on August 19, Add. 453, and the motion was submitted that same day to the district court.

On August 13, the district court issued a Notice of Initial Pretrial Conference, Add. 452, setting a pretrial hearing for September 30. Plaintiffs and Defendants have engaged in the required Rule 26(f) conference in advance of that hearing and submitted a joint Rule 26(f) report. Add. 561. Discovery is ongoing in the case; the State Board Defendants "have been providing a large number of discovery exchanges" from the *Holmes* litigation to Plaintiffs in this case. Add. 562.

On September 17, Plaintiffs filed a Motion for a Preliminary Injunction along with a brief and thirteen exhibits in support of their motion. *See* Add. 499. Plaintiffs' exhibits in support of their motion for a preliminary injunction total nearly five hundred pages, four hundred of which consist of expert reports. Plaintiffs and State Board Defendants have agreed that, so long as the district court approves of their proposed schedule, the response to the motion for a preliminary injunction will be due October 18, 2019; Plaintiffs' reply will be due October 28; and the district court

will hear the oral argument on the motion between November 7 and November 14. Add. 562.

Also on September 17, Proposed Intervenors filed a Motion To Ascertain Status of Their Renewed Motion To Intervene. Add. 488. The motion argued that "this case is moving forward apace" and "[a]bsent an immediate order granting the Renewed Motion to Intervene, Proposed Intervenors will suffer irreparable harm from not being able to participate as a party in the preliminary injunction proceedings." Add. 490–91. Proposed Intervenors asked the district court to rule on the motion to intervene by September 20 and indicated that absent a decision from that court they would appeal the de facto denial of their motion and/or file a mandamus petition with the Fourth Circuit. *Id.* at 3. The district court has not ruled on the Renewed Motion To Intervene.

## ARGUMENT

"[T]hree conditions must be satisfied before [a writ of mandamus] may issue": (1) "the petitioner must satisfy the burden of showing that [his] right to issuance of the writ is clear and indisputable"; (2) "the party seeking issuance of the writ [must] have no other adequate means to attain the relief he desires"; and (3) "the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380–

81 (2004) (quotation marks omitted; all but first alteration in the original); *see also* 28 U.S.C. § 1651(a); FED. R. APP. P. 21(a).

"These hurdles, however demanding, are not insuperable." *Cheney*, 542 U.S. at 381. A writ of mandamus is appropriate "to compel [an inferior court] to exercise its authority when it is its duty to do so." *Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 308 (1989). Mandamus jurisdiction "extends to those cases which are within its appellate jurisdiction although no appeal has been perfected. Otherwise the appellate jurisdiction could be defeated and the purpose of the statute authorizing the writ thwarted by unauthorized action of the district court obstructing the appeal." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 25 (1943).

Proposed Intervenors meet all three criteria for mandamus relief, which this Court should grant. And the Court should stay the district court proceedings pending its adjudication of this petition, or, in the alternative, order the district court to allow Proposed Intervenors to participate as parties pending a decision on this petition.

## I. Proposed Intervenors Have a Clear and Indisputable Right To Intervene.

Proposed Intervenors have a clear and indisputable right to intervene, which means that the district court's delay in granting intervention is an abuse of discretion. *See Mallard*, 490 U.S. at 308; *In re Trump*, 928 F.3d 360, 371 (4th Cir. 2019).

### A. <u>Proposed Intervenors Are Entitled To Intervene as of Right.</u>

Under Federal Rule of Civil Procedure 24(a), a court "must permit anyone to intervene who" (1) makes a timely motion to intervene, (2) has "interest relating to the property or transaction that is the subject of the action," (3) is "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest," and (4) shows that he is not "adequately represent[ed]" by "existing parties." FED. R. CIV. P. 24(a). "[L]iberal intervention is desirable to dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency and due process." *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (quotation marks omitted).

