**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

Case No. 1:18-cv-01034-LCB-LPA

NORTH CAROLINA STATE CONFERENCE OF THE NAACP, CHAPEL HILL - CARRBORO NAACP, GREENSBORO NAACP, HIGH POINT NAACP, MOORE COUNTY NAACP, STOKES COUNTY BRANCH OF THE NAACP, WINSTON SALEM - FORSYTH COUNTY NAACP,

*Plaintiffs*,

v.

ROY ASBERRY COOPER III, in his official capacity as the Governor of North Carolina; DAMON CIRCOSTA, in his official capacity as Chair of the North Carolina State Board of Elections; STELLA E. ANDERSON, in her official capacity as Secretary of the North Carolina State Board of Elections; DAVID C. BLACK, KEN RAYMOND, and JEFFERSON CARMON III, in their official capacities as members of the North Carolina State Board of Elections,

*Defendants*,

and

PHILIP E. BERGER, in his official capacity as President Pro Tempore of the North Carolina Senate, and TIMOTHY K. MOORE, in his official capacity as Speaker of the North Carolina House of Representatives,

*Proposed Intervenors*.

**BRIEF IN SUPPORT OF PROPOSED INTERVENORS' MOTION FOR A STAY PENDING APPEAL**

## INTRODUCTION

Over a year ago, the North Carolina General Assembly, acting pursuant to a constitutional mandate, enacted S.B. 824, one of the most voter-friendly voter ID laws in the country. Led by primary sponsor Joel Ford, an African-American Democrat, the General Assembly incorporated and expanded upon features of voter ID laws that previously had withstood legal challenge. One example is Virginia's S.B. 1256. Like S.B. 824, that law provides voters without ID the opportunity to vote a provisional ballot and cure that ballot with free, no-documentation ID available from boards of elections offices. Based on these features, the Fourth Circuit held that S.B. 1256 "provides every voter an equal opportunity to vote." *Lee v. Virginia State Bd. of Elections*, 843 F.3d 592, 601 (4th Cir. 2016). This conclusion applies with even more force to S.B. 824, for it not only gives voters *three times longer* to cure provisional ballots than the three days provided by S.B. 1256, *id.* at 594, but it also excuses voters from having to obtain an ID to cure their ballot at all if they simply fill out a reasonable impediment form—an option not available under Virginia law. North Carolina patterned that feature of S.B. 824 after South Carolina's Act R54, a voter ID law precleared by a three-judge district court under the demanding burden set by Section 5 of the Voting Rights Act. *See South Carolina v. United States*, 898 F. Supp. 2d 30 (D.D.C. 2012). And S.B. 824 goes beyond even South Carolina law by including a much longer list of qualifying ID. *See id.* at 33.

A legislature intent on racial discrimination simply would not have enacted S.B. 824. Indeed, the General Assembly's overriding goal was to fulfill its constitutional

mandate to enact a voter ID law while ensuring that "[*a*]*ll* registered voters will be allowed to vote with or without a photo ID card." 2018 N.C. Sess. Laws 144, § 1.5(a)(10) (emphasis added). And the General Assembly succeeded in this goal: the terms of S.B. 824 do not preclude *a single actual or hypothetical voter* from access to the franchise.

Despite all of this, S.B. 824 now stands enjoined based on this Court's conclusion that Plaintiffs are likely to succeed on their claim that it was enacted with racially discriminatory intent, a conclusion with which Proposed Intervenors respectfully but strongly disagree. And due to the combined actions of Plaintiffs and the State Board of Elections ("State Board"), absent further action by this Court S.B. 824 will be enjoined from going into effect for the March 2020 primaries without the Fourth Circuit having an opportunity to review this Court's decision. Plaintiffs filed their detailed, thirty-seven-page complaint challenging S.B. 824 on December 20, 2018, the day after the bill was enacted into law. Despite their evident capacity for prompt action, Plaintiffs proceeded to wait *nearly nine months* to file their motion for a preliminary injunction. And after this Court granted that motion on December 31, 2019, the Attorney General's office announced that the State Board would appeal *but would not seek a stay of the decision* before the 2020 primaries.

