# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

NORTH CAROLINA STATE )
CONFERENCE OF THE NAACP, )
et al., )
 )
        Plaintiffs, )
 )
  v. )      1:18CV1034
 )
ROY ASBERRY COOPER, III, )
et al., )
 )
        Defendants. )

## MEMORANDUM OPINION AND ORDER

"[A] scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." Forstmann v. Culp, 114 F.R.D. 83, 85 (M.D.N.C. 1987) (Gordon, S.J.) (internal quotation marks omitted); see also Fed. R. Civ. P. 16(b)(4) ("Rule 16(b)(4)") ("A schedule may be modified only for good cause and with the judge's consent."). Moreover, reconsideration motions under Federal Rule of Civil Procedure 54(b) ("Rule 54(b)") "'should not be used to rehash arguments the [C]ourt has already considered' or 'to raise new arguments or evidence that could have been raised previously.'" United States v. Lovely, 420 F. Supp. 3d 398, 403 (M.D.N.C. 2019) (Biggs, J.) (quoting South Carolina v. United States, 232 F. Supp. 3d 785, 793 (D.S.C. 2017)). These two fundamental principles of federal civil litigation require rejection of the Parties' "Joint Motion for Reconsideration of [the] April 15, 2020 Order Declining to Adopt [Their] Joint []

Report [of April 14, 2020]" ("Joint Motion for Reconsideration") (Docket Entry 138 at 1 (bold and all-caps font omitted)).

INTRODUCTION

Seven months ago, the Court established a scheduling order for this case by "adopting [the Parties'] Joint Report pursuant to FRCP 26(f), as supplemented by [their] Addendum, with [a] clarification[ that] the Clerk shall set the trial date based on the standard considerations, noting that the deadline for expert discovery elected by the [P]arties in [their] Addendum render[ed] the[ir] proposed trial dates . . . infeasible." (Text Order dated Oct. 1, 2019 (citing Docket Entries 77, 87).)[1]  Under the scheduling order:

1) the deadline for "[t]he Parties [to] disclose witnesses [was] March 15, 2020" (Docket Entry 77 at 3);

2) "[e]xpert reports and disclosures pursuant to Fed. R. Civ. P. 26(a)(2) [we]re due . . . [f]rom Plaintiffs by April 15, 2020 . . . [and are due f]rom Defendants by May 8, 2020" (id.);

3) "[f]act discovery w[ill] close on May 15, 2020" (id. at 4); and

4) "expert discovery sh[all] close on June 1, 2020" (Docket Entry 87 at 1).

---

[1] As an example of the above noted infeasibility of the Parties' trial proposal: they chose a discovery end date of June 1, 2020 (see Docket Entry 87 at 1), which, in turn, would allow them to file dispositive motions as late as July 1, 2020, see M.D.N.C. LR 56.1(b), i.e., after their proffered trial date (see Docket Entry 77 at 5 ("The Parties propose that trial on the merits commence during the week of June 22 26, 2020 . . . .")).

Given those scheduling order deadlines, the Clerk (on February 20, 2020) issued a Notice, placing this case on the January 2021 Civil Master Calendar Term, which commences on January 4, 2021, with final pre-trial filing deadlines ranging from December 4, 2020, through December 18, 2020. (See Docket Entry 130 at 1.) After the close of business on April 14, 2020 (i.e., six-and-a-half months into the eight-month discovery period the Parties chose, a month after their self-selected cut-off for disclosure of witnesses, and the evening before Plaintiffs' hand-picked, expert report/disclosure deadline), the Parties filed a "Joint Report pursuant to FRCP 26(f)," in which, "[i]n light of [the Clerk's Notice] setting trial for January 4, 2021, the Parties . . . proposed [a new] discovery schedule, amending the[ir] Joint [] Report filed September 23, 2019 and the[ir] Addendum . . . filed September 30, 2019." (Docket Entry 135 at 1 (internal citations omitted) (citing Docket Entries 77, 87) (emphasis added).)

