IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| NORTH CAROLINA STATE CONFERENCE OF THE NAACP, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) 1:18CV1034 ) |
| ROY ASBERRY COOPER III, *in his official capacity as the Governor of North Carolina*, *et al.*, | ) ) ) ) |
| Defendants, | ) ) |
| and | ) ) ) |
| VOTER INTEGRITY PROJECT NC, INC., | ) ) |
| Proposed Defendant-Intervenor. | ) |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Before the Court is a Motion to Intervene filed by Voter Integrity Project NC, Inc. ("VIP"). (ECF No. 133.) VIP is a nonprofit organization that recruits, educates, and trains individuals to serve as election observers. (ECF No. 134 at 8, 9.) The organization seeks to intervene as a defendant in this litigation to "raise affirmative defenses that have not been raised by State Defendants." (ECF No. 147 at 5.) Both Plaintiffs and Defendants oppose the motion. (ECF Nos. 137, 141.) For the reasons that follow, the Court denies VIP's motion as untimely.

VIP filed the present Motion to Intervene on March 26, 2020, approximately fifteen months after the suit was first filed.[1] (ECF Nos. 133, 134.) In the months since this suit was filed on December 20, 2018, significant litigation has taken place to include the following:

- On January 14, 2019, Philip E. Berger, in his official capacity as President Pro Tempore of the North Carolina Senate, and Timothy K. Moore, in his official capacity as Speaker of the North Carolina House of Representatives (together, "Legislative Intervenors"), filed a Motion to Intervene on behalf of the North Carolina General Assembly. (ECF Nos. 7, 8.) The Court denied their motion. (ECF No. 56.)

- On February 28, 2019, Governor Cooper and the Board Defendants each filed Motions to Dismiss for Failure to State a Claim. (ECF Nos. 42, 44.) The Court denied the Board Defendants' motion but granted Governor Cooper's, and Governor Cooper was dismissed from this case. (ECF No. 57.)

- On July 19, 2019, Legislative Intervenors filed a Renewed Motion to Intervene, (ECF Nos. 60, 61), which was denied by the Court, (ECF No. 100). Legislative Intervenors appealed this ruling, and the appeal was pending when VIP filed its motion. (ECF No. 103.) The Fourth Circuit has since upheld the denial. *N.C. State Conf. of NAACP v. Berger*, 999 F.3d 915, 918 (4th Cir. 2021).

- On September 17, 2019, Plaintiffs filed a Motion for Preliminary Injunction. (ECF No. 72.) The Court granted in part and denied in part the motion after a hearing. (ECF No. 120.) The Court permanently enjoined partial enforcement of S.B. 824 but did not enjoin expansion of the number of poll observers. (*Id.* at 58.) Board Defendants appealed the Order to the Fourth Circuit, and that appeal was pending at the time VIP filed its motion. (ECF No. 123.)

- On September 23, 2019, the parties filed a Joint Report pursuant to Fed. R. Civ. P. 26(f), setting a proposed discovery and trial schedule. (ECF No. 77.) The parties filed a Joint Status Report on November 20. (ECF No. 112.)

- On February 20, 2020, the Court scheduled a Bench Trial for January 4, 2021. (ECF No. 130.) The trial has since been continued to January 3, 2022. (ECF No. 158.)

---

[1] In compliance with Rule 24 of the Federal Rules of Civil Procedure, VIP attached a proposed Answer to the Motion to Intervene. (ECF No. 133-1); *see* Fed. R. Civ. P. 24(c) ("The motion [to intervene] must . . . be accompanied by a pleading that sets out the claim or defense for which intervention is sought.").

2

## DISCUSSION

A Motion for Intervention of Right or Motion for Permissive Intervention can only be granted if timely. Fed. R. Civ. P. 24(a), (b)(1); *NAACP v. New York*, 413 U.S. 345, 365 (1973) ("If it is untimely, intervention must be denied."). Courts are "accorded broad discretion" in assessing timeliness "after assessing all the relevant circumstances," *Scott v. Bond*, 734 Fed. App'x 188, 191 (4th Cir. 2018) (citing *New York*, 413 U.S. at 366), and such a ruling "will not be disturbed on appeal unless this discretion is abused," *Gould v. Alleco, Inc.*, 883 F.2d 281, 286 (4th Cir. 1989). Courts assess all relevant circumstances in assessing the timeliness of a motion to intervene, with a focus on three principal factors: (1) "how far the suit has progressed" (2) "the prejudice which delay might cause other parties," and (3) "the reason for the tardiness in moving to intervene." *Id.* The Court finds that all three factors weigh against a finding of timeliness.

### A. The suit has progressed through extensive litigation and reached an advanced stage

A motion to intervene may be tardy if the suit has undergone "extensive litigation," *Gould*, 883 F.2d at 286; or "reached a relatively advanced stage," *Alt v. U.S. Env't Prot. Agency*, 758 F.3d 588, 591 (4th Cir. 2014); *see also New York*, 413 U.S. at 367. In *Alt*, a motion was not timely where it was filed after other motions to intervene had been considered and granted; motions to dismiss had been briefed, argued, and resolved; the case had been stayed and twice delayed; and summary judgment briefing had commenced. *Alt*, 758 F.3d at 591.

