IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| NORTH CAROLINA STATE CONFERENCE OF THE NAACP, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> ALAN HIRSCH, in his official capacity as Chair of the North Carolina State Board of Elections, *et al.*, <br><br> *Defendants*. | No. 1:18-cv-01034 |

## PLAINTIFFS' NOTICE OF PROPOSED DISCOVERY

Plaintiffs North Carolina State Conference of the NAACP, Chapel Hill-Carrboro NAACP, Greensboro NAACP, High Point NAACP, Moore County NAACP, Stokes County Branch of the NAACP and Winston-Salem Forsyth County NAACP ("Plaintiffs") file this Notice of Proposed Discovery to be served upon Defendants Alan Hirsch, Siobhan Millen, Kevin Lewis, Jeff Carmon and Stacy Eggers IV (the Chair, Secretary and members of the North Carolina Board of Elections, together "State Board Defendants"), pursuant to this Court's July 26, 2023 Order. As directed by the Court, Plaintiffs have attached hereto a proposed First Set of Requests for Production (Exhibit A), First Set of Interrogatories (Exhibit B), and 30(b)(6) deposition notice to State Board Defendants (Exhibit C).

## FACTUAL BACKGROUND

At the outset of this litigation, Plaintiffs entered into an agreement with the State Board Defendants that the State Board would voluntarily produce to Plaintiffs all of the

"discovery exchanges" from the state court challenge to S.B. 824, *Holmes v. Moore* ("the *Holmes* Litigation"). ECF No. 77 (Joint 26(f) Report, Sept. 23, 2019). Plaintiffs "agreed to review that production before making any new discovery requests on Defendants, to protect the parties' and judicial resources, to promote the efficiency of the litigation, and to avoid unnecessary duplication of effort or expense." *Id*. State Board Defendants produced *Holmes* Litigation documents to Plaintiffs up through November 2020; and Plaintiffs understand that State Board Defendants have produced to Plaintiffs, or will produce to Plaintiffs, all discovery documents exchanged in the *Holmes* Litigation.

The original close of fact discovery in this case was May 15, 2020, a deadline established in anticipation of a trial date six months later, in January 2021. ECF Nos. 77, 130. Due to Legislative Intervenors seeking to intervene in this case, and the pending State Court challenge to the same law, this trial was postponed twice; *see* ECF Nos. 152, 194; and it has now been more than three years since the original close of discovery. The most recent stay order, issued December 30, 2021, cited two reasons for staying the trial: the uncertainty as to whether Legislative Intervenors would be admitted in the case, and the potential for conflicting orders in the state and federal litigations. ECF No. 194.[1]

On April 28, 2023, following rehearing, the North Carolina Supreme Court reversed its own December 2022 decision in the *Holmes* Litigation, lifting the lower court injunction and declaring S.B. 824[2] constitutional. Immediately following that decision, State Board Defendants began the process of implementing S.B. 824 for the upcoming

---

[1] That order stayed the entire case, including any further discovery.
[2] "S.B. 824" refers to Session Law 2018-144, as amended by Session Law 2019-4 and Session law 2019-22.

2

municipal elections to occur in September, October and November 2023. Once the final decision on reconsideration by the North Carolina Supreme Court was issued in the *Holmes* Litigation, Plaintiffs promptly filed their motion to lift the stay and sought a status conference. ECF No. 202.

In the attached proposed First Requests for Production, proposed First Interrogatories and proposed 30(b)(6) Deposition Notice, Plaintiffs seek the documents already produced in the *Holmes* Litigation and limited supplemental discovery regarding the present impact of S.B. 824, particularly on Black and Latino North Carolinians; and information on how S.B. 824 is being implemented for the 2023 municipal elections and beyond. This information could not have been obtained during the original discovery period despite Plaintiffs' diligence and is highly relevant to Plaintiffs' legal challenges to S.B. 824.

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . ." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id*. The court "has wide latitude in controlling discovery and . . .[t]he latitude given the district court extends as well to the manner in which it orders the course and scope of discovery." *Ardrey v. United Parcel Service*, 798 F.2d 679, 682 (4th Cir. 1986) (collecting cases). In deciding whether additional discovery is appropriate, courts consider: "(1) is the trial imminent; (2) is the request opposed; (3) would the non-moving

3

party be prejudiced; (4) was the moving party diligent during the discovery period; (5) was the request foreseeable based upon the time line set forth by the court; and (6) will the new evidence be relevant to the stated inquiry." *H/S Wilson Outparcels, LLC*, No. 5:15-cv-591, 2018 U.S. Dist. LEXIS 51654, at *13 (E.D.N.C. Mar. 28, 2018); *see also Carmona v. Bullard*, No. 3:18-cv-492, 2020 WL 534313, at *2 (W.D.N.C. Feb. 3, 2020).[3]

