```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

NORTH CAROLINA STATE CONFERENCE OF*
THE NAACP, et al.,              *
                                *
              Plaintiffs,       *
vs.                             *
                                *
ALAN HIRSCH, in his official    *
capacity as Chair of the North  *  Case No. 1:18CV1034
Carolina State Board of Elections,*
et al.,                         *  Winston-Salem, NC
                                *  November 21, 2023
              Defendants,       *  10 a.m.
                                *
and                             *
                                *
PHILIP E. BERGER, et al.,       *
                                *
Legislative Defendant Intervenors.*
**********************************
```

**TRANSCRIPT OF MOTION HEARING/STATUS CONFERENCE**
BEFORE THE HONORABLE LORETTA C. BIGGS
UNITED STATES DISTRICT JUDGE


APPEARANCES:

| | |
|---|---|
| Plaintiffs: | ARNOLD & PORTER KAYE SCHOLER, LLP<br>BY:  PRESTON M. SMITH, ESQUIRE |
| | FORWARD JUSTICE<br>BY:  KATHLEEN E. ROBLEZ, ESQUIRE<br>     CAITLIN SWAIN-MCSURELY, ESQUIRE |
| BOE Defendants: | NORTH CAROLINA DEPARTMENT OF JUSTICE<br>BY:  TERENCE P. STEED, ESQUIRE |
| Intervenor Defendants: | COOPER & KIRK, PLLC<br>BY:  CLARK L. HILDABRAND, ESQUIRE |
| Court Reporter: | Lori Russell, RMR, CRR<br>P.O. Box 1172<br>Mocksville, North Carolina 27028 |

**P R O C E E D I N G S**

1
    **THE COURT:**  Would the clerk please call this case.

**THE COURTROOM DEPUTY:**  Yes.  Calling case 1:18CV1034, North Carolina State Conference of the NAACP, et al., versus Cooper, et al.

    **THE COURT:**  Good morning to all.

  (Simultaneous response.)

    **THE COURT:**  Before we start, I would like each of counsel to introduce themselves to the Court and for the record.  Why don't you tell us who you are and who you're with, who you're here to represent; and then we will move forward.

  Yes, sir.

    **MR. SMITH:**  Good morning, Your Honor.  My name is Preston Smith with Arnold & Porter and representing Plaintiffs.

    **THE COURT:**  All right.

    **MS. ROBLEZ:**  Good morning, Your Honor.  Kathleen Roblez from Forward Justice representing Plaintiffs.

    **THE COURT:**  All right.

    **MS. SWAIN–MCSURLEY:**  Good morning, Your Honor.  Caitlin Swain, also with Forward Justice, representing the NAACP Plaintiffs.

    **THE COURT:**  All right.  Now, that was Swain?

    **MS. SWAIN–MCSURLEY:**  Yes, Your Honor, Swain-McSurely.

    **THE COURT:**  Oh, Swain -- okay.  I see you now.

    **MS. SWAIN–MCSURLEY:**  Thank you so much.

1          **THE COURT:**  Thank you.

2          **MR. STEED:**  Good morning, Your Honor.  Terence Steed

3    from the North Carolina Department of Justice representing the

4    State Board Defendants.

5          **THE COURT:**  All right.  Thank you.

6       Yes, sir.

7          **MR. HILDABRAND:**  Good morning, Your Honor.  Clark

8    Hildabrand with the law firm of Cooper & Kirk representing the

9    Intervenor Defendants.

10         **THE COURT:**  All right.  Thank you.

11      Now, we are here -- what we currently have before us are

12   two matters.  The first is Plaintiffs' objection to the

13   magistrate judge's September 12th, '23, order, and we also have

14   Plaintiffs' motion to set a trial date.  We will discuss all of

15   that today.

16      But I think we best start -- and let me say that there are

17   two outstanding matters that are on the calendar that haven't

18   been addressed.  We will address what to do with those today as

19   well, and that is Document 177, the State Board's motion for

20   summary judgment, and Document 184, the motion for a

21   clarification.  We will just determine whether or not those are

22   still live and need to be addressed before we proceed with this

23   case.

24      All right.  So why don't we start -- this is Plaintiffs'

25   objection.  And are all three of you planning to argue, or is

1  someone primarily responsible for the argument on this side?

2          **MR. SMITH:**  Good morning again, Your Honor, Preston

3  Smith.  Myself and Ms. Kathleen Roblez will be arguing today.

4          **THE COURT:**  All right.  Let me hear from you.

5          **MR. SMITH:**  And good morning, Your Honor.  My name is

6  Preston Smith again, here on behalf of Plaintiffs.

7      Your Honor, at the outset, I want to clarify what

8  Plaintiffs are here for today in addition to what Your Honor

9  just mentioned.  We are not here to reopen discovery.

10  Plaintiffs are here for two discrete issues:  First, to request

11  that this case go to a full trial on the merits as soon as

12  reasonably possible, and second, to seek an order from the

13  Court mandating that the State Board Defendants fulfill their

14  obligations to supplement their disclosures made under

15  Rule 26(a) pursuant to Rule 26(e).

16      Now, as Your Honor knows, this case will have major

17  consequences for the 2024 elections.  It will determine whether

18  Black and Latino voters in this state can vote on equal terms

19  with their counterparts.  The implementation evidence that

20  Plaintiffs seek today is highly relevant to Plaintiffs' -- is

21  highly relevant to Plaintiffs' intent and results claims.

22  Your Honor, here today Plaintiffs have narrowed our request for

23  relief significantly, so there will be a minimal burden to the

24  State Board Defendants.  (Indiscernible.)

25      (Court reporter requests clarification.)

1          **MR. SMITH:**  Okay.  I'm sorry.

2      Plaintiffs are only seeking supplementation of the State

3  Board Defendants' Rule 26(a) disclosures as to implementation

4  evidence.  As a result of the reduced and narrow nature of

5  Plaintiffs' request for relief, there should be -- the burden

6  on the State Board Defendants should be minimal.  In addition

7  to that, Plaintiffs are willing to further meet and confer with

8  the State Board Defendants to make sure that that burden is

9  further lessened.

10          **THE COURT:**  All right.  Let me ask you this question:

11  So that is not -- you're not now requesting all of the

12  information that you provided to Judge Auld in your notice?

13          **MR. SMITH:**  That is correct, Your Honor.

14          **THE COURT:**  You are no longer requesting all of that

15  information?

16          **MR. SMITH:**  We are no longer requesting all of the

17  information.  That's correct.

18          **THE COURT:**  All right.  So you are only requesting

19  information that you believe you're entitled to under Rule 26.

20  Is that what -- is that what you're saying to me?

21          **MR. SMITH:**  And even more narrow than that, under

22  Rule 26 as to implementation evidence only.

23          **THE COURT:**  As to implementation evidence only.

24      And when you say "implementation evidence," you mean the

25  evidence that you requested that starts at January -- in

1  January 2023?  Is that what you -- what are you -- what is

2  that?

3        **MR. SMITH:**  Sure.  So we're talking about

4  implementation evidence following the April 2023 North Carolina

5  State Court -- Supreme -- North Carolina State Supreme Court

6  decision in *Holmes*.  So it would be implementation from April

7  2023 on.

8        **THE COURT:**  All right.  So this is much narrower than

9  what Judge Auld was addressing when you were before him --

10        **MR. SMITH:**  Yes, Your Honor.

11        **THE COURT:**  -- is that correct?

12        **MR. SMITH:**  Yes, Your Honor.

13        **THE COURT:**  All right.  So let me hear from you.

14        **MR. SMITH:**  So I will discuss our objection to

15  Judge Auld's order, and my colleague Kathleen will discuss --

16  Ms. Roblez -- excuse me-- will discuss the importance of

17  implementation evidence to Plaintiffs' case.

18      Your Honor, Plaintiffs respectfully submit that the Court

19  should reverse Judge Auld's order and require supplementation

20  by the State Board of implementation evidence.  Judge Auld

21  held, in pertinent part, that because Plaintiffs did not timely

22  serve discovery requests they, quote, "retain no such right to

23  updated information under Rule 26(e)."

24      Now, Your Honor, that ruling is clearly erroneous and

25  contrary to law as Rule 26(e) places supplementation

1  requirements both to responses for discovery requests and to

2  disclosures made pursuant to Rule 26(a).

3      Now, when assessing an objection to a magistrate judge's

4  decision, Rule 72 --

5          **THE COURT:**  Now I'm going to ask you to slow down

6  because I've got to absorb what you're saying and act on it.

7  So I need you to slow down a little bit --

8          **MR. SMITH:**  All right.  That's strike two.

9          **THE COURT:**  -- and just talk to me.

10          **MR. SMITH:**  Sorry about that.

11      When assessing an objection to a magistrate judge's

12  decision, Rule 72 requires a district court judge to -- one,

13  the district judge must consider timely objections to the

14  magistrate judge's order and, two, must modify or set aside any

15  part of the order that is clearly erroneous or contrary to law.

16      Now, what is the law that is at issue here?  There are two

17  different pieces of Rule 26.  The first is Rule

18  26(a)(1)(A)(ii), which governs the initial obligation to

19  disclose, and that reads, in pertinent part, that "a party

20  must, without awaiting a discovery request, provide to the

21  other parties a copy -- or a description by category and

22  location -- of all documents, electronically stored

23  information, and tangible things that the disclosing party has

24  in its possession, custody, or control and may use to support

25  his claims or defenses..."  So that's the first part of Rule 26

1  at issue here.

2      The second part of Rule 26 at issue here is

3  Rule 26(e)(1)(A), which governs a party's obligation to

4  supplement, and that reads, in pertinent part, that "A party

5  who has made a disclosure under Rule 26(a) -- or who has

6  responded to an interrogatory, request for production, or

7  request for admission -- must supplement or correct its

8  disclosure or response in a timely manner if the party learns

9  that in some material respect the disclosure or response is

10  incomplete or incorrect..."

11      Now, there's a couple things I would like to flag about

12  this obligation to supplement under Rule 26(e)(1)(A).  Number

13  one is that both the Fourth Circuit and Judge Auld in a ruling

14  have observed that that is a continuing obligation to

15  supplement under Rule 26(e)(1)(A).  The Fourth Circuit

16  mentioned this in the case of *Mey*, M-e-y, *v. Phillips*, cite 71

17  F.4th 203, pincite 214 -- that's a 2023 Fourth Circuit

18  decision -- and the Judge Auld decision regarding a continuing

19  obligation to supplement under Rule 26(e)(1)(A) is *Covil Corp.,*

20  *by and through Protopapas* -- I was going to say that slow

21  regardless of how fast I talked earlier -- and the cite for

22  that is 544 F.Supp. 3d 588.  Pincite is 595.

23      Your Honor, I think it's important to focus on the language

24  that Judge Auld used in that *Covil* case when discussing a

25  party's obligation to supplement under Rule 26(e)(1)(A).

1  Judge Auld said in his opinion, quote, "Rule 26 imposes a
2  continuing obligation on litigants such that a party, ellipsis,
3  who has responded to an interrogatory or request for production
4  must supplement or correct its response in a timely manner if
5  the party learns that in some material respect the response is
6  incomplete or incorrect, and if the additional or corrective
7  information has not otherwise been made known to the parties
8  during this discovery process or in writing."

9      So just briefly I want to focus the Court's attention on
10 that ellipsis.  Again, it was Rule 26 imposes a continuing
11 obligation on litigants such that, quote, "a party, ellipsis,
12 who has responded to an interrogatory or request for
13 production...."

14     The second observation from both of those cases I just
15 mentioned is that the duty to disclose extends beyond the close
16 of discovery.

17     Now, what was Judge Auld's error here that we contend is
18 clearly erroneous and contrary to law?  Under Rule 26(e)(1)(A),
19 Judge Auld misapplied the law by holding that Plaintiffs are
20 only afforded the supplementation protections of Rule 26 if
21 using, quote, "formal discovery mechanisms."

