# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA

|  |  |
|---|---|
| NORTH CAROLINA STATE CONFERENCE OF THE NAACP; *et al.*, | CASE NO. 1:18-cv-1034 |
| *Plaintiffs*, | |
| v. | |
| ALAN HIRSCH, in his official capacity as Chair of the North Carolina State Board of Elections; *et al.*, | **LEGISLATIVE DEFENDANTS' TRIAL BRIEF** |
| *Defendants*, | |
| and | |
| PHILIP E. BERGER, in his official capacity as President Pro Tempore of the North Carolina Senate, and TIMOTHY K. MOORE, in his official capacity as Speaker of the North Carolina House of Representatives, | |
| *Legislative Defendant Intervenors*. | |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION .................................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 3

I.  The General Assembly Implemented a Constitutional Amendment
    Requiring Voter ID. .................................................................................... 3

II.  The General Assembly Crafted S.B.824 To Fulfill a Constitutional Mandate While
     Protecting Voter Participation...................................................................... 5

III.  S.B.824 Differs Dramatically from Prior Voting Legislation................................ 7

IV.  The Courts Have Allowed North Carolina To Use S.B.824 in Elections. ............... 9

ARGUMENT............................................................................................................ 9

I.  Plaintiffs Will Not Prevail on Their Constitutional Claims. .................................. 10

    A.  Plaintiffs will not prove discriminatory intent at trial. ..................................... 11

    B.  Plaintiffs will not prove actual discriminatory impact at trial. ......................... 15

II.  Plaintiffs Will Not Prevail on Their VRA Section 2 Claim. ................................... 16

CONCLUSION ........................................................................................................ 21

i

# TABLE OF AUTHORITIES

**Cases**                                                  **Page**

*Abbott v. Perez*,
585 U.S. 579 (2018) ........................................................................ 10, 12

*Ark. State Conf. NAACP v. Ark. Bd. of Apportionment*,
86 F.4th 1204 (8th Cir. 2023) .................................................................. 16

*Arlington Heights v. Metro. Hous. Dev. Corp.*,
429 U.S. 252 (1977) ........................................................................ 10, 11

*Brnovich v. Democratic Nat'l Comm.*,
141 S.Ct. 2321 (2021) ........................................................ 3, 17, 19, 20, 21

*City of Mobile v. Bolden*,
446 U.S. 55 (1980) ......................................................................... 10, 12

*Coal. for TJ v. Fairfax Cnty. Sch. Bd.*,
68 F.4th 864 (4th Cir. 2023) .................................................................... 14

*Crawford v. Marion County Election Board*,
553 U.S. 181 (2008) ........................................... 13, 14, 15, 17, 18, 21

*Farm Lab. Org. Comm. v. Stein*,
56 F.4th 339 (4th Cir. 2022) .............................................................. 11, 12

*Greater Birmingham Ministries v. Ala. Sec'y of State*,
992 F.3d 1299 (11th Cir. 2021) ............................................................ 1, 16

*Holmes v. Moore*,
886 S.E.2d 120 (N.C. 2023) ............................................................... 1, 2, 9

*Hunter v. Underwood*,
471 U.S. 222 (1985) ........................................................................ 10, 14

*Irby v. Va. State Bd. of Elections*,
889 F.2d 1352 (4th Cir. 1989) .................................................................. 15

*League of Women Voters of N.C. v. North Carolina*,
769 F.3d 224 (4th Cir. 2014) .................................................................... 16

*Lee v. Va. State Bd. of Elections*,
843 F.3d 592 (4th Cir. 2016) ......................................... 3, 15, 16, 18, 19, 20

*Morrison v. Garraghty*,
239 F.3d 648 (4th Cir. 2001) .................................................................... 15

*N.C. State Conf. of NAACP v. McCrory*,
182 F. Supp. 3d 320 (M.D.N.C. 2016) ................................................... 7, 8, 15

*N.C. State Conf. of NAACP v. McCrory*,
    831 F.3d 204 (4th Cir. 2016) ................................................ 3, 7, 8, 16, 17

*N.C. State Conf. of the NAACP v. Raymond*,
    981 F.3d 295 (4th Cir. 2020) ..................... 1, 2, 3, 4, 9, 10, 11, 13, 15, 17, 18, 20

*Pers. Adm'r of Mass. v. Feeney*,
    442 U.S. 256 (1979) ............................................................... 14

*Purcell v. Gonzalez*,
    549 U.S. 1 (2006) .................................................................. 21

*South Carolina v. United States*,
    898 F. Supp. 2d. 30 (D.D.C. 2012) ..................................... 1, 14, 15, 16

*Thornburg v. Gingles*,
    478 U.S. 30 (1986) ................................................................ 16

*United States v. Salerno*,
    481 U.S. 739 (1987) ....................................................... 2, 3, 7, 15, 16

*United States v. Sanchez-Garcia*,
    2024 WL 1453397 (4th Cir. Apr. 4, 2024).......................... 11, 12, 13

## Constitutions, Statutes, and Codes

52 U.S.C.
    §10301 ................................................................................ 16
    §10301(b) ............................................................................ 16

N.C. CONST.
    art. VI, §2(4) ........................................................................ 3
    art. VI, §3(2) ..................................................................... 1, 3

