NORTH CAROLINA STATE          )
CONFERENCE OF THE NAACP,       )
et al.,                        )
                               )
            Plaintiffs,        )
                               )
    v.                         )          1:18CV1034
                               )
ROY ASBERRY COOPER, III,       )
et al.,                        )
                               )
            Defendants.        )

<u>MEMORANDUM OPINION AND ORDER</u>

    This case comes before the Court on the Rule 37 Motion to Strike or Order Disregarded Plaintiffs' March 20, 2024 Amended Supplemental Disclosures (Docket Entry 236), filed by Intervenor-Defendants President Pro Tempore of the North Carolina Senate Philip E. Berger and Speaker of the North Carolina House of Representatives Timothy K. Moore (the "Legislative Leaders") (<u>see</u> <u>id.</u> at 1).[1]  For the reasons that follow, the instant Motion will be granted in part and denied in part.

<u>INTRODUCTION</u>

    Plaintiffs commenced this action against the Governor of North Carolina and members of the North Carolina State Board of Elections (<u>see</u> Docket Entry 1),[2] alleging that "[North Carolina] Senate Bill

_____

    [1] Pin cites refer to the page number in the footer appended to documents upon their filing in the CM/ECF system (not to any original pagination).

    [2] The Court (per United States District Judge Loretta C. Biggs) later dismissed the Governor.  (<u>See</u> Docket Entry 57.)  This Order refers to the other named Defendants (and their successors) collectively as the "Elections Board."

824 ('S.B. 824') . . . []imposes an unconstitutionally burdensome and discriminatory voter photo ID requirement" (<u>id.</u> at 2). More specifically, as summarized by the United States Court of Appeals for the Fourth Circuit, Plaintiffs have asserted that S.B. 824 "violated § 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments because [it] had been enacted with racially discriminatory intent." <u>North Carolina State Conf. of NAACP v. Raymond</u>, 981 F.3d 295, 301 (4th Cir. 2020). The Legislative Leaders promptly moved to intervene to defend S.B. 824. (<u>See</u> Docket Entry 7.) Plaintiffs opposed such intervention (<u>see</u> Docket Entry 38) and Judge Biggs denied the request without prejudice (<u>see</u> Docket Entry 56).[3] When the Legislative Leaders renewed their request (<u>see</u> Docket Entry 60), Plaintiffs once more responded in opposition (<u>see</u> Docket Entry 66) and Judge Biggs denied intervention (this time with prejudice) (<u>see</u> Docket Entry 100).

In the interim, the Clerk noticed an initial pretrial conference (<u>see</u> Docket Entry 68), after which Plaintiffs and the Elections Board filed a Joint Report under Federal Rule of Civil Procedure 26(f) (Docket Entry 77), supplemented by an Addendum (Docket Entry 87). The undersigned Magistrate Judge adopted those filings as the scheduling order for this case, except as to the proposed trial date (leaving that matter to the Clerk). (<u>See</u> Text Order dated Oct. 1, 2019.) As a result:

_____

[3] That Order allowed the Legislative Leaders "to participate in this action by filing amicus curiae briefs." (Docket Entry 56 at 23 (italics omitted).)

-2-

1) "[f]act discovery . . . close[d] on May 15, 2020" (Docket Entry 77 at 4); and

2) "expert discovery . . . close[d] on June 1, 2020" (Docket Entry 87 at 1).[4]

A few months into the discovery period, Plaintiffs secured a preliminary injunction from Judge Biggs barring "implement[ation of] any of S.B. 824's voter ID requirements and ballot-challenge provisions with respect to any election, until otherwise ordered by this Court." (Docket Entry 120 at 59.) Not long after, pursuant to parallel litigation in North Carolina state court originally instituted "[o]n the same day S.B. 824 became law," Holmes v. Moore, 270 N.C. App. 7, 11 (2020), "the North Carolina Court of Appeals reversed a state trial court and ordered that [S.B. 824] be preliminarily enjoined," Raymond, 981 F.3d at 301 (citing Holmes, 270 N.C. App. at 35-36). Subsequently, back in this case, Plaintiffs and the Elections Board "proposed [a new] discovery schedule" (Docket Entry 135 at 1), which the undersigned Magistrate Judge "declin[ed] to adopt" (Text Order dated Apr. 15, 2020). When Plaintiffs and the Elections Board moved for reconsideration (see Docket Entry 138), the undersigned Magistrate Judge reaffirmed that decision (see Docket Entry 140). Plaintiffs (with the consent of the Elections Board) objected (see Docket Entry 143), but Judge Biggs overruled those objections (see Docket Entry 148).

_____

[4] In accord with those deadlines, by separate Notice, the Clerk set this case for trial in January 2021. (See Docket Entry 130.)

Following the close of discovery (as scheduled), a panel of the Fourth Circuit "vacate[d] th[is C]ourt's order denying the [Legislative Leaders' intervention request] and remand[ed] for further consideration," North Carolina State Conf. of NAACP v. Berger, 970 F.3d 489, 495 (4th Cir. 2020); however, "[u]pon petitions for rehearing by [Plaintiffs] and the [Elections] Board, [the full Fourth Circuit] vacated th[at] panel opinion [in order to] consider the case en banc," North Carolina State Conf. of NAACP v. Berger, 999 F.3d 915, 923 (4th Cir. 2021) (en banc), rev'd, 597 U.S. 179 (2022); see also North Carolina State Conf. of NAACP v. Berger, 825 F. App'x 122, 123 (4th Cir. 2020) ("[R]ehearing en banc is granted."). Due to that (then-ongoing) appellate litigation over the Legislative Leaders' participation, Judge Biggs ordered "the jury trial scheduled for January 6, 2021 . . . continued to a date to be determined." (Text Order dated Nov. 3, 2020.)

A short time later, the Fourth Circuit reversed the preliminary injunction in this case. See Raymond, 981 F.3d at 298. In doing so, the Fourth Circuit explained that Plaintiffs' claims require them "to prove that [S.B. 824] was passed with discriminatory intent and has an actual discriminatory impact." Id. at 302. The Fourth Circuit further expressly determined that Plaintiffs had "fail[ed] to meet their burden of showing that the General Assembly acted with discriminatory intent in passing [S.B. 824]." Id. at 305; see also id. at 311 (holding that "evidence in

-4-

the record fails to meet [Plaintiffs'] burden"). As part of that determination, the Fourth Circuit clarified that considerations regarding whether the manner of "enforcement of [S.B. 824] would prevent eligible voters from [voting]," id. at 310, could not aid Plaintiffs' cause because "an inquiry into the legislature's intent in *enacting* a law should not credit disparate impact that may result from poor *enforcement* of that law," id. (emphasis in original); see also id. ("[I]t is hard to say that [S.B. 824] does not sufficiently go out of its way to make its impact as burden-free as possible." (internal quotation marks omitted)).

By Notice dated March 23, 2021, the Clerk re-set the case for trial in January 2022. (See Docket Entry 158 at 1; see also Docket Entry 173 at 1 (establishing trial date of January 24, 2022).) The full Fourth Circuit thereafter affirmed the denial of the Legislative Leaders' request to intervene, see Berger, 999 F.3d at 918, but the appellate process continued as the Legislative Leaders filed a "petition for a writ of certiorari" (Docket Entry 168 at 1). On November 24, 2021, the United States Supreme Court agreed to take up the intervention issue. See Berger v. North Carolina State Conf. of NAACP, ___ U.S. ___, 142 S. Ct. 577 (2021). As a result, the Elections Board "request[ed] . . . that th[is] Court either allow [the Legislative Leaders] to intervene permissively, stay the matter, or continue the trial pending the outcome of the appeal to the [United States] Supreme Court." (Docket Entry 192 at

-5-

2; see also id. at 1 ("submitt[ing] that proceeding with the trial as scheduled, without the [Legislative Leaders], before the [United States] Supreme Court decides the issue creates a significant risk that a second trial would be necessary after the [United States] Supreme Court's ruling, ultimately delaying final resolution").) Plaintiffs opposed that request. (See Docket Entry 193.)

Judge Biggs ultimately decided that "the balance of [pertinent] factors weigh[ed] in favor of a stay" (Docket Entry 194 at 2), which proved wise, as the United States Supreme Court later ruled that "[the L]egislative [L]eaders [we]re entitled to intervene," Berger v. North Carolina State Conf. of the NAACP, 597 U.S. 179, 200 (2022). Meanwhile, in the parallel state court case, "[t]he trial court . . . found that [S.B.] 824 . . . was enacted with a racially discriminatory purpose," Holmes v. Moore, 383 N.C. 171, 174 (2022), withdrawn and superseded, 384 N.C. 426 (2023), and (at the request of the plaintiffs in that case) the North Carolina Supreme Court agreed to take up "discretionary review . . . prior to a determination by the North Carolina Court of Appeals," Holmes v. Moore, 868 S.E.2d 315, 315 (N.C. 2022). Subsequently, on December 16, 2022, the North Carolina Supreme Court "affirm[ed] the [state] trial court's final judgment and order and h[e]ld that S.B. 824 violate[d] article I, section 19 of the North Carolina Constitution because the law was enacted with discriminatory intent to disproportionately disenfranchise and burden African-American

-6-

voters in North Carolina." Holmes, 383 N.C. at 205. "Following [that] decision, [the] defendants [there] timely filed a petition for rehearing," Holmes v. Moore, 384 N.C. 426, 433 (2023), which the North Carolina Supreme Court granted via "order entered 3 February 2023," id. "After supplemental briefing and oral argument, . . . [the North Carolina Supreme Court] withdr[e]w the prior decision," id., and "reverse[d] and remand[ed that case] to the [state] trial court for entry of an order dismissing [the] plaintiffs' claim with prejudice," id. at 460.[5]

A month and a half after that ruling, Plaintiffs (without objection from the Elections Board or the Legislative Leaders) "request[ed] that this Court lift the stay in th[is case] and schedule a status conference." (Docket Entry 202 at 5; see also id. at 1 n.1 ("The [Elections] Board [] consent[s] to this motion, and the Legislative [Leaders] do not oppose this motion.").) Plaintiffs also indicated that they wanted "to update discovery previously provided by the [Elections Board] and [to] take discovery from [the ] Legislative [Leaders]." (Id. at 5.) The undersigned Magistrate Judge "grant[ed] in part . . . [Plaintiffs' request by (A) setting] a status conference" (Text Order dated July 5, 2023), (B) directing "Plaintiffs [to] provide copies of any proposed discovery (including the names of any proposed deponents) to all opposing counsel" (id.; see also id. (requiring same of "any

_____

[5] The North Carolina Supreme Court issued its above-cited (final) decision on April 28, 2023. See Holmes, 384 N.C. at 426.

