# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| NORTH CAROLINA STATE CONFERENCE OF THE NAACP; *et al.*, | |
| *Plaintiffs*, | CASE NO. 1:18-cv-1034 |
| v. | |
| ALAN HIRSCH, in his official capacity as Chair of the North Carolina State Board of Elections; *et al.*, | **LEGISLATIVE DEFENDANTS' MEMORANDUM IN SUPPORT OF CONDITIONAL MOTION TO STAY PENDING APPEAL** |
| *Defendants*, | |
| and | |
| PHILIP E. BERGER, in his official capacity as President Pro Tempore of the North Carolina Senate, and TIMOTHY K. MOORE, in his official capacity as Speaker of the North Carolina House of Representatives, | |
| *Legislative Defendant Intervenors*. | |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ........................................................................................................... 1

QUESTION PRESENTED ................................................................................................ 3

STATEMENT OF FACTS ................................................................................................ 3

ARGUMENT .................................................................................................................. 4

I. *Purcell* Prohibits Altering Election Laws for the 2024 General Election. ...................... 4

    A. The status quo must remain with the 2024 general election close at hand. ........ 5

    B. Even a more relaxed version of *Purcell* requires a stay pending appeal. ........... 8

II. The Traditional Stay Factors Would Also Weigh in Defendants' Favor ...................... 10

CONCLUSION ............................................................................................................... 14

i

# TABLE OF AUTHORITIES

**Cases**                                                                                                        **Page**

*Andino v. Middleton*,
        141 S. Ct. 9 (2020) ................................................................................................5, 12, 13, 14

*Berger v. N.C. Conf. of the NAACP*,
        597 U.S. 179 (2022) ................................................................................................4, 9

*Coal. for TJ v. Fairfax Cnty. Sch. Bd.*
        No. 22-1280, 2022 WL 986994 (4th Cir. Mar. 31, 2022) ......................9, 10, 12, 13

*Crawford v. Marion Cnty. Election Bd.*,
        553 U.S. 181 (2008) ................................................................................................12

*Democratic Nat'l Comm. v. Wis. State Legislature*,
        141 S. Ct. 28 (2020) ................................................................................................1, 7, 12

*Fraser v. ATF*,
        No. 3:22-cv-410, 2023 WL 5617894 (E.D. Va. Aug. 30, 2023) ......................11, 12

*Holmes v. Moore*,
        886 S.E.2d 120 (N.C. 2023) ................................................................................4, 9

*Kadel v. Folwell*,
        No. 1:19-cv-272, 2022 WL 11166311 (M.D.N.C. Oct. 19, 2022) ........................11

*Long v. Robinson*,
        432 F.2d 977 (4th Cir. 1970) ................................................................................11

*Maryland v. King*,
        567 U.S. 1301 (2012) ................................................................................................12

*Merrill v. Milligan*,
        142 S. Ct. 879 (2022) ................................................................................1, 4, 5, 6, 8, 10

*Middleton v. Andino*,
        976 F.3d 403 (4th Cir. 2020) ................................................................................5, 12, 13, 14

*N.C. State Conf. of the NAACP v. Cooper*,
        430 F. Supp. 3d 15 (M.D.N.C. 2019) ................................................................8

*N.C. State Conf. of the NAACP v. McCrory*,
        182 F. Supp. 3d 320 (M.D.N.C. 2016) ................................................................2, 3

*N.C. State Conf. of the NAACP v. McCrory*,
        831 F.3d 204 (4th Cir. 2016) ................................................................................2, 3

*N.C. State Conf. of the NAACP v. Raymond*,
        981 F.3d 295 (4th Cir. 2020) ................................................................................3, 8, 9

*Nken v. Holder,*
    556 U.S. 418 (2009) ..................................................................................10, 11

*North Carolina v. League of Women Voters of N.C.,*
    574 U.S. 927 (2014) ..............................................................................................7

