# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA

NORTH CAROLINA STATE
CONFERENCE OF THE NAACP, *et al.*,

        *Plaintiffs,*

    v.

ALAN HIRSCH, in his official capacity as
Chair of the North Carolina State Board of
Elections, *et al.*,

        *Defendants,*

    and

PHILLIP E. BERGER, in his official capacity
as President Pro Tempore of the Senate,
*et. al*,

*Legislative Defendants-Intervenors.*

No. 1:18-cv-01034

**PLAINTIFFS' RESPONSE IN
OPPOSITION TO LEGISLATIVE
DEFENDANTS' MOTION TO STAY
PENDING APPEAL**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................... 1

PROCEDURAL HISTORY ............................................................................. 2

ARGUMENT ..................................................................................................... 4

I.      Legislative Defendants' Motion Should Be Denied as Premature .......................... 4

II.     Legislative Defendants Have Not Satisfied the Standard for a Stay Pending Appeal ...................................................................................................................... 5

      A.      Legislative Defendants Fail to Demonstrate a Strong Showing of Likelihood of Success on the Merits ............................................................ 6

      B.      Legislative Defendants Cannot be Irreparably Harmed by a Ruling for Plaintiffs ......................................................................................................... 8

      C.      The Public Interest Weighs Against Granting a Stay .................................... 9

III.    *Purcell* Does Not Prevent this Court from Enjoining S.B. 824. ............................ 9

      A.      The Trial Evidence Confirmed that Enjoining S.B 824 Will Not Lead to Voter or Administrator Confusion ............................................................. 12

      B.      Enjoining S.B. 824 Will Not Make the Election Impossible to Administer 14

      C.      Plaintiffs Have Diligently Litigated This Case ........................................... 18

CONCLUSION ................................................................................................. 20

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Berger v. N.C. Conf. of the NAACP,*
597 U.S. 179 (2022).................................................................................................. 2

*Democratic Nat'l Comm. v. Wisconsin State Legislature,*
141 S. Ct. 28 (2020) ............................................................... 9, 10, 11, 14, 18

*Furr v. Town of Swansea,*
594 F. Supp. 1543 (D.S.C. 1984) .................................................................... 7

*Holmes v. Moore,*
840 S.E.2d 244 (N.C. App. 2020) ................................................................ 18

*Holmes v. Moore,*
886 S.E.2d 120 (N.C. 2023) ............................................................................ 2

*Kipke v. Moore,*
695 F. Supp. 3d 638 (D. Md. 2023) ............................................................... 7

*League of Women Voters of N.C. v. North Carolina,*
769 F.3d 224 (4th Cir. 2014) .......................................................................... 8

*Legend Night Club v. Miller,*
637 F.3d 291 (4th Cir. 2011) ....................................................................... 7, 8

*Mayo v. Fed. Nat'l Home Loan Mortg. Corp.,*
2015 WL 11112409 (E.D. Va. Mar. 31, 2015), *aff'd* 615 F. App'x 148
(4th Cir. 2015)..................................................................................................... 4

*McCrory v. Harris,*
577 U.S. 1129 (2016)............................................................................... 10, 11

*Merrill v. Milligan,*
142 S. Ct. 879 (2022) ............................................................. 9, 10, 11, 13, 18

*N.C. State Conf. of the NAACP v. Raymond,*
981 F. 3d 295 (4th Cir. 2020) .......................................................................... 2

ii

*Nken v. Holder*,
   556 U.S. 418 (2009) ........................................................................... 5, 6, 7, 8

*North Carolina v. N.C. State Conf. of the NAACP*,
   137 S. Ct. 27 (2016) ................................................................................. 10

*O'Brien v. Appomattox County*,
   2002 WL 31663226 (W.D. Va. Nov. 15, 2002) .......................................... 5

*Purcell v. Gonzalez*,
   549 U.S. 1 (2006) ............................................................................ *passim*

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*,
   589 U.S. 423 (2020) ................................................................................. 11

*Roman v. Jan-Pro Franchising, Int'l Inc.*,
   2023 U.S. Dist. LEXIS 146471 (N.D. Cal. Aug. 21, 2023) .......................... 5

*Shuffle Master, Inc. v. Awada*,
   2008 WL 11388624 (D. Nev. May 2, 2008) ................................................ 5

*Tate & Lyle Americas LLC v. Glatt Air Techs. Inc.*,
   2016 WL 9710008 (C.D. Ill. Aug. 24, 2016) ............................................... 5

*United States v. Charleston Cnty., S.C.*,
   365 F.3d 341 (4th Cir. 2004) ..................................................................... 6

*United States v. Hall*,
   664 F.3d 456 (4th Cir. 2012) ..................................................................... 6

*Veasey v. Perry*,
   135 S. Ct. 9 (2014) .................................................................................... 17