#### *i. Proposed Intervenors Timely Filed Their Motion To Intervene.*

Three criteria determine whether a motion to intervene is timely: (1) "how far the underlying suit has progressed"; (2) the "prejudice" that granting the motion would cause to the other parties; and (3) the reason for the delay—if any—in filing the motion. *Alt v. U.S. E.P.A.*, 758 F.3d 588, 591 (4th Cir. 2014). When Proposed Intervenors filed this motion to intervene on July 19, this suit had progressed little since Plaintiffs filed their complaint. The Governor succeeded in having himself dismissed from the suit, and the State Board filed an unsuccessful motion to stay the case—but the district court had in no way considered the merits of the issues this case implicates. And because the case has not substantially progressed, granting

Proposed Intervenors' motion to intervene would not prejudice the parties. What is more, Proposed Intervenors did not delay in filing this motion: the district court denied Proposed Intervenors' initial motion to intervene around six weeks before Proposed Intervenors filed their renewed motion to intervene, which they filed shortly after the developments in the *Holmes* case demonstrating Defendants' failure to adequately defend S.B. 824.

And Proposed Intervenors have made every attempt to ensure that the district court rules on their motion in a timely manner: Proposed Intervenors asked the district court to rule expeditiously on their intervention motion the *same day* that Plaintiffs filed their motion for a preliminary injunction.

*ii. Proposed Intervenors Have a Significantly Protectable Interest in the Subject of This Suit.*

Proposed Intervenors have a "significantly protectable" interest in the enforcement of a constitutionally valid law that the General Assembly enacted at the people of North Carolina's express command. *Donaldson v. United States*, 400 U.S. 517, 531 (1971). Proposed Intervenors have two independent significantly protectable interests that entitle them to defend S.B. 824: (1) the interest of *the State* in defending the constitutionality of S.B. 824; and (2) the interest of *the Legislature* in defending the constitutionality of S.B. 824. *See Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019) (treating these as two separate interests).

As an initial matter, no party has disputed that the State itself has an interest in defending the validity of its laws, so the only question is whether Proposed Intervenors can assert that interest. North Carolina law expressly authorizes Proposed Intervenors, on behalf of the General Assembly, to defend the constitutionality of legislation as "agents of the State." N.C. GEN. STAT. § 1-72.2(b); *see id.* § 120-32.6(b). State law also "request[s]" that federal courts allow the legislature to "participate . . . as a party" in cases in which the State is a party and a State law is attacked. *Id*. § 1-72.2(a).

Long-standing Supreme Court authority establishes that state legislative officials have the authority to defend state enactments in federal court "on behalf of the State" when State law "authorize[s]" them "to represent the [State] Legislature in litigation." *Karcher v. May*, 484 U.S. 72, 81 (1987). And the Supreme Court's recent decision in *Bethune-Hill* confirms that laws such as North Carolina's allow a legislature to represent the State's interests in court, explaining that "[s]ome States" "have authorized" one or both houses of the legislature "to litigate on the State's behalf." *Bethune-Hill*, 139 S. Ct. at 1952; *see also id.* (pointing to an Indiana statute similar to North Carolina's as an example of a statute that "authorize[s]" a legislative body "to litigate on the State's behalf").

And if anything the legislature—*not* the Attorney General—has primacy in defending the State under North Carolina law: if the General Assembly "employs

counsel in addition to or other than the Attorney General," the legislative litigants may "designate the counsel employed by the General Assembly as lead counsel in the defense" and the General Assembly's counsel "shall possess final decision-making authority with respect to the representation, counsel, or service for the General Assembly." N.C. GEN. STAT. § 120-32.6(c). This interest in representing the State is not dependent in any way on whether the executive branch is involved in defending the State as well; North Carolina law does not suggest any such limitation. Instead, North Carolina law provides that "[*w*]*henever* the validity or constitutionality of an act of the General Assembly . . . is the subject of an action in any . . . federal court," Proposed Intervenors, "as agents of the State through the General Assembly, *shall be necessary parties* . . . ." *Id.* at § 120-32.6(b) (emphasis added). Indeed, in accordance with the North Carolina authorities discussed above, the President Pro Tempore and Speaker's interest in defending state legislation has been recognized by this Court. *See* Add. 045 (motion to intervene by Speaker and President Pro Tempore pursuant to Section 1-72.2 in *Am. Civil Liberties Union v. Tennyson*); Add. 053 (granting motion),