With the March 2020 primaries rapidly approaching—absentee ballots are scheduled to be available on January 13, *see* Aff. of Karen Brinson Bell, Doc. 97-9 at ¶ 39 (Oct. 30, 2019)—and the State Board unwilling to seek a stay of this Court's preliminary injunction ruling, Proposed Intervenors must step in and seek to protect the State's interest

in having its laws enforced. Proposed Intervenors, to be sure, are not currently a party to this case. But they do have pending an appeal challenging this Court's denial of their motion to intervene, and Proposed Intervenors respectfully submit that they are likely to succeed in that appeal—and ultimately succeed in the Fourth Circuit in the State Board's forthcoming appeal of the preliminary injunction order. Proposed Intervenors therefore ask this Court to stay its order enjoining S.B. 824 pending their appeal of this Court's order denying their motion to intervene. And even if the Court disagrees, it at a minimum should ensure that its injunction does not deprive citizens of North Carolina of their right to obtain a free photo ID from their county boards of elections as this case progresses.

## FACTUAL BACKGROUND

On July 19, 2019, Proposed Intervenors, Philip E. Berger, President Pro Tempore of the North Carolina Senate, and Timothy K. Moore, Speaker of the North Carolina House of Representatives, filed their Renewed Motion To Intervene. Doc. 60. This Court denied that motion on November 7, 2019, Mem. Op. and Order, Doc. 100, and Proposed Intervenors noticed an appeal four days later, Notice of Appeal, Doc. 103 (Nov. 11, 2019). Proposed Intervenors' opening brief in their appeal on the intervention denial is due January 13, 2019. *NC NAACP State Conference v. Philip Berger*, Fourth Cir. No. 19-2273, Briefing Order, Doc. 30 at 1 (Dec. 3, 2019).

On December 31, 2019, this Court entered a preliminary injunction enjoining the North Carolina State Board of Elections ("State Board") "from implementing any of S.B. 824's voter-ID requirements and ballot-challenge provisions with respect to any election,

until otherwise ordered by this Court." Mem. Op., Order, and Preliminary Injunction, Doc. 120 at 59 ("Prelim. Inj. Order"). The North Carolina Department of Justice, which represents the State Board in this case, issued a press release stating that it will appeal the grant of the preliminary injunction but will not seek a stay of the preliminary injunction before the primary election. N.C. DEPT. OF JUSTICE, *RELEASE: NCDOJ Update on Voter ID Litigation*, Jan. 2, 2020, https://bit.ly/306fYgz. And in response to the district court's preliminary injunction, the State Board has, among other actions, instructed all county boards of elections to immediately cease issuing the free voter ID cards that S.B. 824 mandated county boards to issue to voters. N.C. STATE BOARD OF ELECTIONS, Numbered Memo 2020-01 at 2, Jan. 3, 2020, https://bit.ly/35z1vuQ.

## ARGUMENT

Because they are appealing the denial of their renewed intervention request, and because they will incur irreparable harm if the district court's preliminary injunction remains in force during ongoing litigation in this case, Proposed Intervenors seek a stay of this Court's proceedings pending the Fourth Circuit's resolution of their appeal. *See* FED. R. CIV. P. 62.

The grant of stays pending appeal are governed by a familiar four-part inquiry:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 434 (2009) (quotation marks omitted). "The first two factors" in this inquiry "are the most critical." *Id.* And as the Supreme Court has explained, "the factors regulating the issuance of a stay are generally the same" in both district courts and the courts of appeals, *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987), so case law on the two is interchangeable. What is more, courts have entered stays during the pendency of an appeal of an order denying intervention. *See, e.g.*, *Greendige v. Allstate Ins. Co.*, No. 02 CIV.9796, 2003 WL 22871905, at *4 (S.D.N.Y. Dec. 3, 2003) (staying further proceedings in the district court until the Second Circuit decided the appeal of the denial of a motion to intervene); *Harris v. Reeves*, 761 F. Supp. 382, 385 (E.D. Pa. 1991) (noting that both the Third Circuit and the Supreme Court had stayed implementation of a consent decree pending the appeal of the denial of a motion to intervene).