Specifically, the Parties proffered these new deadlines:

1) "[t]he Parties will disclose fact witnesses on or before September 4, 2020" (id. at 2);

2) "[e]xpert reports and disclosures pursuant to Fed. R. Civ. P. 26(a)(2) will be due . . . [from Plaintiffs] on October 9, 2020 . . . [and from Defendants] on November 6, 2020" (id.);

3) "[f]act discovery will close on October 2, 2020" (id.); and

4) "expert discovery will close on December 4, 2020" (id.).

-3-

The next day, the Court "declin[ed] to adopt [that] Joint Report pursuant to FRCP 26(f)."  (Text Order dated Apr. 15, 2020.) In doing so, the Court explained that:

> The fact that, on 02/20/2020, the Court set a trial date based on scheduling order deadlines adopted on 10/01/2019, does not provide "good cause" as required by [] Rule [] 16(b)(4) for a proposal (submitted on 04/14/2020) to modify those scheduling order deadlines (much less "excusable neglect" under Federal Rule of Civil Procedure 6(b)(1)(B) for belated extension of the lapsed witness disclosure deadline).

(Id.)

Over a week later, the Parties filed their Joint Motion for Reconsideration, which states that they "did not include a thorough explanation of the 'good cause' for the proposed revisions to the schedule proposed in the[ir ] Joint Report [of April 14, 2020]" (Docket Entry 138 at 1), but now wished to "provide their rationale for modifying the discovery deadlines" (id.).  More particularly, although (in their Joint Report of April 14, 2020) the Parties offered as the lone basis for altering scheduling order deadlines the Notice "setting trial for January 4, 2021" (Docket Entry 135 at 1), their Joint Motion for Reconsideration now attributes those suggested alterations to three different things:  "[1] the delays that have been caused by multiple iterations of appeals in the Fourth Circuit, in large part instigated by proposed intervenors in the case; [2] the impact and expected future impact of the COVID-19 pandemic; and [3] the trial date of January 2021" (Docket Entry 138 at 2 (emphasis added)).

-4-

DISCUSSION

"The Federal Rules of Civil Procedure do not set out any standard for reconsideration of interlocutory orders," Akeva, LLC v. Adidas Am., Inc., 385 F. Supp. 2d 559, 565 (M.D.N.C. 2005) (Eliason, M.J.), and instead simply recognize that:

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). Accordingly, "[m]otions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment," American Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514 (4th Cir. 2003) (referencing Federal Rules of Civil Procedure 59(e) and 60(b)); however, "most courts have adhered to a fairly narrow set of grounds in assessing a Rule 54(b) motion: whether (1) there has been an intervening change in controlling law; (2) there is additional evidence that was not previously available; or (3) the prior decision was based on clear error or would work manifest injustice." Garey v. James S. Farrin, P.C., No. 1:16CV542, 2020 WL 91869, at *2 (M.D.N.C. Jan. 8, 2020) (unpublished) (Biggs, J.) (internal quotation marks omitted).

Additionally, in reviewing motions of this sort, the Court must consider that its "efficient operation requires the avoidance

-5-

of re-arguing questions that have already been decided." Akeva, 385 F. Supp. 2d at 565. To that end, "Rule 54(b) motions should not be used to rehash arguments the [C]ourt has already considered or to raise new arguments or evidence that could have been raised previously." Lovely, 420 F. Supp. 3d at 403 (internal quotation marks omitted); see also Turn & Bank Holdings, LLC v. Avco Corp., No. 19CV503, 2020 WL 733831, at *1 (M.D.N.C. Feb. 13, 2020) (unpublished) (Eagles, J.) ("Because [the defendants] have done nothing more than attempt to make more persuasive arguments than they made the first time . . ., the motion to reconsider . . . [the interlocutory] order will be denied.").[2] Here (as documented in the Introduction), the Joint Motion for Reconsideration openly acknowledges that the Parties solely seek "to rehash arguments the [C]ourt has already considered [regarding the trial date] or to raise new arguments [regarding appeal- and COVID-19-related complications] . . . that could have been raised previously," Lovely, 420 F. Supp. 3d at 403 (internal quotation marks omitted).