When VIP filed the instant motion, the litigation was already in an advance state. As earlier stated, VIP's motion was filed after fifteen months of extensive litigation. The parties and other proposed intervenors had fully litigated motions to intervene, to dismiss, and for

3

preliminary injunction. In addition, at the time VIP's motion was filed, a trial date had been set and the parties had begun preparations. The case has since been continued, and trial is now scheduled to begin in five months. This factor weighs heavily against finding that VIP's motion was timely filed.

### B. Granting the motion would prejudice parties by requiring them to expend extra effort in substantial additional litigation

A late motion to intervene may prejudice parties where it "would likely [require] substantial additional litigation" if granted. *Gould*, 883 F.2d at 286. Risk of prejudice is "[t]he most important consideration in reviewing a motion to intervene." *Scott*, 734 Fed. App'x at 191 (citing *Hill v. W. Elec. Co.*, 672 F.2d 381, 386 (4th Cir. 1982)). Intervention may prejudice parties if it causes them to expend "extra effort." *Alt*, 758 F.3d at 591.

Here, VIP proposes to intervene to "raise affirmative defenses that have not been raised by State Defendants." (ECF No. 147 at 5.) VIP calls for these new defenses to be "fully briefed and considered." (*Id.*) Plaintiff would be required to expend significant "extra effort" to fully litigate new defenses at this late stage against dueling defendants. Granting intervention would also prejudice both parties by adding substantial additional litigation to a case that is quickly nearing resolution. This factor, too, weighs against a finding of timeliness.

### C. VIP's tardiness is unjustified

A proposed intervenor "must provide a plausible justification for a tardy motion." *Scott*, 734 Fed. App'x at 192. A tardy motion may be justified where the intervenor was unaware of the suit, or if there had been a "substantial change of circumstances in the case." *Id.* (internal quotations omitted). An intervenor who "closely monitored the proceedings," though, cannot justify a delay that was an "informed and tactical choice." *Alt*, 758 F.3d at

4

591–92 (finding "little sympathy" where an intervenor "gambled and lost in the execution of its litigation strategy"). Thus, tardiness will generally weigh against a finding of timeliness unless intervenors can show that "intervention at an earlier point would have served no purpose" or that their tardiness "was a result of prior reliance on one or more of the parties." *Gould*, 883 F.2d at 286; *see also, e.g.*, *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977) (granting a post-judgment motion to intervene where movants "quickly sought to enter litigation . . . as soon as it became clear" that their interests would no longer be protected).

Here, VIP does not claim a lack of notice of the proceedings. VIP closely monitored the proceedings and does not allege prior reliance on one or more of the parties, alleging instead that Defendants failed to adequately represent their interests from the start. (ECF No. 134 at 6.) VIP argues that they "sought clarity from the various appeals concerning the Proposed Legislative Intervenors' attempt to intervene." (ECF No. 139 at 2.)

This reasoning is unpersuasive because the issues raised by Legislative Intervenors before this Court and on appeal did not apply to private intervenors like VIP. At the outset of this litigation, settled Fourth Circuit precedent established that private intervenors attempting to join a governmental defendant in defending a law's constitutionality must make a "strong showing of inadequacy" to rebut the presumption of adequate representation. *Stuart v. Huff*, 706 F.3d 345, 352 (4th Cir. 2013). Legislative Intervenors argued before this Court and on appeal that the *Stuart* test was inapplicable where the intervenors also represented the State. *Berger*, 999 F.3d at 932. VIP does not represent the State and, therefore, would not have benefitted from clarification of the arguments raised by Legislative Intervenors. Similarly, Legislative Intervenors' assertion that the Court inadequately weighed the General Assembly's

statutory authority to represent the state was inapplicable to VIP. *See* Brief for Appellants at 30, *Berger*, 999 F.3d 915 (No. 19-2273), 2019 WL 7584984, at *30. Moreover, VIP's reasoning is unpersuasive because VIP did not wait for a ruling from the Fourth Circuit, but instead filed their motion while Legislative Intervenors' appeal was still pending. It is unclear why VIP could intervene two months before the Fourth Circuit issued its opinion in *Berger* but could not intervene at the outset of the litigation.

VIP asserts that it chose to "conserve judicial resources in hopes that these appeals would provide clarity or guidance on any proposed intervention" by VIP. (ECF No. 139 at 2.) If true, as in *Alt*, VIP "gambled and lost in the execution of its litigation strategy"—an "informed tactical choice" that does not justify their delay. This factor weighs against finding timeliness.

\*   \*   \*

In sum, all three factors weigh against finding that VIP's motion is timely. Because the motion is untimely, it will be denied.

For the reasons outlined herein, the Court enters the following:

### ORDER

IT IS THEREFORE ORDERED that the Motion to Intervene by Voter Integrity Project NC, Inc., (ECF No. 133), is DENIED.

This, the 17th day of August 2021.

/s/ Loretta C. Biggs
United States District Judge