## ARGUMENT

Here, Plaintiffs were diligent and acted in good faith to obtain relevant discovery during the original discovery period; the State Board Defendants will not be prejudiced by having to ensure full production of the *Holmes* Litigation discovery documents as well as provide updated information about impact and implementation of S.B. 824 before this case proceeds to trial; and this evidence is highly relevant to Plaintiffs' claims under Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments. Furthermore, it was not foreseeable that the ultimate trial date in this case would take place more than three years after the close of discovery, without any evidence in the record regarding implementation of the law that will take place before the trial.

### I. Plaintiffs Have Acted Diligently and in Good Faith

At the outset of this litigation, Plaintiffs agreed, at the request of the State Board Defendants, to receive document productions from the *Holmes* Litigation before initiating any new discovery requests in order to "protect the parties' and judicial resources, promote

---

[3] The factors considered by courts to determine if they should modify a final pre-trial order and allow for new discovery in a retrial are similar: "(1) prejudice or surprise to the party opposing trial of the issue; (2) the ability of that party to cure any prejudice; (3) disruption to the orderly and efficient trial of the case by inclusion of the new issue; and (4) bad faith by the party seeking to modify the order." *Eschelman v. Puma Biotechnology, Inc.*, No. 7:16-cv-18, 2022 U.S. Dist. LEXIS 90534 (E.D.N.C. May 19, 2022).

4

the efficiency of the litigation, and to avoid unnecessary duplication of effort or expense." ECF No. 77, at 2. Shortly thereafter, on October 18, 2019, Plaintiffs served their Initial Disclosures on State Board Defendants. During that same time period, Plaintiffs were diligent in developing their own evidence, and filed a Motion for Preliminary Injunction which attached five expert reports and eight fact witness declarations. ECF No. 91. Plaintiffs' Reply in Support of Preliminary Injunction attached three more expert reports and eight more fact witness statements. ECF No. 108. All of Plaintiffs' experts were made available for deposition, and State Board Defendants chose to depose two of Plaintiffs' experts. On September 10, 2021, the parties jointly moved for the adoption of an amended protective order for the precise purpose of providing Plaintiffs an updated voter list from which Plaintiffs' expert could provide an updated no-match analysis. ECF No. 171.[4] The amended protective order was approved by this court on September 13, 2021. ECF No. 172. Plaintiffs served supplemental fact witness disclosures on September 10, 2021 and November 9, 2021, and supplemental expert witness disclosures and reports on October 19, 2021 and December 20, 2021. In addition, Plaintiffs served witness and exhibit lists in advance of trial on December 24, 2021.

**II. State Board Defendants Will Not Be Prejudiced**

Here, State Board Defendants will not be prejudiced where there is no imminent trial – in fact, a trial date has not been set in this case – and Plaintiffs are merely asking for the State Board to respond to requests for relevant discovery. *See Justice v. Greyhound*

---

[4] Plaintiffs also served a subpoena on the North Carolina Division of Motor Vehicles on Sept. 10, 2021 to obtain the driver's license database needed to complete the updated no-match analysis. The NC DMV and State Board Defendants cooperated with Plaintiffs to provide this information.

*Lines, Inc.*, No. 5:16-cv-132, 2018 U.S. Dist. LEXIS 87956 at *3 (E.D.N.C. May 25, 2018) ("It cannot be said that trial is imminent when no trial date has been set"). Plaintiffs request that the State Board Defendants ensure full production of the *Holmes* Litigation discovery documents and supplement their prior productions on two topics that are directly relevant to Plaintiffs' claims: discovery regarding the present impact of S.B. 824, particularly on Black and Latino North Carolinians, and information regarding how State Board Defendants are implementing S.B. 824 for the 2023 municipal elections and beyond. *See id.* ("any burden to respond to a valid discovery request does not constitute 'prejudice' of the relevant sort"). In fact, State Board Defendants voluntarily expressed a willingness in 2021 to re-open discovery in this case within the context of seeking a stay of a trial. ECF No. 192, at 6 ("If Proposed Intervenors are allowed Permissive Intervention, State Board Defendants would consent to a short delay to allow discovery if needed by either side.").