22     That's not what Rule 26(e)(1)(A) requires.
23 Rule 26(e)(1)(A) requires supplementation of both discover --
24 responses to discovery requests -- that would include responses
25 to interrogatories, requests for production, requests for

1    admissions -- and Rule 26(a) disclosures.  In fact, if you look

2    at the language of Rule 26(e)(1)(A), the obligation to

3    supplement disclosures under Rule 26(a) is listed first in the

4    rule, and then it says the response to discovery requests.

5        Now, we have the law.  We've identified what we contend is

6    Judge Auld's error in the order that we're objecting to.  Let's

7    talk about what the State Board Defendants' disclosures were.

8        First, as a table setting matter, in the parties' joint

9    26(f) report, the parties said discovery is needed regarding

10   implementation evidence, and that is at ECF No. 77.

11       Now, there have been two Rule 26(a) disclosures made by the

12   State Board Defendants so far.  The first was on October 13th,

13   2019.

14       And, by the way, Your Honor, both of these disclosures are

15   attached as exhibits to our objection briefing.

16       And in that October 13, 2019, disclosure, the State Board

17   Defendants identify implementation evidence that -- under --

18   pursuant to Rule 26(a).

19       In addition to that disclosure, there was a supplemental

20   disclosure made by the State Board Defendants on May 15th,

21   2020, and if you -- so that can be found at page 30 of Docket

22   211.  And if you look at page 3 of that submission, which,

23   again, is a Rule 26(a) supplemental disclosure by the State

24   Board Defendants, it says that -- and I quote -- "...the

25   following is a description by category and location, of those

1  documents, electronically stored information, and tangible

2  things that State Board Defendants have in their possession,

3  custody, or control and may use to support their defenses in

4  this case."  Now, that's on page 3 of their supplemental

5  disclosure.

6      When you turn to page 4 of their supplemental disclosure,

7  the second-to-last item on the chart says, quote:  "All public

8  records concerning the implementation efforts of the SB 824's

9  voter photographic ID requirement by the North Carolina State

10 Board of Elections."

11     To the right of that they list the location where those

12 materials purportedly were to be found, and then, finally, on

13 that same page, State Board Defendants' brief says that

14 "Defendants will further supplement these disclosures according

15 to Rule 26(e) of the Federal Rules of Civil Procedure."

16     So what are we left with here?  We're left with five

17 things:  One, Rule 26(a)'s disclosure requirement; B,

18 Rule 26(e)'s supplementation requirement that extends both to

19 the State Board Defendants' initial disclosures and subsequent

20 disclosures.  We have Judge Auld's ruling that Plaintiffs

21 (indiscernible) --

22     (Court reporter requests clarification.)

23         **MR. SMITH:**  I'll start over.  I apologize.

24     That Plaintiffs submit -- I was doing good too -- that

25 Plaintiffs submit is clearly erroneous and contrary to law that

 1  only responses to discovery requests must be supplemented; and
 2  finally, we have Rule 72's requirement that a district court
 3  judge must set aside or modify the portion of a magistrate
 4  judge's order that is clearly erroneous or contrary to law.
 5      With that, Your Honor, we're only left with one result:
 6  That the Court should reverse -- respectfully, the Court should
 7  reverse Judge Auld and order supplementation of implementation
 8  evidence by the State Board Defendants pursuant to their
 9  obligations under Rule 26.
10          **THE COURT:**  And did you argue this with Judge Auld?
11          **MR. SMITH:**  So, Your Honor, we raised that in our
12  notice of proposed discovery and also several other places.
13  This is mentioned in our opposition brief.
14      So in ECF No. 202 at 5, which is our motion to lift stay
15  and for the status conference, we wrote that we called for the
16  State Board Defendants to update discovery on impacts and
17  litigation -- and implementation.  Excuse me.
18      And ECF No. 203 at 6, which is the notice of proposed
19  discovery that was before Judge Auld, we wrote that we were
20  asking the State Board Defendants to supplement their prior
21  productions on impact and implementation.
22      And it was also in our reply in support of our notice of
23  proposed discovery where we requested that the State Board,
24  quote, "provide updated information about impact and
25  implementation of SB 824..."

1    So those issues were before Judge Auld.

2            **THE COURT:**  All right.

3        **MR. SMITH:**  Thank you, Your Honor.  And with that I'll

4    pass to my colleague, Ms. Roblez.

5            **MS. ROBLEZ:**  Good morning, Your Honor.

6            **THE COURT:**  Good morning.

7            **MS. ROBLEZ:**  Kathleen Roblez on behalf of NAACP

8    Plaintiffs.

9        As my cocounsel stated, Rule 26 requires supplementation of

10   all documents in a party's possession that, quote, "it may use

11   to support its claims or defenses."  Here Defendants make an

12   argument that implementation evidence is actually not being

13   used by the State Board to support its defenses and is

14   completely irrelevant to this case.  Therefore, they argue that

15   the State Board is under no obligation to produce this under

16   the rules and would be prejudiced by having to produce this

17   evidence.

18       We disagree for three reasons.  First, this position defies

19   logic as the State Board itself specifically said in the

20   supplemental disclosures that Mr. Smith read to you that this

21   would be used to support its defenses; namely, records

22   concerning implementation evidence were listed as something

23   that would be used to support its claims or defenses.

24   Furthermore, they have relied upon this type of evidence at

25   every stage of this case:  The preliminary injunction, the

1   motion for summary judgment, even their pretrial exhibits and
2   witnesses that were disclosed at the end of 2021.

3       Second, this position is not supported by the *Raymond*
4   decision as cited by Defendants and runs contrary to the tests
5   set forth for assessing Section 2 results claims and for
6   Fourteenth and Fifteenth Amendment claims.  Both of those
7   require a court to conduct a totality of the circumstances
8   analysis to determine the impact that a voting restriction
9   would have on racial minorities in a state.

10      Third, the early evidence we have from the 2023 municipal
11  elections is exactly the type of evidence that courts find
12  highly relevant to assessing whether a restriction unduly
13  burdens a racial minority as the way that voter ID is
14  implemented interacts with existing social conditions and, to
15  further compound the discovery, the discriminatory impact of
16  the law itself.

17      As to the first point, State Board Defendants have
18  repeatedly relied upon implementation evidence to assert that
19  this law does comply with the Voting Rights Act and the
20  Constitution.  They have consistently argued that any disparate
21  impact of this law is going to be mitigated by what they call
22  the ameliorative provisions, meaning the provision of free IDs
23  by the DMV and the county board, and the reasonable impediment
24  declaration, which has also been called now the Voter ID
25  Exception Form as it's been implemented.

1      In the original 26(f) report, we decided that discovery
2  would be needed on this.  The State Board's initial and
3  supplemental disclosures included this.

4      In addition, when you look at the State Board's preliminary
5  injunction briefing, they don't argue that the way it was being
6  implemented was irrelevant.  Instead, they cite to an affidavit
7  from the State Board of Elections director, Karen Brinson Bell.
8  They talk about how it was being implemented well, in their
9  opinion.  For example, a large number of IDs were being
10 provided; a large number of colleges were having their IDs
11 approved and employers, and that there was an ability for
12 county boards to produce IDs at locations outside of their
13 offices.

14     They explicitly argued, quote, "There are a number of ways
15 that we are interpreting this law to ensure that it's not too
16 strictly construed," end quote, indicating that
17 implementational evidence on, for example, their temporary
18 rulemaking process in 2023 would be highly relevant to their
19 defenses in this case.  They also relied upon this in their
20 motion for summary judgment and in their witness and exhibit
21 list.

22     As to the second point, the State Board's argument that
23 implementation evidence is not relevant to this case at all
24 because Plaintiffs have brought what they are calling a facial
25 challenge is also inaccurate.  This is directly contradicted by

1  our complaint, which raises claims of discriminatory intent and

2  effect, including an effects-only claim under Section 2 of the

3  Voting Rights Act.  All of those claims require an assessment

4  of the totality of the circumstances and are highly fact

5  dependent.  Plaintiffs' complaint consistently argues that it

6  is both the law and the implementation that are relevant to

7  each one of its claims.

8      The State Board relies on *Raymond* here, the Fourth Circuit

9  decision, in our case for this point.  The Fourth Circuit in

10 *Raymond* did not address Plaintiffs' Section 2 results claim,

11 and it didn't address whether implementation evidence is

12 discoverable.  It merely addressed the relative persuasiveness

13 of implementation evidence in a claim for discriminatory intent

14 only.  In addition, the *Raymond* Court in 2020 was reviewing a

15 pre-implementation record.

16     Courts have consistently assessed the impact of how a state

17 has implemented a photo voter ID law when that implementation

18 has already taken place, which is the case here.

19     If you look at a case like *Greater Birmingham Ministries*

20 out of the Eleventh Circuit, which is 992 F.3d 1299, that was a

21 case where the voter ID law had already been implemented, and

22 the Court dedicated a considerable amount of time to talking

23 about how it had been implemented.  They discuss the

24 "positively identify" provision of the law, the efficacy of

25 mobile voter ID units, and what the voter education had been

1  surrounding the law.

2      We saw the same thing in *Lee versus Virginia Board of*

3  *Elections,* which is 843 F.3d 592.  There there was a seven-day

4  trial that included an analysis of the real-world impact of

5  that law, including testimony from witnesses.

6      Finally, at trial the State Board and Legislative

7  Intervenors will be asking this Court to find that this law

8  does not have a discriminatory impact due largely to this law's

9  ameliorative provisions, but today they're asking this Court to

10  hold that any evidence of how the State interpreted and

11  implemented this law, including its ameliorative provisions, is

12  irrelevant to this case.

13      It's an undisputed fact that Black and Latino citizens of

14  this state disproportionately lack a current and valid

15  North Carolina driver's license, which is the most commonly

16  accepted type of ID for voting under 824.  In addition, in 2023

17  the State Board made explicitly clear in a numbered memo that

18  revoked, suspended, or canceled licenses are not valid for

19  voting purposes.  This greatly broadens the racial disparity

20  that already existed with this law.

21      Defendants' response has consistently been that these

22  disparities will be cured by the ameliorative provisions.  They

23  argue it allows any voter to cast a ballot with or without a

24  photo ID so that the burdens would be limited from this law.

25  The manner in which the law has been interpreted and

1  implemented in 2023 directly contradicts that argument, and
2  this evidence is highly relevant to any fact-intensive totality
3  of the circumstances assessment of the law.

4      In the *McCrory* case, plaintiffs warned that voter ID laws
5  trap lifelong voters like Rosanell Eaton in an administrative
6  maze, erecting barriers that seek to disenfranchise Black and
7  Brown voters more so than anyone else.  Unfortunately, we saw
8  this happen again in the 2023 municipals.

9      For example, there was a 95-year-old Black woman living in
10 Nash County who was subjected to that same maze as Ms. Eaton.
11 When she drove up with her son to vote curbside and she
12 explained that she didn't have an ID -- it was lost or
13 stolen -- she was, unfortunately, not given a reasonable
14 impediment form, which she should have been in those
15 circumstances.  She was asked to cast a provisional ballot, and
16 her son was required to call the county board, drive her to the
17 county board, have her go out to take a picture, all so that
18 she could cast a ballot when she was an already eligible voter
19 who has been voting in this state.  Her son said, "They counted
20 her vote, and that was the outcome of our story.  But what
21 would have happened to a person in her shoes who didn't have
22 someone to go back and help them?  They would be out of luck,
23 and their vote wouldn't count."

24     Not every voter was as lucky as her.  We also talked to a
25 Black woman from Moore County who presented a current and valid

1  North Carolina driver's license but was ultimately told she

2  wasn't eligible to vote because the address on that license did

3  not match her voter registration.  What happened to her

4  violates the guidance from the State Board.  This was a failure

5  in implementation.  That guidance says a photo ID for voting

6  doesn't have to have the current address of the voter.