N.C. GEN. STAT.
    §20-37.7(d) ....................................................................... 5, 6
    §20-37.7(d2) ........................................................................ 8
    §161-10(a)(8) ....................................................................... 6
    §163-82.8A ........................................................................ 5, 6
    §163-82.8A(d)(1)................................................................... 6
    §163-82.8A(d)(2)................................................................... 6
    §163-87 ................................................................................ 8
    §163-166.16(a)(1) ................................................................. 5
    §163-166.16(a)(2) ................................................................. 5
    §163-166.16(a)(2)(d) ............................................................ 9
    §163-166.16(a)(3) ................................................................. 5
    §163-166.16(c) ..................................................................... 6
    §163-166.16(d)(2) ................................................................ 6
    §163-166.16(f)................................................................... 6, 8

§163-182.5(b) .................................................................................. 6

2013 N.C. Sess. Laws 381,
§§12.1, 16.2-16.8, 25.1, 49.3-49.4 .......................................... 7
§§5.2-5.3 ................................................................................... 8

2015 N.C. Sess. Laws 103,
§8(e) ..................................................................................... 7, 8
§8(g) ........................................................................................ 8

2018 N.C. Sess. Laws 144,
§1.5(a)(8) ................................................................................ 8
§1.5(a)(10) .............................................................................. 1

2019 N.C. Sess. Laws 22,
§1 ............................................................................................ 4
§§2–5 ...................................................................................... 4

2019 N.C. Sess. Laws 239 ................................................................. 5

2019 N.C. Sess. Laws 239, §1.2(b) ................................................... 7

2019 N.C. Sess. Laws 4, §1(b) ......................................................... 4

2020 N.C. Sess. Laws 17,
§10(a)(2)(d) ............................................................................ 5

08 NCAC 17.0101(b) ................................................................... 6, 8

## Other Authorities

Building Confidence in U.S. Elections §2.5 (2005) ......................... 21

Kim Westbrook Strach, *Prior Education Efforts on Voter Identification Requirements (2014-16)*, N.C. State Bd. of Elections (Nov. 26, 2018),
https://bit.ly/2lLiV6M ........................................................... 18

## INTRODUCTION

In November 2018, the People of North Carolina amended their Constitution to provide that "voters offering to vote in person shall present photographic identification before voting." N.C. CONST. art. VI, §3(2). Following that constitutional enactment, which is not challenged here, the General Assembly implemented the People's command that it "enact general laws governing the requirements of such photographic identification," *id.*, and enacted S.B.824 with bipartisan support, including support from multiple African American Democrat Senators. S.B.824, the law Plaintiffs challenge here, violates neither the U.S. Constitution nor the Voting Rights Act ("VRA").

S.B.824 "is one of the least restrictive voter identification laws in the United States." *Holmes v. Moore*, 886 S.E.2d 120, 126 (N.C. 2023). "Indeed," as the Fourth Circuit previously ruled, "the 2018 Voter-ID Law is more protective of the right to vote than other states' voter-ID laws that courts have approved." *N.C. State Conf. of the NAACP v. Raymond*, 981 F.3d 295, 310 (4th Cir. 2020) (citing *Lee v. Va. State Bd. of Elections*, 843 F.3d 592 (4th Cir. 2016); *South Carolina v. United States*, 898 F. Supp. 2d 30 (D.D.C. 2012); and *Greater Birmingham Ministries v. Ala. Sec'y of State*, 992 F.3d 1299 (11th Cir. 2021)). Indeed, S.B.824 guarantees that "[a]ll registered voters will be allowed to vote with or without a photo ID card." 2018 N.C. Sess. Laws 144, §1.5(a)(10). The law's sweeping reasonable impediment provision allows voters to provide any reason at all for lacking ID and cast a ballot that will count so long as they do not lie on the form accompanying the ballot.

But S.B.824 does not simply rely on the reasonable impediment provision to ensure

1

that citizens will be able to vote. It has a lengthy list of qualifying IDs that are possessed by the vast majority of voters. S.B.824 even created an entirely new form of ID available for free, without any underlying documentation, at every county board of elections ("CBOE") in the State. Voters may obtain that ID through the end of early voting, a form of voting used disproportionately by minorities, and immediately use it to vote. If they have not obtained an ID by election day, they may cast a provisional ballot and then return to the board of elections within nine days to obtain a free ID and use it to cure their ballot during that same trip. A legislature bent on discrimination would not go to such great lengths to ensure that all registered voters can vote with or without ID.

The Fourth Circuit has already analyzed Plaintiffs' constitutional claims in light of all the evidence in the preliminary injunction record and decided that Plaintiffs "fail[] to meet" their burden on that record. *Raymond*, 981 F.3d at 311. Plaintiffs chose not to develop their case during discovery and cannot carry their burden at trial.[1] S.B.824 ensures that North Carolinians of all races will continue to be able to vote with or without a photo ID. The law is race-neutral, so Plaintiffs must prove that it was passed with discriminatory intent and has an actual discriminatory impact. *Id.* at 302. For intent, Plaintiffs cannot overcome the presumption of legislative good faith. *Id.* at 305. Nor can they prove that, in every set of circumstances, the law has an actual discriminatory impact on voters. *United*

---

[1] For example, as Legislative Defendants explain in their motion in limine to exclude Plaintiffs' experts, Plaintiffs did not disclose any expert for use at trial. Accordingly, Legislative Defendants reference the contents only of Plaintiffs' preliminary expert reports. Even if Plaintiffs are permitted to add to the record, they will not prevail. *See Holmes*, 886 S.E.2d at 136-39.