-7-

other party/intervenor who also wishe[d] to conduct any discovery")), and (C) mandating that, prior to the status conference, counsel "meet and confer in person or by video teleconference about any proposed discovery" (id.).

At the status conference (held before the undersigned Magistrate Judge on July 26, 2023), Plaintiffs requested that the Court reopen the discovery period to allow them to serve the Elections Board and the Legislative Leaders with a raft of new discovery demands, as well as to conduct depositions Plaintiffs previously had not pursued, whereas the Elections Board and the Legislative Leaders opposed the reopening of discovery and voiced objections to the discovery Plaintiffs proposed.[6] "Based on the arguments presented by counsel, the Court d[id] not see a basis for allowing discovery to be reopened [for Plaintiffs] to serve the [proposed] discovery on the Legislative [Leaders] and Plaintiffs' request [for that relief wa]s [t]here[fore] denied[.]" (Minute Entry dated July 26, 2023 (all-caps font omitted).) To facilitate resolution of Plaintiffs' request for another opportunity to demand discovery from the Elections Board, "Plaintiffs [were] instructed to file a Notice . . . includ[ing] the exact discovery requests and deposition notice to be served on the [Elections] Board . . . [with] up to ten pages of argument . . . stating why [P]laintiff[s] should be allowed to serve [such] discovery . . . ." (Id.; see

_____

[6] The Clerk's Office audio-recorded that status conference. (See Minute Entry dated July 26, 2023.)

-8-

<u>also</u> <u>id.</u> (documenting deadlines set for response(s) by Elections Board and Legislative Leaders, as well as reply by Plaintiffs).)

Plaintiffs timely made the required filing (<u>see</u> Docket Entry 203), attaching extensive, proposed discovery demands (<u>see</u> Docket Entries 203-1, 203-2, 203-3). Both the Elections Board and the Legislative Leaders timely responded in opposition (<u>see</u> Docket Entries 204, 205) and Plaintiffs timely replied (<u>see</u> Docket Entry 208). Upon careful consideration of the parties' arguments and the record, the undersigned Magistrate Judge (via Order entered September 12, 2023) declined to reopen the discovery period. (<u>See</u> Docket Entry 210.) Plaintiffs objected (<u>see</u> Docket Entry 211), but Judge Biggs overruled that objection (<u>see</u> Docket Entry 228).[7]

In doing so, Judge Biggs "referred [the case] back to the [undersigned] Magistrate Judge for the purpose of addressing [a] new issue [raised by Plaintiffs] regarding a potential duty by [the Elections Board] to supplement disclosures under [Federal] Rule [of Civil Procedure] 26(e), specifically as it relates to implementation evidence." (<u>Id.</u> at 17.) The undersigned Magistrate Judge promptly held a hearing on that issue (<u>see</u> Minute Entry dated Feb. 27, 2024), after which "all parties engaged in a meet and confer . . . and discussed additional public documents the [Elections] Board recently placed on its website, which include[d] the categories of documents Plaintiffs were seeking" (Docket Entry

---

[7] That same day (February 12, 2024), the Clerk noticed this case for trial beginning May 6, 2024. (<u>See</u> Docket Entry 229.)

233 at 2).  "On March 4, 2024, [the Elections Board] served Corrected Supplemental Disclosures, which state that the implementation documents that [the Elections Board] 'may use to support [its] defenses in this case' are only the '[p]ublic records concerning the implementation efforts of the S.B. 824's voter photographic ID requirement by the [Elections Board] as found on [its] website.'"  (Id. at 2-3.)  After further discussions among the parties, "Plaintiffs [] withdr[e]w their . . . request that the [Elections Board] supplement [its] disclosures."  (Id. at 3.)

Legislative Leaders now have filed the instant Motion asking the Court "to strike Plaintiffs' Amended Supplemental Disclosures served on March 20, 2024."  (Docket Entry 236 at 1 (referring to Docket Entry 236-1 at 2-14).)  According to the instant Motion, the Amended Supplemental Disclosures "newly identif[y] numerous individuals and organizational representatives [as potential witnesses] . . . and seven new categories of documents that Plaintiffs may use to support their claims at trial."  (Id.)  As stated in their supporting brief, Legislative Leaders seek "ent[ry of] an order excluding all newly identified individuals, or categories of individuals, from testifying on behalf of Plaintiffs at trial, and excluding all documents from the newly identified categories that are not in Defendants' possession, custody, or control from admission by Plaintiffs at trial."  (Docket Entry 237 at 6.)  Plaintiffs have responded in opposition (see Docket Entry

-10-

268),[8] Legislative Leaders have replied (see Docket Entry 273), and the instant Motion has come to the undersigned Magistrate Judge for resolution (see Docket Entry dated Apr. 18, 2024).

## DISCUSSION

The Federal Rules of Civil Procedure (the "Rules") contemplate that, beginning early in the life of a case (with limited exceptions not applicable here), parties shall disclose (1) "the name and, if known, the address and telephone number of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment," Fed. R. Civ. P. 26(a)(1)(A)(i), as well as (2) "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment," Fed. R. Civ. P. 26(a)(1)(A)(ii). Coordinately, the Rules mandate that (unless otherwise ordered by the Court):

> [a] party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure . . . in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]

---

[8] The Elections Board "take[s] no position on the [instant M]otion." (Docket Entry 236 at 3.)

-11-

Fed. R. Civ. P. 26(e)(1) (emphasis added); see also Fed. R. Civ. P. 37(c)(1) (providing for exclusion of information and witnesses "[i]f a party fails to provide [such] information or identify [such] witness[es] as required by Rule 26(a) or (e) . . . unless the failure was substantially justified or is harmless").

Importantly, "[t]he duty to supplement continues beyond the close of discovery." Covil Corp. by & through Protopapas v. United States Fid. & Guar. Co., 544 F. Supp. 3d 588, 595 (M.D.N.C. 2021); see also id. at 596 (collecting cases). Equally (if not more) importantly, (A) "[t]he timeliness of supplementation centers on when the disclosing-party reasonably should know that its disclosures are incomplete or incorrect," Cereceres v. Walgreen Co., No. 20CV3406, 2022 WL 2105895, at *4 (D. Colo. June 9, 2022) (unpublished) (internal quotation marks omitted), and (B) a disclosure "is incomplete or incorrect in some material respect if there is an objectively reasonable likelihood that the additional or corrective information could substantially affect or alter the opposing party's . . . trial preparation," Sender v. Mann, 225 F.R.D. 645, 654 (D. Colo. 2004) (internal quotation marks omitted). And, perhaps most importantly here, "[s]upplementation must be made 'with special promptness as the trial date approaches.'" Coalition to Save Our Children v. State Bd. of Educ. of the State of Del., 90 F.3d 752, 775 (3d Cir. 1996) (quoting Fed. R. Civ. P. 26 advisory committee notes, 1993 amend., subdiv. (e)).

-12-

## Witnesses

Starting with Plaintiffs' disclosure of witnesses, Legislative Leaders assert (in their supporting brief) that Plaintiff's Amended Supplemental Disclosures "newly disclosed the following individuals or categories of individuals who had not previously appeared in any party's disclosures" (Docket Entry 237 at 11):

- Tomas Lopez (no description provided);

- Organizational Representative from Democracy North Carolina (unnamed);

- Organizational Representative from Vote Riders (unnamed);

- Tyler Daye (Precinct Chief Judge of unidentified precinct);

- Election officials who implemented S.B. 824 during the 2023 Municipal elections or the 2024 Primary elections (names and contact information unprovided);

- Poll workers who assisted voters with voting provisionally due to S.B. 824's photo identification requirement during the 2023 Municipal elections or the 2024 Primary elections (names and contact information unprovided);

- Former Congressman G.K. Butterfield;

- Former [State Senator] Joel Ford;

- Julius Perry (voter in unspecified election);

- Shelia Relette Brower (voter in unspecified election);

- Jeanette Dumas (voter in unspecified election);

- Individual voters who voted provisionally using an ID Exception Form in the 2023 Municipal elections or the 2024 Primary elections (names and contact information unprovided);

-13-

> • Individual voters who voted provisionally using the
> "Return with ID" option during the 2023 Municipal
> elections or the 2024 Primary elections (names and
> contact information unprovided);
>
> • Individual voters who had to obtain one of the forms of
> ID accepted for voting under S.B. 824 (names and contact
> information unprovided); and
>
> • Individual voters who were unable to cast any ballot in
> the 2023 Municipal elections or the 2024 Primary
> elections due to the photo voter ID requirement of S.B.
> 824 (names and contact information unprovided).

(Id. at 11-12 (formatting in original) (citing Docket Entry 236-1
at 3-9).)