*North Carolina v. N.C. State Conf. of the NAACP,*
    137 S. Ct. 27 (2016)..............................................................................................7

*Perry v. Judd,*
    471 F. App'x 219 (4th Cir. 2012)........................................................................13

*Pierce v. N.C. State Bd. of Elections,*
    97 F.4th 194 (4th Cir. 2024)..............................................................1, 2, 5, 7, 12

*Project Vote/Voting for Am., Inc. v. Long,*
    275 F.R.D. 473 (E.D. Va. 2011) ........................................................................12

*Republican Nat'l Comm. v. Democratic Nat'l Comm.,*
    589 U.S. 423 (2020) ......................................................................................4, 13

*Reynolds v. Sims,*
    377 U.S. 533 (1964) ........................................................................................1, 2

*Robinson v. Callais,*
    144 S. Ct. 1171 (May 15, 2024) ......................................................................2, 5

*SEC v. Rex Venture Grp.,*
    No. 3:12-cv-519, 2017 WL 2979686 (W.D.N.C. July 12, 2017)...........................11

*United States v. Fourteen Various Firearms,*
    897 F. Supp. 271 (E.D. Va. 1995) ......................................................................11

*Wise v. Circosta,*
    978 F.3d 93 (4th Cir. 2020)..................................................................................5

**Rules and Constitutional Provisions**

FED. R. APP. P. 8(a)(1)...................................................................................................2

N.C. CONST. art. VI,
    § 2(4).................................................................................................................3
    § 3(2).................................................................................................................3

N.C. GEN STAT.
    § 163-166.40 ......................................................................................................7
    § 163-227.10 ......................................................................................................7

**Other Authorities**

State Bd. Defs.'-Appellants' Reply Br., *N.C. State Conf. of the NAACP v. Raymond*, No.
    20-1092, 2020 WL 4347165 (4th Cir. July 27, 2020), Doc. 103 .............................7

*11/06/2018 Official General Election Results – Statewide (Referenda)*, N.C. STATE BD. OF ELECTIONS, https://bit.ly/3zprNnL ............................................................5

iv

## INTRODUCTION

A "bedrock tenet of election law" is that, "[w]hen an election is close at hand, the rules of the road must be clear and settled." *Merrill v. Milligan*, 142 S. Ct. 879, 880-81 (Mem.) (2022) (Kavanaugh, J., concurring in grant of applications for stays). "[R]unning a statewide election is a complicated endeavor." *Democratic Nat'l Comm. v. Wis. State Legislature*, 141 S. Ct. 28, 31 (2020) (Kavanaugh, J., concurring in denial of application to vacate stay). The Supreme Court's "election-law precedents" therefore "establish (i) that federal district courts ordinarily should not enjoin state election laws in the period close to an election, and (ii) that federal appellate courts should stay injunctions when . . . lower federal courts contravene that principle." *Milligan*, 142 S. Ct. at 879 (Kavanaugh, J., concurring) (citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam)); *see also Pierce v. N.C. State Bd. of Elections*, 97 F.4th 194, 226 (4th Cir. 2024) (collecting examples). This *Purcell* principle against "late-in-the-day judicial alterations to state election laws" "not only prevents voter confusion but also prevents election administrator confusion—and thereby protects the State's interest in running an orderly, efficient election and in giving citizens (including the losing candidates and their supporters) confidence in the fairness of the election." *Democratic Nat'l Comm.*, 141 S. Ct. at 31 (Kavanaugh, J., concurring).