*Williams v. Martorello*,
   59 F.4th 68 (4th Cir. 2023) ........................................................................ 6

## **Other Authorities**

Local Rule 40.1(a) ................................................................................... 3

# INTRODUCTION

In the hypothetical world that Legislative Defendants ask the Court to envision, the Court has issued a judgment in Plaintiffs' favor prior to the November 2024 election, enjoining further implementation of the challenged provisions of S.B. 824. That judgment would also likely consist of detailed findings of fact and conclusions of law, defining Legislative Defendants' discriminatory intent in crafting S.B. 824 and its devastating discriminatory impact on minority voters' exercise of their fundamental rights. By asking the Court to stay a judgment that has not yet issued, though, Legislative Defendants have inexplicably put the cart before the horse.

Asking the Court to engage in these hypotheticals is bizarre considering that "deference to the discretion of the District Court" is at the heart of *Purcell v. Gonzalez*, 549 U.S. 1, 5 (2006), the case central to Legislative Defendants' principal argument. Even stranger, Legislative Defendants barely discuss the legal standard for a stay pending appeal and do not attempt to show why that standard is met. Equally puzzling is Legislative Defendants' near total failure to engage with the specific evidence of *this* case or the fact-specific aspect of *Purcell* in their brief. Instead, they offer assertions in an abstract application of *Purcell*, which they present as an inflexible, per se bar to the enjoinment of any election laws—even patently discriminatory and unconstitutional laws—in an amorphous and growing period prior to an election, without reference to any findings by the Court and irrespective of the risk of disenfranchisement of eligible voters.

That view of *Purcell* and related caselaw is wrong. *Purcell* is not an absolute, and unlike other cases involving stays of lower court orders that required redrawn maps or massive campaigns of fresh voter education close to an election, unrebutted evidence shown at trial in this case demonstrated that judgment for Plaintiffs here would alleviate rather than exacerbate confusion for voters and election officials alike, satisfying the core requirements of the *Purcell* principle.

Because any consideration of the merits of a stay necessarily requires considering the District Court's findings of fact and conclusions of law, Legislative Defendants' motion must also be denied as unripe. But even if the Court evaluates the motion on the merits prior to issuing a judgment, the motion should be denied because Legislative Defendants fail to identify, on the facts of this case, any legal basis for the stay they request.

## PROCEDURAL HISTORY

On December 19, 2018, the North Carolina General Assembly overrode Governor Roy Cooper's veto, and S.B. 824 became law.[1] *See* PX546 (Senate Bill 824 Bill History).[2] Plaintiffs filed suit the next day, challenging multiple provisions of S.B. 824, including its photo voter ID requirements. ECF No. 1. This Court entered a preliminary injunction on December 31, 2019, ECF No. 120, which the Fourth Circuit reversed on December 2, 2020,

---

[1] The procedural history of this matter is set forth fully in Plaintiffs' Proposed Findings of Fact and Conclusions of Law ("PFOFCOL"), ECF No. 339, but for the purposes of this motion, the most relevant procedural history is set forth herein.

[2] Also available at https://www.ncleg.gov/BillLookup/2017/S824.

2

*N.C. State Conf. of the NAACP v. Raymond*, 981 F. 3d 295 (4th Cir. 2020). On June 23, 2022, the Supreme Court held that Legislative Defendants had the right to intervene in this case. *See Berger v. N.C. Conf. of the NAACP*, 597 U.S. 179 (2022). On April 28, 2023, the North Carolina state Supreme Court reversed its own prior ruling, allowing S.B. 824 to take effect. *Holmes v. Moore*, 886 S.E.2d 120 (N.C. 2023). Once the state court injunctions were vacated, Plaintiffs requested that this Court lift its own stay on June 9, 2023, ECF No. 202; the stay was formally lifted on July 26, 2023. On October 12, 2023, Plaintiffs requested a trial date in February 2024—the earliest possible date permitted under Local Rule 40.1(a). ECF No. 215. Defendants opposed this trial date, arguing for a later trial due to pending motions and the March 5, 2023 presidential primary election. *See* ECF Nos. 218, 219. On February 12, 2024, the court set a trial starting May 6, 2024. ECF No. 229.

The Court conducted a bench trial May 6-13, 2024. Over six days, Plaintiffs presented 20 witnesses, and the Court admitted 593 exhibits; Defendants did not call any witnesses. On July 1, 2024, the parties submitted extensive post-trial findings of fact and conclusions of law. *See* ECF Nos. 335, 338, 339. The same day, Legislative Defendants filed the instant motion, arguing that "[i]f the Court enters judgment in Plaintiffs' favor," it should stay its own judgment pending appeal. Legislative Defendants' Memorandum in Support of Conditional Motion to Stay Pending Appeal ("LD Mem."), ECF No. 337, at 3.