And Proposed Intervenors have a second significantly protectable interest entitling them to defend S.B. 824: the interest of the General Assembly itself in defending the constitutionality of S.B. 824. *See Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2665 (2015); *cf. Bethune-Hill*, 139 S. Ct. at

1953–54. Proposed Intervenors represent both houses of the General Assembly in ensuring that their enactments are not "nullified," *Ariz. Indep. Redistricting Comm'n*, 135 S. Ct. at 2665. The General Assembly also has an interest in defending against Plaintiffs' efforts to subject it to continuing judicial supervision under Section 3 of the Voting Rights Act. Add. 036.

*iii. The Disposition of This Case Will Impair Proposed Intervenors' Significantly Protectable Interest.*

Intervention is required under Rule 24(a) where "the disposition of a case would, as a practical matter, impair the applicant's ability to protect his interest." *Spring Const. Co. v. Harris*, 614 F.2d 374, 377 (4th Cir. 1980). The outcome of this case may impair Proposed Intervenors' established significant interests in defending the constitutionality of S.B. 824. The Court need only look to the State Board's behavior in the *Holmes* litigation: it failed to engage in discovery, failed to retain rebuttal experts, failed to oppose a preliminary injunction, and failed to oppose an interlocutory and discretionary appeal to the North Carolina Supreme Court. Assuming the State Board takes such an approach in the instant litigation (and there is no reason to believe it will not), barring intervention, the Court may very well be faced with a request to enjoin S.B. 824 that is at least partially unopposed on the merits. If the Court grants this relief, the State's interest in the validity of its laws will have been undermined. The General Assembly's efforts to pass S.B. 824 will have been "completely nullified." *Ariz. Indep. Redistricting Comm'n*, 135 S. Ct. at

2665 (quotation marks omitted). And its continuing authority to enact voting laws—itself a significantly protectable interest—may be burdened. *See Francis v. Chamber of Commerce of U.S.*, 481 F.2d 192, 195 n.8 (4th Cir. 1973) (noting that stare decisis, which would attach to an adverse appellate ruling in the case, "by itself may furnish the practical disadvantage required under [Rule] 24(a)").

That the district court has permitted Proposed Intervenors to file an amicus brief, *see* Add. 216, will in no way cure the imminent impairment to Proposed Intervenors' interests: an amicus limited to briefing cannot engage in discovery, seek dismissal of a claim, submit evidence in opposition to a preliminary injunction, or file a notice of appeal. This last point is particularly important here: in the litigation over North Carolina's last voter ID law, Governor Cooper and Attorney General Stein's successful effort to shield this Court's decision from Supreme Court review was facilitated by the fact that the General Assembly was not a party to the litigation. *See North Carolina v. North Carolina State Conference of NAACP*, 137 S. Ct. 1399 (2017). Proposed Intervenors need to be added to this case to ensure the State's appellate rights are maintained.

*iv. The Existing Defendants Will Not Adequately Protect Proposed Intervenors' Significantly Protectable Interest.*

"The requirement of [inadequate representation] is satisfied if the applicant shows that representation of his interest *may be* inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (emphasis added; quotation

marks omitted); *accord United Guaranty Residential Ins. Co. of Iowa v. Philadelphia Sav. Fund Soc'y*, 819 F.2d 473, 476 (4th Cir. 1987). "[A]nd the burden of making that showing should be treated as minimal." *Trbovich*, 404 U.S. at 538 n.10. Proposed Intervenors easily clear this hurdle.