As explained below, all four factors weigh in favor of granting Proposed Intervenors' stay pending appeal.

## I. Proposed Intervenors Are Likely to Succeed on the Merits.

### A. Proposed Intervenors Are Likely To Succeed on the Merits of Their Intervention Appeal.

For the reasons given in their brief in support of their renewed motion to intervene and their reply in support of that motion, Proposed Intervenors respectfully submit they are likely to succeed on the merits of the appeal of their motion to intervene; Proposed Intervenors incorporate the arguments made in those briefs by reference. *See* Prop. Intervenors' Mem. in Supp. of Their Renewed Mot. To Intervene, Doc. 61 (July 19, 2019);

Prop. Intervenors' Reply to the Resps. to Their Renewed Mot. To Intervene, Doc. 69 (Aug. 19, 2019).

Even if the Court does not agree that Proposed Intervenors are likely to succeed on the merits of their appeal, this factor still cuts in favor of granting a stay if there is "a substantial case on the merits" and the other factors weigh in favor of a stay. *Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC,* No. 1:16CV534, 2016 WL 3346349, at *3 (E.D. Va. June 16, 2016). At a minimum, the intervention issues in this case meet that standard. What is more, Proposed Intervenors' intervention papers relied heavily on *Virginia House of Delegates v. Bethune-Hill*, 139 U.S. 1945 (2019), a new decision from the Supreme Court. But the Fourth Circuit has not yet had occasion to grapple with the significance of that decision for motions to intervene filed by state legislators given the statutory right to defend their state laws. Where, as here, a "case raises a number of complex questions and novel legal theories which the Fourth Circuit has yet to evaluate, and the case has potentially large downstream precedential consequences," this first factor permits staying the Court's order even if the Court "does not believe that [the party] will be able to succeed on these issues" "[f]or the reasons described" in a previous order. *Northrop Grumman Tech. Servs.*, 2016 WL 3346349, at *3 (granting stay pending appeal).

B. <u>The Preliminary Injunction Appeal is Likely To Succeed on the Merits.</u>

In addition to litigating the appeal of the denial of their intervention motion, Proposed Intervenors also intend to seek to intervene in the State Board's forthcoming appeal of the preliminary injunction order. For the same reasons they are likely to succeed

in their intervention appeal, Proposed Intervenors also are likely to succeed in that motion. And Proposed Intervenors and the State Board are likely to succeed on the merits of that preliminary injunction appeal.[1]

The preliminary injunction appeal is likely to succeed for the reasons given in the briefs filed in opposition to the preliminary injunction motion, which Proposed Intervenors incorporate by reference. Defs.' Resp. in Opp. to Pls.' Mot. for Prelim. Inj., Doc. 97 (Oct. 30, 2019); Am. Amicus Br. in Opp. to Pls.' Mot. for a Prelim. Inj., Doc. 117 (Dec. 2, 2019). It also is likely that the Fourth Circuit will find additional aspects of this Court's injunction order to have been in error. For example, this Court flipped the burden of proof when analyzing whether the Fourth Circuit's finding on H.B. 589's discriminatory intent carried over to S.B. 824. This Court repeatedly required that Defendants show that S.B. 824 "purge[d] the taint of discriminatory intent" from H.B. 589 and "cleanse[d] the discriminatory taint which had imbued H.B. 589." Prelim. Inj. Order at 23, 38. But requiring Defendants to show that discriminatory intent was "purge[d]" and "cleanse[d]," *id.* at 23, 38, directly contravenes binding Supreme Court precedent, which holds that "[t]he allocation of the burden of proof and the presumption of legislative good faith are not changed by a finding of past discrimination," *Abbott v. Perez*, 138 S. Ct. 2305, 2324 (2018). Indeed, the Supreme Court recently reversed a lower federal court for "flip[ping] the evidentiary burden on its head" due to "past discrimination." *Perez*, 138 S. Ct. at 2325.