Put another way, the Parties "already had their chance to raise these arguments in their original [request] . . . .

---

[2] "This approach makes sense not only because 'the limited use of a motion to reconsider serves to ensure that parties are thorough and accurate in their original pleadings and arguments presented to the Court but also because allowing motions to reconsider offhandedly or routinely would result in an unending motions practice.'" Studivent v. Huskey, No. 1:10CV144, 2013 WL 170005, at *3 (M.D.N.C. Jan. 16, 2013) (unpublished) (quoting Wiseman v. First Citizens Bank & Trust Co., 215 F.R.D. 507, 509 (W.D.N.C. 2003)) (internal alterations omitted); see also Coryn Grp. II, LLC v. O.C. Seacrets, Inc., No. 08 2764, 2011 WL 4701749, at *2 n.4 (D. Md. Sept. 30, 2011) (unpublished) ("Routine reconsideration of interlocutory orders would undermine judicial economy . . . .").

-6-

Case 1:18-cv-01034-LCB-LPA   Document 140   Filed 05/04/20   Page 6 of 17

Therefore, the[ir Joint] Motion for Reconsideration . . . is denied." Sanchez v. Boston Sci. Corp., No. 2:12CV5762, 2014 WL 5320559, at *3 (S.D.W. Va. Oct. 17, 2014) (unpublished) (all-caps emphasis omitted). Alternatively, "[e]ven were the Court to consider th[ese re-hashed and/or] new [but previously available] argument[s], . . . it would not find [the Parties] entitled to [relief]." Joe Hand Promotions, Inc. v. Dock St. Enters., Civ. No. 11-1973, 2012 WL 401080, at *2 (D. Md. Feb. 7, 2012) (unpublished).

In that regard, according to the Joint Motion for Reconsideration:

> [T]the Court should reconsider its April 15 Text Order because . . . the Parties have good cause to seek a new scheduling order in this case under Rule 16(b)(4), and absent reconsideration, the Court's order will work manifest injustice on all Parties by compressing the pretrial schedule while two appeals are being litigated in this case and the Parties are confronting impediments to litigation associated with the COVID-19 pandemic.
>
> The touchstone of good cause under Rule 16(b)(4) is diligence . . . . Here, the Parties have been diligent in moving this case towards trial, but have been unable to comply with all of the deadlines set forth in the [o]riginal Joint [] Report due to issues that were not reasonably foreseeable at the time that [it] was filed with this Court.
>
> . . . [In addition, t]he discovery deadlines set by the Parties in the [o]riginal Joint Report were selected, agreed-upon and proposed for the Court's consideration based on the requested trial date in June 2020.

(Docket Entry 138 at 4-5; see also id. at 5 (noting burden borne by Parties' counsel to "manag[e] their many trial-level activities in this and other state and federal matters").) These arguments fail.