Plaintiffs have also intentionally limited their discovery to minimize the burden on State Board Defendants. The documents and interrogatory requests sought on implementation encompass only documents generated since January 1, 2023, and the documents and interrogatory requests on impact encompass only documents generated since Nov. 17, 2020. The documents sought regarding impact of the law are a subset of the documents sought in discovery in the *Holmes* Litigation; and it is unlikely that the State Board Defendants have generated a significant number of new documents on the impact of S.B. 824 since the close of discovery in that case. Furthermore, the State Board Defendants have already provided a voter list in 2021 and its own no-match list in 2019; providing updated versions of these lists is not unduly burdensome. Plaintiffs are also limiting the

scope of the 30(b)(6) deposition only to the implementation of S.B. 824 and the State Board Defendants' knowledge of how many and which voters lack IDs compliant with the law (including the development of any no-match list). These are topics which the State Board needs to be knowledgeable about in order to implement the law.

Finally, Plaintiffs met and conferred with the State Board Defendants regarding any burden imposed by the original requests on Aug. 1, 2023, and have significantly narrowed the discovery requests to the State Board Defendants. To the extent that the State Board Defendants maintain that any of these revised requests are unduly burdensome, Plaintiffs are prepared to continue to meet and confer with State Board Defendants to further refine the scope of the proposed discovery.

### III. These Requests Were Not Foreseeable

It is necessary to seek this supplemental discovery now because of the unforeseeable, extensive time that has elapsed since the evidence for this case was generated. The original close of fact discovery in this case was May 15, 2020, a deadline which anticipated a trial date six months later, in January 2021. ECF Nos. 77, 130. However, as set forth in detail above, three years have now elapsed since the original close of discovery due to a number of factors that were outside of Plaintiffs' control. *See supra*, at 2-3. When this case was set to go to trial in January 2022, Plaintiffs possessed the most up-to-date impact data from their expert Dr. Michael Herron's December 20, 2021 Supplemental Expert Report; and the most up-to-date implementation information available at that time, since S.B. 824 had not been implemented by State Board Defendants since 2019. At that time, or in 2020, Plaintiffs could not have deposed the State Board

7

Defendants on the law's implementation because the law was enjoined by either a federal or state court order from December of 2019 to April of 2023.

**IV. This Discovery is Highly Relevant to Plaintiffs' Claims**

Under the Federal Rules of Civil Procedure, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . ." Fed. R. Civ. P. 26(b)(1). In the original Joint 26(f) Report, both parties agreed that "Discovery will be needed on...the State Board's implementation of [S.B. 824] and a prior voter identification law," ECF No. 77, and the State Board Defendants have already produced discovery related to this topic.

Plaintiffs' Section 2 "effects" claim, as well as their Fourteenth and the Fifteenth Amendment claims, are highly localized, fact-intensive, totality of the circumstances inquiries which rely on an analysis of the impact and burden of the challenged law.[5] In fact, a Section 2 violation may "be established by proof of discriminatory results alone," *League of Women Voters of N.C. v. N.C.*, 769 F.3d 224, 238 (4th Cir. 2014),[6] and the "totality of the circumstances" test requires consideration of "any circumstance that has a

---

[5] Plaintiffs allege that the North Carolina legislature enacted S.B. 824 with the intent to discriminate against Black and Latino voters in violation of Section 2, and the Fourteenth and Fifteenth Amendments. The Fourth Circuit considers the *Arlington Heights* factors when analyzing intent claims, which includes as one of its factors whether "the law's effect bears more heavily on one race than another." *Village of Arlington Heights v. Metro House Dev. Corp.*, 429 U.S. 252, 266 (1977). *Arlington Heights* requires an analysis of the "totality of the circumstances." *N.C. State Conf. of the NAACP v. McCrory*, 831 F.3d 204, 233 (4th Cir. 2016).

[6] The Fourth Circuit has divided this into a two-part test: First, the challenged standard, practice, or procedure must impose a discriminatory burden on members of a protected class, meaning that members of the protected class have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. Second, that burden must in part be caused by or linked to social and historical conditions that have or currently produce discrimination against members of the protected class. *League of Women Voters*, 769 F.3d at 240.

logical bearing on whether voting is equally open and affords equal opportunity." *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2338 (2021).