7      And even if the poll workers did correctly offer reasonable

8  impediment forms to voters, whether or not they're accepted is

9  unacceptably arbitrary, as Plaintiffs have argued all along in

10 this case.  In both the October and November municipals in

11 Guilford County, we saw members of the county board questioning

12 what people were putting down on their reasonable impediment

13 declarations, but without any actual evidence that what they

14 wrote was false.

15     The majority of the Guilford County Board, both in October

16 and November, voted to hold a supplemental hearing to ask those

17 voters to provide evidence, to show up in person if they wanted

18 to.  I really want to emphasize one of the things that they

19 said to a voter and put in a letter about why they were

20 questioning them.

21     In November, there were four voters that the Guilford

22 County Board asked to come to a supplemental hearing,

23 essentially alleging that what they wrote on their form was

24 false.  In this case, the voter said they didn't have an ID

25 because they couldn't get transportation, which is a valid

1 reason to check off on the form.  The letter they wrote said,

2 quote, "You were able to obtain transportation and were well

3 enough to vote but did not utilize the same resources to obtain

4 and present photo ID."  At both of those hearings, one Board

5 member abstained without giving any reason as to why they

6 weren't counting the vote, didn't provide any evidence of

7 falsity.

8      Ultimately, those votes counted, but I think it's really

9 important that sending those letters and conducting those

10 hearings is incredibly intimidating to voters, creates a

11 chilling effect, and deters people from considering using this

12 at all.

13      Those stories are just a few of many.  Over 500 voters had

14 to cast a provisional ballot in this year's municipal election.

15 This was for an election where only about 600,000 people voted.

16 Ultimately, over 200 weren't counted for some sort of

17 ID-related issue, either because they weren't able to return to

18 the county board to show a copy of their ID or because their

19 reasonable impediment declaration was rejected.

20      That's particularly significant when you see how close some

21 of the municipal races are.  In Union County's mayoral race,

22 the top two candidates got the exact same number of votes.  In

23 Wayne County's mayoral race, the two top candidates were within

24 six votes of each other.  As the State Board Director Karen

25 Brinson Bell noted:  "Municipal voters are often some of our

1  most civically engaged individuals."  And yet still we saw so

2  many problems with those civically engaged individuals who are

3  regular, consistent voters being able to have their vote

4  counted with the implementation of voter ID.

5      The problems we saw in 2023 will be magnified in 2024.  As

6  I said, only 600,000 people voted in all three municipals.  By

7  comparison, in the March 2020 primary, 2.34 million people

8  voted.  In the November 2020 general election, 5.5 million

9  people voted.  North Carolina voters deserve to have a 2024

10 general election free from discriminatory voting requirements,

11 and Plaintiffs are asking for a trial to be scheduled in

12 February.  That would allow for limited and targeted discovery

13 to provide this Court with a full and evidentiary record, which

14 we think has to include implementation evidence.

15      **THE COURT:**  All right.  Let me just speak to the issue

16 of setting a trial date.  That is purely within the discretion

17 of the Court and has to operate as this Court can fit this in.

18 We will discuss that later, but that is a Court issue to decide

19 that, not the NAACP.  All right.

20      Now, let me ask you a question.  In light of the argument

21 that was made that Judge Auld erred in his order, I would like

22 for you to tell me why you don't believe excusable neglect is

23 an issue in this at all, and that's -- now, I understand you

24 have said that this was not excusable neglect, but I don't know

25 that you have addressed it otherwise.  So tell me -- if you

 1  don't believe it's an issue, tell me why it's not an issue.

 2          **MR. SMITH:**  Very well, Your Honor.

 3      Excusable neglect is not an issue here because under

 4  Rule 72 -- let me pull the language back up.  Excusable neglect

 5  is not an issue here because we are discussing merely the State

 6  Board Defendants' obligation under Rule 26 to supplement

 7  disclosures made pursuant to Rule 26(e)(1) -- or made pursuant

 8  to Rule 26(a).  Rule 26(e)(1)(A) is clear that a party must

 9  supplement their disclosures made pursuant to Rule 26(a).

10      And so because the State Board Defendants did not do that,

11  it takes it out of the motion to reopen discovery and the

12  assessment of whether there was excusable neglect and under the

13  review -- or under the purview, rather, of Rule 26(a),

14  Rule 26(e)(1)(A), and Rule 72, which, again, requires a

15  district court judge to modify or set aside any part of the

16  order that is clearly erroneous or contrary to law.

17      So because there are several pages in Judge Auld's order

18  where Judge Auld holds that Plaintiffs were not afforded the

19  protections of Rule 26(e)(1)(A) regarding supplementation

20  because these were not discovery requests but were disclosures,

21  that's contrary to law.  So we stay within the Rule 72

22  framework and not any motion to reopen discovery and then the

23  excusable neglect analysis.

24          **THE COURT:**  All right.  Thank you.

25      Let me hear from the Board of Elections, please.

1        **MR. STEED:**  Thank you, Your Honor.  Terence Steed for

2   the State Board of Elections.

3        This -- the Plaintiffs have switched horse in the middle of

4   the race.  It's that simple.  This is not the issue that was

5   before Judge Auld.  They even -- that was exactly how they

6   opened today's argument, that they're not here to reopen

7   discovery.  The issue before Judge Auld was a motion to reopen

8   discovery.

9             **THE COURT:**  I agree with that.

10            **MR. STEED:**  Instead, they're now wishing to -- for an

11  order to supplement under Rule 26, which was also not before

12  Judge Auld, and it defies logic why we are now dealing with

13  what is essentially a discovery dispute on a different issue

14  before the district judge when we didn't even receive -- there

15  was no informal request beforehand for supplementation under

16  Rule 26.  Instead, they went straight to new discovery

17  requests.  You don't need new discovery requests if all you're

18  seeking is supplementation.

19       So this is where their theory of what actually happened

20  starts to unravel, because if they actually believe that this

21  was supplementation of prior requests, they would never have

22  needed to make the motion to reopen discovery.  This is a

23  circular way that they have come around to something that they

24  think they can point to in Judge Auld's order so that they have

25  something to present to Your Honor.

1    Judge Auld's opinion is well reasoned.  It lays out all of
2    the factors of why excusable neglect was not met.
3        **THE COURT:**  This is a de novo review.  You do
4    understand that.
5        **MR. STEED:**  Correct.
6        **THE COURT:**  I don't disagree that it is very
7    exhaustive.
8        **MR. STEED:**  My point was only to say that I doubt that
9    I'm going to do better than what he did, and I don't think I
10   have the same page limit that he had.  He was able to put a lot
11   more into it.  He was able to deal with all these issues and
12   came to the correct decision.
13       **THE COURT:**  Let me tell you, in my reading of all --
14   I've read all the documents that I had before me that I could
15   read.  I will tell you this idea of this Court not having
16   implementation information before it at a trial is troubling to
17   this Court.  Now, whether or not you want to argue why I don't
18   have it -- but what we have here -- the essence of what we have
19   here is this Act has been implemented in the state of
20   North Carolina.  How could this Court adequately address the
21   issues that I would address at trial and completely ignore
22   that?
23      So I need you to understand that that's a serious issue
24   with this Court; that before hearing any of this that you've
25   got to say, I had narrowed down what was important to the

1  Court, and what was important to the Court was implementation

2  information.  How can I legitimately have this trial and not

3  have that information in front of me?

4     So -- so I want you -- I hear what you're saying, that

5  they've changed -- I hear that, and I'm going to let you

6  explore that as much as you want to explore that with me today.

7  But I would be remiss in not telling you what the -- the

8  concern that I walked into this court with today.  That is a

9  concern that I walked into this court with today.

10    So at some point, whether you address it before we finish

11 your argument about whether or not they changed this horse --

12 this Court believes there is nothing more important than the

13 right to vote, and we have an Act that is -- the

14 constitutionality of this Act is being challenged, and this

15 Court knows that there is implementation information available,

16 and I'm going to be very concerned if that information is not

17 before the Court.  So I just want you to know I walked in the

18 courtroom with that kind of issue, was surprised kind of the

19 way he started his discussion.

20    But you need to appreciate that this Court is here to do

21 justice.  I'm not here to just count who may have missed the

22 ball.  I'm here to do justice, and doing justice means I

23 believe that I have the -- all the information before me that

24 allows me to make a good decision.

25    So having said that -- I don't want to cut you off in

1  midstream, and I don't want you -- I do -- I do want you to

2  argue to me further that this was not a part of the discussion

3  before Judge Auld.

4       **MR. STEED:**  Thank you for helping to illuminate a

5  little bit for me.  I would say I don't want to waste time on

6  other issues that aren't as important to Your Honor.  So what I

7  would say is that I believe that the State Board adequately

8  addressed all the reasons why this was not before Judge Auld in

9  the papers that we filed, and there's no sense me reading those

10 out to you again.

11      **THE COURT:**  Okay.

12      **MR. STEED:**  So I will turn to your question to make

13 sure that I don't miss any part of it right now.

14      **THE COURT:**  Okay.

15      **MR. STEED:**  And I guess the question that then comes

16 from us as the other side of the "v." in this case is:  Is it

17 the Court's role to then go back and -- and replay discovery

18 for them because of mistakes that were made?

19      If -- I understand Your Honor's concern.  Your Honor's

20 concern is that you want a fulsome record before you when we go

21 to trial.  I absolutely understand that.  To the extent that

22 you're concerned that there are not already documents in this

23 case, there are tens of thousands of documents that came over

24 from the state court case.  So all of that evidence came over.

25 That was our agreement from day one.

1          **THE COURT:**  I'm interested in implementation.

2          **MR. STEED:**  Current implementation.

3          **THE COURT:**  Current implementation evidence.  We've

4   got before us this trial, and we know that 824 was just

5   implemented in an election.  How can I legitimately feel like

6   I've got all the information before me if I don't know what

7   happened with that?  I just -- I'm just being perfectly square

8   with you.  That's a major concern with me.

9      Now, he has argued that it was before Judge Auld in the

10  sense that -- but Judge Auld ignored it because -- so my

11  question to you, I guess:  Was that implementation issue in

12  the -- in the disclosure that you filed?

13         **MR. STEED:**  So our initial disclosures and our

14  supplemental disclosures were entirely within the framework of

15  the agreement that is memorialized, not made but memorialized,

16  in the Joint 26(f) report, which was:  We will produce to you

17  all of the records from the state matter, and if you determine

18  that you need additional evidence, you will make -- and you

19  have the right to make discovery requests beyond that.  They

20  never made discovery requests.  Our obligation to them and the

21  obligation that we have continued to fulfill -- and if they

22  identify something that I missed from the *Holmes* record, I'll

23  go find it, and I'll send it to them within that obligation.

24     Our obligation was to provide that; and when we gave

25  initial disclosures, we gave supplemental disclosures, it was

1  meeting that obligation.  The discovery, as I understand it, in

2  the *Holmes* matter, the last things that went out in it were in

3  November of 2020.  So it -- it was well past the end of

4  discovery in this case, and yet we have produced those to them.

5      Now, the point being is that we were under an obligation

6  based on the agreement we made to provide that to them.  They

7  were then under the obligation to make discovery requests of

8  their own if they wanted more than what was in the *Holmes*

9  record.  That is what they did not do.  That is why the issue

10 before Judge Auld was reopening discovery so they could make

11 discovery requests.

12     **THE COURT:**  So -- okay.  Okay.  I get what you're

13 saying.  I get what you're saying.

14     And you're saying the issue of this supplementation issue

15 with respect to Rule 26 was not before Judge Auld.

16     **MR. STEED:**  They might have said they wanted to

17 supplement evidence in the record.  They might have wanted to

18 supplement discovery.  They did not say that the State Board is

19 under an obligation to supplement implementation evidence based

20 on the initial disclosures or the supplemental disclosures.

21 That was never before Judge Auld.

22     This gets back to my point that it defies logic.  If that

23 was what they truly believed we had created with those initial

24 disclosures and supplemental disclosures, then why did they

25 then make a motion to reopen discovery?  Why was that the issue

 1  brought to the judge?