*States v. Salerno*, 481 U.S. 739, 745 (1987).

This Court has also held that Plaintiffs' claim under Section 2 of the VRA "falls short" on the preliminary injunction record. Prelim. Inj. Op., Doc. 120 at 52–53. For the VRA claim, Plaintiffs must make an even "greater showing of disproportionate impact," which they cannot do. *N.C. State Conf. of NAACP v. McCrory*, 831 F.3d 204, 231 n.8 (4th Cir. 2016). Here, voters without an ID can cast a provisional ballot and are given nine days to obtain a free ID that could be used to make it count. *See Lee*, 843 F.3d at 600. Considering the totality of the circumstances, Plaintiffs cannot meet their burden of proving that S.B.824 facially prevents North Carolina from complying with Section 2's requirement that voting be equally open. *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2338 (2021).

## STATEMENT OF FACTS

## I.     The General Assembly Implemented a Constitutional Amendment Requiring Voter ID.

On November 6, 2018, the citizens of North Carolina amended the North Carolina Constitution to require that "[v]oters offering to vote in person shall present photographic identification before voting" and to direct the General Assembly to "enact general laws governing the requirements of such photographic identification, which may include exceptions." N.C. CONST. art. VI, §2(4); *see also id.* §3(2) (same). Fifty-five percent of the voters approved the constitutional amendment. *Raymond*, 981 F.3d at 299.

Compelled by this mandate, the General Assembly enacted implementing legislation—S.B.824. The bill was introduced on November 27, 2018. It underwent five

3

days of legislative debate and was permitted time for public comment. *Id.* at 305. Twenty-four amendments were offered and thirteen, including several proposed by the law's opponents, were adopted. *Id.* at 306. The law enjoyed bipartisan support: four Democratic legislators—two in the House and two in the Senate—joined their Republican colleagues in voting for the law. *Id.* One of S.B.824's primary sponsors was Senator Ford, an African American Democrat. *Id.* Senator Ford was not the only African American Democrat to support the law. Senator Don Davis—who now serves as one of North Carolina's Congressmen—also voted in favor of S.B.824, although he did not vote later to override the Governor's veto. And a third African American Democrat, Senator Ben Clark, voted for the bill the first time it was in front of the Senate. (He was absent from the vote to pass the bill coming back from the House and voted against the veto override.)

The House of Representatives passed a final version of S.B.824 on December 5, followed by the Senate on December 6. Both houses of the General Assembly overrode the Governor's veto of S.B.824. There were no procedural irregularities in the sequence of events leading to the enactment of the law. *Id.* at 305.

S.B.824 has been amended several times since. The first amendment postponed enforcement to the 2020 elections, while providing that "all implementation and educational efforts . . . shall continue." 2019 N.C. Sess. Laws 4, §1(b). The second amendment increased the time during which educational institutions and government employers could have their ID approved as voter ID and relaxed certain requirements for approval. *See* 2019 N.C. Sess. Laws 22, §§2–5. The second amendment also removed the expiration date requirements from tribal IDs. *See id.* §1. The third amendment modified

4

the reasonable impediment process for absentee ballots and appropriated additional funding to the State Board to implement voter ID, while also mandating that one-stop voting be available the last Saturday before election day. *See* 2019 N.C. Sess. Laws 239. And the fourth amendment added "an identification card issued by a department, agency, or entity of the United States government or this State for a government program of public assistance" to the list of qualifying photo ID. 2020 N.C. Sess. Laws 17, §10(a)(2)(d).

## II.    The General Assembly Crafted S.B.824 To Fulfill a Constitutional Mandate While Protecting Voter Participation.

S.B.824 is exceptionally protective of voters and compares favorably with photo ID laws in other States. Any of the following types of photo ID that are unexpired or have been expired for one year or less qualify as voter ID: (1) a North Carolina drivers' license; (2) a Division of Motor Vehicles ("DMV") non-drivers' ID; (3) a United States passport; (4) a North Carolina voter identification card issued by a CBOE; (5) a qualifying student identification card; (6) a qualifying government employee identification card; and (7) an out-of-state drivers' license if the voter's registration was within 90 days of the election. N.C. GEN. STAT. §163-166.16(a)(1). Military and veterans' identification cards and tribal enrollment cards issued by a State or federally recognized tribe qualify even if the card has no date or has been expired for over a year. *Id.* §163-166.16(a)(2). If a voter is 65 or older, an otherwise qualified but expired identification will suffice if it was unexpired on the voter's sixty-fifth birthday. *Id.* §163-166.16(a)(3).

S.B.824 makes ID readily available and enables voters who appear at the polls without ID to cast a ballot. Both the DMV and CBOE must issue free ID that may be used

5

to vote. *Id.* §§163-82.8A, 20-37.7(d). The State must provide the documents necessary to obtain a DMV ID free of charge if the voter does not have a copy of those documents. *Id.* §161-10(a)(8). And to obtain a CBOE ID a voter must provide only his or her name, date of birth, and the last four digits of his or her social security number. *Id.* §163-82.8A(d)(1). CBOE IDs "shall be issued at any time, except during the time period between the end of early voting . . . and election day," *id.* §163-82.8A(d)(2), which allows voters who lack compliant ID to obtain one and immediately vote with it during early voting.