Plaintiffs, in response, have disputed the characterization of
Mr. Lopez, former Congressman Butterfield, and Ms. Dumas as newly
disclosed, on the ground that "[Mr.] Lopez and [Ms.] Dumas both
submitted declarations in support of Plaintiffs' motion for a
preliminary injunction, and all three [of those] witnesses were
identified in Plaintiffs' December 24, 2021 Rule 2[6](a)(3)(A)([i])
disclosures." (Docket Entry 268 at 12 (internal citation omitted)
(citing Docket Entries 108-7, 108-12, and 268-4).)[9] Legislative
Leaders' reply does not deny prior knowledge of Plaintiffs'

_____

[9] The Rule mandating the disclosure referenced by Plaintiffs states:

In addition to the disclosures required by Rule 26(a)(1) and (2), a
party must provide to the other parties and promptly file the
following information about the evidence that it may present at
trial other than solely for impeachment: (i) the name and, if not
previously provided, the address and telephone number of each
witness--separately identifying those the party expects to present
and those it may call if the need arises[.]

Fed. R. Civ. P. 26(a)(3)(A). "Unless the [C]ourt orders otherwise, these
disclosures must be made at least 30 days before trial." Fed. R. Civ. P.
26(a)(3)(B). Here, the trial notice directed that such "pretrial disclosures
must be made no later than April 5, 2024." (Docket Entry 229 at 1.)

disclosure of these three individuals as trial witnesses over two years ago, but instead counters that "Plaintiffs had an independent Rule 26(a)(1) obligation to disclose the identities of witnesses that was not satisfied by Plaintiffs including [those] three witnesses . . . on their post-discovery December 2021 Rule 26(a)(3) witness list" (Docket Entry 273 at 4-5), because that "disclosure obligation[ arises] 'in addition to the disclosures required by Rule 26(a)(1)'" (id. at 5 (brackets and emphasis omitted) (quoting Fed. R. Civ. P. 26(a)(3)(A))). That counter-argument ignores the fact that the supplementation rule only applies to "information [which] has not otherwise been made known to the other parties . . . in writing," Fed. R. Civ. P. 26(e)(1)(A).

As Legislative Leaders intimated in their reply, if the trial of this case had proceeded as scheduled in January 2022, Plaintiffs' disclosure of Mr. Lopez, former Congressman Butterfield, and Ms. Dumas for the first time in December 2021 on a trial witness list mandated by Rule 26(a)(3)(A) – after failing to include them in an initial disclosure under Rule 26(a)(1)(A) and/or any supplements under Rule 26(e)(1), dating back to the entry of the scheduling order on October 1, 2019 – may well have warranted exclusion of those three witnesses under Rule 37(c)(1) because Plaintiffs would have violated Rule 26(e)(1)(A) by "waiting to disclose [them] until the eve of an expected trial" (Docket Entry 273 at 5); however, given that the trial did not proceed then

-15-

as scheduled and two-plus years have since passed, the Court cannot now fault Plaintiffs for failing (in that interim period) to serve a supplemental witness disclosure under Rule 26(a)(1)(A)(i) listing Mr. Lopez, former Congressman Butterfield, and Ms. Dumas, as (via the trial witness list from December 2021) their status in that regard "otherwise [had] been made known to the other parties . . . in writing," Fed. R. Civ. P. 26(e)(1)(A).

Turning to the other witnesses/witness-types contested by Legislative Leaders, reason dictates that the prospect Plaintiffs would rely on such a large number and variety of new witnesses would pose an "objectively reasonable likelihood [of] . . . substantially affect[ing] or alter[ing Legislative Leaders'] . . . trial preparation," <u>Sender</u>, 225 F.R.D. at 654, thus triggering Plaintiffs' duty to supplement their disclosure "with special promptness as the trial date approache[d]," <u>Coalition to Save Our Children</u>, 90 F.3d at 775 (internal quotation marks omitted). Yet, in response to the instant Motion, Plaintiffs did <u>not</u> meaningfully develop any argument to support the bald assertion that their deferral of disclosure of these witnesses/witness-types until March 20, 2024 (years after discovery closed, almost eight months after the status conference which set this case back on track for trial without the reopening of discovery, and only weeks before the trial date) still qualified as "timely and compliant with Rule 26" (Docket Entry 268 at 14). (<u>See</u> <u>id.</u> at 9-12 (discussing new

-16-

witnesses under heading "Plaintiffs' Disclosures Are Timely and Comply with Rule 26" without explaining failure to disclose unnamed representatives from Democracy North Carolina and Vote Riders, Mr. Daye, unnamed election officials and poll workers, former State Senator Ford, Mr. Perry, Ms. Brower, and four different groups of unnamed voters as witnesses until March 20, 2024 (all-caps and bold font omitted)).)[10]

Plaintiffs' conclusory contention that their disclosure of those witnesses/witness-types in the Amended Supplemental

---

[10] At the beginning of the above-cited section of Plaintiffs' response, they remarked that "[t]he [Amended Supplemental D]isclosures were made two weeks after the [Elections Board's] March 4, 2024 supplemental disclosures, in which half of the [Elections] Board's identified witnesses (five of ten) were new witnesses . . . and which accompanied voluminous production of materials regarding the [Elections] Board's implementation of S.B. 824." (Docket Entry 268 at 9; see also id. at 1 (suggesting that "Amended Supplemental Disclosures were timely disclosed" because Plaintiffs made th[ose] supplemental disclosure[s] in response to [the Elections] Board['s] latest supplemental disclosure, made two weeks earlier").) That vague comment does not establish compliance with Rule 26(e)(1)(A)(i), in light of Plaintiffs' failure to even attempt to connect the substance of the Elections Board's supplemental disclosure to Plaintiffs' last-minute disclosure of these particular witnesses/witness-types. (See id. at 9-12.) Plaintiffs also stated that the unnamed Democracy North Carolina representative "replace[d] . . . organizations that work on elections" (id. at 10), but neglected to elaborate on the cause or the timing of that replacement (see id.). Similarly, Plaintiffs asserted that the "Vote Riders representative, [Mr.] Daye, [Mr.] Perry, and [Ms.] Brower . . . may have relevant information as to the implementation of S.B. 824 from the 2023 municipal elections and 2024 primaries" (id. at 10-11); however, Plaintiffs showed neither when nor how they learned of those witnesses, instead ambiguously describing Mr. Daye as a "local official" (id. at 11), Vote Riders as an entity that "assisted voters in obtaining approved IDs for voting purposes in the most recent elections" (id.), and Mr. Perry and Ms. Brower as "voters recently impacted by the ID requirement" (id.). In addition, Plaintiffs pointed out that "former [State] Senator [] Ford . . . was a witness for Legislative [Leaders] in the Holmes [] litigation, and [that he] offered a declaration in opposition to Plaintiffs' Motion for Preliminary Injunction" (id.; see also id. at 12 ("[Legislative Leaders] also question the inclusion of their former colleague, [former State Senator] Ford, who previously submitted a declaration in opposition to the motion for preliminary injunction." (internal citation omitted))), without offering any argument or authority to support the notion that those facts entitled Plaintiffs to delay until March 20, 2024, to reveal their reliance on him as a witness (despite clearly knowing about his link to this case since at least 2019, when they litigated the preliminary injunction) (see id. at 11-12).

-17-

Disclosures on March 20, 2024, satisfied Plaintiffs' obligation to "supplement or correct [their witness] disclosure . . . in a timely manner," Fed. R. Civ. P. 26(e)(1), therefore "is waived because [Plaintiffs] fail[ed] to develop this argument to any extent in [their] brief," <u>Belk, Inc. v. Meyer Corp., U.S.</u>, 679 F.3d 146, 152 n.4 (4th Cir. 2012); <u>see also</u> <u>United States v. Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").[11]  In light of that waiver and the facts in the record, the Court concludes that Plaintiffs did <u>not</u> comply with Rule 26(e)(1)(A)'s timeliness requirement when they waited until March 20, 2024, to disclose unnamed representatives from Democracy North Carolina and Vote Riders, Mr. Daye, unnamed election officials and poll workers, former State Senator Ford, Mr. Perry, Ms. Brower, and four categories of unnamed voters as witnesses.

---

[11] Legislative Leaders' supporting brief also properly highlights another problem with Plaintiffs' listing of witness-types (rather than actual witnesses) in the Amended Supplemental Disclosures:  "'Rule 26(a) does not countenance generic disclosures:  a "party must" provide "the name of each individual likely to have discoverable information."'"  (Docket Entry 237 at 19 (emphasis and ellipsis omitted) (quoting <u>Intercollegiate Women's Lacrosse Coaches Ass'n v. Corrigan Sports Enters.</u>, No. 1:20CV425, 2023 WL 6282921, at *9 (M.D.N.C. Sept. 26, 2023) (unpublished) (Schroeder, C.J.), in turn quoting Fed. R. Civ. P. 26(a)(1)(A)(i)).)  Plaintiffs only indirectly addressed that issue in their response, by stating that "[a]ny such individuals have now been individually named either in Plaintiffs' Pre-Trial Disclosures filed on April 5, 2024 of [sic] Plaintiffs' Exhibit List filed on April 15, 2024."  (Docket Entry 268 at 8 (referring to Docket Entries 242-1, 266).)  In this situation, the fact that Plaintiffs may have made a proper "[final] pretrial disclosure under Rule 26(a)(3) does not mean [they] timely complied with [their] supplemental disclosure obligations under Rule 26(e)."  <u>Markson v. CRST Int'l, Inc.</u>, No. 5:17CV1261, 2021 WL 5969519, at *2 (C.D. Cal. Nov. 23, 2021) (unpublished).