As explained in Legislative Defendants' proposed findings of fact and conclusions of law, the Court should find that S.B. 824 does not violate the Fourteenth or Fifteenth Amendments to the U.S. Constitution or Section 2 of the Voting Rights Act. But if the Court disagrees and enters judgment in Plaintiffs' favor, the Court should stay its judgment and any injunction against enforcement of S.B. 824 pending appeal because the 2024 general

1

election is already close at hand, and the "State's election machinery is already in progress." *Reynolds v. Sims*, 377 U.S. 533, 585 (1964). With absentee voting beginning just two months from now (and even closer to any decision entered in late summer or early fall), the Court should not belatedly enjoin enforcement of the election laws that North Carolina used in the 2023 municipal and 2024 primary elections. Indeed, the Supreme Court has already invoked *Purcell* to stay a district court ruling involving an Equal Protection Clause challenge in advance of Louisiana's November 2024 elections. *Robinson v. Callais*, 144 S. Ct. 1171, 1171 (Mem.) (May 15, 2024). *Purcell* likewise would make altering the rules for North Carolina's 2024 general election at this late date inequitable. North Carolina "candidates and voters alike are now entitled to the stability and sense of repose that engender trust and confidence in our elections." *Pierce*, 97 F.4th at 229. And the reason we are in this predicament is Plaintiffs' inexplicable decision to wait for a year after the Supreme Court's determination that Legislative Defendants were entitled to intervene to seek to get this case moving again. Plaintiffs cannot complain of the application of *Purcell* when they had a ready means to avoid it.

Enjoining enforcement of S.B. 824 for the 2024 general election would cause chaos and confusion. Legislative Defendants would immediately appeal such an injunction. As the Federal Rules require a party to "ordinarily move first in the district court for" a stay pending appeal, FED. R. APP. P. 8(a)(1), Legislative Defendants preemptively request that, if this Court enters judgment against Defendants or enjoins enforcement of S.B. 824, the Court enter a stay pending appeal without requiring bond under Federal Rule of Civil Procedure 62. *Cf. N.C. State Conf. of the NAACP v. McCrory*, 182 F. Supp. 3d 320, 526

2

(M.D.N.C. 2016) (invoking *Purcell* to extend pretrial injunction against enforcement of provisions in H.B. 589 for election two months away despite simultaneously ruling in favor of defendants), *rev'd on other grounds*, 831 F.3d 204 (4th Cir. 2016). If there is another change to S.B. 824, such change should be final and after the 2024 general election.

## QUESTION PRESENTED

If the Court enters judgment in Plaintiffs' favor, should it stay pending appeal the judgment and any injunction against enforcement of S.B. 824?

## STATEMENT OF FACTS

On November 6, 2018, the citizens of North Carolina amended the North Carolina Constitution to require that "[v]oters offering to vote in person shall present photographic identification before voting" and to direct the General Assembly to "enact general laws governing the requirements of such photographic identification, which may include exceptions." N.C. CONST. art. VI, § 2(4); *see also id.* § 3(2) (same). Compelled by this mandate, the General Assembly enacted implementing legislation—S.B. 824.

Plaintiffs filed suit challenging the law but waited nine months to seek a preliminary injunction. *See* Mot. for Prelim. Inj., Doc. 72 (Sept. 17, 2019). This Court held that Plaintiffs were unlikely to succeed on their VRA disparate impact claim "according to the evidence currently in the record" at the preliminary injunction stage. Prelim. Inj. Op., Doc. 120 at 52–53 (Dec. 31, 2019). And the Fourth Circuit ruled that Plaintiffs "fail[ed] to meet their burden of showing that the General Assembly acted with discriminatory intent in passing" S.B.824 once "the proper burden and the presumption of good faith are applied." *N.C. State Conf. of the NAACP v. Raymond*, 981 F.3d 295, 305 (4th Cir. 2020). The North

3

Carolina Supreme Court held that S.B.824 does not violate the North Carolina Constitution's Equal Protection Clause, under either the federal standard or the North Carolina standard. Meanwhile, this Court stayed further proceedings while the Supreme Court determined whether Legislative Defendants were entitled to intervene in this case. On June 23, 2022, the Supreme Court answered yes. *See Berger v. N.C. Conf. of the NAACP*, 597 U.S. 179 (2022). On June 9, 2023, Plaintiffs moved to lift the stay. *Holmes v. Moore*, 886 S.E.2d 120, 139–40 (N.C. 2023). North Carolina used S.B.824 in the 2023 municipal elections and the 2024 primary elections. Trial concluded on May 13, 2024.