3

# ARGUMENT

Legislative Defendants' motion for a stay pending appeal should be denied because (1) it is premature, requiring Plaintiffs to oppose it in the abstract; (2) Legislative Defendants fail to meet the standard for a stay pending appeal; and (3) enjoining S.B. 824 would not confuse voters or unduly burden election administrators, so the *Purcell* principle does not apply.

## I.  Legislative Defendants' Motion Should Be Denied as Premature

Evaluation of a motion to stay pending appeal depends on an analysis of the Court's judgment that is sought to be stayed.  *See Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006) (vacating appellate order that failed to fully account for district court's findings of fact). During a six-day trial, the Court heard testimony from 20 witnesses (all submitted by Plaintiffs) and admitted 593 exhibits, and the parties submitted comprehensive post-trial findings of fact and conclusions of law.

Under *Purcell*, any motion for a stay must be based on the Court's specific conclusions from this comprehensive record, which may include findings related to voter confusion and the burdens of election administration, or others signaling Legislative Defendants' likelihood of success or failure on the merits of a future appeal.  *See Purcell*, 549 U.S. at 4-5.  Without those findings, the present motion can be considered only in the abstract.  While this detail perhaps matters little to Legislative Defendants, who called no witnesses at trial and include just one (misleading) trial record citation in their brief,

4

Plaintiffs' ability to oppose Legislative Defendants' motion, and any court's ability to substantively evaluate it, are hamstrung by its hypothetical posture.

Because no such judgment has been entered, and no appeal has been filed, Legislative Defendants' motion is procedurally improper, unripe, and should be denied. *See, e.g. Mayo v. Fed. Nat'l Home Loan Mortg. Corp.*, 2015 WL 11112409, at *3 (E.D. Va. Mar. 31, 2015), *aff'd* 615 F. App'x 148 (4th Cir. 2015) (denying Mayo's motion for stay pending appeal as premature "because Mayo has no right of appeal until the entry of judgment"); *Roman v. Jan-Pro Franchising, Int'l Inc.*, 2023 U.S. Dist. LEXIS 146471, at *5 (N.D. Cal. Aug. 21, 2023) ("it is premature to consider a stay pending appeal [where] no appeal has yet been filed"); *Tate & Lyle Americas LLC v. Glatt Air Techs. Inc.*, 2016 WL 9710008, at *1 (C.D. Ill. Aug. 24, 2016) (same); *Shuffle Master, Inc. v. Awada*, 2008 WL 11388624, at *4 (D. Nev. May 2, 2008) (same). Legislative Defendants cite to no authority for their novel proposition that a district court should grant a stay of an order it has not yet issued.

In an abundance of caution, Plaintiffs respond specifically to Legislative Defendants' legal arguments below, while reserving all rights to seek supplemental opposition briefing once the Court issues its findings of fact and conclusions of law.

## II. Legislative Defendants Have Not Satisfied the Standard for a Stay Pending Appeal

"The burden on a party requesting a stay is a heavy one[.]" *O'Brien v. Appomattox County*, 2002 WL 31663226, at *2 (W.D. Va. Nov. 15, 2002) (citing Wright, Miller &

5

Kane, 11 *Fed. Prac. & Proc.* § 2904 at 503-04, 513-14 (1995)); *accord Nken v. Holder*, 556 U.S. 418, 433 (2009). For Legislative Defendants to obtain a stay, they must (1) make a "strong showing that [they are] likely to succeed on the merits"; and demonstrate (2) that they "will be irreparably injured absent a stay"; (3) that other parties would not be irreparably injured by the issuance of a stay, and (4) that a stay would serve the public interest. *Nken*, 556 U.S. at 434 (citing *Hilton v. Braunskill*, 481 U.S. 770, 777 (1987)). Courts place the greatest weight on the first two factors. *Id.* Here, Legislative Defendants' motion should be denied because they have not shown a likelihood of success on the merits of their appeal, they have not demonstrated irreparable harm stemming from the hypothetical enjoinment of an unconstitutional and patently discriminatory law, and a stay—which, the trial evidence showed, would disenfranchise hundreds of thousands of eligible North Carolina voters—is not in the public interest.

A. Legislative Defendants Fail to Demonstrate a Strong Showing of Likelihood of Success on the Merits

To qualify for a stay pending appeal, Legislative Defendants must make "a strong showing that [they] are likely to succeed on the merits" of that appeal. *Nken*, 556 U.S. at 434. This requires Legislative Defendants to muster evidence sufficient to overcome a tremendously deferential standard of appellate review. As Justice Alito recently wrote in *Brnovich v. Democratic National Committee*, "[i]f the district court's view of the evidence is plausible in light of the entire record" after trial, "an appellate court may not reverse even if it is convinced that it would have weighed the evidence differently in the first instance."