*First*, the executive branch has declined to robustly and fully defend S.B. 824 in this suit. As discussed previously, the Governor has succeeded in extricating himself from this case, and the only challenge the State Board Defendants have mounted to Plaintiffs' complaint is a failed request for this case to be stayed on abstention grounds; they did not move to dismiss the complaint under Rule 12(b)(6) (and the time for them to do so has expired).

*Second*, as discussed previously the State Board's unwillingness to robustly defend S.B. 824 has permeated its behavior in the *Holmes* litigation, and there is no reason to believe that its approach in this case will be any different. The State Board did not move to fully dismiss the complaint and failed to mount a challenge to the intentional discrimination claim—a fact that the *plaintiffs* used to support their argument that the *Holmes* case must continue. The State Board also did not seriously engage in discovery in *Holmes*—failing to fight for discovery in the first place and then failing to notice a single deposition. The State Board likewise *did not oppose on the merits entry of an injunction preventing S.B. 824 from going into effect*—a clear indicator that it is declining to robustly defend S.B. 824. Put another way, had

Proposed Intervenors *not* been named defendants in *Holmes*, there would have been *no* discovery, and the court could have entered an *unopposed* preliminary injunction barring S.B. 824 from going into effect. Only Proposed Intervenors provided support for the state court's conclusion that the *Holmes* plaintiffs are unlikely to succeed on the merits.

The State Board's activities in *Holmes* are especially problematic because the intentional discrimination claim is the key claim in both *Holmes* and the instant suit: it is the claim that prevailed against the State's prior voter ID law. *See McCrory*, 831 F.3d at 214. This Court need look no further than the Defendants' refusal to defend the law against this charge to conclude that Proposed Intervenors' interests are not being adequately represented.

The intentional discrimination claim is a particularly difficult claim for the State Board to defend, because of the Governor's control of the State Board and because of the Attorney General and Governor's longstanding opposition to such laws.

As discussed previously in detail, the Governor has demonstrated time and again that he opposes voter ID, and thus will not robustly defend S.B. 824. *See supra* Statement of Facts Section I. His opposition directly impairs the defense in this case, because the Governor's ability to control the policies embraced by the State Board is required by the North Carolina Constitution, as he has previously argued and as

the Supreme Court of North Carolina has recognized. *See Cooper v. Berger*, 809 S.E.2d 98, 115–16 (N.C. 2018). This means that the Governor's control of the State Board is a *necessary component* of the State Board's current structure. And the Governor's recent appointment of Damon Circosta to the State Board of Elections is telling: Mr. Circosta is the Executive Director of an organization that provides grant money to the Southern Coalition for Social Justice, the plaintiffs' counsel in *Holmes*. *See* AJ FLETCHER FOUNDATION: CURRENT PARTNERS, https://ajf.org/current-partners/ (accessed Sept. 25, 2019).

The Governor's control of the State Board, his opposition to voter ID, the Attorney General's opposition to voter ID, *see supra* Statement of Facts Section I, and the Attorney General's representation of the State Board in this case likely explain the State Board's reticence to wholeheartedly defend S.B. 824. When vetoing S.B. 824, the Governor stated that he believed that the law was "*designed* to suppress the rights of minority, poor and elderly voters." Add. 043 (emphasis added). And the Governor is actively supporting Plaintiff North Carolina NAACP's state court challenge to the constitutional amendment requiring voter ID. He has filed an amicus brief in support of the invalidation of the amendment, criticizing it for its alleged "disproportionate[] impact" on "racial minorities." Add. 399.

It therefore should come as no surprise that the State Board—controlled by the Governor and represented by the Attorney General—has assiduously *refused* to

defend the merits of the intentional discrimination claim in either this case or the *Holmes* litigation. This refusal is clear evidence not only "that representation of [Proposed Intervenors'] interest *may be* inadequate," *Trbovich*, 404 U.S. 538 n.10 (1972) (emphasis added; quotations omitted), but also that it *has been and will continue to be* inadequate—and thus Proposed Intervenors have a clear and indisputable right to intervene under Rule 24(a).