[1] If the Fourth Circuit decides Proposed Intervenors' appeal in their favor before deciding the State Board's appeal of the preliminary injunction, Proposed Intervenors may seek a further stay pending the State Board's appeal.

This is but one of the many reasons that, we respectfully submit, the Fourth Circuit will disagree with this Court on Plaintiffs' likelihood of success on the merits, and instead will agree with the three-judge trial court in the parallel state court proceeding, which found it *unlikely* that S.B. 824 was enacted with racially discriminatory intent. Order Denying Pls.' Mot. for Prelim. Inj. and Denying in Part and Granting in Part Defs.' Mots. To Dismiss in *Holmes, et al. v. Moore, et al.*, 18 CVS 15292 (Wake Ct. Sup. Ct. July 19, 2019), Doc. 67-3 at 6.

## II. **<u>Proposed Intervenors Will Be Irreparably Injured Absent a Stay of the Preliminary Injunction Pending Appeal.</u>**

North Carolina law expressly authorizes Proposed Intervenors, on behalf of the General Assembly, to defend the constitutionality of legislation as "agents of the State." N.C. GEN. STAT. § 1-72.2(b); *see id.* § 120-32.6(b) (describing Proposed Intervenors as "agents of the State" when defending the constitutionality of state laws); *id.* § 114-2(10) (same). The State's interest in enforcing democratically enacted laws is irreparably harmed whenever it is enjoined from doing so. *See Maryland v. King*, 567 U.S. 1301, 133 S. Ct. 1, 3 (2012) (Roberts, C.J.) (explaining that "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury" and granting a stay pending disposition of a writ of certiorari (quotation marks omitted)); *New Motor Vehicle Bd. of California v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, C.J.) (same). By barring the State from enforcing S.B. 824 during the ongoing litigation over it, this Court's preliminary injunction inflicts irreparable harm on

the State interests that Proposed Intervenors are authorized to defend as agents of the State, which weighs in favor of a stay.

## III. <u>The Issuance of a Stay Will Not Substantially Injure the Other Parties to This Proceeding.</u>

Staying this Court's injunction order will not substantially injure the other parties to this case. Plaintiffs have failed to identify a single voter—real or hypothetical—who will not be able to vote by operation of the terms of S.B. 824, which ensures that "[a]ll registered voters will be allowed to vote with or without a photo ID card." 2018 N.C. Sess. Law 144, § 1.5(a)(10). And Plaintiffs have hardly acted as if time is of the essence, as they waited nearly nine months to file their preliminary injunction motion. Plaintiffs thus will not be harmed in any way (let alone "substantially injure[d]," *see Nken*, 556 U.S. at 434) by the entry of a stay during the pendency of Proposed Intervenors' appeal. *Cf. Magnussen Furniture, Inc. v. Collezione Europa USA, Inc.*, 116 F.3d 472 n.6 (4th Cir. 1997) (per curiam) (explaining that a party's "purported need for immediate relief is belied by its own delay in bringing this action"). What is more, Plaintiffs should not be rewarded for their delay in seeking a preliminary injunction; the belated and calculated timing of Plaintiffs' preliminary injunction motion cannot be allowed to eliminate the possibility of appellate review of the preliminary injunction before the 2020 primaries. *Cf. Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018) (per curiam); *Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989).

And the State Board will not be injured by the issuance of a stay, as it is in the Board's interest to enforce the democratically enacted laws of the State that it is entrusted with executing.