To begin, the Parties' belated contention that good cause exists to modify scheduling order deadlines "does not suggest that reconsideration is warranted, but rather that the [Parties] desire a 'do-over' on their earlier [request]," Evans v. Trinity Indus., Inc., 148 F. Supp. 3d 542, 546 (E.D. Va. 2015) (concluding that litigants "misapprehend[ed] the purpose of a motion for reconsideration under Rule 54(b)"). Furthermore, denying the Parties' after-the-fact attempt to revive expired deadlines and/or their eleventh-hour effort to effectively double the discovery period does not compress the pre-trial schedule or result in manifest injustice; to the contrary, it respects the pre-trial schedule the parties chose and protects the integrity of judicial administration. See Forstmann, 114 F.R.D. at 85 ("[A] scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril."); see also Zornes v. Specialty Indus., Inc., No. 97-2337, 166 F.3d 1212 (table), 1998 WL 886997, at *7 (4th Cir. Dec. 21, 1998) (unpublished) (affirming finding that "eleventh hour extension[ requests] and consistent disregard of discovery deadlines" manifest "bad faith" (internal quotation marks omitted)); In re Asbestos Prods. Liab. Litig. (No. VI), MDL No. 875, 2012 WL 8021094, at *1 n.1 (E.D. Pa. May 29, 2012) (unpublished) ("Only by strict adherence to the[] reasonable deadlines imposed after consultations with counsel can a litigation of [significant] scope be efficiently administered.").

Nor do the Parties enjoy entitlement to relief based on their counsels' responsibility for (A) parallel appellate litigation over intervention- and injunction-related issues in this case, and/or (B) the conduct of other cases. See, e.g., Macaulay v. Anas, 321 F.3d 45, 49 (1st Cir. 2003) ("Courts simply cannot afford to let lawyers' schedules dominate the management of their dockets."); Mondares v. Kaiser Found. Hosp., No. 10CV2676, 2011 WL 5374613, at *2 (S.D. Cal. Nov. 7, 2011) (unpublished) ("Every attorney who appears before this [c]ourt juggles multiple cases and has a busy schedule. . . . [O]ther trials and a busy schedule do nothing to advance [a litigant's] burden to show she was diligent in *this* case. . . . [C]ounsel essentially has admitted she was not diligent in this case because she was busy litigating *other* cases." (emphasis in original)); see also Morris-Belcher v. Housing Auth. of City of Winston-Salem, No. 1:04CV255, 2005 WL 1423592, at *4 (M.D.N.C. June 17, 2005) (Beaty, J.) (unpublished) ("[T]he professional commitments and busy caseload of an attorney are not ordinarily grounds for finding excusable neglect.").[3]

---

[3] Notably, the Parties do not lack for legal resources to meet their case related obligations, as Plaintiffs boast an arsenal of eight or more attorneys, including five from one of the nation's most prominent law firms, and as Defendants can call upon the services of at least three attorneys in the North Carolina Department of Justice ("NCDOJ"). (See Docket Caption.) Moreover, when they agreed to the scheduling order deadlines adopted on October 1, 2019, the Parties hardly could have failed to contemplate appellate litigation over intervention and preliminary injunctive relief. As to intervention, North Carolina legislators moved to join the defense of this action 25 days after it commenced (see Docket Entry 7), based on the theory that Defendants (because of their ties to North Carolina's Governor, who vetoed the law Plaintiffs challenge) and the NCDOJ (because of its leadership by an Attorney General who effectively abandoned the defense of a prior version of the law before the United States
(continued...)

Regarding the Parties' position that COVID-19 and the trial setting should cause the Court to radically revise the scheduling order (after and/or on the cusp of the expiration of its deadlines), the Joint Motion for Reconsideration further states:

> On March 16, 2020, as the COVID-19 crisis and the many associated logistical challenges were rapidly unfolding, the Parties . . . mutually agreed . . . to push back the pre-trial deadlines in this matter by several months, while allowing sufficient time between the end of pre-trial discovery and the scheduled trial date of January 4, 2021. The Parties reasoned that[,] in addition to potentially mitigating the many uncertainties associated with continued discovery in the midst of the pandemic, the merits of the case itself would be best served by tying the new proposed discovery deadlines to the scheduled trial date in January 2021, rather than to a previously proposed June 2020 trial. Among other factors, it is possible that the final resolution of one or more of the matters currently pending in the Fourth Circuit may impact the preparation of the case for trial. It took some time to iron out the new pre-trial discovery deadlines the Parties sought to propose . . . and[,] once the proposed draft featuring the new dates was agreed upon and finalized, the [P]arties filed their [a]mended Joint [] Report [on April 14, 2020].
>
> Of course, the COVID-19 pandemic has seriously impacted and will continue to impact both Plaintiffs' and Defendants' attorneys' workload and ability to coordinate and prepare for trial, especially as a result of the limitation on in-person gatherings and the imposition of daycare responsibilities, in addition to full-time work