A key disputed factual issue in this case is whether the provisions of S.B. 824 will prevent any voters from voting, and whether the burdens of S.B. 824 fall disproportionately on Black and Latino voters. The preliminary injunction briefing in this case demonstrated that the parties dispute how many eligible voters lack an ID to vote under S.B. 824, which voters lack such an ID, and whether or not the free ID and reasonable impediment provisions of S.B. 824 will mitigate the disparate impacts in ID possession. *See* ECF No. 97 (Defendant's Response in Opposition to Plaintiffs' Motion for Preliminary Injunction), at 24-26 (arguing that Plaintiffs' analysis of the racial disparity is "flawed" and that Plaintiffs' impact analysis "downplays the significance of the availability of free IDs" and the reasonable impediment declaration). The State Board Defendants have long argued that S.B. 824 will have an extremely limited impact because free IDs provided at the DMV and the County Boards of Election, along with the reasonable impediment declaration, will mitigate any impacts on the hundreds of thousands of voters who lack valid forms of ID. *Id*. In support of this argument, the State Board Defendants cited to an affidavit from SBOE Director Karen Brinson Bell which detailed how the law had been implemented so far (as of the Fall of 2019), such as how many college and employer IDs had been approved, and how many free IDs had been issued by County Boards. *Id*. In addition, in issuing the Amended Protective Order in 2021, this Court specifically found that the information on voter lists, voter identification from the statewide voter registration database, the DMV database and other sources of

9

information are "potentially relevant to the claims and defenses in this litigation and therefore necessary to be disclosed among the parties." ECF No. 172, at 4.

Federal courts considering challenges to photo voter ID laws routinely consider evidence of the law's disparate impact and expected or actual implementation of the law. *See Greater Birmingham Ministries v. Sec'y of Ala.*, 992 F.3d 1299, 1333 (11th Cir. 2021) (analyzing "the photo ID law itself and its implementation," including evidence regarding the Positively Identify Provision of the law, the efficacy of mobile ID units, and voter education surrounding the law); *Lee v. Virginia State Bd. of Elections*, 843 F.3d 592, 595-98 (4th Cir. 2016) (summarizing a seven day trial on a challenge to Virginia's photo voter ID law, where the court "analyzed the real world impact" of the law, including the testimony of numerous voter witnesses); *S.C. v. United States*, 898 F. Supp. 2d 30, 35-39 (D.D.C. 2012) (analyzing the expected implementation of South Carolina's photo voter ID law, including its reasonable impediment provision). In order to establish why injunctive relief remains necessary, Plaintiffs intend to present evidence of how the State Board Defendants plan to implement S.B. 824 (including its so called "ameliorative provisions"), and information sufficient to demonstrate how many and which North Carolinians lack an ID sufficient for voting under S.B. 824.

## CONCLUSION

For the aforementioned reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' request to serve the additional discovery attached hereto as Exhibit A-C on State Board Defendants and require State Board Defendants to respond within 30 days of service, consistent with the Federal Rules of Civil Procedure.

Respectfully submitted this 2nd day of August 2023.

*By: /s/ Irving Joyner*
Irving Joyner
NC State Bar No. 7830
P.O. Box 374
Cary, NC 27512
Phone: (919) 319-8353
ijoyner@nccu.edu

*By: /s/ Penda D. Hair*
Penda D. Hair
DC Bar No. 335133
**FORWARD JUSTICE**
P.O. Box 42521
Washington, DC 20015
Phone: (202) 256-1976
phair@forwardjustice.org

Caitlin A. Swain
NC Bar No. 57042
Kathleen E. Roblez
NC Bar No. 57039
Ashley Mitchell
NC Bar No. 56889
**FORWARD JUSTICE**
P.O. Box 1932
Durham, NC 27721
Phone: (919) 323-3889
cswain@forwardjustice.org
kroblez@forwardjustice.org
amitchell@forwardjustice.org

*By: /s/ James W. Cooper*
James W. Cooper
DC Bar No. 421169
Jeremy C. Karpatkin
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Avenue, NW
Washington, DC 20001-3743
Phone: (202) 942-6603
James.W.Cooper@arnoldporter.com

11

Jeremy.Karpatkin@arnoldporter.com

John C. Ulin
CA Bar 165524
**TROYGOULD**
1801 Century Park East
Los Angeles, CA 90067
Phone: (310) 789-1224
julin@troygould.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing PLAINTIFFS' NOTICE OF PROPOSED DISCOVERY with the Clerk of Court using the CM/ECF system which will send notification of such to all counsel of record in this matter.

This, the 2nd day of August 2023.

<i>/s/ Kathleen E. Roblez</i><br>
Kathleen E. Roblez

## CERTIFICATE OF WORD COUNT

The undersigned counsel hereby certifies that pursuant to Local Rule 7.3(d)(1), the foregoing has a word count of less than 6,250 words not including the caption, signature block and certification of word count. This document was prepared in Microsoft Word, from which the word count is generated.

Dated this 2nd day of August 2023.

*/s/ Kathleen E. Roblez*
Kathleen E. Roblez