 2      All they needed to do was send us a letter saying, "Hey,

 3  you're under an obligation to supplement implementation

 4  evidence."

 5      And we would have said, "No, we don't believe we are."

 6      And then we would have had that fight before Judge Auld, a

 7  discovery battle about whether or not we had an obligation to

 8  supplement.  That never happened.  That was not the issue

 9  before him, and he never had an opportunity to rule on that.

10  So that's the logic of that argument.

11          **THE COURT:**  All right.

12          **MR. STEED:**  I'm still trying to think about your

13  question of current implementation evidence.  I think that

14  ultimately our position on that would come down to the decision

15  in *Raymond* as far as this is a challenge.  They -- they would

16  like to say this is not a facial challenge, but they brought

17  this -- before any implementation was happening, they brought

18  this claim, and then they immediately seek a preliminary

19  injunction to stop any implementation.

20      So the basis, the theory of their case is that on its face,

21  this law is going to result in discriminatory effects,

22  discriminatory impact, and it was motivated by discriminatory

23  intent.  Our point is that when they developed that bit of

24  evidence -- and all of the legislative history is in the *Holmes*

25  record already since nothing new happened with this since

1  *Holmes.*  When they took all that to the Fourth Circuit and put

2  that argument before the Fourth Circuit, the Fourth Circuit

3  looked at the law on its face and said that it's not

4  discriminatory.

5      So our position, which has, again, been put into the motion

6  for summary judgment, is that the issues are ripe for

7  adjudication whether or not they have implementation evidence

8  because -- and -- and I'll continue this.  But whether or not

9  they have it, the *Raymond* Court already looked at the law on

10  its face and reached the conclusion that in that particular

11  setting, under that standard of a preliminary injunction, they

12  weren't going to be able to demonstrate a likelihood of success

13  on the merits.  (Indiscernible.)

14          **COURT REPORTER:**  You need to slow down, please.

15          **MR. STEED:**  You're right.  Sorry.

16      These are obviously different standards, the motion for

17  summary judgment, but we just submit that it is ripe for

18  adjudication, and we would like it to be heard.  But,

19  obviously, that's a separate issue.

20          **THE COURT:**  Right.

21          **MR. STEED:**  I'm sorry.  I had another point, but it

22  slipped my mind.

23          **THE COURT:**  And I threw you off.  I do apologize.  But

24  this is important; and it's important for me, if I'm going to

25  sit as the judge in this case, that I've got before me all

1  available evidence to make a reasoned, thoughtful, sound

2  decision.  I don't know how that happens without -- when this

3  particular law was implemented -- and nobody anticipated it

4  would be three years later and the Supreme Court of the state

5  would have made one decision; that six months later that

6  decision changed.  None of that was before this Court at that

7  time.  None of us, in my view, could have anticipated that.

8      But I -- I will hear from you.  I'm concerned about where

9  we are, and I'm concerned about there being implementation

10  evidence that is in the hands of the Board of Elections that

11  the Court will not have access to for this trial.

12          **MR. STEED:**  I understand that.  I truly do.

13      And honestly, in my opinion, as a litigator standing before

14  you, I think the answer to that is maybe this particular claim

15  is not the vehicle to seek justice in this court because of the

16  tortured procedural history, because of the way the discovery

17  unfolded, because of where we are in the procedural posture,

18  where we are on the eve of a trial now with this record.  And

19  I -- that's their choice, though, to continue.  It's my choice

20  to defend it.  It's not my choice.  It's my obligation to

21  defend it.

22          **THE COURT:**  I understand that.

23          **MR. STEED:**  There's nothing stopping either a ruling

24  from this Court that gets rid of the claims that are currently

25  before it, or a voluntary dismissal from Plaintiffs that would

1  prevent a future claim that was entirely based upon

2  implementation that happens after the election, and they could

3  start a whole new case -- different parties, perhaps, but a

4  whole new case --

5          **THE COURT:**  Why would they do that?  I'm not sure I

6  understand.

7          **MR. STEED:**  My point is that -- Your Honor is

8  discussing how --

9          **THE COURT:**  It's not baseball.  This is about -- this

10 is about the right of individuals to vote and that each vote be

11 counted.  That's what this Court is concerned about.

12         **MR. STEED:**  I understand.

13         **THE COURT:**  And what -- what -- what I'm concerned

14 about is we know that this implementation information exists;

15 we know that it's in the hands of the Board of Elections, and

16 we know that it -- now, I don't know how burdensome you would

17 tell me that this would be for you to provide this, but I am

18 not going to go into a trial on -- on these issues when I know

19 that implementation information exists, is in the Board of

20 Elections, and may not be burdensome to provide; you just

21 choose to not provide it because they didn't ask the right

22 question, or they didn't follow the right rule.

23     So I just need you to understand that that's not going to

24 stop this Court from doing what I feel like I need to do in

25 order to have all of the information before the Court for me to

1    make -- I don't know where we will come down.  I don't know

2    what that implementation evidence looks like.  But I know that

3    that Act has been implemented -- an election pursuant to that

4    Act has been implemented, and that information exists.

5        So for -- my next question would be to you:  How burdensome

6    does the Board argue that would be?  I haven't made a decision.

7    I'm telling you I just read all the documents, and I said, "How

8    am I going to do with a trial without implementation evidence

9    when I know it exists?"

10       **MR. STEED:**  Consistent with our prior filings and

11   especially as this has narrowed as we've gone along, their

12   discovery requests, it would be burdensome to produce

13   implementation evidence.  It would delay proceedings and -- as

14   the argument we've made.

15       But I understand if Your Honor is in a position where you

16   would like to order that to happen, one of my predecessors long

17   ago told me that the best way to respond is that the Department

18   of Justice and the State Board of Elections will do what the

19   Court orders us to do.  We will do it.  We stand ready to

20   follow your orders.

21       I would point out, though, that in preparing for this and

22   apparently seeking out examples of how the 2023 municipal

23   elections were implemented, they've reinforced the point that

24   we've made:  That what they are looking for is not directly

25   relevant to the law itself as it's written.  What it appears

1  they're looking for is mistakes that were made on the ground by

2  staff members.

3      And this goes directly to the two points -- the two

4  examples they highlighted, which both, I will agree, are

5  terrible and should not have happened, but what they -- the

6  example they gave was that an elderly woman appeared for

7  curbside voting and was erroneously denied the correct form.

8  So whichever county board member was out there -- county staff

9  member was out there who was supposed to be following the law

10  as it was written made a mistake, the law as it was written did

11  not violate that woman's rights.  The person on the ground

12  there who didn't understand what they're doing and made a

13  mistake did.

14      The second example was in Moore County where they said that

15  the address on the ID didn't match the registration.  Again,

16  correct.  They are told not to do that.  The photo

17  identification is for photo identification purposes, to make

18  sure the person and the name match.  The address is not

19  important.  And they're told not to do that specific thing that

20  happened, so that person also made a mistake.

21      It's not the way the law was written.  It's not even the

22  way the State Board is implementing it.  These are mistakes

23  that were made by people on the ground who didn't -- who, for

24  whatever reason, did it wrong.  If those are the two best

25  examples of the 2023 --

1          **THE COURT:**  Well, they probably picked what they

2  thought were the two most egregious examples --

3          **MR. STEED:**  Fair enough.

4          **THE COURT:**  -- to inflame the Court.  So I get that.

5  That's a litigation strategy too.  I get that.

6          **MR. STEED:**  That's fair.  But is then that -- is that

7  what the -- is that what the trial will be, examples repeatedly

8  of irrelevant evidence that are egregious in their own right

9  but not --

10          **THE COURT:**  Well, let me say this:  I don't let in a

11  lot of irrelevant evidence into a trial that I'm conducting, so

12  I don't suspect I'll do it in your trial either.  But I also

13  would hate to move forward with a trial on this issue knowing

14  that the Board of Elections has within its hands how this was

15  implemented before.

16      I understand mistakes happen, and I understand that it was

17  new to everybody, and it was sprung on you kind of at the last

18  minute.  I get that too.  I understand all that.  But we don't

19  even get to discuss that if we don't have the implementation

20  evidence.  If we believe that the implementation went well and

21  consistent with the law as it is written, then why -- why is

22  this -- why are we here now?

23      Now, I will tell you when I looked at what their request

24  was before Judge Auld, I said, "No way we're going to open up

25  discovery on all this."  And the only thing that jumped off

1  that page at me was the implementation evidence.  That's the
2  only thing that jumped off that page with me, and I said,
3  "Everything else, they just missed the boat.  They missed that
4  boat."
5      So I just want to hear from you -- and I don't want you not
6  to make the argument that you feel like you need for the record
7  in order to -- to preserve these things for appeal.  So I
8  don't -- but I do -- I did want to cut to the chase, and I
9  wanted you to know that I walked in this courtroom with that
10  concern; that we've got -- and what I also kind of walked into
11  this courtroom with was it appeared that the N double -- that
12  the Plaintiff and the Board of Elections has worked pretty well
13  together in this process and has exchanged information, some of
14  which the magistrate judge approved, some of which the
15  magistrate judge did not approve.  So that was refreshing to
16  the Court, to see litigants conduct themselves in that way.
17      But I need to understand truly how burdensome it would be
18  to provide that information, what volume of information we're
19  talking about.  I just have no worldly idea.
20          **MR. STEED:**  It would be voluminous.  We're not just
21  talking about the training materials that go out or training
22  that was conducted at the statewide training.  It is every
23  single communication back asking questions.  If the -- if the
24  discovery request stands, all implementation evidence since
25  April of 2023, then that's pretty -- it is pretty broad, and so

1  you then --

2          **THE COURT:**  Since April of 2023?

3          **MR. STEED:**  Correct, this year, when the *Holmes*

4  decision came down from the North Carolina Supreme Court.

5          **THE COURT:**  Right, right.

6          **MR. STEED:**  So the day after that is when the

7  implementation started.

8          **THE COURT:**  Right.

9          **MR. STEED:**  Nothing before that because that was the

10  order in place.

11          **THE COURT:**  Right.

12          **MR. STEED:**  We would be violating an order otherwise.

13          **THE COURT:**  That's right.

14          **MR. STEED:**  So the issue then becomes:  Is it every

15  conversation about how it should be implemented?  Is it every

16  communication from county boards asking questions or every

17  communication from the State Board answering a question?

18      It just -- that's where it becomes voluminous, because now

19  we're doing e-discovery searches through email communications

20  that could be overboard, and I've got tens of thousands of

21  emails to search for privilege and all that.  That's where it

22  becomes burdensome, in that way.

23      If there were significant drawbacks on it, obviously we

24  could reach a point where it was no longer burdensome, but I --

25  if -- especially if it was limited to the instances of the

1  actual voting and how that was carried out, like the two

2  examples they used, and all the reasonable impediment ballots

3  that were filled out and the results that happened at the

4  county board.  Those are all public records anyway, but it --

5  it's really where we draw the line depends on how burdensome it

6  becomes.

7      The way that it is currently written is -- would be

8  burdensome, would be voluminous, would take a significant

9  amount of time for me to collect.  I know it might not seem

10 like it, but it's really just me and one other person doing the

11 elections work so --

12         **THE COURT:**  All right.  All right.  And I think what

13 you're saying is reasonable, but that sounds like that could

14 occur with a conversation -- you guys really have worked very

15 well, almost incredibly well.  In some of my major litigation

16 that just doesn't happen.  I have to resolve every dispute.

17 And -- and I was -- I was pleased that you -- you had worked

18 well together in resolving some disputes that otherwise would

19 have been before the Court.  But I'm not sure that that could

20 not be discussed and some reasonable something presented to the

21 Court in terms of the discovery that is being requested.

22         **MR. STEED:**  I understand, Your Honor.  I think the

23 State Board's position at this point, given the procedural

24 posture, is that they didn't have a basis to reopen

25 discovery --

1    **THE COURT:**  Right.