Eligible voters who lack compliant ID may cast a provisional ballot accompanied by an affidavit describing the "reasonable impediment" that prevented them from presenting a compliant ID. *Id.* §163-166.16(d)(2). Numerous grounds are recognized as reasonable impediments, including disability, lack of transportation, work schedule, and family responsibilities, and voters may identify any other reason they subjectively deem reasonable. The only basis for rejecting a reasonable impediment affidavit is falsity, *id.* §163-166.16(f), and a bipartisan CBOE must unanimously vote that a reasonable impediment ballot is false for it not to be counted, *see* 08 NCAC 17.0101(b).[2]

Voters without ID also may cast a provisional ballot and return to the CBOE by no later than the end of the day before the CBOE canvasses—generally ten days after the election—to obtain a free ID and use it to cure their ballot. N.C. GEN. STAT. §163-166.16(c); *see id.* §163-182.5(b).

Absentee voting proceeds essentially the same as in-person voting when it comes to

---

[2] These are temporary regulations that have not yet been finalized.

6

voter ID. A voter will be asked to produce a copy of compliant ID with their absentee ballot to vote absentee and can use a process akin to the reasonable-impediment process to vote absentee without compliant ID. *See* 2019 N.C. Sess. Laws 239, §1.2(b).

## III. S.B.824 Differs Dramatically from Prior Voting Legislation.

S.B.824 is markedly different from H.B.589, the omnibus legislation struck down in *McCrory*, 831 F.3d 204. Unlike S.B.824, H.B.589 modified many aspects of voting and voter registration in North Carolina beyond voter ID. H.B.589 (1) reduced the early voting period from 17 to 10 days; (2) eliminated same-day registration and voting; (3) disallowed out-of-precinct voting; and (4) repealed permission for minors to preregister if they would not be eighteen by election day. 2013 N.C. Sess. Laws 381, §§12.1, 16.2-16.8, 25.1, 49.3-49.4. These provisions were central to *McCrory*, 831 F.3d at 232.

Unlike H.B.589, S.B.824 had bipartisan support. Senator Ford, an African American Democrat, was a primary sponsor and one of four Democrats who voted for the bill, whether to enact it initially, override Governor Cooper's veto, or both. *McCrory* found this significant. *Id*. at 227–28.

The voter ID provisions in the two bills are also markedly different.

*First*, S.B.824 was enacted pursuant to a mandate that was lacking for H.B.589. In 2018, the People of North Carolina amended their Constitution to require individuals to present photographic identification when voting.

*Second*, S.B.824 has always contained a reasonable impediment fail-safe. As originally enacted, H.B.589 did not include such a provision and only passed one in 2015 during the litigation over H.B.589. *See* 2015 N.C. Sess. Laws 103, §8(e). And H.B.589's

7

implementing regulations did not require a finding to be unanimous to not count a ballot. *See N.C. State Conf. of NAACP v. McCrory*, 182 F. Supp. 3d 320, 379 (M.D.N.C. 2016), *rev'd in part not relevant*, 831 F.3d 204. By contrast, S.B.824 allows CBOEs to deny a reasonable impediment ballot only if the affidavit is "false," N.C. GEN. STAT. §163-166.16(f)—a finding that by regulation requires a unanimous vote of a bipartisan CBOE, which today has five members, *see* 08 NCAC 17.0101(b). The former law's reasonable impediment provision also allowed other voters to challenge reasonable impediment declarations, while S.B.824 does not. *Compare* 2015 N.C. Sess. Laws 103, §8(e), *with* N.C. GEN. STAT. §163-87.

*Third*, S.B.824, unlike H.B.589, extends voter ID provisions to absentee balloting.

*Fourth*, S.B.824 broadens the list of voter ID to include qualifying student and government employee ID.

*Fifth*, S.B.824 creates a form of free ID that is issued by the CBOE without requiring underlying documentation.

*Sixth*, unlike H.B.589, S.B.824 requires the State Board to make aggressive and individualized outreach to voters lacking DMV-issued voter ID. *Compare* 2018 N.C. Sess. Laws 144, §1.5(a)(8), *with* 2013 N.C. Sess. Laws 381, §§5.2-5.3, *and* 2015 N.C. Sess. Laws 103, §8(g).

*Seventh*, if the DMV cancels, disqualifies, suspends, or revokes a DMV ID, S.B.824 requires it to issue "a special identification card to that person *without application*" and mail it to his or her address free of charge—ensuring that the individual will maintain qualifying voter ID. N.C. GEN. STAT. §20-37.7(d2) (emphasis added). H.B.589 did not.

8

*Eighth*, as amended, S.B.824 lists public assistance ID "issued by a department, agency, or entity of the United States government or this State" as qualifying voter ID. *Id.* §163-166.16(a)(2)(d).

## IV.    <u>The Courts Have Allowed North Carolina To Use S.B.824 in Elections.</u>

This Court held that Plaintiffs were unlikely to succeed on their VRA results-only claim "according to the evidence currently in the record" at the preliminary injunction stage. Prelim. Inj. Op. at 52–53. And the Fourth Circuit ruled that Plaintiffs "fail[ed] to meet their burden of showing that the General Assembly acted with discriminatory intent in passing" S.B.824 once "the proper burden and the presumption of good faith are applied." *Raymond*, 981 F.3d at 305. The North Carolina Supreme Court held that S.B.824 does not violate the North Carolina Constitution's Equal Protection Clause, under either the federal standard or the North Carolina standard. *Holmes*, 886 S.E.2d at 139–40. North Carolina used S.B.824 in the 2023 municipal elections and the 2024 primary election.