Accordingly, Plaintiffs "[are] not allowed to use th[ose] . . . witness[es] to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In other words, "Rule 37(c)(1) . . . <u>requires</u> witness and information exclusion for an untimely disclosure, unless the violation is substantially justified or harmless." <u>Nelson-Salabes, Inc. v. Morningside Dev., LLC</u>, 284 F.3d 505, 512 n.10 (4th Cir. 2002) (emphasis added); <u>see also</u> <u>Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.</u>, 318 F.3d 592, 595 n.2 (4th Cir. 2003) ("The Rule 37(c) advisory committee notes emphasize that the 'automatic sanction' of exclusion 'provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence.'" (quoting Fed. R. Civ. P. 37(c) advisory committee note, 1993 amend.)).[12]  Plaintiffs, as "[t]he party

_____

[12] Notwithstanding the above-quoted, absolutist language of Rule 37(c)(1) (and Fourth Circuit decisions construing that language), Rule 37(c)(1) elsewhere appears to grant courts some measure of discretion to impose a sanction other than exclusion for supplementation violations which the substantial justification and harmlessness exceptions do not excuse.  <u>See</u> Fed. R. Civ. P. 37(c)(1) ("In addition to or instead of this sanction, the [C]ourt, on motion and after giving an opportunity to be heard:  (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)."; <u>but see also</u> <u>Southern States</u>, 318 F.3d at 595 n.2 ("The alternative sanctions referenced in [ R]ule [37(c)(1)] are primarily intended to apply when a party fails to disclose evidence helpful to an <i>opposing party</i>." (emphasis in original) (citing 7 James Wm. Moore et al., Moore's Fed. Practice §§ 37.60[2][b], 37.61 (3d ed. 2002))).  Plaintiffs have not argued that, if the Court finds a violation of Rule 26(e)(1)(A) that falls outside the substantial justification or harmlessness exceptions to exclusion, the Court nonetheless should impose alternative sanctions "instead of th[e exclusion] sanction," Fed. R. Civ. P. 37(c)(1).  (<u>See</u> Docket Entry 268 at 1-19.)  Absent such argument, the Court will stay out of that thorny legal thicket and will stick to the issues on the trail blazed by the parties, i.e., whether Plaintiffs violated Rule 26(e)(1)(A)'s timely supplementation requirement and, if so, whether an exception to exclusion applies
(continued...)

-19-

failing to disclose [witnesses,] bears the burden of establishing that the nondisclosure was substantially justified or was harmless." <u>Bresler v. Wilmington Tr. Co.</u>, 855 F.3d 178, 190 (4th Cir. 2017). The parties have agreed that, in assessing whether Plaintiffs carried their burden as to the substantial justification and harmlessness exceptions to exclusion, the Court should consider the five factors endorsed by the Fourth Circuit in <u>Southern States</u>. (<u>See</u> Docket Entry 237 at 20; Docket Entry 268 at 14.)

In that case, the Fourth Circuit:

> h[e]ld that in exercising its broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

<u>Southern States</u>, 318 F.3d at 597; <u>see also</u> <u>Wilkins v. Montgomery</u>, 751 F.3d 214, 222 (4th Cir. 2014) ("The burden of establishing these factors lies with the nondisclosing party . . . .").[13] Per Plaintiffs' response, "each of the *Southern States* factors weighs

_____

[12](...continued)
because any such violations qualified as "substantially justified or [a]s harmless," Fed. R. Civ. P. 37(c)(1). <u>See generally</u> <u>United States v. Sineneng-Smith</u>, 590 U.S. 371, 376 (2020) ("[C]ourts normally decide only questions presented by the parties." (internal brackets and quotation marks omitted)).

[13] "The first four factors listed above relate primarily to the harmlessness exception, while the last factor, addressing the party's explanation for its nondisclosure, relates mainly to the substantial justification exception." <u>Bresler</u>, 855 F.3d at 190.

in Plaintiffs' favor." (Docket Entry 268 at 14.) Legislative Leaders have taken a contrary stance. (See Docket Entry 237 at 25 ("The *Southern States* factors all weigh against Plaintiffs.").)

Focusing first on the final of the *Southern States* factors (i.e., Plaintiffs' "explanation for [their prior] failure to disclose the[se witnesses/witness-types]," *Southern States*, 318 F.3d at 597), Plaintiffs have asserted that this "factor weighs in [their] favor as they timely disclosed the additional witnesses" (Docket Entry 268 at 19).[14] For reasons detailed in the prior discussion, the Court has determined that Plaintiffs' delay until March 20, 2024, to disclose unnamed representatives from Democracy North Carolina and Vote Riders, Mr. Daye, unnamed election officials and poll workers, former State Senator Ford, Mr. Perry, Ms. Brower, and four categories of unnamed voters did <u>not</u> constitute a <u>timely</u> witness disclosure. Plaintiffs thus have <u>not</u> carried their burden as to the fifth <u>Southern States</u> factor (as concerns those witnesses/witness-types). Moreover, given that "[t]he [other] four factors listed [in <u>Southern States</u>] relate

_____

[14] To support the above-quoted conclusory claim of timeliness, Plaintiffs here merely repeated their mantra that "these witness disclosures came two weeks after [the Elections Board's] submission of [its] March 4, 2024 supplemental disclosures in which half of the identified witnesses were new" (Docket Entry 268 at 19), again without making any effort to explain how that witness disclosure by the Elections Board caused Plaintiffs to suddenly decide that they would rely on unnamed representatives from Democracy North Carolina and Vote Riders, Mr. Daye, unnamed election officials and poll workers, former State Senator Ford, Mr. Perry, Ms. Brower, and four categories of unnamed voters (<u>see</u> <u>id.</u>; <u>see also</u> Docket Entry 273 at 3-4 (illustrating that Elections Board's supplemental witness disclosure simply involved substituting successors to previously disclosed executive staff members) (citing Docket Entries 268-5, 268-10)).

primarily to the harmlessness exception, while [only this] last factor, addressing the party's explanation for its nondisclosure, relates mainly to the substantial justification exception," Bresler, 855 F.3d at 190, the Court also concludes that Plaintiffs have not carried their burden to show that their "failure [to timely disclose those witnesses/witness-types] was substantially justified," Fed. R. Civ. P. 37(c)(1).

Moving on to the harmlessness-related factors, Plaintiffs have argued that "Legislative [Leaders] cannot be surprised by the listing of former [State] Senator Ford, [because] Legislative [Leaders] have publicly identified [him] as being associated with S.B. 824." (Docket Entry 268 at 15.) In reply, Legislative Leaders have conceded their prior knowledge that former State Senator Ford "was a cosponsor of S.B. 824" (Docket Entry 273 at 8), "[b]ut [have maintained that] Plaintiffs 'misunderstand the nature of "surprise" in this context'" (id. (internal brackets omitted) (quoting Intercollegiate Women's Lacrosse Coaches Ass'n v. Corrigan Sports Enters., No. 1:20CV425, 2023 WL 6282921, at *9 (M.D.N.C. Sept. 26, 2023) (unpublished) (Schroeder, C.J.))). More particularly, Legislative Leaders properly have posited that, for purposes of Rule 37(c)(1), surprise can arise "'from learning that [Plaintiffs] intend[] to use [former State Senator Ford] in support of [their] version of the facts' at trial." (Id. (quoting Intercollegiate Women's Lacrosse, 2023 WL 6282921, at *9).)

Neither Plaintiffs nor Legislative Leaders directly addressed former State Senator Ford in their discussion of the remaining Southern States factors. (See Docket Entry 237 at 21-24; Docket Entry 268 at 16-18; Docket Entry 273 at 8-11.) Legislative Leaders did generally object that Plaintiffs' untimely disclosure of witnesses "left Legislative [Leaders] with no opportunity to cure the [resulting] surprise, so th[e second Southern States] factor heavily weighs against Plaintiffs." (Docket Entry 237 at 21; see also id. at 22 (emphasizing that "[d]iscovery closed years ago" and that reopening discovery would delay trial, thereby tilting third Southern States factor against Plaintiffs as well).) Nevertheless, because the record confirms that, earlier in the life of this case, former State Senator Ford voluntarily provided Legislative Leaders with information (including a declaration under penalty of perjury) (see Docket Entry 96 at 33-34 (citing Docket Entry 96-12)), the Court concludes that Legislative Leaders likely could cure the surprise arising from his belated disclosure as a witness for Plaintiffs, through informal means without need for the compulsory processes of formal discovery (and therefore without any need to delay the trial). Based on that conclusion, the Court deems Plaintiffs' violation of Rule 26(e)(1)(A) in disclosing former State Senator Ford "harmless," Fed. R. Civ. P. 37(c)(1).

The foregoing analysis leaves only the question of harmlessness in connection with the disclosure of unnamed

-23-

representatives from Democracy North Carolina and Vote Riders, Mr.
Daye, unnamed election officials and poll workers, Mr. Perry, Ms.
Brower, and four unnamed voter categories.[15]  Plaintiffs' response
does not explicitly mention those witnesses/witness-types while
discussing the <u>Southern States</u> factors.  (<u>See</u> Docket Entry 268 at
15-19.)  Instead, Plaintiffs impliedly lumped those witnesses/
witness-types together as "witnesses . . . regarding
implementation" (<u>id.</u> at 15), which they characterized as (A) not
"surprise" evidence (<u>id.</u>), (B) evidence "Legislative [Leaders ]
affirmatively rejected opportunities to conduct discovery into"
(<u>id.</u> at 16), (C) evidence "not disrupt[ive of] trial" (<u>id.</u> at 18),
and (D) evidence "critical to the assessment of S.B. 824" (<u>id.</u>).