## ARGUMENT

The Supreme "Court has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 424 (2020) (per curiam). The *Purcell* principle prohibits this Court from enjoining enforcement of S.B. 824 before the 2024 general election. The Fourth Circuit and the North Carolina Supreme Court have both allowed S.B. 824 to go into effect for North Carolina elections, and the law's status quo should remain until the completion of the appellate process. Both *Purcell* and the traditional stay factors weigh heavily in favor of a stay pending appeal.

## I.    *Purcell* Prohibits Altering Election Laws for the 2024 General Election.

The "traditional test for a stay does not apply (at least not in the same way) in election cases when a lower court has issued an injunction of a state's election law in the period close to an election." *Milligan*, 142 S. Ct. at 880 (Kavanaugh, J., concurring). In such circumstances, the Supreme Court's *Purcell* principle applies and requires a stay of

4

federal court injunctions that contravene it. *Id.* (collecting examples). *Purcell* applies here.

### A. The status quo must remain with the 2024 general election close at hand.

The *Purcell* principle prohibits courts from engaging in "[l]ate judicial tinkering with election laws" before the 2024 general election. *Pierce*, 97 F.4th at 226 (quoting *Milligan*, 142 S. Ct. at 880–81 (Kavanaugh, J., concurring)). The 2024 general election is already "close at hand." *Id.* The Supreme Court has stayed injunctions of election laws "when absentee voting in the primary elections was set to begin nine weeks later," *id.* (citing *Milligan*, 142 S. Ct. at 879), and has *already* stayed a lower court's injunction of Louisiana law in advance of its November 2024 congressional elections, *Robinson*, 144 S. Ct. at 1171.

North Carolina is squarely within the time period when the *Purcell* principle prohibits disrupting the status quo for the 2024 general election. The "State legislature's decision" to implement the state constitutional amendment by enacting S.B. 824 is the status quo. *Andino v. Middleton*, 141 S. Ct. 9, 10 (2020) (Kavanaugh, J., concurring in grant of application for stay) (citing *Middleton v. Andino*, 976 F.3d 403, 404–07 (4th Cir. 2020) (en banc) (Wilkinson & Agee, J.J., dissenting from denial of stay), *rev'd*, 141 S. Ct. 9 (granting stay)); *see also Wise v. Circosta*, 978 F.3d 93, 98 (4th Cir. 2020) (en banc) (Wynn, J., denying injunctive relief) ("[I]t is not federal court decisions, but state decisions, that establish the status quo.").

Six years ago, 55.49% of North Carolina voters voted in favor of the voter-ID amendment. *See 11/06/2018 Official General Election Results – Statewide (Referenda)*, N.C. STATE BD. OF ELECTIONS, https://bit.ly/3zprNnL. The General Assembly promptly

5

enacted S.B. 824 to implement the people of North Carolina's command. Although injunctions initially prohibited North Carolina from enforcing S.B. 824 and thus frustrated the will of the people and the democratically accountable General Assembly, the law governed the 2023 municipal elections and 2024 primaries. Approximately 2 million North Carolinians went to the polls in those elections. Over 99.9% of them did so with qualifying ID. North Carolina voters are familiar with and capable of voting with S.B. 824 in effect.