594 U.S. 647, 687 (2021). *See also Williams v. Martorello*, 59 F.4th 68, 86 (4th Cir. 2023) (same); *United States v. Hall*, 664 F.3d 456, 462 (4th Cir. 2012) (same); *United States v. Charleston Cnty.*, 365 F.3d 341, 349 (4th Cir. 2004) (affirming district court's post-trial findings of vote dilution, in part because "our function is not to reweigh the evidence presented to the district court."). To win on appeal, Legislative Defendants will have to persuade the court that this Court's findings were clearly erroneous, not just "disputable." *Charleston Cnty.*, 365 F.3d at 349. And to qualify for a stay pending appeal, Legislative Defendants must make a "strong showing that [they] are likely to" demonstrate clear error. *Nken*, 556 U.S. at 434.

Legislative Defendants do not come close to meeting this standard. Instead, Legislative Defendants posit that "rational minds could resolve the issues" in their favor and that S.B. 824 is a "race neutral" law. LD Mem. at 11-12. This falls well short of a *strong* showing that an appeals court is *likely* to determine that this Court's findings in Plaintiffs' favor were *clearly* erroneous. Indeed, Legislative Defendants' concession that reasonable minds can differ about the racial neutrality and constitutionality of S.B. 824 demonstrates that they cannot establish clear error, nor consequently likelihood of success on the merits, which is fatal to their argument for a stay. In their papers, Legislative Defendants have not pointed to any flaw or clear error in the District Court's judgment, nor could they, because no judgment has yet been issued.

7

B.  Legislative Defendants Cannot be Irreparably Harmed by a Ruling for Plaintiffs

In their motion, Legislative Defendants have not pointed to any trial evidence demonstrating they will experience irreparable harm if the Court issues a ruling in Plaintiffs' favor.  Nor can they—the Legislative Defendants chose not to testify and chose to present no evidence at trial.  Even if the Legislative Defendants had presented some such evidence, though, as a matter of law, "the State is not harmed by an injunction preventing it from enforcing unconstitutional laws."  *Kipke v. Moore*, 695 F. Supp. 3d 638, 663 (D. Md. 2023) (citing *Legend Night Club v. Miller*, 637 F.3d 291 (4th Cir. 2011)); *Furr v. Town of Swansea*, 594 F. Supp. 1543, 1552 (D.S.C. 1984) (defendant town "can suffer no harm" by issuance of a preliminary injunction enjoining an unconstitutional law, "because they have no right to the enforcement" of such a law).  To the contrary, "[c]ourts routinely deem" the enforcement of "restrictions on fundamental voting rights" to lead to "irreparable injury."  *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014).  Thus, it defies logic to conclude, as Legislative Defendants contend without evidentiary support, that *any* limitation on the enforcement of a state law will cause the state "irreparable injury," LD Mem. at 12.

Legislative Defendants' additional argument that denial of a stay—i.e. allowing the State Board of Elections ("SBOE") to cease enforcement of an onerous law it already has trouble enforcing—will injure the *SBOE*, who did not join Legislative Defendants' motion, is similarly unavailing.  Legislative Defendants cite no evidence from the trial record supporting this contention.  And as discussed in Section III, the undisputed trial evidence

8

demonstrated that enjoining S.B. 824 will not lead to voter confusion or prevent the SBOE from efficiently administering elections.

### C. The Public Interest Weighs Against Granting a Stay

"Upholding constitutional rights is in the public interest." *Legend Night Club*, 637 F.3d at 303. Whatever generalized interest the State has in broadly enforcing its laws is outweighed by North Carolinians' "*fundamental* political right to vote." *Purcell*, 549 U.S. at 4 (emphasis added). If the Court finds that S.B. 824 unlawfully burdens minority voters' ability to cast their ballots, threatening to disenfranchise hundreds of thousands of voters, the public interest would be supported by denying Legislative Defendants' motion.

Because, following this Court's findings in Plaintiffs' favor (which is the premise of Legislative Defendants' motion), Legislative Defendants will be unable to make a strong showing that they are likely to succeed on the merits of an appeal; because they cannot be irreparably harmed by an injunction barring enforcement of an unconstitutional or unlawful law; because hundreds of thousands of eligible voters would be denied their right to vote in the November elections by a stay; and because upholding constitutional rights is in the public interest; Legislative Defendants are not entitled to a stay pending appeal, and their motion should be denied.