B. <u>Alternatively, Proposed Intervenors Satisfy the Minimal Requirements for Permissive Intervention.</u>

Under Rule 24(b), the Court "may permit anyone to intervene who" files a timely motion and who "has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1)(B). The Court also "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id.* 24(b)(3).

The prerequisites for permissive intervention are satisfied here. Timeliness is measured by the same three criteria used for intervention as of right. *See Students for Fair Admissions Inc. v. Univ. of North Carolina*, 319 F.R.D. 490, 494 (M.D.N.C. 2017). As explained above, *see supra* Argument Section I.A.i., Proposed Intervenors meet these criteria. And since Proposed Intervenors seek simply to defend the claims made by Plaintiffs, the commonality requirement is satisfied.

In addition, Proposed Intervenors will enhance, not hinder, the timely adjudication of this case. *Contra* Add. 235. As discussed previously, Proposed

Intervenors were solely responsible for the comprehensive opposition to the motion for a preliminary injunction in *Holmes*. The State Board, by contrast, was content to allow Proposed Intervenors to take the lead on these matters. The courts will benefit from the robust arguments and evidence that Proposed Intervenors bring to the table. Indeed, allowing Proposed Intervenors to intervene is crucial to ensure that the courts are able to fairly adjudicate this case. Our system is an adversarial system, and if there is no robust response to Plaintiffs' arguments, the courts will not be exposed to the best arguments and evidence against Plaintiffs' positions.

While reversal of the denial of permissive intervention is not often warranted, there is undoubted jurisdiction to enter such an order" in appropriate circumstances. *Nuesse v. Camp*, 385 F.2d 694, 704 (D.C. Cir. 1967). This Court therefore will reverse the denial of permissive intervention upon finding a "clear abuse of discretion in denying the motion." *McHenry v. Commissioner of Internal Revenue*, 677 F.3d 214, 219 (4th Cir. 2012). Here the district court clearly has abused its discretion twice over in constructively denying Proposed Intervenors' motion. First, the district court has abused its discretion by failing to rule on Proposed Intervenors' motion while preliminary injunction proceedings continue apace. And second, the only proper exercise of discretion in this case is to allow Proposed Intervenors to intervene, given the State Board Defendants' persistent refusal to defend S.B. 824 against the claim that it was enacted with racially discriminatory intent.

## II. Proposed Intervenors Have No Other Adequate Means To Attain This Relief.

Absent a writ of mandamus from this Court ordering the district court to allow Proposed Intervenors to intervene, there is no adequate means for Proposed Intervenors to vindicate this right. *See Cheney*, 542 U.S. at 380–81. This is not a situation in which a party is impermissibly seeking mandamus "as a substitute for appeal." *In re Lockheed Martin Corp.*, 503 F.3d 351, 353–54 (4th Cir. 2007). To the contrary, the district court's persistent failure to rule—even after Proposed Intervenors sought to ascertain the status of their motion to intervene and asserted the vital importance of timely ruling on that motion—compels issuance of the writ because it has deprived Proposed Intervenors of a clean opportunity to appeal, which they would be entitled to had the district court simply denied their motion to intervene. *See Bridges v. Dep't of Maryland State Police*, 441 F.3d 197, 207 (4th Cir. 2006) (explaining that denial of a motion to intervene is "treated as a final judgment that is appealable"); *Scott v. Bond*, 734 F. App'x 188, 189 (4th Cir. 2018) (similar). "Where"—as here—"a district court obstinately refuses to adjudicate a matter properly before it, a court of appeals may issue the writ to correct unauthorized action of the district court obstructing the appeal." *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 666–67 (1978) (plurality op.) (quotation marks omitted).