## IV. **Grant of a Stay Pending Appeal Will Serve the Public Interest.**

A stay will serve the public interest because the people of North Carolina have an interest in seeing their democratically enacted laws implemented, *cf. King*, 133 S. Ct. at 3 (Roberts, C.J.), and, where challenged, fully defended, *cf.* N.C. GEN. STAT. § 1-72.2(b). This is particularly so where, as here, S.B. 824 was passed pursuant to a constitutional amendment requiring voter ID that was adopted by a majority of North Carolina voters just over a year ago. And because Plaintiffs are unlikely to succeed in the preliminary injunction appeal—or in their permanent injunction bid—allowing the preliminary injunction to remain in force now will only contribute to voter confusion when the State is able to enforce its law. *See Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006) (per curiam) ("Court orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls."). The public interests in enforcing democratically enacted laws, ensuring their robust defense, and avoiding voter confusion thus all weigh in favor of a stay pending appeal.

* * *

This Court should thus stay the entirety of its preliminary injunction order.[2] But if the Court does not do so it should at least clarify that its preliminary injunction order does not prohibit the county boards of elections from continuing to issue free ID—or stay its order in that respect to the extent it does. In the wake of this Court's preliminary injunction the State Board has instructed county boards to cease issuing free voter ID. The Court should clarify that this is not required by its preliminary injunction order; doing so will ensure that the county boards continue to follow their legal obligation to offer free ID. *See* N.C. GEN. STAT. § 163-82.8A(a) ("The county board of elections *shall* . . . issue without charge voter photo identification cards upon request to registered voters." (emphasis added)). And in any event, there is no reason to halt the issuance of free ID even if the Court believes S.B. 824 ultimately will be invalidated. North Carolina's constitutional amendment (which is valid and unchallenged in this litigation) requires voter ID, *see* N.C. CONST. art. VI, §§ 2(4), 3(2), so whether S.B. 824 is ultimately upheld or invalidated North Carolinians will have a voter ID law in place at some point in the future. It is highly likely that that law will incorporate free county board ID. This Court should ensure that its preliminary injunction order does not stand in the way of the issuance of free ID that will help voters in upcoming elections.

---

[2] If the Court grants a stay pending appeal, Proposed Intervenors respectfully ask the Court to waive any bond requirement because Plaintiffs will not suffer costs or damages from the proposed stay. *See Kirby v. Gen. Elec. Co.*, 210 F.R.D. 180, 195 (W.D.N.C. 2000) ("Rule 62(d) does not preclude the issuance of a stay on the basis of some lesser bond, or no bond at all.").

## CONCLUSION

For these reasons, Proposed Intervenors respectfully request that the Court stay its preliminary injunction order during the appeal of Proposed Intervenors' intervention motion. If this Court declines to do so, it should, at a minimum, ensure that its preliminary injunction order does not bar the county boards of elections from issuing free ID during the ongoing litigation in this case.

Dated: January 10, 2020

Respectfully submitted,


/s/ Nicole J. Moss
Nicole J. Moss (State Bar No. 31958)
COOPER & KIRK, PLLC
David H. Thompson
Peter A. Patterson
Haley N. Proctor
Nicole Frazer Reaves
1523 New Hampshire Avenue, NW
Washington, DC 20036
Telephone: (202) 220-9600
Fax: (202) 220-9601
nmoss@cooperkirk.com

*Counsel for Proposed Intervenors*

/s/ Nathan A. Huff
Nathan A. Huff (State Bar No. 40626)
PHELPS DUNBAR LLP
4140 Parklake Avenue, Suite 100
Raleigh, North Carolina 27612
Telephone: (919) 789-5300
Fax: (919) 789-5301
Nathan.huff@phelps.com

*Local Civil Rule 83.1 Counsel for Proposed Intervenors*

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that, on January 10, 2020, I electronically filed the foregoing Brief in Support of Proposed Intervenors' Motion for a Stay Pending Appeal with the Clerk of the Court using the CM/ECF system, which will send notification of such to all counsel of record in this matter.

/s/ Nicole J. Moss
Nicole J. Moss

## **CERTIFICATE OF WORD COUNT**

Pursuant to Local Rule 7.3(d)(1), the undersigned counsel hereby certifies that the foregoing Brief in Support of Proposed Intervenors' Motion for a Stay Pending Appeal contains 3,125 words (including headings and footnotes) as measured by Microsoft Word.

/s/ Nicole J. Moss
Nicole J. Moss