---

[3](...continued)
Supreme Court) would not adequately defend this case (see, e.g., Docket Entry 8 at 6). If that posture alone did not signal a likelihood of appeal in the event of denial of intervention, that reality surely came home to the Parties when the proposed intervenors gave notice of appeal earlier on the day the Parties filed their original Joint Report, and a week before they filed their Addendum. (Compare Docket Entry 74, with Docket Entry 77, and Docket Entry 87.) As to preliminary injunctive relief, (A) Defendants certainly cannot claim surprise from their own decision to appeal (see Docket Entry 123), and (B) Plaintiffs long ago expressed a belief that Defendants (and their counsel) would aggressively defend the law at issue (see Docket Entry 38), such that Plaintiffs would have understood Defendants well might appeal an adverse preliminary injunction ruling.

-10-

Case 1:18-cv-01034-LCB-LPA   Document 140   Filed 05/04/20   Page 10 of 17

> responsibilities, for counsel. Counsel anticipates that the Parties' fact and expert witnesses will likewise be impacted. In fact, although remote conferences and proceedings are available to some extent, it is an open question whether litigants may conduct remote depositions while complying with North Carolina's rules governing court reporters . . . .
>
> In addition, to the extent that a showing of excusable neglect is required . . . for serving witness disclosures . . . that standard is met here. . . . [T]he Parties have acted in good faith, and there is no prejudice to anyone. . . . [T]he January 2021 Civil Master Calendar Term has final pre-trial deadlines ranging from 12/04/2020 through 12/18/2020. . . . [The Parties have proposed] closure of expert discovery on December 4, 2020 . . . . There is no impact on any judicial proceeding, as neither Party [sic] seeks to alter the scheduled January 4, 2021 trial date at this time.

(Docket Entry 138 at 7-9 (internal footnotes and quotation marks omitted).) Problems with this line of reasoning abound.

First, on March 16, 2020, the Parties "mutually agreed" to postpone discovery deadlines for "several months," but (as shown in the Introduction) they waited nearly a month thereafter to file anything about that agreement (which, by then, had ballooned to six-month extensions, including of a deadline that lapsed before any agreement). When the Parties did get around to submitting something to the Court, they still did not file a motion or try to show good cause, excusable neglect, and/or diligent discovery efforts, despite clear commands to do so. <u>See</u> Fed. R. Civ. P. 6(b)(1) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time: (A) . . . if the court acts, or if a request is made, before the original time or

-11-

its extension expires; or (B) on motion made after the time has expired if the party failed to act because of excusable neglect."); Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion. The motion must . . . be in writing unless made during a hearing or trial . . . [and must] state with particularity the grounds for seeking the order . . . ."); Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); M.D.N.C. LR 26.1(d) (mandating filing of motion to extend discovery period, which "set[s] forth good cause justifying the additional time and . . . show[s] that the parties have diligently pursued discovery"). Simply put, the Parties' approach bespeaks neither of diligence nor of good faith. See Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992) ("[C]arelessness is not compatible with a finding of diligence . . . ."); Rabb v. Amatex Corp., 769 F.2d 996, 1000 (4th Cir. 1985) (affirming "finding of willful disregard," "[i]n light of counsel's conceded full awareness of and utter disregard for the district court's discovery timetable set forth in the pre-trial order"); Graves v. Wells Fargo Bank, N.A., No. 1:14CV398, 2014 WL 3797409, at *3 (M.D.N.C. Aug. 1, 2014) (unpublished) ("Consciously ignoring a deadline does not constitute good faith conduct."); Progressive Minerals, L.L.C. v. Rashid, No. 5:07CV108, 2009 WL 2761295, at *4 (N.D.W. Va. Aug. 28, 2009) (unpublished) ("Rules and deadlines are made to be followed.").