2        **MR. STEED:**  -- and they don't have a basis to argue

3  that this is supplemental discovery, and it -- I understand

4  your point, that it would -- it would benefit the Court to have

5  this record -- this implementation evidence in the record.

6        The issue that comes from my side here is that I'm

7  operating under those rules and arguing under those rules, and

8  I'm not seeing the means by which -- I don't see how the Court

9  gets to that ruling, unless there's something I'm missing.

10       **THE COURT:**  I'm not sure how the Court gets to that

11 ruling.  I expressed a concern that the Court has.  I've got to

12 figure that out.  But that's my job.  That's not your job.

13 That's my job.

14       **MR. STEED:**  Right.

15       **THE COURT:**  My job is to figure out how I can get

16 there, if I can get there, but I -- I do want some discussion

17 to occur to determine whether or not that -- that request can

18 be tailored in a way that everybody gets what they need.

19       The Court is just concerned that 824 has been implemented

20 by the Board of Elections, and that information will not --

21 if -- if we follow the way this is going, will not be before

22 the Court.  So that was me putting you on notice that that is a

23 major concern with the Court.

24       **MR. STEED:**  I understand, Your Honor.

25       I think as -- to the meeting and conferring issue, I think

1  if we were -- if we were ordered to provide this evidence, I do
2  believe that we could work well with them.  I intend to work
3  well with them in the future, just as we have in the past,
4  notwithstanding this little dispute here.  And if we needed to
5  provide that implementation evidence, we could reach a
6  compromise on how much and how far it stretched and -- to get
7  it done.
8      I don't know that we could do that rapidly to -- with --
9  under some kind of timeline, like a very short window like
10 they've suggested.  I'm not sure that that's possible.  I would
11 also -- it would be -- my colleague for the legislative leaders
12 is going to speak.
13          **THE COURT:**  They suggested a trial on February the 4th
14 or something.
15          **MR. STEED:**  Uh-huh.
16          **THE COURT:**  This Court is not available on February
17 the 4th.  The Court decides when the trial is going to occur.
18          **MR. STEED:**  And that's why we provided Your Honor with
19 the basic-level elections calendar for the year, because --
20 trust me.  I've got one over here that's a spreadsheet.  There
21 are a whole lot of dates in there I didn't tell you about.
22 There -- but the point is that it would be extremely
23 inconvenient and onerous to prepare that quickly for a trial
24 like that when they're in the middle of this implementation, as
25 we're discussing.

```
 1      But I understand Your Honor's concerns.  I think that
 2  ultimately the State Board's position is that there's no
 3  procedural vehicle to get there currently, and I think the
 4  ability to do it is possible.  The ability to do it quickly is
 5  probably not possible, and the ability to do it without --
 6            THE COURT:  What do you mean the ability to do it
 7  quickly?  What does "quickly" mean?
 8            MR. STEED:  They suggested the February date, as if we
 9  were going to be able to do discovery in 30 days and provide
10  all this in the middle of the holiday season with other
11  litigation going on.  I don't think that's realistic.  That's
12  all I mean.
13            THE COURT:  All right.  So what do you anticipate
14  would -- would not be quickly?  I don't know what you would --
15            MR. STEED:  I understand.  I really don't know.  It
16  depends on how much we narrow it.  But if I had to answer, I
17  would say several months, three months possibly, to get --
18            THE COURT:  Three months?
19            MR. STEED:  I don't know, Your Honor.  It's not the
20  only case I have, and it's not the only thing the State Board
21  is doing.
22            THE COURT:  Well, guess what.  It's not the only case
23  any of us have.
24            MR. STEED:  I know, Your Honor.
25            THE COURT:  I get that.  I do -- I do understand where
```

1  we are.  I do understand that while -- clearly, the rules are

2  the rules, and this Court understands that.  I also understand

3  that I have an obligation to the citizens of North Carolina to

4  give them the fullest trial on this issue that the Court can

5  give to the citizens of North Carolina, not caring about the

6  attorneys but to the citizens of North Carolina; and everything

7  that I've read said if there is implementation evidence, you

8  want that implementation evidence.  I'm just -- and that is --

9  and the Court is there.

10         **MR. STEED:**  I understand, Your Honor.  I'm just trying

11  to answer the question knowing -- knowing our obligations.

12  What I don't want to do is say I can do this in five weeks and

13  then turn around and be back to you saying I need more time

14  because of all those other issues.

15         **THE COURT:**  Right.

16         **MR. STEED:**  So I'm trying to give you my best guess,

17  reasonable amount of time.

18         **THE COURT:**  Are those other issues with federal court?

19         **MR. STEED:**  Yes, the three cases before

20  Judge Schroeder, which are going through preliminary injunction

21  phase right now; a third case before -- it's unassigned

22  currently, but it's with Magistrate Judge Webster -- that is

23  also going to go through preliminary injunction phase -- as

24  well as redistricting that was filed yesterday in the Eastern

25  District before Judge Dever.

1      **THE COURT:**  I know this is a busy time.

2          **MR. STEED:**  It's election season, Your Honor.

3      **THE COURT:**  Look, you don't have to tell me.  I know

4  this is a busy time.

5          **MR. STEED:**  Yes.

6      **THE COURT:**  And I know -- and this is late.

7          **MR. STEED:**  Those are just the cases from the last

8  month, so --

9      **THE COURT:**  Yeah, I know this is a busy time, as you

10  might appear.  All of the courts are very busy with all of

11  these issues now and knew it would be.

12          **MR. STEED:**  Yes.  I understand.  It's the job,

13  Your Honor.  I signed up for it.

14      **THE COURT:**  It's the job.

15          **MR. STEED:**  I would only -- the only other issue that

16  I will discuss with respect to timeline and this particular

17  issue and Your Honor's concern beyond what I've already said is

18  that it would be remiss of me not to mention that my colleague

19  is here for the legislative leaders, who have an interest as

20  well, and they were never part of discovery.

21      **THE COURT:**  And I'm going to give him a chance to

22  be -- isn't that what he's here for?

23          **MR. STEED:**  That's right.

24      **THE COURT:**  I'm definitely going to give him a chance

25  to be heard.

1      And I want you to put on the record anything you feel like
2  you need to put on the record.  I sidetracked your argument --
3           **MR. STEED:**  That's fair.
4           **THE COURT:**  -- because I wanted to get to the heart of
5  this thing, and I wanted you to understand what this Court is
6  sitting here thinking.
7           **MR. STEED:**  I wouldn't be too concerned about that,
8  Your Honor.  I had no idea where this would go from the moment
9  we got here, so there wasn't much prepared.  I knew it was
10 going to be a stand-on-your-feet-and-answer-questions session.
11          **THE COURT:**  Right.
12          **MR. STEED:**  All I would add is that what we placed in
13 our papers is our position on the relief that they are
14 requesting, and I think that adequately addresses why it should
15 not be granted.  Unless Your Honor has additional questions
16 outside of that that you would like me to address, then I think
17 I've made my argument.
18          **THE COURT:**  Well, address for me clearly why you do
19 not believe this is a supplementation issue.
20          **MR. STEED:**  Well, it's for the same reason that I said
21 earlier.  What is in the Rule 26(f) is the agreement that had
22 already been reached by the parties before that was submitted,
23 which was:  The State Board is going to provide you everything
24 from the state court action that's produced in that discovery,
25 and then beyond that, if you want more, you have to make

1  discovery requests.

2          **THE COURT:**  So you're saying that the agreement

3  between the parties did not -- did not include the disclosures.

4  Is that what you're saying?  What are you saying to me?  I

5  don't know what you're saying.

6          **MR. STEED:**  What I'm saying is that the State Board

7  agreed and obligated itself to produce everything from the

8  *Holmes* action.  It did not agree and obligate itself to produce

9  the same categories of evidence that came from the *Holmes*

10 action.  If they wanted that, they needed to make discovery

11 requests.  They didn't make discovery requests, and that's

12 where we are now.  That's what was before Judge Auld.

13     Our position is that when we produced initial disclosures

14 and supplemental disclosures, we were producing *Holmes* state

15 court action, and that's reflected in the attachments to those

16 disclosures, which all list *Holmes* Bates stamps.  They are

17 pages of Holmes_SBOE_Production and then Bates numbers that all

18 came from the state court action.

19     So what they are asking the Court to do and what we are

20 objecting to is treating that as if we obligated ourself to the

21 category of evidence when there was no pending discovery

22 request for it.  What we were doing was meeting our obligation

23 under the agreement to produce the *Holmes* records to them.

24         **THE COURT:**  And you have agreed to do that?

25         **MR. STEED:**  We have done that.

1          **THE COURT:**  You've already done that.

2          **MR. STEED:**  As far as I know, I think I have given

3    them everything they asked for this.  There is a lot of

4    documents in there.  There were a lot of separate productions

5    in there.

6          **THE COURT:**  All right.

7          **MR. STEED:**  And if they identify anything that they

8    think they are missing, which they have before, I will provide

9    it to them.

10          **THE COURT:**  Right.  I see.

11       So you're saying -- what was the document that you

12    indicated that was a part of, I thought, the agreement that

13    went into the 26(f)?

14          **MR. SMITH:**  Your Honor, what I was referring to were

15    the two disclosures made by the State Board Defendants pursuant

16    to Rule 26(a).

17          **THE COURT:**  Okay.  All right.  But you did not argue

18    that before Judge Auld?

19          **MR. SMITH:**  Briefly, Your Honor.

20       There are two different places in our papers with

21    Judge Auld regarding the notice of proposed discovery that

22    mention -- where we request supplementation.  The first is on

23    page 6.  We say:  "Plaintiffs request that the State Board

24    Defendants ensure full production of the *Holmes* litigation

25    discovery documents" -- that's not important -- "and supplement

1    their prior productions on two topics that are directly

2    relevant to Plaintiffs' claims: discovery regarding the present

3    impact of SB 824, particularly on Black and Latino North

4    Carolinians, and information regarding how State Board

5    Defendants are implementing SB 824 for the 2023 municipal

6    elections and beyond."

7            **THE COURT:**  What document are you saying that's in?

8            **MR. SMITH:**  So that is -- if you -- 203 -- 203.

9            **THE COURT:**  203.  Wait just a minute.  I have 203.  I

10   was looking at that before I came in here.

11       So what page are you on?

12           **MR. SMITH:**  I'm looking at page 6.

13           **THE COURT:**  Now, this was the notice that you did

14   pursuant to Judge Auld's request.

15           **MR. SMITH:**  That's correct, Your Honor.

16           **THE COURT:**  And so point me to the language that

17   you're talking about.

18           **MR. SMITH:**  So top of page 6, the first sentence on

19   the second line -- if you look at the second line all the way

20   to the right where it starts with "Plaintiffs' request."

21           **THE COURT:**  Uh-huh.

22           **MR. SMITH:**  "Plaintiffs request that the State Board

23   Defendants ensure full production of the *Holmes* litigation

24   discovery documents" -- the key part is now here -- "and

25   supplement their prior productions on two topics that are

 1  directly relevant to Plaintiffs' claims" --

 2          **THE COURT:**  "And supplement" -- okay.  All right.

 3          **MR. SMITH:**  -- "discovery regarding the present impact

 4  of SB 824, particularly on Black and Latino North Carolinians,

 5  and information regarding how State Board Defendants are

 6  implementing SB 824 for the 2023 municipal elections and

 7  beyond."

 8      And if I may briefly, Your Honor, additionally, in our

 9  reply papers, we make a similar request.  That is page -- that

10  is ECF 208.

11          **THE COURT:**  I don't think I -- let me see if I have

12  208 before me.  No.

13      Do you have an additional copy of that 208 with you?  I

14  just want to -- I want to make sure I understand each parties'

15  argument.  All right.  If you would hand that up, please.

16      (Document handed to the Court.)

17          **THE COURT:**  Okay.  So what were you about to say about

18  208?

19      And then I'm going to give you -- I'm going to give the

20  Board of Elections some opportunity to talk to me about that.

21      What am I looking at in 208?

22          **MR. SMITH:**  This is a -- if you look in the middle of

23  page 1 of 208, the sentence that starts, right down the middle:

24  "State Board Defendants will not be prejudiced..."  It's about

25  the sixth line.