## ARGUMENT

Plaintiffs will not be able to prevail at trial either on their constitutional claims under the Fourteenth and Fifteenth Amendments or on their VRA Section 2 claim. The General Assembly enacted S.B.824 after the People of North Carolina mandated the legislature to create a voter ID law. The bipartisan legislation did not have a discriminatory intent, and Plaintiffs cannot overcome the presumption of legislative good faith. Nor will Plaintiffs be able to prove discriminatory impact for either the constitutional claims or the VRA claim.

9

Any registered voter has the ability to vote under S.B.824, with or without photo ID.[3]

## I.  Plaintiffs Will Not Prevail on Their Constitutional Claims.

Plaintiffs must carry the burden of proving that a law is racially discriminatory. *Abbott v. Perez*, 585 U.S. 579, 603 (2018). The Court must also afford the state legislature a presumption of good faith. *Raymond*, 981 F.3d at 303. "The allocation of the burden of proof and the presumption of legislative good faith are not changed by a finding of past discrimination." *Abbott*, 585 U.S. at 603. To prove that S.B.824 violates equal protection, Plaintiffs must establish both racially discriminatory intent and racially discriminatory impact. *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977); *see Raymond*, 981 F.3d at 303. A Fifteenth Amendment claim also requires Plaintiffs to prove both racially discriminatory impact and intent. *City of Mobile v. Bolden*, 446 U.S. 55, 62, 65 (1980). Plaintiffs can prove neither.

Determining whether a statute was enacted with discriminatory intent involves a two-step process. First, Plaintiffs bear the burden of showing that racial discrimination was a "'substantial' or 'motivating' factor behind enactment of the law." *Hunter v. Underwood*, 471 U.S. 222, 228 (1985). Satisfying that burden requires analysis of the four *Arlington Heights* factors: (1) the historical background of S.B.824; (2) the specific sequence of events leading to the law's enactment, including any departures from the normal legislative

---

[3] Plaintiffs also cannot attempt to prove at trial that various provisions of S.B.824 (such as the poll observer and challenge provisions) violate the U.S. Constitution or Section 2 of the VRA due to cumulative burdens or disparate impacts. Plaintiffs bear the burden to prove that each of the provisions of S.B.824 that they challenge is unconstitutional or fails the test in *Brnovich*. Plaintiffs can prove neither discriminatory intent nor discriminatory impact. *See Raymond*, 981 F.3d at 311 n.10.

process; (3) the law's legislative history; and (4) whether the law "bears more heavily on one race than another." 429 U.S. at 266 (cleaned up); *see also id.* at 265–69. This inquiry should not credit disparate impact that may result from poor enforcement of that law. *Raymond*, 981 F.3d at 310. Plaintiffs cannot carry their burden or overcome the presumption of good faith by establishing only disparate impact and a discriminatory historical background. *Farm Lab. Org. Comm. v. Stein*, 56 F.4th 339, 353 (4th Cir. 2022). Second, if Plaintiffs somehow overcome the presumption of good faith, the burden then shifts to Defendants to demonstrate that the law would have been enacted without racial discrimination. *Raymond*, 981 F.3d at 303.

Further, to succeed on this facial constitutional claim, Plaintiffs must then prove that S.B.824 has "an actual discriminatory impact," *id.* at 302, in every possible set of circumstances, *Salerno*, 481 U.S. at 745. Plaintiffs will not prove that at trial.

### A. Plaintiffs will not prove discriminatory intent at trial.

Plaintiffs cannot carry their burden to prove discriminatory intent or rebut the presumption of legislative good faith. The *Arlington Heights* factors favor North Carolina.

*First*, regardless of North Carolina's past history of race discrimination, S.B.824's historical background begins with the 2018 constitutional amendment adopted by the People of North Carolina. That "independent intervening event" severs any link to past racial discrimination, *Raymond*, 981 F.3d at 305, and the plain terms of S.B.824 belie any link with previous legislation. Any history of discrimination regarding other legislation is of limited probative force. *United States v. Sanchez-Garcia*, 2024 WL 1453397, at *5–7 (4th Cir. Apr. 4, 2024).

11

Plaintiffs cannot use past discrimination, "in the manner of original sin," to "condemn governmental action that is not itself unlawful." *City of Mobile*, 446 U.S. at 74. The Court must presume the General Assembly acted in good faith regardless of whether its composition has changed. *See Abbott*, 585 U.S. at 603–07; *Raymond*, 981 F.3d at 302–05. Unlike H.B.589, S.B.824 was sponsored by an African American Democrat, voted for by three additional Democratic legislators (one of whom was also an African American Senator), and further supported in the initial Senate vote by a third Democratic African American Senator. It is difficult to imagine those legislators would vote for what Plaintiffs claim was a bill intended to entrench Republicans by discriminating against racial minorities. Even if given some weight, this factor is not dispositive and does not overcome the presumption of good faith. *Id.* at 305; *see also Stein*, 56 F.4th at 353.

*Second*, the sequence of events leading to the law's enactment cannot support finding discriminatory intent. *Raymond*, 981 F.3d at 305. There were no procedural irregularities as the General Assembly sought to implement the constitutional amendment. *Id.* at 305–06. Legislators extensively debated the bill, offered twenty-four amendments, and adopted thirteen amendments. *Id.* The law "also enjoyed bipartisan support." *Id.* at 306; *see Lee*, 843 F.3d at 603.