As to surprise, Plaintiffs more particularly contended
"[f]irst [that] . . . the [Elections Board] and Plaintiffs
identified the relevance of implementation evidence in their Joint
Report . . . in September 2019." (<u>Id.</u> at 15 (citing Docket Entry
77 at 2-3).) "Second, [Plaintiffs noted that] Rule 26 disclosures
by both Plaintiffs and [the Elections Board] reference
implementation evidence or identify witnesses expected to testify
about implementation of S.B. 824." (<u>Id.</u> (citing, inter alia,

---

[15] On April 5, 2024, Plaintiffs filed a trial witness list identifying
Carol Moreno Cifuentes and Keith Chapelle as representatives of Democracy North
Carolina, along with Jenny McKenney as a representative of Vote Riders. (<u>See</u>
Docket Entry 242-1 at 2.)  That list also includes two previously unidentified
voters. (<u>See id.</u> at 4 (Keith Rivers), 6 (Robert Fletcher); <u>see also id.</u> at 6
(newly listing "Lekha Shupek," the "State Outreach Director, Documented").) Ten
days later, Plaintiffs added six more voters to their trial witness list. (<u>See</u>
Docket Entry 266 at 6 (Carlotta Dorset Smith, Priscilla J. Webb, Sandra Anderson
Norman, Adajhia Parker, Shakeena Benton, and Cedric T. Baker, Sr.).)

Docket Entry 268-1 at 4, Docket Entry 268-5 at 2-3, and Docket Entry 268-6 at 3-5).) "Third, [Plaintiffs emphasized that] counsel for [] Legislative [Leaders] was present at [] the November 21, 2023 status conference . . . where [Judge Biggs] made clear that implementation evidence will be before the Court at trial." (Id. at 16 (citing Docket Entry 268-9 at 26).) From Plaintiffs' perspective, this record material "demonstrate[s] that Legislative [Leaders] cannot be 'surprised' that evidence concerning implementation will be presented at trial." (Id.)

The Court here, though, confronts a different question, i.e., does Plaintiffs untimely disclosure on March 20, 2024, of unnamed representatives from Democracy North Carolina and Vote Riders (later specified as three particular employees of those groups), Mr. Daye, unnamed election officials and poll workers (still not clearly identified), Mr. Perry, Ms. Brower, and four categories of unnamed voters (just recently narrowed down to eight specific voters) constitute "surprise to [Legislative Leaders]," Southern States, 318 F.3d at 597. And, to that question, the undersigned Magistrate Judge answers yes: even if Legislative Leaders received notice that Plaintiffs intended to present implementation evidence of some sort, Plaintiffs' failure to timely identify these witnesses/witness-types as deliverers of that (or any other) evidence remains a form of surprise.

-25-

Given that Plaintiffs evidently intended from the start of this case to use evidence about S.B. 824's implementation to support their claims, their deferral of notice of the witnesses on whom they would rely on that front, including (as Legislative Leaders's reply observes) "12 unnamed until April 2024" (Docket Entry 273 at 7), strikes the Court as particularly problematic, because "[s]upplementation must be made with special promptness as the trial date approaches," <u>Coalition to Save Our Children</u>, 90 F.3d at 775 (internal quotation marks omitted); <u>see also</u> <u>Pem-Air Turbine Engine Servs. LLC v. Gupta</u>, No. 3:21CV180, 2024 WL 758561, at *1 (N.D. Tex. Feb. 22, 2024) (unpublished) ("Courts have cautioned that problems can arise when they allow supplementation too close to the date of trial." (internal quotation marks omitted)).  For example, "[o]rganizations such as Democracy North Carolina and Vote Riders have existed for the duration of this lawsuit" (Docket Entry 237 at 17); thus, at least as far back as the status conference in July 2023, Plaintiffs (by then well aware of the ongoing implementation of S.B. 824) surely could have identified unnamed (or even named) representatives of Democracy North Carolina and Vote Riders as witnesses Plaintiffs "may use to support [their] claims," Fed. R. Civ. P. 26(a)(1)(A)(i); <u>see also</u> <u>Gomez v. Haystax Tech., Inc.</u>, 761 F. App'x 220, 234 (4th Cir. 2019) ("Litigants need not fully investigate potential witnesses . . . in order to include those witnesses on their Rule 26 [witness] disclosures.").

Likewise, "for individuals . . . related to the 2023 municipal elections, at a minimum Plaintiffs could have made these disclosures months ago . . . ." (Docket Entry 237 at 14; <u>see also</u> Docket Entry 237-5 at 19-22 (memorializing Plaintiffs' counsel's remarks on November 21, 2023, professing detailed knowledge of problems during 2023 municipal elections).) Indeed, the Court agrees with Legislative Leaders that, "[t]o the extent witnesses such as . . . [Mr.] Daye, [Mr.] Perry, [Ms.] Brower, . . . and the unnamed election officials, poll workers, and individual voters have information regarding the 2023 municipal elections, then Plaintiffs should have immediately disclosed their identity after th[ose] elections . . . ." (Docket Entry 237 at 18.)

The undersigned Magistrate Judge also cannot accept Plaintiffs' accusation that "Legislative [Leaders] <u>falsely</u> claim . . . that they were prohibited from participating in discovery." (Docket Entry 268 at 16 (emphasis added).) Rather, the record (summarized in the Introduction) supports Legislative Leaders' position "that Plaintiffs succeeded in preventing Legislative [Leaders] from intervening—and thus from participating in discovery—until two years after discovery had already ended." (Docket Entry 273 at 8 (citing, inter alia, Docket Entry 66 at 1-3, 11 and Docket Entry 82 at 7).) Similarly, although Plaintiffs charge Legislative Leaders with "badly mischaracteriz[ing] the actual procedural history of this case" (Docket Entry 268 at 17),

-27-

by "omit[ting] from their discussion [] that in July 2023, [the undersigned Magistrate Judge] offered all [p]arties — including [] Legislative [Leaders] — the opportunity to propose any discovery they wished to seek and they declined to do so" (id. (citing Text Order dated July 5, 2023)), Plaintiffs' framing of those events actually creates the misleading impression.

With that Text Order, the undersigned Magistrate Judge did <u>not</u> signal any intent to reopen discovery for anyone; instead, the undersigned Magistrate Judge (A) knew Plaintiffs had requested the reopening of discovery and (B) wanted all discovery-related issues flushed out before the status conference on Plaintiffs' request. Nothing the undersigned Magistrate Judge wrote in that Text Order or said during that status conference constituted "entreaties from . . . the Court [for Legislative Leaders] to conduct discovery" (<u>id.</u> at 2). In any event, the fact that Legislative Leaders (and the Elections Board) declined to join Plaintiffs' unsuccessful quest to reopen discovery in July 2023 does <u>not</u> mean that Legislative Leaders forfeited the right to point out their current inability to "obtain discovery from and depose the fifteen individuals or categories of individuals that Plaintiffs newly disclosed [as witnesses]" (Docket Entry 237 at 18), without the Court now reopening discovery, which "would be inconsistent with the [established] May 2024 trial date" (<u>id.</u>), i.e., "disrupt[ive of] the trial," <u>Southern States</u>, 318 F.3d at 597; <u>see also Advanced</u>

-28-

_Fluid Sys., Inc. v. Huber_, 958 F.3d 168, 181 (3d Cir. 2020) (approving of fact that district court "did not wish to further delay a case that was ready for trial and had taken four years to get to that point"); _Bartell v. Grifols Shared Servs. NA, Inc._, No. 1:21CV953, 2023 WL 4868135, at *10 (M.D.N.C. July 31, 2023) (unpublished) (Osteen, J.) (holding that "[r]equiring the parties to reopen discovery at [late] stage would prejudice [the d]efendants"); _Lighting Retrofit Int'l, LLC v. Constellation NewEnergy, Inc._, Civ. No. 19-2751, 2021 WL 2338377, at *4 (D. Md. June 8, 2021) (unpublished) (reiterating that "prolong[ing] an already lengthy litigation . . . itself is a burden to the litigants" (internal quotation marks omitted)).

Taking account of all these facts and circumstances — and treating the fourth _Southern States_ factor of the "importance of the evidence," _id._, as neutral[16] — the Court adjudges that, with but one exception, Plaintiffs have failed to carry their burden of establishing that their belated disclosure of unnamed representatives from Democracy North Carolina and Vote Riders (later specified as three employees of those two organizations), Mr. Daye, unnamed election officials and poll workers (still not

---

[16] The undersigned Magistrate Judge has treated this fourth factor as neutral because, although (to varying degrees) "Plaintiffs, [the Elections Board], and [Judge Biggs] all [may have] recognize[d] that evidence about implementation is important" (Docket Entry 268 at 18), Plaintiffs have not shown the particular importance of any particular implementation evidence (including from these particular witnesses) (see _id._) and (as outlined in the Introduction) the Fourth Circuit has highlighted some significant limitations on the pertinence of implementation evidence to Plaintiffs' claims, see _Raymond_, 981 F.3d at 298.

-29-

clearly identified), Mr. Perry, Ms. Brower, and four categories of voters (just recently narrowed down to eight named voters) "is harmless," Fed. R. Civ. P. 37(c)(1). That one exception concerns voter-witnesses from the 2024 primary. Plaintiffs reasonably could not have disclosed those witnesses much sooner than they did, because (as even Legislative Leaders have acknowledged) "the 2024 primary election just concluded" (Docket Entry 237 at 18).