Enjoining enforcement of S.B. 824 before the 2024 general election would undoubtedly "lead to disruption," *Milligan*, 142 S. Ct. at 881 (Kavanaugh, J., concurring), and cause both "voter confusion" and "election administrator confusion," *Democratic Nat'l Comm.*, 141 S. Ct. at 31 (Kavanaugh, J., concurring). As explained in Legislative Defendants' proposed findings of fact and conclusions of law, the Court heard testimony regarding how the State Board, Plaintiff organizations, and numerous other groups have already educated North Carolina voters about how S.B. 824 applies to North Carolina's elections. Yet as Marcus Bass (the executive director of Advance Carolina and the deputy director of the North Carolina Black Alliance) testified, swift changes in election policy hinder voter engagement. 5/9/24 Tr. at 1043:12-13, 1058:22-24, 1059:24-1060:4, 1083:2-11.

Attempting to turn the State's election apparatus on a dime would also impose serious costs and burdens on the hardworking public servants at the State Board of Elections and County Boards of Elections. The voter-ID law, for example, applies to absentee voting. "For the November 5, 2024 general election, absentee voting begins on September 6, 2024, with in-person early voting taking place from October 17, 2024 to

6

November 2, 2024." State Bd. Defs.' Resp. to Pls.' Mot. to Set Trial Date, Doc. 219 at 3 (Nov. 2, 2023) (citing N.C. GEN. STAT. §§ 163-166.40, 163-227.10); *see also* 5/10/24 Tr. at 1112:3-5. Ballots cannot be instantaneously printed and prepared for mailing. As the State Board represented to the Court, the largest counties "need to know that they need to alter their absentee ballots by, essentially, July 1st." 5/9/24 Tr. at 1087:22-1088:2. That drop-dead date has already arrived. "[A]bsentee voting in the" 2024 general election is "set to begin nine weeks" from now, so *Purcell* squarely applies. *Pierce*, 97 F.4th at 226.

That it is too late to alter North Carolina's election laws should come as no surprise. When the preliminary injunction appeal was before the Fourth Circuit in 2020, State Board Defendants represented that "early July" was the latest possible date for changing North Carolina's election laws that would still give election officials sufficient "lead-time for designing the ballot envelope, for procuring ballots, [] for printing them," for "updat[ing] the code in the State Board's information management system," and for "carry[ing] out voter education and training" of poll workers. State Bd. Defs.'-Appellants' Reply Br., *N.C. State Conf. of the NAACP Raymond*, No. 20-1092, 2020 WL 4347165, at *23-24, *29 (4th Cir. July 27, 2020), Doc. 103. "Even seemingly innocuous late-in-the-day judicial alterations to state election laws can interfere with administration of an election and cause unanticipated consequences." *Democratic Nat'l Comm.*, 141 S. Ct. at 31 (Kavanaugh, J., concurring). And belatedly enjoining S.B. 824 would not be an innocuous change. *Cf. North Carolina v. N.C. State Conf. of the NAACP*, 137 S. Ct. 27, 28 (2016) (Roberts, C.J., and Kennedy, Alito, and Thomas, J.J., indicating they would grant a stay); *North Carolina v. League of Women Voters of N.C.*, 574 U.S. 927 (Mem.) (2014) (staying preliminary

7

injunction of H.B. 589).

Even in March of this year, the Fourth Circuit applied *Purcell* to affirm the denial of an injunction of North Carolina's Senate maps because the "2024 North Carolina Senate election is well underway." *Pierce*, 97 F.4th at 226. The Fourth Circuit refused to require the State Board "to generate, proof, and distribute new ballots" even if North Carolina could somehow complete its primaries and make all the necessary modifications by "July or August" in advance of the November general election. *Id.* at 227. *Purcell* prohibits federal courts from "triggering" such a "cascade of election chaos." *Id.*

**B.  Even a more relaxed version of *Purcell* requires a stay pending appeal.**

Straining against *Purcell*, Plaintiffs might argue that "a relaxed version of the *Purcell* principle" ought to apply. *Merrill*, 142 S. Ct. at 881 (Kavanaugh, J., concurring). But Plaintiffs cannot satisfy even a relaxed version of *Purcell* because they cannot even establish "at least" all of the following: (i) "the underlying merits are entirely clearcut in favor of the" Plaintiffs; (ii) the Plaintiffs "would suffer irreparable harm absent the injunction"; (iii) the Plaintiffs have "not unduly delayed" in pursuing their claims; and (iv) "the changes in question are at least feasible before the election without significant cost, confusion, or hardship." *Id.*; *see also Pierce*, 97 F.4th at 229 (ruling in the alternative that "[t]hose prerequisites have not been shown here" by plaintiffs).