### III. *Purcell* Does Not Prevent this Court from Enjoining S.B. 824

Rather than demonstrate why they meet the standard for a stay pending appeal, Legislative Defendants rely principally on the "*Purcell* principle," which they argue applies "in election cases when a lower court has issued an injunction of a state's election

9

law in the period close to an election."  LD Mem. at 4 (quoting *Merrill v. Milligan*, 142 S. Ct. 879, 880 (2022) (Kavanaugh, J., concurring)).  The key policy goals underlying this principle relate to "voter confusion" that might keep voters "away from the polls."  *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006).  *See Democratic Nat'l Comm. v. Wis. State Legislature*, 141 S. Ct. 28, 31 (2020) (Kavanaugh, J., concurring) (the *Purcell* principle "not only prevents voter confusion but also prevents election administrator confusion"); *Milligan*, 142 S. Ct. at 879-80 (Kavanaugh, J., concurring) (lamenting that "completely redraw[ing]" Alabama's congressional districts "within a few short weeks" would cause "chaos and confusion"); *Pierce v. N.C. State Bd. of Elections*, 97 F.4th 194, 227 (analyzing how stay of election law might burden county boards of elections and lead to "the voter confusion and disruptive consequences the *Purcell* principle is designed to avoid").

Nevertheless, although the Supreme Court "has often stayed lower federal court" decisions that "enjoin a state's election laws in the period close to an election," *Milligan*, 142 S. Ct. at 880 (Kavanaugh, J., concurring), no court has asserted that *Purcell* is a per se rule that bars any court from ever issuing an injunction close to an election.  Indeed, neither the Supreme Court nor the Fourth Circuit has set forth the specific circumstances under which an "election law" may or may not be enjoined, or how "close to an election" is too close.  *See Milligan*, 142 S. Ct. at 881 (Kavanaugh, J., concurring) (rejecting "absolute" bar on election law injunctions close-in-time to elections); *id.* n.1 (explaining that "[h]ow close to an election is too close may depend in part on the nature of the election law at issue, and how easily the State could make the change without undue collateral effects");

10

*Democratic Nat'l Comm.*, 141 S. Ct. at 41-42 (Kagan, J., dissenting) (*Purcell* "articulated not a rule but a caution" to consider "election-specific factors") (citation omitted).

Notably, the Supreme Court has denied stays of injunctions in several cases comparable to this one, including prior litigation over North Carolina H.B. 589, illustrating *Purcell*'s case-specific application. *See, e.g.*, *North Carolina v. N.C. State Conf. of the NAACP*, 137 S. Ct. 27 (2016) (denying application to stay July 29, 2016 Fourth Circuit decision enjoining discriminatory provisions of 2013 omnibus election law); *McCrory v. Harris*, 577 U.S. 1129 (2016) (denying application to stay Fourth Circuit decision, issued one month before March 2016 primary election, that required North Carolina General Assembly to redraw its congressional districts).

Two principles emerge from these cases: (1) district courts should consider the trial record carefully for evidence the defense presented of the actual risk of voter and election administrator confusion or election disruption, and (2) district courts have flexibility in determining how to apply the *Purcell* principle to particular circumstances.

The evidence in this case demonstrates that enjoining S.B. 824 implicates none of the bedrock *Purcell*-principle concerns. Unlike oft-cited cases addressing injunctions requiring new district maps, *see Milligan*, 142 S. Ct. 879; *McCrory*, 577 U.S. 1129, or altering absentee ballot deadlines on the eve of an election, *see Democratic Nat'l Comm.*, 141 S. Ct. 28; *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423 (2020), an injunction in this case would simply suspend the particular photo identification requirements imposed by S.B. 824, thereby *alleviating* the burden on poll workers and

11

election administrators to understand and consistently enforce the law's complicated and byzantine rules regarding acceptable forms of ID and applicable exceptions.

As discussed in detail below, the trial record is replete with evidence of voter and election administrator confusion *caused* by S.B. 824; the trial record is, in contrast, bereft of evidence that enjoining the law would exacerbate rather than resolve that issue. Because (a) enjoining S.B. 824 is more likely to reduce confusion than to create it, and (b) S.B. 824 can be enjoined with minimal disruption to the administration of the next election, *Purcell* and the subsequent decisions relying on it do not support staying a judgment pending appeal.

A. The Trial Evidence Confirmed that Enjoining S.B 824 Will Not Lead to Voter or Administrator Confusion

Over multiple days of trial testimony, a series of witnesses explained to the Court how the voter identification provisions of S.B. 824 have confounded voters and poll workers alike, leading to gross inconsistency in enforcement, widespread confusion, and a failure to record votes that should have been counted. For example, the State's chief election official, Karen Brinson Bell, provided lengthy testimony trying to explain the complicated steps needed to implement and comply with S.B. 824. Tr. 715:17-720:6 (five nearly uninterrupted pages of testimony explaining "the process that a voter would go through if they were voting in person without an ID"). Courtney Patterson, Chair of the Lenoir County Board of Elections, testified that "[p]hoto ID has made it even worse as far as people being confused." *Id.* at 357:4-8. Voters "don't want to go in and try to cast the

ballot when they don't understand whether or not they have the proper ID." *Id.* at 357:19-20. Instead, "a lot of folk just stay home … because they don't want the embarrassment of being told they can't vote." *Id.* at 358:7-13.[3] As for administrators, Mr. Patterson further testified that, while poll workers are trained to offer voters without authorized ID the dual option of voting by provisional ballot or completing a reasonable impediment form, "in practice, many times, it doesn't happen simply because a poll worker didn't get it." *Id.* at 379:14-22. He added that he "see[s] an incident every time [he] walk[s] in the polls[.]" *Id.* at 379:14-382:23.