The fact that Proposed Intervenors filed a Notice of Appeal in the district court appealing from the de facto denial of their Renewed Motion To Intervene on

September 23 does not change this analysis. Add. 558. Given the unique procedural posture Proposed Intervenors find themselves in in this case, they have sought both mandamus review *and* appeal of the de facto denial to timely exhaust all possible avenues for vindicating their right to intervene. If the Court finds that there is no appellate jurisdiction over the appeal, Proposed Intervenors will have no form of adequate relief other than this petition for a writ of mandamus.

And time is of the essence, which means that it would not suffice to require Proposed Intervenors to wait out the district court's ruling and *then* appeal to this Court. The district proceedings are slated to continue rapidly, given the September 30 pretrial conference and the fact that discovery for and briefing on the preliminary injunction will conclude by the end of October. If this case progresses absent a decision on Proposed Intervenors' intervention motion, their ability to vindicate their rights in defending S.B. 824 will be permanently injured because they will not be able to participate as a party in the district court's consideration of the motion for a preliminary injunction. Barring mandamus relief from this Court, the district court may very well be faced with a request to enjoin S.B. 824 that is neither engaged on the merits nor rebutted on the facts. And if the district court enjoins S.B. 824 without the benefit of a wholehearted defense—*even if* such an injunction is only preliminary—the State's interest in defending the validity of its laws (which Proposed Intervenors have the right to vindicate) will have been irreparably harmed

during to the suspension of S.B. 824. *See Maryland v. King*, 567 U.S. 1301 (2012) (Roberts, C.J.) (explaining that "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury" (quotations omitted)).

What is more, because the named parties have proposed a June 2020 trial date, *see* Add. 565, if a preliminary injunction is entered it will govern the March 2020 primary. And given their behavior to date, there is no reason believe that State Board Defendants would appeal the entry of a preliminary injunction—and if Proposed Intervenors are not parties, they, too, will not be able to appeal such a grant.

On these facts, then, absent a writ of mandamus Proposed Intervenors will be stripped of the ability to participate as a party in crucial discovery, motions practice, and briefing—gutting the very essence of their right to intervene even should the district court or this Court permit intervention at a later date. It is thus clear that Proposed Intervenors have no other adequate means to protect their right to intervene and the people of North Carolina's right to a fulsome defense of S.B. 824. If the Court does not step in at this juncture and order the district court to permit Proposed Intervenors to intervene, "appellate jurisdiction could be defeated and the purpose of the statute authorizing the writ thwarted by unauthorized action of the district court obstructing the appeal." *Roche*, 319 U.S. at 25 (1943); *see In re Special Grand Jury No. 81-1*, 676 F.2d 1005, 1007–08 (4th Cir. 1982) (noting that the Fourth

Circuit had granted a writ of mandamus ordering the district court to allow a party to intervene in a motion to quash).

## III. <u>Mandamus Is Appropriate Under the Circumstances of This Case.</u>

The unique circumstances of this case merit the "extraordinary" use of mandamus. *See Cheney*, 542 U.S. at 380–81. Proposed Intervenors' motion to intervene is extremely time-sensitive, their right to intervene in indisputable, and the ability of the federal courts to determine the constitutionality of a State law enacted in response to a constitutional mandate on the basis of a full record hangs in the balance.

What is more, the federal courts have recently experienced the jurisdictional problems that ensue when the General Assembly does not participate in litigation defending the constitutionality of State laws: the final judgment can be plagued by difficulties that suggest non-reviewability. *See NAACP*, 137 S. Ct. at 1399–1400 (statement of Roberts, C.J.). It is particularly telling that those problems arose from the *same issue* (whether North Carolina's voter ID law discriminates on the basis of race) and involved the *same actors* (Governor Cooper, who controls the remaining Defendants in this litigation, and Attorney General Stein, who represents those Defendants) as those here. These are truly extraordinary circumstances that merit mandamus.