Second, although the Joint Motion for Reconsideration asserts that "[t]he Parties worked diligently in anticipation of meeting their [discovery] deadlines" (Docket Entry 138 at 5), it does not describe one fact-witness deposition which (as of March 16, 2020) they had taken a single step to schedule ahead of the fact-discovery deadline (of May 15, 2020), but which they later had to postpone due to concrete COVID-19-related concerns (see id. (reporting that Parties "prepar[ed ] preliminary expert reports, conduct[ed] expert depositions, [and] exchang[ed] discovery," but not that they set any fact-witness depositions)). Conversely, the Joint Motion for Reconsideration confirms that, as of its filing on April 23, 2020 – and despite the denial of the Parties' suggested scheduling order modifications on April 15, 2020 – their counsel still had not bothered to consult with any witnesses about any scheduling issues. (See id. at 8 (offering only speculative "anticipat[ion] that the Parties' fact and expert witnesses will [] be impacted" by public health-related constraints).) The Court will not rest a finding of good cause (or excusable neglect) for discovery extensions – let alone of manifest injustice in their absence – on bald assertions and mere speculation of that ilk. See Airfacts, Inc. v. Amezaga, Civ. No. 15-1489, 2016 WL 4089568, at *4 (D. Md. Aug. 2, 2016) (unpublished) ("Because [litigants] ha[ve] the burden of showing good cause for modification of the scheduling order, the court is not inclined to speculate on [their] behalf

-13-

. . . ."); United States Equal Emp't Opportunity Comm'n v. Morningside House of Ellicott City, LLC, No. 1:11CV2766, 2012 WL 1655324, at *2 (D. Md. May 9, 2012) (unpublished) ("To show good cause, [a litigant] must persuade the court that it has acted diligently . . . . [C]onclusory assertion[s] do[] not satisfy [that] burden."); see also Westerfield v. United States, 366 F. App'x 614, 620 (6th Cir. 2010) ("The manifest injustice standard presents [litigants] with a high hurdle.").[4]

Third, the (above-quoted) rhetoric of the Joint Motion for Reconsideration reveals that the Parties' proposal stems from their disagreement with the Court's decision (on October 1, 2019) to deny their request for a trial date immediately after the close of discovery. (See, e.g., Docket Entry 138 at 7 ("[T]he merits of the case itself would be best served by tying the new proposed discovery deadlines to the scheduled trial date in January 2021, rather than to the previously proposed June 2020 trial.").) As detailed in the Introduction, the Parties' original Joint Report of September 23, 2019, and Addendum of September 30, 2019, asked the

---

[4] The Court also observes that litigants motivated to keep discovery moving despite the difficulties of social distancing have found ways to deal with the "question [of] whether litigants may conduct remote depositions while complying with North Carolina's rules governing court reporters" (Docket Entry 138 at 8). See Garey v. James S. Farrin, P.C., No. 1:16CV542 (M.D.N.C. Apr. 21, 2020) (Text Order) ("To assist the parties in coping with the logistical challenges of conducting depositions remotely, pursuant to Rules 28, 29, and 30 of the Federal Rules of Civil Procedure, and by and with the consent of the parties to this action (as expressed in [their j]oint [m]otion), the Court hereby appoints any person regularly engaged in stenographic court reporting and selected by a party noticing a deposition in this matter to administer oaths remotely and to take testimony remotely for any deposition taken in this matter.").