1      **THE COURT:**  So this is Plaintiffs' reply in support of

2  the notice of proposed --

3      **MR. SMITH:**  Correct.

4      **THE COURT:**  So that was raised in the notice and reply

5  that you -- so tell me what language you're referencing.

6      **MR. SMITH:**  "State Board Defendants will not be

7  prejudiced by having to complete their previously agreed upon

8  production of the *Holmes* litigation discovery documents and to

9  provide updated information about the impact and implementation

10  of SB 824 before this case proceeds expeditiously to trial."

11     And in Judge Auld's order, he says explicitly that

12  Plaintiffs were not entitled to updated information under

13  Rule 26 because the requests were not discovery requests, and

14  the point that we're arguing, Your Honor, is Rule 26(e)(1)(A)

15  is for disclosures made under Rule 26(a) and discovery

16  requests.

17     **THE COURT:**  Uh-huh.  All right.

18     **MR. STEED:**  My response is that the discovery request

19  they sent to Judge Auld had categories called "Supplementation

20  of Prior Evidence and Discovery Requests" that would then

21  obligate the State Board to produce the same type of evidence

22  that was produced in *Holmes* up through implementation now, and

23  that is precisely my point.  This wasn't a request to enforce

24  supplementation under Rule 26.

25     **THE COURT:**  Right.

1         **MR. STEED:** This was a request to reopen discovery,

2 and in doing that, they put in all the supplemental requests

3 they wanted to make --

4         **THE COURT:** Right.

5         **MR. STEED:** -- which was to follow on from the end of

6 the *Holmes* record.

7         **THE COURT:** Right.

8         **MR. STEED:** And that's precisely my point. That's not

9 the issue that was before Judge Auld. That's not even the

10 argument they made.

11    Sure, the word "supplement" appears there --

12         **THE COURT:** Right.

13         **MR. STEED:** -- and it also appears in the discovery

14 request.

15         **THE COURT:** Right.

16         **MR. STEED:** That doesn't automatically trigger in the

17 Court's mind to sort --

18         **THE COURT:** An obligation.

19         **MR. STEED:** -- through and find the argument they're

20 making.

21         **THE COURT:** I agree. I agree. I've held that. I

22 agree.

23         **MR. STEED:** So that's our position on it from where we

24 are now. Procedurally postured, that was not before

25 Judge Auld.

1          **MR. SMITH:**  Very briefly, Your Honor?

2          **THE COURT:**  Yes.

3          **MR. SMITH:**  Briefly, but slowly while talking, two

4   points to make.

5       So in the supplemental disclosure -- again, this is a

6   Rule 26(a) disclosure that was filed in May of 2020 -- the

7   State Board Defendants say that they will disclose "all public

8   records concerning the implementation efforts of the SB 824's

9   voter photographic ID requirement by the North Carolina State

10  Board of Elections."  Beneath that they write:  "Defendants

11  will further supplement these disclosures according to

12  Rule 26(e)..."  That's just the black-letter language of what

13  they wrote.

14         **THE COURT:**  What document is that in?

15         **MR. SMITH:**  That is the State Board Defendants'

16  supplemental disclosures, which we attached to our objection to

17  Judge Auld, which is ECF 211.  So there's two exhibits to that

18  brief.

19         **THE COURT:**  And that's exhibit what that you're

20  referencing?

21         **MR. SMITH:**  B.

22         **THE COURT:**  B.

23         **MR. SMITH:**  Yes, Your Honor.

24         **THE COURT:**  Okay.

25         **MR. SMITH:**  And just two more points I'll make

1  briefly.

2      The Fourth Circuit, as in -- as included in the State Board

3  Defendants' brief -- or referenced in their brief, there's a

4  1992 Fourth Circuit case, *US v. George.* It says: "...a

5  district court considers all arguments directed at that issue,

6  even arguments not raised before the magistrate judge." We've

7  just pointed to two points in our papers where that issue was

8  raised.

9      And then, again, Rule 72, this -- it says that a district

10 court must modify or set aside any part of the order that is

11 clearly erroneous or contrary to law and is a mandatory setting

12 aside or modification. And in Judge Auld's order, there are

13 two to three pages where the Plaintiffs were not afforded the

14 supplementation protections of Rule 26(e)(1)(A) because there

15 were not discovery requests issued, but that's not what

16 Rule 26(e)(1)(A) says. It's Rule 26(a) disclosures, which we

17 just referenced in our notice papers, and then there's the rule

18 that requires a supplementation of those.

19          **THE COURT:** All right. I think I've got that.

20     Before I hear from you -- I can't mix apples and oranges.

21 If you would just have a seat, sir. I'm going to give you an

22 opportunity to be heard.

23          **MR. HILDABRAND:** Yes, Your Honor.

24          **THE COURT:** I just want to make sure that I have heard

25 what you need me to hear. I did cut your argument off. I've

1    redirected you.  I get that.  But it was important to me to get

2    what was in my head out, and -- so your argument is that this

3    matter was not before Judge Auld.  That's your position?

4              **MR. STEED:**  Correct.

5              **THE COURT:**  This matter was not before Judge Auld, and

6    that this is outside of his order.

7              **MR. STEED:**  Correct.  Even if it was inside the

8    order -- even if it was properly here because it was part of

9    the order, we still don't think they would be entitled to it

10   for the reasons we've already stated; that it wasn't -- it was

11   not a supplementation of *Holmes* category evidence.  It was

12   supplementation of just the *Holmes* evidence.

13             **THE COURT:**  Okay.

14             **MR. STEED:**  Right.

15             **THE COURT:**  Now, tell me that again.  Maybe I missed

16   that.

17             **MR. STEED:**  This was the same thing you were talking

18   about, why are we not under a duty to -- an obligation to

19   supplement.

20             **THE COURT:**  Yes.

21             **MR. STEED:**  (Indiscernible.)

22        (Court reporter requested clarification.)

23             **THE COURT:**  Okay.  Slow it down.  Yes, yes, yes.

24             **MR. STEED:**  A lot of coffee with no breakfast.  I

25   apologize.

1    The duty -- the agreement was to provide the state court

2  evidence, and then if they required additional evidence, then

3  they could make requests for those.  Again, that's in keeping

4  with the motion to reopen discovery and the requests for

5  supplemental evidence.  There's a direct line that connects all

6  these as the understanding between the parties, and what was in

7  the disclosures was just more *Holmes* evidence.  So that remains

8  our position, that that's what we were doing.  We were meeting

9  our obligation there.

10    I think we've beat that particular issue to death for Your

11  Honor.  If you think you understand that, I don't have anything

12  more to add to it for the record.

13         **THE COURT:**  All right.

14         **MR. STEED:**  Our papers do address the distinction

15  between a new argument and a new issue, so the cases are there,

16  including *George* that was cited by the Plaintiffs.  So we've

17  already addressed that in the papers as well.

18         **THE COURT:**  So you don't think this is a new argument.

19         **MR. STEED:**  No, I think it an entirely new issue, a

20  new request for the Court that wasn't before Judge Auld.

21         **THE COURT:**  Right.  And I did read that in your

22  papers.  I understand that.

23    All right.  So let me hear from you, sir.  I'm sorry.

24         **MR. HILDABRAND:**  Thank you, Your Honor.  So first --

25         **THE COURT:**  Remind me of your name.

1          **MR. HILDABRAND:**  Clark Hildabrand.

2          **THE COURT:**  All right.  Yes, sir.

3          **MR. HILDABRAND:**  So first to turn to what the scope of

4  the discussion here has been.  I want to point out that the

5  document that they are -- that Plaintiffs have pointed to, the

6  State Board Defendants' supplemental disclosures -- when it

7  says "State Board Defendants will supplement these disclosures

8  according to Rule 26(e) of the Federal Rules of Civil

9  Procedure," what they attached at Doc 211, page 29, those

10  disclosures were not disclosures of documents.  Those were

11  identifications of various custodians under Federal Rule of

12  Civil Procedure 26(a).  There was not any standalone discovery

13  request for any information.

14      So to the extent that they now try to show this is a motion

15  to supplement, all they could ask for supplementation for would

16  be this identification, which they nowhere have said is an

17  incorrect identification of individuals who would have

18  potentially relevant information.

19      Because they did not file -- and it was their strategic

20  decision not to file -- not to request any discovery on

21  implementation or serve a 30(b)(6) deposition notice, as they

22  subsequently did.  That was their decision.  This Court may

23  prefer to have more information before it were this to go to

24  trial, but it's the Court's obligation to consider the issues

25  on the record that the parties present before the Court, and it

1  was Plaintiffs' decision not to seek and serve discovery for
2  such implementation evidence.
3      **THE COURT:**  Are you telling me it's not my -- I don't
4  have the power to do this?  Is that what you're telling me?
5  What are you telling me?
6      **MR. HILDABRAND:**  Your Honor, I'm saying that in
7  federal courts, it's plaintiffs' responsibility to present
8  their cases.
9      **THE COURT:**  And I agree with that 100 percent.  I
10 agree with -- I agree with that.
11     **MR. HILDABRAND:**  So to the extent that they now are
12 trying to claim the -- trying to say that they need this
13 implementation evidence, they could have filed a discovery
14 request back when discovery was open.  They made the strategic
15 decision not to do so.  Another litigant could, if they please,
16 try to do that themselves, but it was these Plaintiffs choice
17 not to seek discovery on implementation evidence and to be
18 satisfied with the *Holmes* evidence that was voluntarily
19 provided to them.  So this Court may prefer that there be more
20 information already in the record --
21     **THE COURT:**  And will order it.  If I believe I have to
22 have it before me, I will order it.
23     **MR. HILDABRAND:**  I understand, Your Honor.
24     **THE COURT:**  I more than prefer it.
25     **MR. HILDABRAND:**  I understand, Your Honor.

1      **THE COURT:** All right.

2      **MR. HILDABRAND:** It's our position that it was

3  Plaintiffs' obligation to seek discovery on this, which they

4  did not do so.

5      **THE COURT:** I understand.

6      **MR. HILDABRAND:** So turning from that issue, if this

7  Court were to order that discovery should be what they refer to

8  as supplemented, what in reality is reopened for evidence that

9  was not requested during discovery, then the Legislative

10 Defendants would like to be able to seek the full scope of

11 discovery that they would be able to now as a party and that

12 they were not allowed to do so previously.

13    So I know this Court discussed time frame for discovery.  I

14 think it's probably going to take longer than that because

15 there would be discovery requests that we would serve on

16 Plaintiffs and possibly on the State Board to seek additional

17 information.

18     **THE COURT:** So did the order from the Supreme Court

19 give you that authority?  This Court generally dictates what

20 the intervenors can have and can do.

21     **MR. HILDABRAND:** This Court made us a party to this

22 case, and as a party to this case, we have a right to seek

23 discovery of the other side in the case.  We are defendants

24 just like the State Board is, and we have the right to seek

25 discovery.  That right was, respectfully, denied to us by this

1 Court earlier in the case.  The parties also made decisions
2 about the timeline for the discovery process and things like
3 that that we were not allowed to have a say in that
4 decision-making process.
5     We think that we have -- we have a right to seek discovery
6 of Plaintiffs, especially when today they had mentioned much
7 information that was -- is not even -- they haven't even
8 requested now or that we wouldn't have access to, that we would
9 like in preparation for trial, and also to file a motion for
10 summary judgment, if we so decide.  Those were things that
11 normally litigants would have the right to do so in federal
12 litigation, but we were not given the ability to do so, even
13 though we should have been defendants in this case.  So for
14 those reasons --
15         **THE COURT:**  Well, you were later ordered to -- your
16 intervention was later allowed.  Now, I have not reviewed -- I
17 did not review that intervention order before I came into here
18 and -- into the courtroom, so I don't know that you have that.
19 I don't know.  I've got to see what the Court said.  But
20 motions to intervene -- generally this Court determines the
21 level of intervention.  Now, I don't know if that was addressed
22 in that order, and I will certainly look at that.
23         **MR. HILDABRAND:**  I think, Your Honor -- I think it's
24 quite common for intervenor defendants to be allowed to file
25 for discovery and to file a summary judgment.