*Third*, the legislative history of S.B.824 is "unremarkable." *Raymond*, 981 F.3d at 308. Nothing in the legislative history suggests that the General Assembly used racial voting data to disproportionately target minority voters. *Id.* at 308–09. Nor can Plaintiffs identify discriminatory remarks in the legislative history for this bill, *id.* at 309, or impute any such remarks to the legislature as a whole, *id.* at 307; *see Sanchez-Garcia*, 2024 WL

12

1453397, at *8. The legislature appropriately addressed proposed amendments without evidence of discriminatory intent. *Raymond*, 981 F.3d at 307–08. This factor cannot support finding discriminatory intent. *Id.* at 305.

*Fourth*, Plaintiffs cannot show that disparate impact supports finding discriminatory intent either, *id.*, especially because the mitigating provisions ensure all registered voters can vote with or without a photo ID, *id.* at 309–10. S.B.824 qualifies a broad range of photo IDs. The steps necessary to obtain a free voter-ID card are "the same kind of minimal burden associated with obtaining a voter ID that the Supreme Court held insufficient to sustain a facial challenge in" *Crawford v. Marion County Election Board*, 553 U.S. 181, 198 (2008). *Raymond*, 981 F.3d at 309. Eligible voters may also engage in one-stop early voting, "obtain[ing] a free voter ID and vot[ing] in a single trip." *Id.* The nine-day curing period and reasonable impediment exemption also mean that S.B.824 "is more protective of the right to vote than other states' voter-ID laws that courts have approved." *Id.* at 310.

Nor were Republicans attempting to entrench themselves. Even assuming racially polarized voting, as Plaintiffs postulate, Plaintiffs' own expert opined that approximately 337,000 voters who are white and 177,000 voters who are African American may lack ID. *See* Herron Prelim. Report, Doc. 91-11 at 21. In absolute terms, more white voters, whom Plaintiffs assume would vote for Republicans, would likely be burdened by the passage of S.B.824 than African Americans voters, whom Plaintiffs assume would vote for Democrats. And Plaintiffs' own preliminary experts acknowledged that Hispanics in North Carolina sometimes prefer Republican candidates. *See* Lichtman Prelim. Report, Doc. 91-1 at 53 (Hispanics preferred Republican U.S. Senate candidate in one of the three 2016

13

elections in Table 13).

This Court should not allow Plaintiffs to present implementation evidence at trial because, among other reasons, "an inquiry into the legislature's intent in *enacting* a law should not credit disparate impact that may result from poor *enforcement* of that law." *Raymond*, 981 F.3d at 310. The legislature can in good faith anticipate effective enforcement. *See South Carolina*, 898 F. Supp. 2d at 51–52. Even if Plaintiffs are permitted to admit such evidence, there was no disparate impact on minority voters in recent elections. *See Coal. for TJ v. Fairfax Cnty. Sch. Bd.*, 68 F.4th 864, 881–82 (4th Cir. 2023).

The *Arlington Heights* factors weigh in favor of North Carolina. Plaintiffs cannot prove that the General Assembly enacted S.B.824 because of, not merely in spite of, any adverse effects upon African American or Latino voters. *See Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979). Even if the General Assembly were aware of disparate impact, which it was not, proving discriminatory intent requires more than "awareness of consequences." *Id.*

If, contrary to the Fourth Circuit's decision in *Raymond*, Plaintiffs could somehow overcome the presumption of legislative good faith and carry their burden of proving the *Arlington Heights* factors weigh in their favor, S.B.824 would have been enacted without racial discrimination. *Hunter*, 471 U.S. at 228. The People of North Carolina amended their Constitution in 2018 and thus compelled the General Assembly to enact S.B.824. "There is no question about the legitimacy or importance of the State's interest in counting only the votes of eligible voters." *Crawford*, 553 U.S. at 196. Voter ID laws instill "public confidence in the integrity of the electoral process" and thus "encourage[] citizen

14

participation in the democratic process." *Id.* at 197. S.B.824 was a bipartisan bill motivated by valid rationales and compelled by a constitutional amendment.

**B.    Plaintiffs will not prove actual discriminatory impact at trial.**

Just as Plaintiffs will not prove the disparate impact necessary for that factor to support a finding of discriminatory intent, Plaintiffs will not prove actual discriminatory impact. As the Virginia legislature did with the photo ID law in *Lee*, the North Carolina General Assembly "went out of its way to make" the "impact as burden-free as possible." 843 F.3d at 603; *see also South Carolina*, 898 F. Supp. 2d at 45–46. "[T]o establish an equal protection violation, a plaintiff must show . . . disparate effect," *Irby v. Va. State Bd. of Elections*, 889 F.2d 1352, 1355 (4th Cir. 1989), that is, "that he has been treated differently from others with whom he is similarly situated," *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Plaintiffs cannot make this showing because S.B.824 allows all registered voters to vote, with or without a photo ID. *Raymond*, 981 F.3d at 309.