Courts have "recognize[d] that through no one's fault, evidence is sometimes obtained belatedly when . . . a new source is uncovered. Discovery aims only to mitigate surprise, for nothing can eliminate it entirely from trial practice." Southern Union Co. v. Liberty Mut. Ins. Co., No. 06CV12067, 2008 WL 8564583, at *4 (D. Mass. Mar. 25, 2008) (unpublished) (internal quotation marks omitted). Consistent with that principle, the undersigned Magistrate Judge concludes that – to the extent the voter-witnesses identified by Plaintiffs on April 5 and 15, 2024 (see Docket Entry 242-1 at 4, 6; Docket Entry 266 at 6) can provide otherwise admissible evidence about the implementation of S.B. 824 during the 2024 primary election – the untimeliness of the Amended Supplemental Disclosures "is harmless," Fed. R. Civ. P. 37(c)(1).[17]

_____

[17] That harmlessness finding does not apply to poll workers or election officials involved in the 2024 primary election, because Plaintiffs never clearly identified any such individuals (even in their trial lists filed in April 2024).

-30-

Legislative Leaders also have sought relief on the ground that, when Plaintiffs served the Amended Supplemental Disclosures on March 20, 2024, they "newly identified seven categories of documents that they would use to support their claims and expanded upon the one previously identified category . . . ." (Docket Entry 237 at 13 (referring to Docket Entry 236-1 at 9-12).) By way of background, on October 18, 2019, "[p]ursuant to [] Rule [] 26(a)(1)(A)(ii), [Plaintiffs disclosed] the following . . . description . . . of documents, electronically stored information, and tangible things that [they] have in their possession, custody, or control and may use to support their claims" (Docket Entry 237-2 at 9): "Documents and communications relating to [] Plaintiffs' get-out-the-vote and voter registration activities, voter registration and education activities, including resources diverted to address the adverse impact of S.B. 824." (Id.) Plaintiffs supplemented their initial disclosure on September 10, 2021, but – as to matters subject to disclosure under Rule 26(a)(1)(A)(ii) – they stated: "No supplemental information regarding documents." (Docket Entry 237-3 at 4.) Two months later, Plaintiffs served another supplemental disclosure, but again disclosed nothing new pertaining to documents. (See Docket Entry 237-4 at 2-3.)

Another 28-plus months then passed without supplementation by Plaintiffs, until (mere weeks before trial) they served the Amended

-31-

Supplemental Disclosures, adding these seven, new categories of documents in Plaintiffs' "possession, custody, or control [which they] may use to support their claims" (Docket Entry 236-1 at 10):

1) "[d]ocuments and communications relating to the [Elections Board's] implementation of S.B. 824's photo voter ID requirements, including transcripts or recordings of [Elections] Board meetings, including in preparation for the 2016 primary election and for the 2023 municipal elections and 2024 primary elections" (id.);

2) "[m]aterials prepared by County Boards of Elections and third parties (including legislators and third-party organizations) regarding the implementation of photo ID requirements, including transcripts or recordings of County Board meetings, including in preparation for the 2016 primary election and for the 2023 municipal elections and the 2024 primary elections" (id.);

3) "[m]aterials concerning the legislative history and process of H.B. 1092, S.B. 824, H.B. 1169 and S.B. 747 including transcripts/recordings of legislative sessions, bill analysis, amendments, and correspondence relating to the legislative process, including any documents or communications relating to plans to revise or amend these statutes" (id.);

4) "[a]ll public records, judicial and litigation records, including all transcripts and videos of current or future judicial proceedings, deposition transcripts, additional records and

-32-

documents produced or filed in the parallel state law voter photo ID lawsuit *Holmes v. Moore* (Wake County 18 CVS 15292)" (<u>id.</u> at 11);

5) "[m]aterials relating to the impact of S.B. 824 on North Carolina voters" (<u>id.</u>);

6) "[a]ll filings in this case" (<u>id.</u>); and

7) "[a]ny and all documents listed in the [Elections Board's] Initial Disclosures and any timely supplements" (<u>id.</u>).

Along with those additional categories of documents, the Amended Supplemental Disclosures expanded Plaintiffs' lone, originally disclosed category of documents to encompass <u>not only</u> "documents and communications relating to" <u>their own</u> "get-out-the-vote and voter registration and education activities, including resources diverted to address the adverse impact of S.B. 824" (Docket Entry 237-2 at 9), <u>but also</u> "[d]ocuments and communications relating to [such] activities of . . . third-party organizations" (Docket Entry 236-1 at 10). Legislative Leaders have objected that "Plaintiffs' belated identification of seven new categories of documents upon which they may rely at trial along with an expansion of the one category they did previously disclose is <u>untimely</u>." (Docket Entry 237 at 19 (emphasis added).) In particular, Legislative Leaders have argued:

> On their face, many of these categories of documents pertain to topics that are far from new and that Plaintiffs would have been aware of, or should have been aware of, years ago while discovery was open (*e.g.*, "documents and communications relating to preparation for the 2016 primary election;" "materials prepared by County

Boards of Elections and third parties (including legislators and third-party organizations) regarding the implementation of photo ID requirements in preparation for the 2016 primary election;" and "materials concerning the legislative history and process of H.B. 1092, S.B. 824, H.B. 1169 and S.B. 747").

(Id. (brackets and ellipses omitted) (quoting Docket Entry 236-1 at 10); see also id. at 14 (arguing that, "for . . . documents related to the 2023 municipal elections, at a minimum Plaintiffs could have made those disclosures months ago").) More broadly, Legislative Leaders' supporting brief contends that "[t]he Amended Supplemental Disclosures are 'not a proper supplemental' disclosure 'pursuant to Rule 26(e)' because Plaintiffs are 'not attempting to correct the original' disclosures but to 'add information' that they left out of their disclosures." (Id. at 15 (quoting Thomasville Furniture Indus. v. Pulaski Furniture Corp., No. 1:09CV591, 2011 WL 13239926, at *2 (M.D.N.C. Dec. 1, 2011) (unpublished) (Sharp, M.J.)).)

In response, Plaintiffs have asserted that their "March 20, 2024 supplemental disclosures are timely and consistent with Rule 26." (Docket Entry 268 at 9; see also id. at 1 ("Plaintiffs did not violate Rule 26(a) or (e) as the information . . . identified in Plaintiffs' Amended Supplemental Disclosures w[as] timely disclosed.").) Plaintiffs, however, constructed no coherent argument to justify that conclusory assertion; instead, they simply adverted to the fact that "[t]hose disclosures were made two weeks after the [Elections Board's] March 4, 2024 supplemental disclosures . . . which accompanied voluminous production of

-34-

materials regarding the [Elections] Board's implementation of S.B. 824." (Id. at 9; see also id. at 1 ("Plaintiffs made this supplemental disclosure in response to [the Elections Board's] latest supplemental disclosure, made two weeks earlier . . . which identified several new witnesses and was disclosed in conjunction with the [Elections Board's] disclosure of numerous materials related to its implementation of S.B. 824 . . . .").) "But this is a non sequitur." United States v. Lewis, 477 F. App'x 79, 82 (4th Cir. 2012). "The 'timely manner' inquiry of Rule 26(e) considers when new facts were supplemented relative to when the new facts were discovered by the supplementing party." Petersen v. Rapid City, Pierre & Eastern R.R., Inc., No. 5:22CV5064, 2024 WL 249679, at *3 (D.S.D. Jan. 23, 2024) (unpublished).

Plaintiffs did not first discover that they possessed and intended to rely on "[d]ocuments and communications relating to the [Elections Board's] implementation of S.B. 824's photo voter ID requirements" (Docket Entry 236-1 at 10), only "after the [Elections Board made its] March 4, 2024 supplemental disclosures" (Docket Entry 268 at 9). Nor did Plaintiffs suddenly, between March 4 and 20, 2024, first acquire (for use in this litigation) (A) "[m]aterials prepared by County Boards of Elections and third parties (including legislators and third-party organizations) regarding the implementation of photo ID requirements" (Docket Entry 236-1 at 10), (B) "[m]aterials concerning the legislative

-35-

history and process of H.B. 1092, S.B. 824, H.B. 1169 and S.B. 747" (id.), (C) materials from "the parallel state law voter photo ID lawsuit *Holmes v. Moore* (Wake County 18 CVS 15292)" (id. at 11), (D) "[m]aterials relating to the impact of S.B. 824 on North Carolina voters" (id.), (E) "[a]ll filings in this case" (id.), (F) "documents listed in the [Elections Board's] Initial Disclosures" (id.), and/or (G) "[d]ocuments and communications relating to the activities of . . . third-party organizations to get-out-the-vote" (id. at 10).

To the contrary (for instance), when Plaintiffs filed the Joint Report on September 23, 2019, they acknowledged that the Elections Board "ha[d] been providing a large number of discovery exchanges from . . . *Holmes*." (Docket Entry 77 at 2 (full case name and citation omittted).) In that same filing, Plaintiffs manifested their understanding of the significance of, as well as their intent to gather, information about "[t]he legislative history of [S.B. 824]" (id. at 2), "[t]he [Elections] Board's implementation of [S.B. 824]" (id. at 3), and "[t]he impact of [S.B. 824] on North Carolina voters" (id.). Consistent with those record statements by Plaintiffs at the start of the case, in the lead up to the then-anticipated trial in January 2022, Plaintiffs indicated that they (at that point) could produce "a full record of [S.B. 824's] historical background" (Docket Entry 165 at 8) and a "fulsome evidentiary record . . . at trial . . . [to prove] that

-36-

the General Assembly acted with discriminatory intent" (id. at 9), "including historical and statistical analysis, [as well as evidence about] legislative process[es] and real-world conditions and voter experiences" (id. at 10).