*First*, the underlying merits are certainly not entirely clearcut in Plaintiffs' favor. On a similar record, this Court already ruled that Plaintiffs were unlikely to prevail on their Section 2 claim, *N.C. State Conf. of the NAACP v. Cooper*, 430 F. Supp. 3d 15, 50–51 (M.D.N.C. 2019), and the Fourth Circuit held that Plaintiffs were unlikely to prevail on

8

their constitutional claims, *Raymond*, 981 F.3d 295. The North Carolina Supreme Court also upheld S.B. 824 against an Equal Protection challenge, even under the *Arlington Heights* framework. *Holmes*, 886 S.E.2d at 139.

*Second*, Plaintiffs would not suffer irreparable harm. Plaintiffs have failed to identify a single North Carolina voter who cannot vote under S.B. 824, let alone a member of their organizations. Plaintiffs no doubt oppose voter ID in all its forms. 5/6/24 Tr. at 143:17-22. But Plaintiffs do "not represent a class or putative class of" voters who will be unable to vote while S.B. 824 is in effect. *Coal. for TJ v. Fairfax Cnty. Sch. Bd.*, No. 22-1280, 2022 WL 986994, at *6 (4th Cir. Mar. 31, 2022) (Heytens, J., concurring in grant of stay pending appeal). Plaintiffs have failed to justify throwing North Carolina "into disarray for the next several months" when the vast majority of voters had no problem complying with S.B. 824 during the 2023 municipal and 2024 primary elections. *Id.*

*Third*, Plaintiffs have repeatedly and unduly delayed these proceedings. Plaintiffs waited nine months after filing this case to ask this Court to preliminarily enjoin enforcement of S.B. 824. *See* Mot. for Prelim. Inj., Doc. 72. That delay resulted in this Court informing the parties three business days before the State Board's drop-dead date for the March 2020 primaries that the Court would issue a preliminary injunction. *See* Dec. 26, 2019 Docket Entry; Prelim. Inj. Op., Doc. 120 (Dec. 31, 2019). The Fourth Circuit did not reverse that preliminary injunction until after the 2020 general election. *Raymond*, 981 F.3d 295. About a year-and-a-half later, the U.S. Supreme Court ruled that Legislative Defendants were "entitled to intervene in this litigation." *Berger*, 597 U.S. at 200; *see* Mandate, Doc. 200 (July 27, 2022). Proceedings in this case, however, remained stayed for

9

another year until Plaintiffs filed a Motion to Lift Stay and for a Status Conference on June 9, 2023, Doc. 202.

Even then Plaintiffs did not request a trial date. Instead, they attempted to obtain discovery that they failed to request years ago. *See* Order Denying Pls.' Mot. to Reopen Discovery, Doc. 210 (Sept. 12, 2023). Plaintiffs did not request a trial date until October 2023. Mot. to Set a Trial Date, Doc. 215. Plaintiffs' proposed February 2024 trial date was unrealistic, especially as they continued to seek the reopening of discovery, and the summary judgment motion remained pending. *See* Legis. Defs.' Resp. to Pls.' Mot. to Set a Trial Date, Doc. 218 (Oct. 18, 2023). Plaintiffs unduly delayed and should not be rewarded with yet another injunction shielded from appellate review until after a general election.