Legislative Defendants cite no evidence to the contrary. Instead, they offer only an evidence-free assertion that "enjoining enforcement of S.B. 824 before the 2024 general election"—apparently at any time between now and the election—"would undoubtedly lead to disruption and cause both voter confusion and election administrator confusion." LD Mem. at 6 (internal citations and quotation marks omitted). That Legislative

---

[3]     The record is replete with this sort of testimony, which severely undermines the significance of Legislative Defendants' claim that "[o]ver 99.9%" of voters who *did* go to the polls in the 2023 municipal elections and 2024 primaries "did so with qualifying ID." LD Mem. at 6. The relevance of this statistic is further undercut by Director Brinson Bell's discussion of a presentation to legislators that municipal and primary elections feature "low turnout" and are typically attended by "more civically engaged" voters; she explained, "I don't have any indication" whether voters who did not head to the polls "were [] prepared to show ID. Or, if someone didn't show up to vote [whether they] were … deterred by" confusion over ID requirements. Tr. 612:23-615:17. Director Brinson Bell further testified that her goal for the presentation was to "caution" legislators "not [to] misinterpret what 99-point-whatever-percent means." *Id.* at 615:18-23.

13

Defendants do not cite to the actual trial record in this case is revealing.  In fact, the trial record is devoid of evidence to support their conclusion and also demonstrates critical differences between this case and the cases they rely on.

Instead of engaging with the trial record, Legislative Defendants cite *Milligan* and *Democratic Nat'l Comm.*, LD Mem. at 6, both of which demonstrate why a stay is not warranted in this case.  In *Milligan*, the Supreme Court stayed a decision requiring "Alabama's congressional districts to be completely redrawn within a few short weeks," which "would require heroic efforts" and would result in "chaos and confusion."  142 S. Ct. at 879-80 (Kavanaugh, J., concurring).  In *Democratic Nat'l Committee*, the Court refused to vacate a stay of a district court's order, issued "just six weeks before the November election *and after absentee voting had already begun*," that imposed a new timeline for the mailing and receipt of absentee ballots.  *See* 141 S. Ct. at 31 (emphasis added).  Unlike stays of orders imposing *new* requirements on voters and election administrators, a ruling for Plaintiffs in this case would *remove* novel requirements—and reduce confusion—for both groups.

B.  Enjoining S.B. 824 Will Not Make the Election Impossible to Administer

As with voter confusion, Plaintiffs developed an extensive trial record demonstrating the challenges election administrators have faced in implementing S.B. 824's convoluted ID requirements.  *See, e.g.*, PFOFCOL ¶¶ 306, 309-11, 313-321 (describing challenges, including limited resources for training and wildly inconsistent enforcement).  For example, Director Brinson Bell described hearings held by the Guilford

14

County Board of Elections in which voters' reasonable impediment forms were challenged based on speculation, which was "not … something that County Boards should be doing." Tr. 676:1:677:7. Director Brinson Bell also recalled an "incident" in Mecklenburg County where Board officials inappropriately questioned reasonable impediment forms. Tr. 678:1-679:20. Individual voters Cedric Baker and Robert Fletcher testified that they were not offered Photo ID exception forms while voting in the 2024 primary election, and neither of their provisional ballots was ultimately counted. PFOFCOL ¶ 339-40; Tr. 1020:12-1022:22 (Baker); 1116:25-1119:19 (Fletcher).

Defendants produced no evidence to the contrary; in their brief, Legislative Defendants assert that, "the Court heard testimony regarding how" various groups "have already educated North Carolina voters about" S.B. 824. LD Mem. at 6. But that evidence illustrates the tremendous challenges inherent in the task of implementing photo ID requirements; it does not support Legislative Defendants' argument that *enjoining* S.B. 824 will lead to "election administrator confusion." There is simply no evidence in the record that enjoining S.B. 824, rather than enforcing it, would lead to election administrator confusion.