## IV. This Court Should Stay the District Court Proceedings Pending Its Decision on This Petition.

This Court has repeatedly stayed district court proceedings while considering petitions for a writ of mandamus. *See, e.g.*, *In re Trump*, 928 F.3d at 364; *In re Mills*, 287 F. App'x 273, 276 (4th Cir. 2008); *see also Greendige v. Allstate Ins. Co.*, No. 02 CIV.9796, 2003 WL 22871905, at *4 (S.D.N.Y. Dec. 3, 2003) (staying further proceedings in the district court until the Second Circuit decided the appeal of the denial of a motion to intervene). Under the familiar four-factor test for granting stays, *see Nken v. Holder*, 556 U.S. 418, 434 (2009), the Court should do so here. *First*, as laid out above, Proposed Intervenors are likely to succeed on the merits of this petition. *Second*, again as explained above, they will be irreparably injured if discovery and briefing on the motion for a preliminary injunction continues without their involvement. *Third*, staying this Court's proceedings will not substantially injure the other parties to this case; S.B. 824 is not slated to go into effect until the March 2020 primary elections, and Plaintiffs have hardly acted as if time is of the essence, as they waited nearly nine months to file their preliminary injunction motion. And *fourth*, a stay will serve the public interest because the people of North Carolina have an interest in seeing their democratically enacted laws fully defended.

As an alternative to granting a stay, the Court should grant Proposed Intervenors the right to fully participate as defendants in this suit during the pendency of this petition. So long as Proposed Intervenors are permitted to fully

engage in discovery, motions practice, submission of evidence, and briefing until the Court rules on this petition, there is no need for a stay and matters can proceed in the district court without prejudicing Proposed Intervenors' interests, at least until an appealable order issues. It is not unprecedented for courts to so expand the roles of amici, and so doing would prevent irreparable harm to Proposed Intervenors. *See, e.g.*, *Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir. 1982); *Russell v. Bd. of Plumbing Examiners of Cty. of Westchester*, 74 F.Supp.2d 349, 351 (S.D.N.Y. 1999), *aff'd*, 1 F. App'x 38 (2d Cir. 2001).

**CONCLUSION**

For the reasons given above, this Court should stay the district court proceedings pending its decision on this petition and grant a writ of mandamus ordering the district court to permit Proposed Intervenors to intervene.

Dated: September 26, 2019

Respectfully submitted,

/s/ David H. Thompson
COOPER & KIRK, PLLC
Michael W. Kirk
David H. Thompson
Peter A. Patterson
Nicole J. Moss (State Bar No. 31958)
Haley N. Proctor
Nicole Frazer Reaves
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600 / (202) 220-9601
dthompson@cooperkirk.com

*Counsel for Proposed Intervenors*

/s/ Nathan A. Huff
PHELPS DUNBAR LLP
4140 ParkLake Avenue, Suite 100
Raleigh, North Carolina 27612
(919) 789-5300 /(919) 789-5301
nathan.huff@phelps.com
State Bar No. 40626

*Counsel for Proposed Intervenors*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing petition for a writ of mandamus complies with the requirements of FED. R. APP. P. 21(d) and 32(c)(2). The petition is prepared in 14-point Times New Roman font, a proportionally spaced typeface; it is double-spaced; and it contains 7,759 words (exclusive of certificates and documents required by Rule 21(a)(2)(C)), as measured by Microsoft Word.

/s/ David H. Thompson
David H. Thompson

## CERTIFICATE OF SERVICE

Pursuant to FED. R. APP. P. 21(a)(1) I hereby certify that on September 26, 2019, I electronically filed the foregoing Petition for a Writ of Mandamus and accompanying Addendum with the Clerk of the Court by using the appellate CM/ECF system. Service on counsel for all parties in the district court has been accomplished via notice filed through the district court's CM/ECF system attaching a copy of this filing. The district court has also been provided with a paper copy of this filing through Federal Express.

/s/ David H. Thompson
David H. Thompson