-14-

Court to set the trial of this case three weeks after the discovery deadline, but the Court declined that option, in favor of a trial date selected by the Clerk based on the standard considerations, which allow for a reasonable time-span between the end of discovery and the start of trial.  The Court made that determination because of the threat to judicial economy posed by allowing the discovery period to directly abut (and/or to overlap) the final pre-trial filing period (which falls during the month before trial).

For example, litigants frequently allow evidence-gathering disagreements to simmer until the final days of the discovery period, when the pressure of a deadline often causes those deferred disputes to suddenly boil over into competing discovery-related motions, which then take time for response and reply briefing, followed by time for hearings and/or order-drafting, as well as (subsequent) time for any compelled production and/or necessary follow-up discovery (which may lead to yet more satellite litigation).  If such a scenario unfolds at the same time the litigants must make final pre-trial filings, their filings inevitably will reflect the unsettled state of the record (due to the ongoing, overlapping discovery litigation).  The Court, in turn, will lack complete information on which to make final pre-trial rulings and likely will have no choice but to order supplemental filings.  Events of that sort not only would waste the

time and resources of both the Parties and the Court, but also would imperil the trial date.

When (seven months ago) the Court declined to tie discovery deadlines as closely to the trial date as the Parties preferred, they remained free to disagree with that decision and to seek proper recourse, but that recourse did not include the right (A) to disregard discovery deadlines (which, even now, the Parties admit "allowed full fact development [for a] Summer 2020 trial date" (id. at 10)), and (B) then (when those discovery deadlines passed or approached) to expect the Court to re-set them just as closely to the trial date as the Parties originally desired. In any event (for reasons highlighted in the preceding paragraph and in Footnote 1), the Court now adheres to the previous conclusion that discovery should not extend to within a month of the trial date and rejects the Parties' view that their proposal "to push back the [discovery] deadlines in this matter by [six] months[ will] allow[] sufficient time between the end of [the] discovery [period] and the scheduled trial date of January 4, 2021" (id. at 7).[5]

---

[5] The Court likewise cannot countenance the Parties' contention(s) that the scheduling order modifications they have proffered will result in "no prejudice to anyone" (Docket Entry 138 at 9) and in "no impact on any judicial proceeding" (id.). Although (as the Joint Motion for Reconsideration somewhat coyly states) the Parties do not "seek[] to alter the scheduled January 4, 2021 trial date at this time" (id. (emphasis added)), extending the discovery deadlines as they suggest would create conditions likely to breed such a demand in the future and thus would unreasonably risk an adverse impact on the trial (and final pre trial proceedings), as well as related prejudice to the interests of the Court, the Parties, and the public in the timely and orderly administration of justice. Those considerations trump the Parties' hyperbolic fear that, "[a]bsent the requested amendments, this important case would remain virtually frozen in time from June 2020 until the January 2021 trial" (id. at 9 10), as (A) the Parties
(continued...)

CONCLUSION

The Parties have not shown an adequate basis for the Court to reconsider its prior refusal to adopt their proffered modification(s) to the scheduling order.

**IT IS THEREFORE ORDERED** that the Joint Motion for Reconsideration (Docket Entry 138) is **DENIED**.

/s/ L. Patrick Auld
**L. Patrick Auld
United States Magistrate Judge**

May 4, 2020

---

[5](...continued)
retain the freedom to voluntarily exchange information between the close of discovery and the trial, see generally In re JDS Uniphase Corp. Sec. Litig., 238 F. Supp. 2d 1127, 1134 (N.D. Cal. 2002) ("[V]oluntary interviews . . . do not fall within the scope of 'discovery.'"), and (B) the Parties (at all times) bear an ongoing obligation to timely supplement their disclosures and discovery responses, see Fed. R. Civ. P. 26(e). Those avenues more than adequately address any ephemeral specter of late breaking developments, like the Parties' vague, (doubly) contingent supposition that "it is possible that the final resolution of one or more of the matters currently pending in the Fourth Circuit may impact the preparation of the case for trial" (Docket Entry 138 at 8 (emphasis added)).