1        **THE COURT:**  All right.  I will look at that.

2        **MR. HILDABRAND:**  So for those reasons, I think if

3   this -- it would also just be inequitable for the other side to

4   be able to seek discovery of the State Board --

5        **THE COURT:**  So is there a reason that you're trying to

6   keep out the implementation information?  Is there something

7   about the implementation information that causes concern for

8   you -- for that to be before the Court?

9        **MR. HILDABRAND:**  The legislature is not -- these laws

10  are constitutional and don't violate the VRA.  However,

11  Plaintiffs' claims were facial ones that they brought, and we

12  were content to go forward with the record that was in place

13  there, and we think it's inequitable for them to switch their

14  horse quite a while after this litigation has been going on.

15       They were wanting to move very quickly while we were

16  excluded from the case to proceed to trial, but then even after

17  the Supreme Court issued its decision allowing us to intervene,

18  they waited nearly a full year in order to try to get this case

19  going again.

20       So while there's nothing that we're particularly concerned

21  about, we don't think that their claims are really about

22  implementation, and it's inequitable to allow discovery to

23  proceed just on those issues when not giving us a chance to

24  seek similar discovery.

25       So for those reasons, Your Honor, I think if this Court

1  were to allow new discovery, which we don't think this Court

2  should do so, we think that we should be given the right to

3  start our discovery anew of Plaintiffs and, to the extent

4  necessary, Defendants.

5          **THE COURT:** I understand your argument.

6          **MR. HILDABRAND:** Thank you, Your Honor.

7          **THE COURT:** All right. Yes, sir.

8          **MR. SMITH:** Just to respond briefly, Your Honor.

9      First, as to the argument that was made regarding -- I'm

10  going back to the -- my favorite document today, the

11  supplemental disclosures that were, again, attached to our

12  opposition brief. Counsel said that that was merely just an

13  identification of the category, but the other part in that rule

14  requires you to list the location, and the column on the right

15  lists the location where the State Board said those documents

16  are. So it wasn't merely just an identification, and that's

17  not what the rule requires.

18      As to discovery, I just wanted to note that Judge Auld gave

19  all the parties an opportunity to file notices of proposed

20  discovery. We were the only ones that did so, obviously

21  unsuccessfully. But we were the only ones that did so.

22      Finally, as to -- there's been a lot of discussion about,

23  you know, discovery requests versus disclosures under

24  Rule 26(a), and I certainly understand arguments and points

25  made regarding Plaintiffs' ability to notice discovery.

1  However, this is a distinction regarding a party's obligation

2  to supplement their Rule 26(a) -- Rule 26(a) disclosures.

3     The Federal Rules of Civil Procedure does not make the same

4  distinction regarding discovery requests and Rule 26(a).

5  Again, Rule 26(e)(1)(A) says:  "A party who has made a

6  disclosure under 26(a) -- or who has responded to an

7  interrogatory, request for production, or request for

8  admission -- must supplement or correct its disclosure..."

9     It doesn't say only if you're made a request -- you're

10 responding to a request -- a discovery request.  It says a

11 discovery request or a disclosure under Rule 26(a).  So this

12 elevation -- in this particular context, this elevation of

13 discovery request over what Rule 26(e)(1)(A) requires a party

14 to do regarding their 26(a) disclosures is inaccurate.

15         **THE COURT:**  So why did you ask Judge Auld to reopen

16 discovery as opposed to supplement?  Help me understand why you

17 did that in the first place.  I don't really understand.

18         **MS. ROBLEZ:**  Yes.  We were seeking to reopen discovery

19 in this case because of the fact that, obviously, now

20 Legislative Defendants had come into the case.  Obviously, at

21 that point it was a much broader request at that time.  It was

22 not just for implementation evidence.

23     And I know they mentioned, you know, we sort of gave these

24 as new requests, but in our proposed discovery before

25 Judge Auld, we set forth a number of requests saying, "We're

1  just basically copying and pasting what was in *Holmes* and

2  identifying that the majority of our request is just

3  reiterating to the Court that we need supplementation of

4  *Holmes*."

5      I did want to make a point about that because I've heard a

6  couple times from the other side that if we wanted to, we could

7  have asked for more.  But we were happy with the *Holmes* record.

8  The *Holmes* record was not sort of an amorphous thing of just

9  whatever they gave us.  We knew what the discovery requests

10  were in *Holmes*, and we looked at those and saw that they

11  covered a wide breadth of implementation evidence.  You know,

12  they had asked for, essentially, everything we would have asked

13  for, which is why we did not ask for those exact same things

14  again pursuant to the original agreement, to try to save all

15  the parties' time.  So I just want to make sure it's clear that

16  we didn't ask because we understood those to be fully

17  encompassed and very well requested by the lawyers for *Holmes*.

18          **THE COURT:**  All right.

19          **MR. HILDABRAND:**  May I briefly respond, Your Honor?

20          **THE COURT:**  Yes, sir.

21          **MR. HILDABRAND:**  So, first, on the Rule 26 issue --

22  actually, Rule 26(a) says that it requires a party to provide

23  to the other parties a copy -- or a description by category and

24  location -- of all the documents that -- in its possession,

25  custody, or control that may be used.  All that 26(a) requires

1   is provide a description.

2       To the extent that they're now claiming that they would

3   like the State Board to supplement their Rule 26(a)

4   disclosures, that should only be about supplementing the

5   description or location, which is their right under the federal

6   rules to limit that.  That's all that it requires there.  But,

7   again, there's nothing that they have pointed to to say that

8   these Rule 26(a) disclosures were inaccurate or need

9   supplementation.

10      What really they're seeking to do -- and this is why what

11  they filed with Judge Auld was much broader than seeking to

12  supplement this list of individuals.

13          **THE COURT:**  Yes, it was.

14          **MR. HILDABRAND:**  So they were -- they requested a Rule

15  30(b)(6) deposition; they requested to depose both of the

16  Intervenor Defendants; they requested to depose several other

17  legislators as well.  This is much broader than just

18  supplementing what's shown here on the 26(a) disclosures.

19      Thank you, Your Honor.

20          **THE COURT:**  All right.

21      Anything further by either party?

22          **MR. SMITH:**  Not from Plaintiffs, Your Honor.

23          **MR. STEED:**  Not from the State Board.  Thank you,

24  Your Honor.

25          **THE COURT:**  Yes, sir.

1      **MR. HILDABRAND:**  No, Your Honor.

2      **THE COURT:**  Now, I have not, of course, ruled on this,

3  and I've got to rule on this to make a determination of whether

4  or not additional information is required.

5      I did consult with my calendar to determine where such a

6  case could be tried and did determine that starting with the

7  last week in February over into the first two weeks of March I

8  could fit a trial in.

9      Let me ask each of the parties:  With where we are now,

10  before this Court addresses this issue -- then I can think

11  about this as I address the issue.  But where we are now, I --

12  that is a window that I have, but I don't recall the parties'

13  length of trial that was indicated.  For some reason eight days

14  is sticking in my head, but I don't recall.  And, of course,

15  the Intervenors had not -- were not involved at this point.

16      So have -- have you done an evaluation -- and I understand

17  this is a projection, but we operate on projections around

18  here.  I've got to have some idea in terms of what you believe

19  is the length of this trial that you are requesting.

20      **MS. ROBLEZ:**  I believe what we had suggested earlier

21  was 10 days, and I think we would still --

22      **THE COURT:**  Now, 10 days -- 10 days doesn't mean 10

23  days of evidence.  You understand that.  You've got to pick a

24  jury.  You've got to do all kinds of other things in that 10

25  days.

1    But you're saying you had anticipated 10 days for the

2  trial; is that correct?

3         **MS. ROBLEZ:**  I believe that that is correct to present

4  our evidence.

5         **THE COURT:**  Well, no, no, no.  That's not -- that's

6  not what is presented to the Court.  That is not what is

7  presented to the Court.  We -- we never ask a side how long

8  does it take for you to do your part of the case.  We ask what

9  do you anticipate is the length of the trial, and you gave me

10  something between eight days -- I remember eight days, and now

11  you're saying 10 days.  So I'm not likely going to give you 10

12  days to present only your evidence.  We do have other trials,

13  lots of other trials.  This case is taking precedence over a

14  lot of trials that were ready for trial before you were ready

15  for trial --

16         **MS. ROBLEZ:**  Understood.

17         **THE COURT:**  -- because of the calendar that we're

18  looking at.

19    So I'm going to accept the 10 days as your estimate in

20  terms of the length of the trial, not your presentation of

21  evidence, and you will conform to that accordingly.

22    And let me -- let me hear from each of the parties over

23  here.

24         **MR. STEED:**  I was just going to say if they have the

25  joint Rule 26(f), it might have been listed in there what we

1  thought the trial would be.

2       THE COURT:  That may be where I got the eight days.

3       MR. STEED:  I don't recall either.

4       THE COURT:  I didn't make it up.  It came from

5  somewhere.

6       MR. STEED:  And I think the State Board's response

7  would be exactly what Your Honor didn't ask for.  If it's

8  without a lot of new evidence, then it would likely be largely

9  legal argument from us, which would be then rebuttal.  The only

10 case we would be talking about would be rebuttal.

11      THE COURT:  Right.

12      MR. STEED:  If there is implementation, I don't know

13 how broad that would be, and we would probably come up with

14 some kind of presentation for that.

15      THE COURT:  Understood.

16      MR. STEED:  The only other thing I would add is -- and

17 please correct me if I'm wrong -- I don't think there was a

18 jury demand.  I don't see it in the complaint that I have,

19 unless I'm forgetting about an amended complaint or not.

20      THE COURT:  Oh, is this a --

21      THE COURTROOM DEPUTY:  It's a bench trial.

22      THE COURT:  It's a bench trial.

23      MR. STEED:  So just to add that.

24      THE COURT:  Well, that's a lot easier, to be quite

25 honest.  That's a lot easier.  That works for the Court much

1  better.  I will tell you that.

2        **MR. STEED:**  I would only add that the timeline of end

3  of February, early March is even more troublesome to the State

4  Board than the one they suggested because --

5        **THE COURT:**  I get it, but I'm not available.

6        **MR. STEED:**  Right.  I understand, Your Honor.  I

7  understand, and we will do what the Court asks us to do, like I

8  said before.

9        **THE COURT:**  I do understand, and I was trying to get

10  it done in sufficient time for an order to come out.  I am

11  utterly concerned about confusion around all of this.  I know

12  the Board of Elections has to have time to inform our citizens

13  what is going to govern their right to vote.  I do understand

14  that.

15      And you're saying you gave me a timeline.  I'm not sure

16  I've seen your timeline, but --

17        **MR. STEED:**  It was in response to the motion to set a

18  trial.  We stated that we do not oppose the motion; that we

19  leave it in the trial court's discretion.

20      But we essentially said that absentee voting starts very

21  early in January.  In-person voting -- early voting starts on

22  February 15th.  The election itself is March 5th, if I'm not

23  mistaken.  Then the counties and State Board, that's not the

24  end of their work.  They then have canvass afterwards, which is

25  largely -- can be even more intense than the pre-election time

1  period.  That runs through the end of March.

2      So the period you're talking about, if we were talking

3  about a two-week period at the end of February and beginning of

4  March, is essentially right in their second busiest time of the

5  year, other than the general election.

6      But following on from that, the calendar continues that

7  unless there's a second primary -- and that only happens if

8  there's multiple candidates and nobody gets above 30 percent.