In fulfilling its constitutional obligation to enact a voter ID law, the General Assembly included qualifying student and government employee ID—which the General Assembly was criticized for excluding in the past because they are disproportionately held by African Americans. *See McCrory*, 182 F. Supp. 3d at 495–96, *rev'd on other grounds*, 831 F.3d 204. Even Senator McKissick—a staunch opponent of S.B.824—admitted that it was "an earnest effort to try to expand . . . significantly beyond what it was when the last voter ID bill came before us" and "appreciate[d] the fact that this bill is far more broad and far more expansive." Nov. 28, 2018 Senate Floor Debate Tr. at 48:13-18, Doc. 97-16 at 170. And, as discussed above, the free ID, curing provisions, and reasonable impediment

15

process make it impossible for Plaintiffs to establish that, facially, S.B.824 will produce a discriminatory impact in every set of circumstances. *Salerno*, 481 U.S. at 745. Courts have already upheld more restrictive laws against similar challenges. *See Lee*, 843 F.3d at 594; *South Carolina*, 898 F. Supp. 2d. at 32; *Greater Birmingham Ministries*, 992 F.3d at 1304. If there are circumstances where those laws do not cause discriminatory impact, then there are circumstances where S.B.824 does not do so either.

Plaintiffs have not been able to identify any voter or class of voter who would not be able to vote under the terms of S.B.824. Nothing Plaintiffs' preliminary experts say can change that fact, and their opinions are therefore irrelevant as a matter of law.

## II.  **Plaintiffs Will Not Prevail on Their VRA Section 2 Claim.**

Plaintiffs will be unable to succeed on their Section 2 claim at trial, which requires them to show that "based on the totality of circumstances," the political processes of North Carolina "are not equally open to participation by members of a class of citizens . . . in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." 52 U.S.C. §10301(b).[4] While a violation of Section 2 can be "proved by showing discriminatory effect alone," *Thornburg v. Gingles*, 478 U.S. 30, 35 (1986); *Lee*, 843 F.3d at 599, Plaintiffs must "make a greater showing of disproportionate impact" than is required under the *Arlington Heights*

---

[4] Plaintiffs are also unlikely to succeed on their Section 2 claim because Congress did not create a private right of action to enforce that section. *See* 52 U.S.C. §10301; *Ark. State Conf. NAACP v. Ark. Bd. of Apportionment*, 86 F.4th 1204 (8th Cir. 2023). Legislative Defendants reserve the right to argue before the appropriate court that the contrary holding of *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 238 (4th Cir. 2014), was error.

analysis. *McCrory*, 831 F.3d at 231 n.8.

The Supreme Court has listed "important circumstances" used to conduct the "totality of circumstances" analysis in cases such as this one. *Brnovich*, 141 S. Ct. at 2338. These include the size of the burden imposed by a challenged voting rule, the opportunities provided by a State's entire system of voting, the degree to which a challenged rule has a long pedigree or is in widespread use in the United States, a meaningful comparison of any disparities in a rule's impact on members of different racial or ethnic groups, and finally the strength of the state interests served by a challenged voting rule. *Id.* at 2338–40. Plaintiffs will be unable to meet their burden of proof on any consideration.

*Size of the Burden & Alleged Disparities*: The Supreme Court has repeatedly explained that because casting a vote requires compliance with certain rules, voting systems must tolerate the usual burdens of voting. *Id.* at 2338. And it has distinguished between openness and opportunity, on the one hand, and the absence of inconvenience, on the other. *Id.* at 2338 n.11. Openness and opportunity require a state's voting system to be free of obstacles that block or seriously hinder voting. *Id.* at 2338. Additionally, even if impact disparities exist, that does not necessarily mean that a system is not equally open or that it does not give everyone an equal opportunity to vote. The size of any disparity matters. *Id.* at 2339.

S.B.824 imposes only a minimal burden on voters because voters who lack ID only need to seek out free IDs (without providing any supporting documentation) at either the county board of elections or the DMV, and thus is not a significant increase over the usual burdens of voting. *Raymond*, 981 F.3d at 309; *see also Crawford*, 553 U.S. at 198.

17

Moreover, S.B.824—through its reasonable impediment provision—allows any voter to cast a ballot, with or without a photo ID when they arrive to vote on election day. These safeguards ensure that any burden on voters is vanishingly small or simply forms part of the "usual burdens" of voting. As such, any disparate impact is necessarily minimal.

While Plaintiffs offer a "no-match" analysis about alleged racial differences in ID possession, the evidence at trial will conclusively demonstrate that such analysis is unsound. To take just one example, the no-match analysis does not account for the true number of individuals who lack qualifying ID in North Carolina overall because it does not examine possession rates of other forms of qualifying ID beyond those in the DMV database. *See* Herron Prelim. Report.[5] Because voters almost certainly have other forms of qualifying IDs such as passports, military IDs, federal IDs, tribal IDs, and the chance to obtain a free ID from the state, the no-match numbers significantly overstate the size of the burden on actual voters. North Carolina's experience with H.B.589 also shows that no-match lists overstate the burden on voters. *See* Kim Westbrook Strach, *Prior Education Efforts on Voter Identification Requirements (2014-16)*, N.C. State Bd. of Elections (Nov. 26, 2018), https://bit.ly/2lLiV6M. To the extent Plaintiffs will attempt to point to alleged burdens on voters to obtain a free ID, *e.g.*, Burden Prelim. Report, Doc. 91-4, at 4, 30, such burdens both do not affect many voters and fall within "the usual burdens of voting," *Raymond*, 981 F.3d at 309; *Crawford*, 553 U.S. at 198. This Court must carefully guard

---

[5] Consistent with Legislative Defendants' position in their motion in limine to exclude Plaintiffs' experts, Legislative Defendants only reference the contents of Plaintiffs' preliminary expert reports.

against making the unjustified leap from the disparate inconveniences that voters face when voting to the denial or abridgment of the right to vote. *Lee*, 843 F.3d at 600–01.