In view of that record, long ago – certainly years before March 20, 2024 – Plaintiffs' "obligation to supplement ar[ose] when [they] reasonably should [have] know[n] that [their] prior [document disclosure was] incomplete," Jama v. City & Cnty. of Denver, 304 F.R.D. 289, 299 (D. Colo. 2014). Put another way, the record establishes that, since at least 2021, (1) Plaintiffs "ha[d] in [their] possession, custody, or control and [knew they] may use to support [their] claims," Fed. R. Civ. P. 26(a)(1)(A)(ii), all seven of the categories of information they disclosed for the first time on March 20, 2024, and (2) "there [wa]s an objectively reasonable likelihood that [such] information could substantially affect or alter the[ir] opposing part[ies'] . . . trial preparation," Sender, 225 F.R.D. at 654. In sum, Plaintiffs' decision to postpone (for years) any supplementation of their document disclosure until only six-and-a-half weeks remained before trial violated their duty to "supplement . . . [their document] disclosure . . . in a timely manner," Fed. R. Civ. P. 26(e)(1) (emphasis added); see also Petersen, 2024 WL 249679, at *3 ("Rule 26(e) is 'not an invitation to hold back material items and

-37-

disclose them at the last moment.'" (quoting Wright & Miller, Federal Practice & Procedure, § 2049.1 (3d ed.))).[18]

Because Plaintiffs "fail[ed] to provide [document-related] information . . . as required by Rule 26(a) [and] (e), [they are]

---

[18] Plaintiffs' response additionally states (1) that "[a]ll of these categories were either previously disclosed, or concern implementation evidence following the 2023 municipal and 2024 primary elections" (Docket Entry 268 at 12), and (2) that "Plaintiffs complied with [ R]ule [26(e)(1)(A)] by supplementing their disclosures with implementation evidence that was generated in conjunction with the November 2023 municipal and March 2024 primary elections" (id. at 14). To support the first of those statements, Plaintiffs presented a chart comparing the categories of documents they disclosed on March 20, 2024, with the Elections Board's document disclosure on May 15, 2020. (See id. at 12-14 (citing, inter alia, Docket Entry 268-6).) As an initial matter, the plain language of these two disclosures confirms that, although they may overlap in some respects, several of Plaintiffs' categories extend far beyond the Elections Board's purportedly parallel categories. For example, whereas the Elections Board disclosed its intent to rely on "[a]ll public records concerning the implementation efforts of the S.B. 824's voter photographic ID requirement by the [Elections Board]" (id. at 13 (reproducing language in Docket Entry 268-6 at 5)), Plaintiffs' supposedly matching categories actually contain no restriction to "public records concerning the [Elections Board's] implementation efforts" (id. (emphasis added)); rather, Plaintiffs' categories encompass the much broader ranges of "[d]ocuments and communications relating to the [Elections Board's] implementation [efforts]" (id. (emphasis added) (reproducing language in Docket Entry 236-1 at 10)) and "[m]aterials prepared by . . . third parties . . . regarding the implementation of photo ID requirements" (id. (emphasis added) (reproducing language in Docket Entry 236-1 at 10)). In similar fashion, the Elections Board disclosed a category consisting of the "Legislative History and Procedure of S.B. 824 and the . . . S.B. 824 Legislative Hearing Transcripts and/or audio records" (id. (reproducing language in Docket Entry 268-6 at 4)), but Plaintiffs did not restrict their allegedly mirroring category to that discrete legislative history and related transcripts/recordings, instead sweeping in "[m]aterials concerning" that legislative history and the histories of three other pieces of legislation (id. (reproducing language in Docket Entry 236-1 at 10)), i.e., documents (A) from sources other than the General Assembly and (B) about laws besides S.B. 824. Furthermore, the Elections Board's disclosure of documents it possessed and intended to use to prove its case did not grant Plaintiffs the right to delay disclosing until just before trial the documents they possessed and intended to use to prove their case; in the words of Legislative Leaders, "[t]hat is not how initial disclosures work" (Docket Entry 273 at 6 (citing Fed. R. Civ. P. 26(a)(1)(A)(ii))). Finally, Plaintiffs' inclusion (in some of their categories) of references to the 2023 municipal elections and the 2024 primary elections does not retroactively immunize their earlier failure to disclose those categories, as they identify material pre-dating those elections. (See Docket Entry 236-1 at 10 (referring to "preparation for the 2016 primary election" in categories that also mention "2023 municipal elections and 2024 primary elections"); see also Docket Entry 237 at 14 (observing that, for "documents related to the 2023 municipal elections, at a minimum Plaintiffs could have made those disclosures months ago").)

-38-

not allowed to use that information . . . to supply evidence . . . at a trial, unless the failure was substantially justified or [wa]s harmless." Fed. R. Civ. P. 37(c)(1). Moreover, as "[t]he party failing to disclose information[, Plaintiffs] bears the burden of establishing that the nondisclosure was substantially justified or was harmless." Bresler, 855 F.3d at 190. Consistent with the positions of the parties (see Docket Entry 237 at 20; Docket Entry 268 at 14), the Court assesses Rule 37(c)(1)'s exceptions to exclusion by looking to these five factors: "(1) the surprise to [Legislative Leaders]; (2) the ability of [Legislative Leaders] to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) [Plaintiffs'] explanation for [their] failure to disclose the evidence." Southern States, 318 F.3d at 597; see also Wilkins, 751 F.3d at 222 ("The burden of establishing these factors lies with the nondisclosing party . . . .").

Alone among those five factors, "the last factor, addressing [Plaintiffs'] explanation for [their] nondisclosure, relates mainly to the substantial justification exception." Bresler, 855 F.3d at 190; see also id. ("The first four factors listed [in Southern States] relate primarily to the harmlessness exception . . . ."). According to Plaintiffs, that "fifth factor weighs in [their] favor as they timely . . . produced documents concerning implementation." (Docket Entry 268 at 19; see also id. at 2 ("[T]he timing of

-39-

Plaintiffs' disclosures was substantially justified as S.B. 824 was only recently implemented. Plaintiffs could not have previously identified relevant information . . . speak[ing] to the implementation and impact of S.B. 824 since the statute had not been implemented prior to the 2023 municipal and 2024 primary elections.".) For reasons just detailed, Plaintiffs did not timely serve their Amended Supplemental Disclosures containing seven new document categories (and a major expansion of their only previously disclosed category), most of which (as quoted above) do not even mention implementation (see Docket Entry 236-1 at 10-11). And, again as confirmed by the literal terms of Plaintiffs' document disclosures (set out at the beginning of this subsection), even their newly disclosed document categories which do mention implementation do not pertain only to the 2023 municipal elections and/or the 2024 primary elections. (See id. at 10.)[19] "Given the lack of a valid explanation for the[se] late disclosures, . . . [the Court exercises] its broad discretion [to] hold[] that [Plaintiffs'] late disclosure [of their documents by category] was not substantially justified." Gomez, 761 F. App'x at 234.

---

[19] Legislative Leaders also correctly have commented that "Plaintiffs have never clarified when they obtained the newly disclosed documents from the county boards of elections regarding the 2023 municipal elections . . . ." (Docket Entry 273 at 11.) That silence speaks loudly because "[s]upplementation must be made with special promptness as the trial date approaches." Coalition to Save Our Children, 90 F.3d at 775 (internal quotation marks omitted); see also Medline Indus., L.P. v. C.R. Bard, Inc., No. 14CV3618, 2023 WL 2711433, at *5 (N.D. Ill. Mar. 30, 2023) (unpublished) (cautioning against constructions of Rule 26(e)(1)(A) which create incentives for litigants to "deliberately delay[] some of [their] informal fact investigations (including document acquisition)").

-40-

Plaintiffs last hope thus lies with their argument that their untimely, document-category "disclosures are harmless." (Docket Entry 268 at 2.) Legislative Leaders' supporting brief nominally maintains, in blanket fashion, that "Plaintiffs cannot carry their burden of establishing . . . that [their] untimely disclosure was harmless to Defendants." (Docket Entry 237 at 21; see also id. at 20 (contending that "Plaintiffs' untimely disclosure of . . . whole categories of documents was not . . . harmless").) In line with that all-encompassing assessment, at one point in their supporting brief, Legislative Leaders requested that the Court enter an order "prohibit[ing] Plaintiffs from offering any of the newly identified . . . documents at trial." (Id. at 15 (emphasis added); see also id. at 6 ("[Legislative Leaders] preference is for th[e] Court to . . . prohibit Plaintiffs from relying on th[eir] late disclosed . . . documents at trial.").)

An order following that literal specification would leave Plaintiffs with the ability to introduce at trial only documents falling within the lone category they originally disclosed: "Documents and communications relating to [] Plaintiffs' get-out-the-vote and voter registration activities, voter registration and education activities, including resources diverted to address the adverse impact of S.B. 824." (Docket Entry 237-2 at 9.) Such an order thereby would preclude Plaintiffs from offering at trial documents from the record of the Holmes case, because Plaintiff

-41-

only included that category of documents in the Amended
Supplemental Disclosures they served on March 20, 2024 (see Docket
Entry 236-1 at 11). In like manner, an order "prohibit[ing]
Plaintiffs from relying on th[eir] late disclosed . . . documents
at trial" (Docket Entry 237 at 6) would bar introduction of S.B.
824's "legislative history . . . including transcripts/recordings
of legislative sessions" (Docket Entry 236-1 at 10).