*Fourth*, for the reasons explained above, the changes in question are not feasible before the 2024 general election without significant cost, confusion, or hardship. Enjoining enforcement of S.B. 824 before the 2024 general election would result in a tremendous expenditure of North Carolina election officials' limited resources if they were forced to scramble to reeducate voters, poll observers, and staff while simultaneously redesigning and reprinting ballots, envelopes, and instructional materials. *Purcell* applies.

## II.      The Traditional Stay Factors Would Also Weigh in Defendants' Favor.

The *Purcell* principle is just one equitable bar to relief before the 2024 general election. The "traditional test for a stay" pending appeal, *Milligan*, 142 S. Ct. at 880 (Kavanaugh, J., concurring), would also weigh in favor of a stay, even if the 2024 general election were not already pending or if the Court enters an injunction after the election. *See*

10

*Coal. for TJ*, 2022 WL 986994, at *1 (per curiam) (identifying *Nken v. Holder*, 556 U.S. 418 (2009), as the applicable standard and granting stay pending appeal).

That four-part inquiry considers (1) "whether the applicant has made a strong showing that he is likely to succeed on the merits"; (2) "whether the applicant will be irreparably injured absent a stay"; (3) "whether issuance of the stay will substantially injure the other parties interested in the proceeding"; and (4) "where the public interest lies." *Nken*, 556 U.S. at 434 (cleaned up); *see Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970). District courts in the Fourth Circuit frequently "balance these factors." *Fraser v. ATF*, No. 3:22-cv-410, 2023 WL 5617894, at *2 n.2 (E.D. Va. Aug. 30, 2023) (granting stay); *see SEC v. Rex Venture Grp.*, No. 3:12-cv-519, 2017 WL 2979686, at *2 (W.D.N.C. July 12, 2017) (granting stay "in the absence of making a strong showing that" applicant "is likely to succeed on the merits" (quotation marks omitted)); *see also Kadel v. Folwell*, No. 1:19-cv-272, 2022 WL 11166311, at *2 (M.D.N.C. Oct. 19, 2022) (Biggs, J.) (explaining different approaches to the "four-factor balancing test").

*First*, even if the Court does not rule in Defendants' favor on the merits, Defendants still have made a strong showing on the merits. This factor "does not require the trial court to change its mind or conclude that its determination on the merits was erroneous." *United States v. Fourteen Various Firearms*, 897 F. Supp. 271, 273 (E.D. Va. 1995) (quotation omitted). "Rather, the court must determine whether there is a strong likelihood that the issues presented on appeal could be rationally resolved in favor of the party seeking the stay." *Id.* As the prior rulings of this Court, the Fourth Circuit, and the North Carolina Supreme Court all demonstrate, rational minds could resolve the issues in favor of

11

Legislative Defendants and uphold S.B. 824.

The law "is *race neutral*" and thus "not constitutionally suspect." *Coal. for TJ*, 2022 WL 986994, at *1 (Heytens, J., concurring in grant of stay pending appeal) (citing *Raymond*, 981 F.3d at 302). As explained in Legislative Defendants' proposed findings of fact and conclusions of law, "over 30 States have long enforced" voter-ID laws, many even stricter than S.B. 824. *Democratic Nat'l Comm.*, 141 S. Ct. at 28 (Gorsuch, J., concurring in denial of application to vacate stay); *see, e.g.*, *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181 (2008) (upholding Indiana's photo voter-ID law). "[E]ven if an election were not a few weeks away," North Carolina's "law is commonplace and eminently sensible," so this factor would weigh in the State's favor. *Middleton*, 976 F.3d at 405 (Wilkinson & Agee, J.J., dissenting from denial of stay), *rev'd*, 141 S. Ct. 9 (granting stay).

Moreover, this is a "substantial case on the merits" with the other factors weighing in favor of a stay. *Project Vote/Voting for Am., Inc. v. Long*, 275 F.R.D. 473, 474 (E.D. Va. 2011) (granting stay); *see also Fraser*, 2023 WL 5617894, at *3 ("In assessing this factor, '[m]any courts also take into account that the case raises substantial difficult or novel legal issues meriting a stay.'" (alteration in original) (quoting 11 ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. JURIS. § 2904 (3d ed. 2021)).