Legislative Defendants also misrepresent prior statements by SBOE Defendants that any injunction issued after "early July" would be impossible to implement, considering the "lead-time" needed for election preparation, including ballot and envelope design and printing. LD Mem. at 7. This statement, made in 2020 about the lead time needed to *implement*, not withdraw, the photo ID requirement, was written in opposition to the

15

*implementation* of S.B. 824's photo ID requirements, not their enjoinment.  *See* Reply Br. of State Board Defs.-Appellants, *N.C. State Conf. of the NAACP v. Raymond*, No. 20-1092 Doc. No. 103 (4th Cir.), 2020 WL 4347165, at \*22-24 (explaining why "the injunction" then in place "should not be lifted now," because of the time required, *inter alia*, "to allow elections officials to document photo ID compliance when voters cast their ballots"). Neither the Legislative Defendants nor the State Board Defendants put forth evidence that the SBOE would be burdened by a permanent injunction barring implementation of photo ID.

Legislative Defendants' statement that, "the State Board represented to this Court [that] the largest counties 'need to know that they need to alter their absentee ballots by, essentially, July 1st,'" LD Mem. at 7, is also unavailing.  State Board Defendants themselves noted that this was only "preliminary information," Tr. 1087:25-1088:2, 1090:6-8, and, tellingly, State Board Defendants did not join Legislative Defendants' instant motion for a stay pending appeal.  Moreover, the SBOE is still in the process of determining how to implement and educate the public about the ID requirements; the SBOE reported that it was still considering the precise ID Exception Form that will accompany provisional and absentee ballots at least as late as June 26, 2024.  *See* June 26, 2024 SBOE Meeting Recording at 3:22-5:24, 12:23-13:8.[4]

---

[4]     https://s3.amazonaws.com/dl.ncsbe.gov/State_Board_Meeting_Docs/2024-06-26/State%20Board%20of%20Elections%20Meeting-20240626%202000-1.mp4.

All of this is underscored by the fact that, under cross-examination by Legislative Defendants at trial, SBOE Director Karen Brinson Bell would not testify that she has "concerns about voter confusion" or what "period of time" would be necessary for election officials to implement an injunction. Tr. 768:20-771:22 (indicating that time needed "really depends" on the complexity of the change, that she "do[es]n't think about" voter confusion, and recalling how, after the preliminary injunction, "[w]e did a mailer saying that it's no longer in effect"); *see also* PFOFCOL ¶ 429.[5] Put simply, Legislative Defendants have put forth no evidence that enjoining S.B. 824 will unduly burden election administration officials.

The *Purcell* principle is not absolute. Absent any trial evidence of disruption or confusion—and Legislative Defendants present none—this case does not warrant *Purcell's* restriction on pre-election injunctions. At worst, without a stay of an injunction barring S.B. 824's photo voter ID requirements, voters might take pains to obtain IDs that are ultimately not necessary, bring IDs they did not need to the polls, or include an unnecessary copy with an absentee ballot. And, critically, whatever limited confusion over ID requirements may follow an injunction *would not disenfranchise a single voter*. In that scenario, the greatest danger to election integrity would continue to be lingering voter

---

[5] In October 2019, while assessing the pre-election impact of a preliminary injunction, Director Brinson Bell indicated that the State Board of Elections, "would need to be informed" of a "court-ordered injunction against Photo ID implementation" by about nine weeks prior to the March 2020 election. *See* ECF No. 97-9 ¶ 40.

17

confusion caused by the passing and implementation of S.B. 824 itself, not this Court's decision to enjoin it. *Cf. Veasey v. Perry*, 135 S. Ct. 9, 12 (2014) (Ginsburg, J., dissenting) ("The greatest threat to public confidence in elections in this case is the prospect of enforcing a purposefully discriminatory law, one that … risks denying the right to vote to hundreds of thousands of eligible voters.").

C. Plaintiffs Have Diligently Litigated This Case

Finally, Legislative Defendants' argument that a stay pending appeal is warranted because Plaintiffs have "repeatedly and unduly delayed these proceedings" is both factually and legally baseless. LD Mem. at 9-10. First, Legislative Defendants fail to cite a single binding authority stating that a plaintiff's delay in seeking relief can support a stay pending appeal. Instead, Legislative Defendants cite to and misapply Justice Kavanaugh's concurrence in *Milligan* to argue that the timing of Plaintiffs' prior litigation decisions weigh in favor of a stay. *Id*. But Justice Kavanaugh merely suggested in *Milligan* that a Plaintiff's "undue delay[] *bringing the complaint to court*" could be a *Purcell* factor. 142 S. Ct. at 881 (Kavanaugh, J., concurring) (emphasis added). This *Purcell* consideration "discourages last-minute litigation and instead encourages litigants to bring any substantial challenges to election rules ahead of time, in the ordinary litigation process." *Democratic Nat'l Comm.*, 141 S. Ct. at 31 (Kavanaugh, J., concurring).