9  If that were to happen and the second-place finisher requests

10  it, then we do a second primary for that race only.  In the

11  previous -- in 2022 -- since that was another redistricting

12  year, so I'm very familiar with it -- we had second primaries,

13  but they weren't statewide.  So they can be anywhere from the

14  governor's race to, you know, a local state senate race.  So it

15  could just be up in one corner of the state, and it's not a

16  huge burden on anyone.

17          **THE COURT:**  Right.

18          **MR. STEED:**  But I don't know what that will be until

19  we get there.

20          **THE COURT:**  Right.

21          **MR. STEED:**  But for the Court's edification, that

22  means -- that would be in the middle of May.  So April and May

23  would then also be a voting season.  Again, wide spectrum of

24  how intense that might be.  June/July are not voting.  Nobody

25  is voting during June and July.  And then voting on -- and for

1    most -- most of August since absentee ballot -- absentee voting

2    starts in September.  So there's a good -- obviously, August

3    would be late in the cycle, so I don't think I suggested that.

4         **THE COURT:**  Yes, yes, that would be very late if you

5    want an order to come out of this Court.

6         **MR. STEED:**  I don't think I suggested that.  But

7    April, May, June, July is a period where there would be less

8    concern about the burden placed on State Board staff to be part

9    of this and likely the confusion that the Court is concerned

10   about.  I mean, obviously --

11        **THE COURT:**  That's good information.  You -- I read --

12   I thought I read your reply, but I just didn't pick that up.

13   But that's good information to know.

14        **MR. STEED:**  Okay.  And, yeah, I just -- yeah, the

15   staff members that would be involved likely -- the executive

16   director, the general counsel, people who would sit at the

17   table with me --

18        **THE COURT:**  Right.

19        **MR. STEED:**  -- those are people who are pretty vitally

20   important while voting is ongoing.

21        **THE COURT:**  I do understand.

22        **MR. STEED:**  So it presents a problem with them where

23   they have to choose between being present here and doing their

24   day job.  So I -- that is not to say that we couldn't do it.

25   If Your Honor ultimately reaches the conclusion that that is

1  when trial needs to happen, then we'll show up and be ready for

2  trial.

3         **THE COURT:**  Right.  And I do appreciate you saying

4  that.  But I'm not trying to make your job harder.  I know your

5  job is hard.

6         **MR. STEED:**  Thank you, Your Honor.  I appreciate that.

7         **THE COURT:**  I really do.  I'm not trying to make it

8  harder, and I really am concerned about voter confusion.  Those

9  issues weigh on this Court very heavily, and -- and -- and what

10 it takes for you -- what the Board of Elections must do in

11 order to prepare for it.  That's -- that's very important to

12 this Court.

13        **MR. STEED:**  The only thing I would add to that is, as

14 Your Honor well knows, this case has received a lot of

15 attention on its way up to the Supreme Court and back.  There

16 have already been orders that have been reversed both in state

17 and federal court.  Unfortunately, I think the day it goes to

18 trial presents nationwide headlines probably, and I would --

19 the confusion problem is a concern for me as well having been

20 through a lot of these before --

21        **THE COURT:**  Yes.

22        **MR. STEED:**  -- and not wanting to have people going to

23 vote with a misconception of what the rules are.

24        **THE COURT:**  That's right.  That's right.

25     Yes, sir.

1           **MR. HILDABRAND:**  So, Your Honor -- and, of course, I'd
2   defer to the State Board on the burden on their staff.  I point
3   out for the February date, as I mentioned earlier, we are
4   likely -- if this Court allows additional discovery, we are
5   likely to seek discovery ourselves, and this one discovery
6   dispute has taken several months to resolve.  So I -- if we
7   seek discovery, I think it's going to take several months as
8   well.  It might take several months for that to be resolved
9   itself.

10      It also depends on if Plaintiffs are attempting to present
11  any expert testimony at trial.  We don't think that they --
12  they didn't notice any expert during the entire period of
13  discovery, so we don't think they have a right to do so.  But
14  it might be their position that they would do so, and if so, we
15  would like to depose that expert.  First of all, we would
16  oppose it.  We would also like to depose such an expert.  We
17  might need to prepare our own experts.  This is going to add
18  time.

19      And I understand the concern about getting this done
20  quickly.  Plaintiffs waited quite a long time after the Supreme
21  Court's decision to restart things going here.  So that just
22  really -- I understand this Court's concern, but --

23          **THE COURT:**  After the Supreme Court's decision
24  regarding your intervention is what you're saying.

25          **MR. HILDABRAND:**  Right, Your Honor.  Nothing happened

1   in this case for, I think, about eleven months.

2           **THE COURT:**  I do appreciate that.

3           **MR. HILDABRAND:**  So I understand wanting to get it

4   done quickly, but I think, especially if this Court were to

5   issue an order as well, there might be likely an appeal.

6   There's the possibility if this Court issues an order in

7   August, for example, that there might be an appeal of such an

8   order, and that could or could not --

9           **THE COURT:**  I'm not afraid of appeals.

10          **MR. HILDABRAND:**  I understand, Your Honor.  My only

11  concern here is just confusion for the voters and for the law

12  on the ground as it's being carried out during the voting

13  periods, that it remains consistent during this time.

14          **THE COURT:**  Well, my concern is about the voters as

15  well; that every piece of information that needs to be before

16  this Court in order to make a reasoned, solid decision be

17  before this Court.  That is a concern about the voters.  It's

18  not a concern about you; it's not a concern about you; it's not

19  a concern about you.  It's a concern about the voters

20  believing -- understanding that the Court has everything before

21  it to make a thoughtful, reasoned decision.  That is what

22  drives me.

23      What you've got going on doesn't drive me, but I do -- now,

24  the Board of Elections does drive me, I will be perfectly

25  honest, because I know the obligation of the Board of Elections

1  in administering these elections.  So that is a major concern

2  for the Court.

3           **MR. HILDABRAND:**  So I understand Your Honor's --

4  Your Honor's statement on that.

5     The Legislative Intervenors, of course, we have an interest

6  in making sure that North Carolina law is in place and is

7  followed.  I understand if the Court were to enter an order,

8  but it's our position that we would like the law in place for

9  elections that are occurring.  We also want to avoid any

10 confusion that could take place.

11          **THE COURT:**  Understood.  That is a major issue for me,

12 the confusion that will be caused now.  We had a decision by

13 the state that the law was unconstitutional.  Six months later,

14 because of the composition of a court, we have a different

15 decision, and now this is before the Court.  Talking about

16 confusion, that's confusion.

17          **MR. HILDABRAND:**  Well, thank you, Your Honor.

18          **THE COURT:**  All right.  So are there any other --

19 well, you know what?  We did not address the State Board's

20 motion for summary judgment, which is outstanding --

21          **MR. STEED:**  That was actually what I was about to say,

22 Your Honor.

23          **THE COURT:**  -- and the motion for clarification.

24          **MR. STEED:**  I don't know what the motion for

25 clarification is.

 1         **MS. ROBLEZ:**  If I understand it correctly, I believe

 2    that was when we essentially asked the Court to tell us if we

 3    needed to respond to your motion for summary judgment.

 4         **MR. STEED:**  Right.

 5         **MS. ROBLEZ:**  But we ultimately did respond, and it's

 6    fully briefed.

 7         **THE COURT:**  Okay.

 8         **MS. ROBLEZ:**  So my opinion is that's moot, if I'm

 9    understanding correctly.

10         **MR. STEED:**  That sounds correct to me.

11         **THE COURT:**  The motion for clarification is moot.

12         **MS. ROBLEZ:**  Yes, yes, the motion for clarification,

13    yes.

14         **THE COURT:**  Okay.  But we do need to address the

15    motion for summary judgment.

16         **MR. STEED:**  We understand it was filed late -- filed

17    late without permission.  We nonetheless filed it because we

18    felt there was a valid legal argument to be made,

19    understanding, of course, under 56.1(g) --

20         **THE COURT:**  Yes.

21         **MR. STEED:**  -- that Your Honor may not be able to get

22    to it before trial, and so at that time, we expected that,

23    perhaps, you would be ordering from the bench and then moving

24    right into trial, and -- which was fine.  We understood that

25    that could be the situation.

1    Obviously, the procedural posture has changed.  There isn't
2  currently a trial on.  Our position would be that it should be
3  reached and ruled upon.  Again, the Court has its own docket.
4  The Court knows whether it can get to it before trial or not
5  depending on when the trial is scheduled.
6        **THE COURT:**  We will get to it.  We will get to it
7  before trial.  No question about that.
8        **MR. STEED:**  In that case, then that's the only request
9  we have on the motion for summary judgment.
10        **THE COURT:**  All right.  I just wanted to ask the
11  parties if that was still active and needed to be addressed.
12        **MR. STEED:**  Yes.
13        **THE COURT:**  So you've addressed that.
14    All right.  Anything further from either of the parties?
15        **MS. ROBLEZ:**  Just really briefly to respond to
16  Legislative Defendants.
17    I think Your Honor understands, because you referenced the
18  competing decisions from the North Carolina Supreme Court, but
19  our intention has always been to move this forward as quickly
20  as possible.
21    The only reason we waited until after that final *Holmes*
22  decision is because when the Legislative Intervenors were
23  allowed into this case, that state court case had already been
24  granted a petition for discretionary review.  It was going
25  quickly up to the highest court, and we know that you had

1  expressed a concern about these cases kind of proceeding on

2  parallel tracks and how confusing that was.

3       And I do also want to say to sort of the point of the

4  Legislative Defendants not having any opportunity, they have

5  been in this case since June of 2022, have not so much as filed

6  an initial disclosure, have not themselves requested to reopen

7  discovery, and when given the opportunity by Judge Auld did not

8  themselves file discovery requests.  So I just wanted to note

9  that in response.

10          **THE COURT:**  All right.  Yes, sir.

11          **MR. HILDABRAND:**  May I respond?

12          **THE COURT:**  You may.

13          **MR. HILDABRAND:**  So in response to that, our position

14  was that we were glad to proceed on the record before the

15  Court.  However, if the record is going to be changed now, then

16  we, of course, would like to obtain discovery of the other side

17  there.

18       They mentioned the state court's decisions, but it was

19  still several months from then until now for when that

20  occurred, and so it's been -- what? -- half a year since then,

21  and if we're going to rush to trial, there's no need to do that

22  when we would -- this Court, we'd recommend, not doing so.  If

23  it really were a need to rush to trial, then they should have

24  immediately moved to set the trial date, which, of course, I

25  recognize is in this Court's discretion to choose when the

1  trial occurs.

2        **THE COURT:**  Well, I do think they moved, like, in a

3  month and a half or two months of that -- in about a month and

4  a half for the Court to set a trial date.

5        **MR. HILDABRAND:**  Well, I think it's been a fairly

6  recent request to set the trial date, and still it's a month

7  and a half, and it's -- all of this is pushing and making it

8  closer and closer to when they're now pushing to have this

9  before 2024 elections.  Their first initial request is for

10  February or March, and we -- if the record is going to be

11  reopened, we would like to seek discovery.  We don't want to be

12  prejudiced.

13        **THE COURT:**  You've said that about five times.  You've

14  said that five times.  That's on the record, and I've got it.

15        **MR. HILDABRAND:**  I understand, Your Honor.  I just

16  wanted to repeat because it's still relevant to their

17  arguments.

18        **THE COURT:**  Understood.  Understood.

19        **MR. HILDABRAND:**  Thank you, Your Honor.

20        **THE COURT:**  Anything further?

21     Let us adjourn court.

22     (Proceedings concluded at 11:50 a.m.)

23

24

25

1                   **C E R T I F I C A T E**

2     I, LORI RUSSELL, RMR, CRR, United States District Court
Reporter for the Middle District of North Carolina, DO HEREBY
3 CERTIFY:

4     That the foregoing is a true and correct transcript of the
proceedings had in the within-entitled action; that I reported
5 the same in stenotype to the best of my ability and thereafter
reduced same to typewriting through the use of Computer-Aided
6 Transcription.

7

8 *Lori Russell*

9 Lori Russell, RMR, CRR      Date:  12/20/23
Official Court Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25