Additionally, Plaintiffs should not be able to rest their claims about the size of the burden on speculative claims about the law's deterrent effect, which could be explained by myriad other factors such as dislike of the candidates and other factors driving turnout that are unrelated to S.B.824. Nor can Plaintiffs rest the burden or disparities aspects of their Section 2 showing on implementation evidence. Plaintiffs did not plead that S.B.824's implementation violates Section 2, and in any event such evidence is not properly before the Court given that Plaintiffs failed to timely disclose to Legislative Defendants that they would rely on such evidence, thus precluding Legislative Defendants from seeking any discovery into it. *See* Legis.-Defs.' Mem. Supporting Mot. in Lim. to Preclude Untimely Disclosed Fact Witnesses & Docs., Doc. 248.

Even if the expert reports were somehow relevant, any racial or ethnic differences in the absolute numbers of voters who cast provisional ballots or whose provisional ballots ultimately are not counted due to a failure to cure or to state a reasonable impediment are too "small in absolute terms" compared to the total number of voters. *Brnovich*, 141 S. Ct. at 2344–45. The trial will show that the populations are effectively identical. *Id.* at 2345. But such evidence is irrelevant to this facial challenge.

*North Carolina's Entire System of Voting*: Any minimal burdens associated with acquiring an ID under S.B.824 are also modest when considering North Carolina's political processes as a whole. *See id.* at 2344. North Carolina generally makes it very easy to vote with or without photo ID. *See id.* at 2330. For example, voters may participate in one-stop

19

early voting (where they can obtain free IDs). As the Fourth Circuit recognized, the cost to obtaining an ID has a negligible marginal cost in this circumstance because voters must do no more than they did previously—show up to vote. *Raymond*, 981 F.3d at 309. Additionally, the small number of voters who lack qualifying ID may nonetheless cast a provisional ballot using the reasonable impediment declaration if they offer any number of qualifying reasons including lack of access to transportation, disability, illness, lack of birth certificate or other documents, work schedule, family responsibilities, lost or stolen photo identification, or any other reasonable impediment the voter lists. The existence of the reasonable impediment provision effectively eliminates any burden and renders S.B.824 more protective of the right to vote than other states' voter-ID laws that courts have approved. *Id.* at 310; *see also Lee*, 843 F.3d at 594 (upholding Virginia's voter ID law only including a subset of S.B.824's mitigating features). Any burden on voters cannot be evaluated without also taking into account the other available means of voting that North Carolina offers. *See Brnovich*, 141 S. Ct. at 2339. And here, North Carolina made extensive efforts to reduce S.B.824's impact on the number of valid votes ultimately cast. *See id.* at 2344.

*Widespread Use*: As of this writing, 35 states (not including North Carolina) have laws requesting or requiring voters to show some form of identification at the polls. Many of these states require a photo ID and others accept non-photo IDs. No other law that provides free IDs that require no corroborating documents or that has a reasonable impediment process has been invalidated. Whether or not the law has a long pedigree in North Carolina is beside the point. If that were the test, this consideration would

20

automatically cut against states any time they attempted to enact a new voting law, effectively freezing state policy in place.

*State Interests*: It is vital to recall that the people of North Carolina voted to add a photo voter ID requirement to the State Constitution. S.B.824 represents the General Assembly's effort to implement their stated policy preference—an unavoidable interest in enacting photo voter ID in North Carolina. Additionally, the Supreme Court has recognized that two other independent state interests: protecting public confidence in elections, *Crawford*, 553 U.S. at 197, and the prevention of fraud, *Brnovich*, 141 S. Ct. at 2340. These state interests are related because fraud can undermine public confidence in the fairness of elections. *Id.*; *see also Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006); Building Confidence in U.S. Elections §2.5 (2005). Indeed, fraud-prevention is a compelling state interest even where the record contains no evidence of any fraud, *Crawford*, 553 U.S. at 194–96, which trial will reveal is not the case in North Carolina. *See also Brnovich*, 141 S. Ct. at 2348. North Carolina's many strong state interests support the validity of S.B.824 under Section 2, and Plaintiffs cannot show otherwise at trial.

## CONCLUSION

Plaintiffs cannot prove their claims at trial. Defendants should prevail.

21

Dated: April 15, 2024

/s/ Nicole J. Moss
Nicole J. Moss (State Bar No. 31958)
COOPER AND KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 220-9600
Fax: (202) 220-9601
nmoss@cooperkirk.com

*Local Civil Rule 83.1 Counsel*
*for Legislative Defendants*

/s/ David H. Thompson
David H. Thompson
Peter A. Patterson
Clark L. Hildabrand
Kate Hardiman Rhodes
COOPER AND KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 220-9600
Fax: (202) 220-9601
dthompson@cooperkirk.com

*Counsel for Legislative*
*Defendants*

22

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.3(d)(1), the undersigned counsel hereby certifies that the foregoing Brief, including body, headings, and footnotes, contains 6,011 words as measured by Microsoft Word.

/s/ Nicole J. Moss
Nicole J. Moss
*Counsel for Legislative*
*Defendants*

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that, on April 15, 2024, I electronically filed the foregoing Brief with the Clerk of the Court using the CM/ECF system which will send notification of such to all counsel of record in this matter.

/s/ Nicole J. Moss
Nicole J. Moss
*Counsel for Legislative
Defendants*