Other aspects of that same supporting brief, however, suggest
that Legislative Leaders did not actually intend to seek relief
that drastic, as well as that (impliedly at least) they recognize
that Rule 37(c)(1)'s harmlessness exception to exclusion would
apply to some documents Plaintiffs failed to describe by category
in a disclosure (as required by Rule 26(a)(1)(A)(ii)) prior to
serving the Amended Supplemental Disclosures on March 20, 2024. Of
particular note, Legislative Leaders' supporting brief elsewhere
asks the Court to "exclud[e] all documents from the newly
identified categories that are not in Defendants' possession,
custody, or control from admission by Plaintiffs at trial."
(Docket Entry 237 at 6 (emphasis added).) That caveat would allow
Plaintiffs to introduce at trial documents, such as evidence from
the Holmes record and from the legislative history of S.B. 824, to
which all parties to this case long have enjoyed access, despite
the failure of Plaintiffs to timely list those categories of
documents in a disclosure (effectively acknowledging the

-42-

harmlessness of that oversight).  Documents within other categories belatedly disclosed by Plaintiffs on March 20, 2024, e.g., "[d]ocuments and communications relating to the [Elections Board's] implementation of S.B. 824's photo voter ID requirements" (Docket Entry 236-1 at 10) and "[m]aterials relating to the impact of S.B. 824 on North Carolina voters" (id. at 11), also would remain available for Plaintiffs' use at trial under an exclusion of that sort, to the extent those documents reside on the Elections Board's website(s) (see id. at 10-11 (naming said website(s) as one "Location" of such documents/materials (bold font omitted)); see also Docket Entry 237 at 23 ("To the extent any implementation evidence is admissible, the public records and statistics available on the [Elections] Board's website are sufficient for the Court to tell how the law has been implemented.")).

Of course, Plaintiffs want the Court to make a broader finding of harmlessness, which preserves their ability to use any document falling within any of the seven new categories (and the expanded version of their originally disclosed category) in the Amended Supplemental Disclosures served on March 20, 2024.  (See Docket Entry 268 at 14 (insisting that any Rule 26(e)(1)(A) "violation was . . . harmless as each of the *Southern States* factors weighs in Plaintiffs' favor").)  But in addressing the first Southern States factor, Plaintiffs assert only that "[t]he idea that the introduction of implementation evidence . . . into this case is a

-43-

Case 1:18-cv-01034-LCB-LPA   Document 291   Filed 04/29/24   Page 43 of 49

surprise is wholly without merit." (Id. at 15 (emphasis added).)[20]
To support that position, Plaintiffs point to the "discussion of
implementation evidence in the Joint [] Report, numerous prior Rule
26(a) disclosures, and express discussions about the importance of
implementation evidence at two recent hearings [as] demonstrat[ing]
that Legislative [Leaders] cannot be 'surprised' that evidence
concerning implementation will be presented at trial." (Id. at
16.) Legislative Leaders lack a persuasive reply to those points.

    In fact, their reply brief never denies that they have known
for years that Plaintiffs would rely on implementation evidence as
part of their litigation strategy. (See Docket Entry 273 at 1-12.)
Nor could Legislative Leaders offer such a denial, as the record
bears out Plaintiffs' long-standing stance on that subject. (See
Docket Entry 77 at 3 (including "[t]he [Elections] Board's
implementation of [S.B. 824]" in Joint Report's litany of discovery
topics); Docket Entry 268-1 at 4 (listing "proposed and anticipated
implementation of S.B. 824 by state officials" as form of evidence
available from one set of witnesses identified in Plaintiffs'
initial disclosure).) Instead of voicing a claim of surprise that
Plaintiffs would rely at trial on the document category of

---

[20] By focusing here only on "implementation evidence" (Docket Entry 268 at
15), Plaintiffs have not attempted to meet their burden of showing a lack of
surprise as to other categories of documents newly disclosed on March 20, 2024,
and thus (as to those categories) must settle for Legislative Leaders' above-
discussed acceptance of Plaintiffs' right to seek admission of documents – like
evidence from the Holmes case and S.B. 824's legislative history – to which all
parties have shared access for some time. See, e.g., Belk, 679 F.3d at 152 n.4
(deeming argument "waived because [party] fail[ed] to develop this argument to
any extent in its brief").

-44-

implementation evidence, Legislative Leaders' reply brief voices a claim that "Plaintiffs are surprising Legislative [Leaders] with . . . thousands of pages of new documents" (Docket Entry 273 at 7), including "evidence from the 2023 and 2024 elections [which] comes years after the May 2020 close of fact discovery" (id.).

But that form of surprise and any associated harm does <u>not</u> stem from the failure of Plaintiffs to list a document category of implementation evidence within their initial disclosure (or a timely supplement), in breach of their duty to provide "a description by category and location [] of all documents . . . that [Plaintiffs] ha[d] in [their] possession . . . and may use to support [their] claims," Fed. R. Civ. P. 26(a)(1)(A)(ii). Restated slightly differently, Legislative Leaders object to the timing of their receipt of copies of "thousands of pages of new documents" (Docket Entry 273 at 7); however, Rule 26(a)(1)(A)(ii)'s disclosure requirement (and the coordinate requirement for timely supplementation under Rule 26(e)(1)(A)) did not entitle Legislative Leaders to receive such copies – <u>at any time</u>. Rather, those rule provisions only afforded them the right to a document "description by category and location," Fed. R. Civ. P. 26(a)(1)(A)(ii). And had Plaintiffs listed in their initial disclosure a category of implementation evidence or served a timely supplement containing

-45-

such a listing, Legislative Leaders still would have ended up experiencing the same surprise/harm about which they now complain.[21]

Because Plaintiffs have established that their failure to timely disclose implementation evidence as a document category under Rule 26(a)(1)(A)(ii) did <u>not</u> result in "surprise to [Legislative Leaders]," <u>Southern States</u>, 318 F.3d at 597, the Court need not consider means "to cure the surprise," <u>id.</u>, or whether the adoption of such means "would disrupt the trial," <u>id.</u> Lastly, the undersigned Magistrate Judge considers the final, harmlessness-related factor, i.e., "the importance of the [implementation] evidence," <u>id.</u>, neutral (for the same basic reasons which led to that conclusion as part of the harmlessness analysis in the Witnesses subsection of the Discussion). On balance, these factors support the finding that Plaintiffs' untimely disclosure of implementation evidence as a document category on March 20, 2024, "[wa]s harmless," Fed. R. Civ. P. 37(c)(1).

<u>CONCLUSION</u>

Plaintiffs "fail[ed] to . . . identify" organizational representatives from Democracy North Carolina and Vote Riders, Tyler Daye, election officials who implemented S.B. 824 during the

---

[21] As laid out in the Introduction, discovery in this case closed before Legislative Leaders succeeded in securing party-status. Therefore, if Plaintiffs had included implementation evidence as a document category in their initial disclosure or a timely supplement (as they should have done), Legislative Leaders (as then-non-parties) still could not have used that notice to request production of any implementation evidence in Plaintiffs' possession under Rule 34(a), the mechanism for ensuring that Plaintiffs remained under a continuing obligation to provide supplemental productions of such evidence to Legislative Leaders in a timely manner under Rule 26(e)(1)(A).

-46-

2023 municipal elections or the 2024 primary elections, poll workers who assisted voters with voting provisionally due to S.B. 824's photo identification requirement during the 2023 municipal elections or the 2024 primary elections, Julius Perry, Shelia Relette Brower, and individual voters (A) who voted provisionally using an ID Exception Form in the 2023 municipal elections, (B) who voted provisionally using the "Return with ID" option during the 2023 municipal elections, (C) who had to obtain one of the forms of ID accepted for voting under S.B. 824 during the 2023 municipal elections, and/or (D) who were unable to cast any ballot in the 2023 municipal elections due to the photo voter ID requirement of S.B. 824 as "witness[es] as required by Rule 26(a) [and] (e)," and Plaintiffs failed to show "th[at] failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). As a result, Plaintiffs "[are] not allowed to use th[ose] . . . witness[es] to supply evidence . . . at [their] trial." Id.

Plaintiffs also "fail[ed] to provide [a description by category and location of the categories of documents added/expanded in the Amended Supplemental Disclosures] as required by Rule 26(a) or (e)," id., and failed to show "th[at] failure was substantially justified or is harmless," id., except as to (1) documents and communications relating to the Elections Board's implementation of S.B. 824's photo voter ID requirements, (2) materials prepared by County Boards of Elections and third parties (including legislators

-47-

and third-party organizations) regarding the implementation of photo ID requirements, and (3) documents from the other newly added/expanded categories that were in Defendants' possession, custody, or control before March 20, 2024, as to which Plaintiffs' failure "is harmless," id. As a result, Plaintiffs "[are] not allowed to use th[ose documents other than those herein deemed harmless] . . . to supply evidence . . . at [their] trial," id.

IT IS THEREFORE ORDERED that the instant Motion (Docket Entry 236) is GRANTED IN PART AND DENIED IN PART, in that,

Plaintiffs shall not use as witnesses at trial any of the following: organizational representatives from Democracy North Carolina and Vote Riders, Tyler Daye, election officials who implemented S.B. 824 during the 2023 municipal elections or the 2024 primary elections, poll workers who assisted voters with voting provisionally due to S.B. 824's photo identification requirement during the 2023 municipal elections or the 2024 primary elections, Julius Perry, Shelia Relette Brower, and/or individual voters (A) who voted provisionally using an ID Exception Form in the 2023 municipal elections, (B) who voted provisionally using the "Return with ID" option during the 2023 municipal elections, (C) who had to obtain one of the forms of ID accepted for voting under S.B. 824 during the 2023 municipal elections, and/or (D) who were unable to cast any ballot in the 2023 municipal elections due to the photo voter ID requirement of S.B. 824; and

Plaintiffs shall not use as evidence at trial any items within the categories of documents added/expanded in the Amended Supplemental Disclosures, except (1) documents and communications relating to the Elections Board's implementation of S.B. 824's photo voter ID requirements, (2) materials prepared by County Boards of Elections and third parties (including legislators and third-party organizations) regarding the implementation of photo ID requirements, and (3) documents from the other newly added/expanded categories that were in Defendants' possession, custody, or control before March 20, 2024.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

April 29, 2024