*Second*, the State of North Carolina would be irreparably injured absent a stay. "Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). Therefore, "[e]njoining North Carolina from enforcing its duly enacted" voter-ID law "would inflict a form of irreparable injury." *Pierce*, 97 F.4th

12

at 225 (cleaned up). Plaintiffs of course disagree with S.B. 824 as a policy matter and oppose any form of photo voter-ID. But the people of North Carolina and their elected representatives disagree, and thwarting the will of the people would inflict irreparable injury on the State.

*Third*, a stay would not substantially injure Plaintiffs but would avoid injury to State Board Defendants and other interested election officials. As explained above and in Legislative Defendants' proposed findings of fact and conclusions of law, Plaintiffs have failed to identify a single North Carolina voter who cannot vote under S.B. 824, let alone a member of their organizations. Plaintiffs are groups that do not urgently need relief. *See Coal. for TJ*, 2022 WL 986994, at *6 (Heytens, J., concurring). State election officials successfully implemented S.B. 824 in the 2023 municipal and 2024 primary elections. By the General Assembly's design, "[t]his law is not burdensome to" Plaintiffs or to "[m]ost" North Carolina voters. *Middleton*, 976 F.3d at 406 (Wilkinson & Agee, J.J., dissenting from denial of stay), *rev'd*, 141 S. Ct. 9 (granting stay). Plus, "equity ministers to the vigilant, not to those who," like Plaintiffs, "sleep upon their rights." *Perry v. Judd*, 471 F. App'x 219, 224 (4th Cir. 2012) (cleaned up).

*Fourth*, the public interest weighs against the "judicially created confusion," *Republican Nat'l Comm.*, 589 U.S. at 425, of preventing North Carolina from enforcing a law designed to implement a state constitutional amendment, protect the integrity of North Carolina's elections, increase public confidence in elections, and bring North Carolina's election laws in line with other states. S.B. 824 should remain in place unless and until the last appellate court to decide the case "finally and definitively" rules it unlawful.

13

*Middleton*, 976 F.3d at 407 (Wilkinson & Agee, J.J., dissenting from denial of stay), *rev'd*, 141 S. Ct. 9 (granting stay). The traditional stay factors each weigh in Legislative Defendants' favor and, when viewed collectively, strongly weigh in favor of staying any injunction pending appeal.

## CONCLUSION

If the Court enters judgment in Plaintiffs' favor, Legislative Defendants respectfully ask the Court to stay pending appeal its judgment and any injunction against enforcement of S.B. 824.

Dated: July 1, 2024

/s/ Nicole J. Moss
Nicole J. Moss (State Bar No. 31958)
COOPER AND KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 220-9600
Fax: (202) 220-9601
nmoss@cooperkirk.com

*Local Civil Rule 83.1 Counsel*
*for Legislative Defendants*

/s/ David H. Thompson
David H. Thompson
Peter A. Patterson
Clark L. Hildabrand
Kate Hardiman Rhodes
COOPER AND KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 220-9600
Fax: (202) 220-9601
dthompson@cooperkirk.com

*Counsel for Legislative*
*Defendants*

14

**CERTIFICATE OF WORD COUNT**

Pursuant to Local Rule 7.3(d)(1), the undersigned counsel hereby certifies that the foregoing Memorandum, including, body, headings, and footnotes, contains 3,882 words as measured by Microsoft Word.

/s/ Nicole J. Moss
Nicole J. Moss
*Counsel for Legislative*
*Defendants*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that, on July 1, 2024, I electronically filed the foregoing Memorandum with the Clerk of the Court using the CM/ECF system which will send notification of such to all counsel of record in this matter.

/s/ Nicole J. Moss
Nicole J. Moss
*Counsel for Legislative
Defendants*