Here, Plaintiffs filed this lawsuit on December 20, 2018, the *day after* the North Carolina Legislature overrode Gov. Roy Cooper's veto of S.B. 824 and enacted the law. There was no delay—Plaintiffs could not have "br[ought] the complaint to court" any

18

sooner. Subsequent delays in setting the trial were due in part to a stay of trial by this Court based on *Defendants*' Motion to Stay, and a separate injunction of S.B. 824 in a state court proceeding. *See* ECF No. 192 (Defendants' Motion to Stay, Continue the Trial, or Allow Permissive Intervention); ECF No. 194 (Order Granting Stay); *Holmes v. Moore*, 840 S.E.2d 244 (N.C. App. 2020) (finding discriminatory intent and issuing statewide injunction). Moreover, at trial, the Court reminded the parties that while Plaintiffs asked to go to trial in February 2024, *see* ECF No. 215, the Court set trial for May in response to *Defendants'* requests and the SBOE's representation that any injunction issued following a trial would not impede election preparations. *See* PFOFCOL ¶ 428; Tr. 1089:9-1090:5 (The Court) ("[Plaintiffs] wanted the trial back in February; [Defendants] wanted the trial later. … I think [Plaintiffs] were asking for the trial back in February so we wouldn't run into [timing conflict between judgment and election administration] … all of us are just going to have to adjust to what we have to adjust to based on the calendar."); 11/21/23 Mot. Tr. 67:9-16, 68:21-69:10. Under these circumstances, Legislative Defendants' complaints about the post-complaint, years-long timeline of this litigation miss the mark. There is no basis in the caselaw or the facts for granting a stay on the grounds they assert.

***

Ultimately, a judgment for Plaintiffs would alleviate, not cause, voter confusion. Further, enjoining S.B. 824 would reduce the burden on poll workers to ensure that only qualifying IDs are accepted and alleviate their need to explain complex and poorly understood provisional ballot and reasonable impediment voting options to voters, and it

19

would thereby greatly reduce the probability of inconsistent enforcement of S.B. 824 across precincts. Thus, on the facts of this case, the *Purcell* principle does not warrant a stay of a future permanent injunction barring enforcement of the challenged provisions of S.B. 824.

## CONCLUSION

Because Legislative Defendants' motion is premature, because delaying enforcement of the challenged provisions of S.B. 824 will not cause voters or election administrators any confusion or complication, and because Legislative Defendants have completely failed to satisfy the requirements for a stay pending appeal, Legislative Defendants' motion should be denied.

July 22, 2024                              Respectfully submitted,

*/s/ Andrew R. Hirschel*_____
Andrew R. Hirschel
NY Bar No. 5734066
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 West 55th Street
New York, NY 10019-9710
Phone: (212) 836-7827
Andrew.Hirschel@arnoldporter.com

Nicholas Zebrowski
IL Bar No. 6344386
**ARNOLD & PORTER KAYE SCHOLER LLP**
70 West Madison Street, Suite 200
Chicago, IL 60602-4231
Phone: (312) 583-2431
Nicholas.Zebrowski@arnoldporter.com

20

Preston Smith
DC Bar No. 1002179
Jeremy C. Karpatkin
DC Bar No. 980263
John Freedman
DC Bar No. 453075
**ARNOLD & PORTER KAYE
SCHOLER LLP**
601 Massachusetts Avenue, NW
Washington, DC 20001-3743
Phone: (202) 942-5000
Preston.Smith@arnoldporter.com

*/s/ Irving Joyner*
Irving Joyner
NC State Bar No. 7830
P.O. Box 374 Cary, NC 27512
Phone: (919) 319-8353
ijoyner@nccu.edu

*/s/ Penda D. Hair*
Penda D. Hair
DC Bar No. 335133
**FORWARD JUSTICE**
P.O. Box 42521
Washington, DC 20015
Phone: (202) 256-1976
phair@forwardjustice.org

Caitlin A. Swain
NC Bar No. 57042
Kathleen Roblez
NC Bar No. 57039
Ashley Mitchell
NC Bar No. 56889
**FORWARD JUSTICE**
P.O. Box 1932
Durham, NC 27702
Phone: (984) 260-6602
cswain@forwardjustice.org

21

*Counsel for Plaintiffs*

22

**CERTIFICATE OF SERVICE**

I hereby certify that on this date I electronically filed the foregoing PLAINTIFFS' RESPONSE IN OPPOSITION TO LEGISLATIVE DEFENDANTS' MOTION TO STAY PENDING APPEAL with the Clerk of Court using the CM/ECF system which will send notification of such to all counsel of record in this matter.

This, the 22nd day of July 2024.

*/s/ Andrew R. Hirschel*
Andrew R. Hirschel

## <u>CERTIFICATE OF WORD COUNT</u>

The undersigned counsel hereby certifies that pursuant to Local Rule 7.3(d)(1), the foregoing has a word count of less than 6,250 words not including the caption, signature block, and certification of word count. This document was prepared in Microsoft Word, from which the word count is generated.

This, the 22nd day of July 2024.

*/s/ Andrew R. Hirschel*
Andrew R. Hirschel

24